No. 19-4385

———————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH COURT

———————

UNITED STATES OF AMERICA,
*Plaintiff/Appellee*,

v.

KEVIN PATRICK MALLORY,
*Defendant/Appellant*.

———————

On Appeal From the United States District Court
for the Eastern District of Virginia
Alexandria Division (The Hon. T. S. Ellis, III)

———————

UNCLASSIFIED JOINT APPENDIX

VOLUME I of VII (U.J.A. pages 1 - 340)

———————

| | |
|---|---|
| **G. ZACHARY TERWILLIGER** | **GEREMY C. KAMENS** |
| **United States Attorney** | **Federal Public Defender** |
| | |
| **John T. Gibbs** | **Geremy C. Kamens** |
| **Daniel T. Young** | **Federal Public Defender** |
| **Assistant United States Attorneys** | **Frances H. Pratt** |
| **Jennifer Kennedy Gellie, Trial Att'y** | **Todd M. Richman** |
| **Nat'l Security Div., U.S. Dep't Justice** | **Assistant Federal Public Defenders** |
| **Counsel for Appellee** | **Counsel for Appellant** |
| **2100 Jamieson Avenue** | **1650 King Street, Suite 500** |
| **Alexandria, VA 22314** | **Alexandria, VA 22314** |
| **(703) 299-3700** | **(703) 600-0800** |

This page intentionally left blank for double-sided pagination and printing

# TABLE OF CONTENTS

## UNCLASSIFIED VOLUME I (U.J.A. pages 1 - 340)

District Court Docket Sheet (as of July 29, 2020)......................................................1

Indictment (July 27, 2017, as amended and refiled May 21, 2018, Doc. 134) .......26

Excerpts, Proposed Jury Instructions of the United States (May 17, 2019, Doc. 131)......................................................................................................45

    Proposed Instruction No. 19 ..............................................................................49
    Proposed Instruction No. 28 ..............................................................................50
    Proposed Instruction No. 29 ..............................................................................51
    Proposed Instruction No. 30 ..............................................................................52
    Proposed Instruction No. 31 ..............................................................................53
    Proposed Instruction No. 32 ..............................................................................54
    Proposed Instruction No. 33 ..............................................................................55
    Proposed Instruction No. 34 ..............................................................................56
    Proposed Instruction No. 35 ..............................................................................57
    Proposed Instruction No. 36 ..............................................................................58
    Proposed Instruction No. 37 ..............................................................................59
    Proposed Instruction No. 38 ..............................................................................60
    Proposed Instruction No. 39 ..............................................................................61
    Proposed Instruction No. 40 ..............................................................................62
    Proposed Instruction No. 41 ..............................................................................63
    Proposed Instruction No. 42 ..............................................................................64
    Proposed Instruction No. 43 ..............................................................................65
    Proposed Instruction No. 44 ..............................................................................66
    Proposed Instruction No. 45 ..............................................................................68
    Proposed Instruction No. 46 ..............................................................................69
    Proposed Instruction No. 47 ..............................................................................70

Notice of Filing, Defendant's Motion to Reconsider Use of Silent Witness Rule with Respect to Certain Documents and Information (May 23, 2018, Doc. 149)......................................................................................................72

Notice of Filing, Government's […] Limited Response to Motion to Reconsider (May 24, 2018, Doc. 154)........................................................................74

Notice of Filing, Defendant's Reply in Support of Motion to Reconsider Use of Silent Witness Rule with Respect to Certain Documents and Information (May 25, 2018, Doc. 157)..............................................75

Excerpts, Defendant's Amended Proposed Jury Instructions (May 26, 2018, Doc. 159)...........................................................................................77

    Proposed Instruction F...........................................................................82
    Proposed Instruction G ..........................................................................83
    Proposed Instruction I............................................................................84
    Proposed Instruction J............................................................................85
    Proposed Instruction K ..........................................................................86
    Proposed Instruction L...........................................................................87
    Proposed Instruction M..........................................................................89
    Proposed Instruction P...........................................................................90
    Proposed Instruction V ..........................................................................91
    Proposed Instruction W .........................................................................92

Transcript, Trial Day 2 (May 30, 2018, Docs. 164, 217) ........................94

    Preliminary matters...............................................................................97

    Preliminary instructions.......................................................................101

    Opening statement by the government ...............................................108
    Opening statement by the defense ......................................................129

    Government's evidence .......................................................................137

        Michael Londregan – direct............................................................138
        Michael Londregan – cross.............................................................159
        Michael Londregan – redirect.........................................................171

        Ralph Stephenson – direct ..............................................................173
        Ralph Stephenson – cross ...............................................................181

        Peter Napoleon – direct ..................................................................193
        Peter Napoleon – cross ...................................................................208

        Waldmar Prokopiuk – direct...........................................................216

John Doe – direct ...................................................................................224
John Doe – cross ....................................................................................236
John Doe – redirect ...............................................................................250

Michael Dorsey – direct .......................................................................252
Michael Dorsey – cross ........................................................................283

Paul Lee – direct ...................................................................................307


UNCLASSIFIED VOLUME II (U.J.A. pages 341 - 822)

Transcript, Trial Day 3 (May 31, 2018, Docs. 165, 218) ......................................341

Preliminary matters ...............................................................................344

Government's evidence, continued ................................................................347

Paul Lee – direct, continued .................................................................347
Paul Lee – cross ....................................................................................353
Paul Lee – redirect ................................................................................370

Melinda Capitano – direct ....................................................................373
Melinda Capitano – cross .....................................................................386
Melinda Capitano – redirect .................................................................391

Ryan Lamb – direct ..............................................................................393
Ryan Lamb – cross ...............................................................................409

James Hamrock – direct ........................................................................415
James Hamrock – cross .........................................................................476
James Hamrock – redirect .....................................................................491

Stephen Green – direct ..........................................................................496

Transcript, Trial Day 4 (June 1, 2018, Docs. 166, 219) .......................................563

Preliminary matters ...............................................................................566

iii

Government's evidence, continued ..................................................568

    Stephen Green – direct, continued..............................................568
    Stephen Green – cross ...............................................................707


UNCLASSIFIED VOLUME III (U.J.A. pages 823 - 1134)

Transcript, Trial Day 5 (June 4, 2018, Docs. 169, 220) ........................823

    Preliminary matters...................................................................825

    Government's evidence, continued ..............................................831

        Stephen Green – cross, continued..............................................832
        Stephen Green – redirect ...........................................................855

        Nancy Morgan – direct................................................................874
        Nancy Morgan – cross................................................................914
        Nancy Morgan – redirect............................................................934
        Nancy Morgan – recross.............................................................936

        Robert Ambrose – direct.............................................................939

Order (denying, *inter alia*, defendant's motion to reconsider use of silent witness rule) (June 5, 2018, Doc. 170) ............................................948

Transcript, Trial Day 6 (June 5, 2018, Docs. 171, 221) ........................951

    Preliminary matters...................................................................953

    Government's evidence, continued ..............................................956

        Robert Ambrose – direct, continued...........................................957
        Robert Ambrose – cross .............................................................967

        Hugh Higgins – direct................................................................969
        Hugh Higgins – cross ...............................................................1027
        Hugh Higgins – redirect ...........................................................1065

Kristen Gunness – direct..................................................................1072
Kristen Gunness – cross ...............................................................1092
Kristen Gunness – redirect ...........................................................1105

Government rests ..........................................................................1106

Defendant's evidence......................................................................1107

Harry Cooper, Jr. – direct .............................................................1107

## UNCLASSIFIED VOLUME IV (U.J.A. pages 1135 - 1428)

Defendant's Motion for Judgment of Acquittal with Respect to Counts 1-3
    (June 6, 2018, Doc. 172)..........................................................1135

Transcript, Trial Day 7 (June 6, 2018, Docs. 173, 222) .......................1150

Preliminary matters......................................................................1153

Defendant's evidence, continued...................................................1154

Harry Cooper, Jr. – direct, continued ..........................................1154
Harry Cooper, Jr. – cross ..............................................................1167
Harry Cooper, Jr. – redirect ..........................................................1181

Richard Vandiver – direct..............................................................1185
Richard Vandiver – cross ..............................................................1187
Richard Vandiver – redirect ..........................................................1192

Kevin McLane – direct...................................................................1192
Kevin McLane – cross...................................................................1194

Patsy Clark – direct.......................................................................1197
Patsy Clark – cross........................................................................1199

Matthew Whatley – direct .............................................................1202
Matthew Whatley – cross ..............................................................1212
Matthew Whatley – redirect ..........................................................1217

Defendant rests ...................................................................1219, 1224

Discussion concerning exhibits ...................................................................1221

Jury instruction conference.....................................................................1233

Government's Motion for Reconsideration as to Intent Jury Instruction
(June 7, 2018, Doc. 175).............................................................................1286

Exh. A (court's initial proposed Page 40 instruction) ...................................1293

Exh. B (court's revised Page 40 instruction)................................................1294

Exh. C (jury instructions, *United States v. Hoffman*, No. 2:12-cr-00184
(E.D. Va. Aug. 21, 2013).............................................................................1295

Transcript, Trial Day 8, morning, part 1 (June 7, 2018, Docs. 186, 195) ...........1339

Jury instruction conference, cont'd..............................................................1341

Transcript, Trial Day 8, morning, part 2 (June 7, 2018, Docs. 186, 216) ..........1360

Preliminary matters....................................................................................1363

Closing argument by the government............................................................1365
Closing argument by the defense..................................................................1393
Rebuttal argument by the government...........................................................1417


UNCLASSIFIED VOLUME V (U.J.A. pages 1429 - 1640)

Transcript, Trial Day 8, afternoon (June 7, 2018, Docs. 186, 223).....................1429

Jury instruction conference, cont'd..............................................................1431

Instruction of the jury ................................................................................1436

Transcript, Trial Day 9 (June 8, 2018, Docs. 187, 224) ....................................1490

Jury questions.............................................................................................1494

Return of verdict ........................................................................................1509

Verdict Form (redacted) (June 8, 2019, Doc. 190)............................................1527

Government's Opposition to Defendant's Motion for Judgment of Acquittal with Respect to Counts 1-3 (June 14, 2018, Doc. 194) ..................................1529

Defendant's Reply in Support of Motion for Judgment of Acquittal with Respect to Counts 1-3 (June 14, 2018, Doc. 194) ...........................................1550

Exh. 1 (transcript excerpt, testimony of government witness Steve Green)..1567

Defendant's Motion for a New Trial with Respect to Counts One, Two, and Three, and Judgment of Acquittal with Respect to Count Four (July 13, 2018, Docs. 196, 197) ..............................................................................1573

Exh. 1 (transcript, June 6, 2018 jury instructions conference) [omitted from J.A. as it correlates page-for-page to ECF Doc. 222, trial transcript pp. 1120-1171] ...................................................................... 1603; *see* U.J.A. 1233

Exh. 2 (court's first revised instruction on "intent or reason to believe defined") ......................................................................................1604

Exh. 3 (partial transcript, June 7, 2018, jury instruction issues) [omitted from J.A. as it correlates page-for-page to ECF Doc. 195, partial transcript, trial day 8 (jury instruction issues)] .................................... 1606; *see* U.J.A. 1341

Exh. 4 (court's instruction on "reason to believe defined" and "willfully")....1607

Government's Consolidated Opposition to Defendant's Motion for a New Trial with Respect to Counts One, Two, and Three, and Judgment of Acquittal with Respect to Count Four (July 24, 2018, Doc. 198)..................1610

Exh. A (demonstrative chart, timeline for Samsung device)..........................1632

Exh. B (demonstrative chart, document names).............................................1634

Exh. C (email concerning Document No. 2) .................................................1636

UNCLASSIFIED VOLUME VI (U.J.A. pages 1641 - 1832)

Memorandum Opinion (partly granting and partly denying defendant's motion for judgment of acquittal, *supra* doc. 175) (July 26, 2018, Doc. 201)..............................................................................................1641

Defendant's Reply in Support of Motion for a New Trial with Respect to Counts One, Two, and Three, and Judgment of Acquittal with Respect to Count Four (Aug. 3, 2018, Doc. 203)...........................................................1661

Exhibit 1 (transcript excerpt, testimony of government witness James Hamrock) .................................................................................................1678

Exhibit 2 (gov't exh. 8-5, photograph of text messages) .............................1763

Transcript, Hearing on Motion for New Trial and Motion for Judgment of Acquittal (Sept. 21, 2018, Docs. 214, 227) ................................................1765

Memorandum Opinion (denying government's motion for reconsideration of grant of motion for judgment of acquittal, *see* doc. 204) ...............................1783

Memorandum Opinion (denying defendant's motion for new trial and motion for judgment of acquittal, *supra* docs. 196, 197) (Oct. 15, 2018, Doc. 229) ....................................................................................................................1801

Order (denying motion for new trial and motion for judgment of acquittal) (Oct. 15, 2018, Doc. 230) ...........................................................................1819

Judgment in a Criminal Case (May 17, 2019, Doc. 267) ...................................1820

Defendant's Notice of Appeal (May 31, 2019, Doc. 273)...................................1830


UNCLASSIFIED VOLUME VII (C.J.A. pages 1833 - end) – EXHIBITS

Def't Exh. 2B-2 (email chain with communications between John Doe and defendant) .................................................................................................1833

Def't Exh. 3A-1 (excerpt from May 12th interview transcript) .........................1838

Gov't Exh. 2-1 (text messages between defendant and John Doe) .....................1839

Gov't Exh. 9-3E (handwritten table of contents from Toshiba Micro SD Card, unclassified version) ...................................................................................1849

Govt. Exh. 9-3E1 (unclassified version)..........................................................1850

viii

CLASSIFIED VOLUME I (C.J.A. pages 1 - 310)

See separate table of contents contained in the volume


CLASSIFIED VOLUME II (C.J.A. pages 311 - end) – EXHIBITS

See separate table of contents contained in the volume

ix

This page intentionally left blank for double-sided pagination and printing

APPEAL,CLOSED

# U.S. District Court
## Eastern District of Virginia – (Alexandria)
### CRIMINAL DOCKET FOR CASE #: 1:17–cr–00154–TSE–1

Case title: USA v. Mallory
Magistrate judge case number:  1:17–mj–00288–IDD

Date Filed: 06/30/2017
Date Terminated: 05/17/2019

Assigned to: District Judge T. S. Ellis, III

Appeals court case numbers: 18–4790 4th Circuit, 19–4385 4th Circuit

**Defendant (1)**

| | |
|---|---|
| **Kevin Patrick Mallory** *TERMINATED: 05/17/2019* | represented by **Geremy C. Kamens** Office of Federal Public Defender 1650 King St Suite 500 Alexandria, VA 22314 (703) 600–0800 Email: Geremy_Kamens@fd.org *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* *Designation: Public Defender* |
| | **Todd M. Richman** Office of the Federal Public Defender (Alexandria) 1650 King St Suite 500 Alexandria, VA 22314 (703) 600–0800 Email: todd_richman@fd.org *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |

| **Pending Counts** | **Disposition** |
|---|---|
| 18:794(c) Conspiracy to Gather or Deliver Defense Information to Aid a Foreign Government (FORFEITURE) (1) | 240 months w/5 Years SR Term w/special conds to run concurrent with Count 4; $100 SA |
| 18:794(a) Delivering Defense Information to Aid a Foreign Government (FORFEITURE) (2) | Court dismissed on defense motion. |
| 18:794(a) Attempted Delivery of Defense Information to Aid a Foreign Government (FORFEITURE) (3) | Court dismissed on defense motion. |
| 18:1001(a)(1) Material False Statements (4) | 60 months w/3 Years SR Term w/special conds to run concurrent with Count 1; $100 SA |

**U.J.A. 1**

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**                                    **Disposition**

None

**Highest Offense Level
(Terminated)**

None

**Complaints**                                           **Disposition**

18:1001 Making Material False
Statements
18:794 Gathering or Delivering
Defense Information to aid a
foreign government

---

**Plaintiff**

**USA**                             represented by    **John T. Gibbs**
                                                     US Attorney's Office (Alexandria–NA)
                                                     2100 Jamieson Avenue
                                                     Alexandria, VA 22314
                                                     **NA**
                                                     Email: john.gibbs@usdoj.gov
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*
                                                     *Designation: US Attorney*

                                                     **Colleen E. Garcia**
                                                     US Attorney's Office (Alexandria–NA)
                                                     2100 Jamieson Avenue
                                                     Alexandria, VA 22314
                                                     NA
                                                     703–299–3700
                                                     Email: colleen.e.garcia@usdoj.gov
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Jennifer K. Gellie**
                                                     US Attorney's Office (Alexandria)
                                                     2100 Jamieson Avenue
                                                     Alexandria, VA 22314
                                                     **NA**
                                                     703–299–3700
                                                     Email: jennifer.gellie@usdoj.gov
                                                     *ATTORNEY TO BE NOTICED*
                                                     *Designation: US Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/21/2017 | 1 | COMPLAINT as to Kevin Patrick Mallory (1). (jlan) [1:17–mj–00288–IDD] (Entered: 06/22/2017) |
| 06/21/2017 | 2 | AFFIDAVIT by USA as to Kevin Patrick Mallory 1 Complaint (jlan) [1:17–mj–00288–IDD] (Entered: 06/22/2017) |
| 06/21/2017 | 4 | Redacted Criminal Case Cover Sheet (jlan) [1:17–mj–00288–IDD] (Entered: 06/22/2017) |

**U.J.A. 2**

| 06/21/2017 | 5 | MOTION to Seal by USA as to Kevin Patrick Mallory. (jlan) [1:17–mj–00288–IDD] (Entered: 06/22/2017) |
|---|---|---|
| 06/21/2017 | 6 | ORDER granting 5 Motion to Seal as to Kevin Patrick Mallory (1). Signed by Magistrate Judge Theresa Carroll Buchanan on 06/21/2017. (jlan) [1:17–mj–00288–IDD] (Entered: 06/22/2017) |
| 06/21/2017 | 7 | Arrest Warrant Issued by Magistrate Judge Theresa Carroll Buchanan in case as to Kevin Patrick Mallory. (jlan) [1:17–mj–00288–IDD] (Entered: 06/22/2017) |
| 06/22/2017 | | Arrest of Kevin Patrick Mallory (tfitz, ) [1:17–mj–00288–IDD] (Entered: 06/22/2017) |
| 06/22/2017 | 8 | Arrest Warrant Returned Executed on 6/22/17 in case as to Kevin Patrick Mallory. (tfitz, ) [1:17–mj–00288–IDD] (Entered: 06/22/2017) |
| 06/22/2017 | | Case unsealed as to Kevin Patrick Mallory (tfitz, ) [1:17–mj–00288–IDD] (Entered: 06/22/2017) |
| 06/22/2017 | 9 | Minute Entry for proceedings held before Magistrate Judge Theresa Carroll Buchanan:Initial Appearance as to Kevin Patrick Mallory held on 6/22/2017. USA appeared through J. Gibbs. deft appeared w/o counsel. Deft informed of rights, charges and penalties. Court to appoint counsel (FPD). USA seeks detention–GRANTED. Matter set for a Preliminary/Detention Hearing on 6/23/2017 at 02:00 PM in Alexandria Courtroom 500 before Magistrate Judge Theresa Carroll Buchanan. Deft remanded o the custody of the USMS pending next hearing.(Tape #FTR.)(tfitz, ) [1:17–mj–00288–IDD] (Entered: 06/22/2017) |
| 06/22/2017 | 10 | Temporary Detention Order as to Kevin Patrick Mallory. Signed by Magistrate Judge Theresa Carroll Buchanan on 6/22/17. (tfitz, ) [1:17–mj–00288–IDD] (Entered: 06/22/2017) |
| 06/22/2017 | | ORAL ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Kevin Patrick Mallory. Geremy C. Kamens for Kevin Patrick Mallory appointed. Ordered by Magistrate Judge Theresa Carroll Buchanan on 6/22/17. (tfitz, ) [1:17–mj–00288–IDD] (Entered: 06/22/2017) |
| 06/23/2017 | 11 | Minute Entry for proceedings held before Magistrate Judge Theresa Carroll Buchanan:Docket Call as to Kevin Patrick Mallory held on 6/23/2017. US appeared through: John Gibbs. Deft appeared with counsel: Geremy Kamens. Matter came on for a PH/DH. Joint motion to continue–GRANTED. Matter set for PH/DH. Deft remanded. Detention and Preliminary Hearing set for 6/29/2017 at 02:00 PM in Alexandria Courtroom 301 Magistrate Judge Ivan D. Davis. (Tape #FTR.)(lgue, ) [1:17–mj–00288–IDD] (Entered: 06/23/2017) |
| 06/23/2017 | 12 | Temporary Detention Order as to Kevin Patrick Mallory. Signed by Magistrate Judge Theresa Carroll Buchanan on 06/23/2017. (lgue, ) [1:17–mj–00288–IDD] (Entered: 06/23/2017) |
| 06/29/2017 | 13 | MOTION for Release from Custody by Kevin Patrick Mallory. (Attachments: # 1 Exhibit Letters of Support)(Richman, Todd) [1:17–mj–00288–IDD] (Entered: 06/29/2017) |
| 06/29/2017 | 14 | Minute Entry for proceedings held before Magistrate Judge Ivan D. Davis:Preliminary Hearing as to Kevin Patrick Mallory held on 6/29/2017. US appeared through: John Gibbs. Deft appeared with counsel: Geremy Kamens and Todd Richman. Gov't adduced evidence and rests. Affidavit admitted into evidence as gov't exhibit number 1. Court finds PC. Matter continued for further proceedings before the Grand Jury. Detention Hearing as to Kevin Patrick Mallory held on 6/29/2017. Gov't is seeking detention. Deft argues for release with conditions–GRANTED. Deft placed on PR bond with conditions. Deft remanded until all conditions are met. (Tape #FTR.)(lgue, ) [1:17–mj–00288–IDD] (Entered: 06/29/2017) |
| 06/29/2017 | 15 | ORDER Setting Conditions of Release as to Kevin Patrick Mallory (1) PR BOND as to Kevin Patrick Mallory. Signed by Magistrate Judge Ivan D. Davis on 06/29/2017. (lgue, ) [1:17–mj–00288–IDD] (Entered: 06/29/2017) |
| 06/29/2017 | 16 | MOTION to Stay . (Attachments: # 1 Proposed Order)(Gibbs, John) [1:17–mj–00288–IDD] (Entered: 06/29/2017) |

**U.J.A. 3**

| 06/29/2017 | 17 | ORDER granting 16 Motion to Stay as to Kevin Patrick Mallory. Signed by Magistrate Judge Ivan D. Davis on 6/29/2017. (rban, ) [1:17–mj–00288–IDD] (Entered: 06/30/2017) |
|---|---|---|
| 06/30/2017 | 18 | MOTION to Revoke *Release Order and Review of Detention* by USA as to Kevin Patrick Mallory. (Gibbs, John) [1:17–mj–00288–IDD] (Entered: 06/30/2017) |
| 06/30/2017 | | Set/Reset Deadlines re Motion or Report and Recommendation in case as to Kevin Patrick Mallory 18 MOTION to Revoke *Release Order and Review of Detention*. Motion Hearing set for 7/6/2017 at 04:30 PM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (rban, ) (Entered: 06/30/2017) |
| 07/03/2017 | 19 | TRANSCRIPT of preliminary and detention hearing held on 6–29–2017 before Mag. Judge Davis. Court reporter Norman Linnell, telephone number 703–549–4626. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov**<br><br>Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 8/2/2017. Redacted Transcript Deadline set for 9/5/2017. Release of Transcript Restriction set for 10/2/2017.(linnell, norman) (Entered: 07/03/2017) |
| 07/05/2017 | 20 | RESPONSE to Motion by Kevin Patrick Mallory re 18 MOTION to Revoke *Release Order and Review of Detention* (Attachments: # 1 Exhibit Letters)(Kamens, Geremy) (Entered: 07/05/2017) |
| 07/06/2017 | 21 | MOTION for Electronic Device Application by USA as to Kevin Patrick Mallory. (Attachments: # 1 Proposed Order Proposed Order)(Gibbs, John) (Entered: 07/06/2017) |
| 07/06/2017 | 22 | ORDER granting 21 Motion for Electronic Device Application as to Kevin Patrick Mallory (1). Signed by District Judge T. S. Ellis, III on 07/06/2017. (jlan) (Entered: 07/06/2017) |
| 07/06/2017 | 23 | Supplemental Memorandum by Kevin Patrick Mallory re 18 MOTION to Revoke *Release Order and Review of Detention* (Kamens, Geremy) (Entered: 07/06/2017) |
| 07/06/2017 | 24 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Motion Hearing as to Kevin Patrick Mallory held on 7/6/2017 re: Government's Motion 18 to Revoke Release Order and Review of Detention. Defendant present w/ counsel Geremy C. Kamens and Todd M. Richman. John T. Gibbs and Jennifer K. Gellie present on behalf of USA. Government calls Special Agent Steven Green (FBI) as witness. Government Exhibit 1 (affidavit) submitted and admitted; Government Exhibit 2 (items found in master bedroom closet submitted and admitted; Government Exhibit 2A (description for applying makeup sponges) submitted and admitted; Government Exhibit 3 (bottles to form scars/adhesives for hair) submitted and admitted; Government audio partially played (and translated by Mandarin interpreter Phillip A. Rosen). Motion Hearing reset/continued for 7/7/2017 at 03:00 PM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (Court Reporter Tonia Harris)(mpha) (Additional attachment(s) added on 7/26/2017: # 1 Govt Exhibit 1, # 2 Govt Exhibit 2, # 3 Govt Exhibit 2A, # 4 Govt Exhibit 3) (mpha) (Entered: 07/07/2017) |
| 07/07/2017 | 25 | MOTION for Detention by USA as to Kevin Patrick Mallory. (Attachments: # 1 Attachment)(Gibbs, John) (Entered: 07/07/2017) |
| 07/07/2017 | 26 | ORDER, for the reasons stated from the bench and for good cause shown, that the government's motion to revoke defendant's bond pending trial is GRANTED and that defendant shall be DETAINED pending trial; that defendant is committed to the custody of the Attorney General or his designated representative for confinement in an appropriate corrections facility and, to the extent practicable, separate and apart from persons awaiting or serving sentences or being held in custody pending appeal; that defendant shall be afforded a reasonable opportunity for private consultation with his attorney; that upon an order of a court of the US or on request of an attorney for the |

U.J.A. 4

| | | |
|---|---|---|
| | | government, the persons in charge of the designated corrections facility shall deliver the defendant to the US Marshal for the purpose of an appearance in connection with a court proceeding; that the government is DIRECTED to take appropriate steps to have defendant promptly returned to this district for arraignment. Signed by District Judge T. S. Ellis, III on 7/7/2017. (rban, ) (Entered: 07/10/2017) |
| 07/07/2017 | 27 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Motion Hearing as to Kevin Patrick Mallory held on 7/7/2017 re: Government's Motion 18 to Revoke Release Order and Review of Detention (continued). Government Exhibit 4 (aluminum wrapped SD card); government exhibit 5 (audio recording of jail call); government exhibit 6 (declaration); transcript of jail call handed up to the court; government exhibit 7 (memorandum–unclassified/FOUO); government recalls Special Agent Steven Green (FBI) as witness; government exhibit 5 (audio recording of jail call) played. Government argues there are no conditions or combination of conditions to reasonably assure defendants attendance/appearance; additionally government argues defendant poses a danger to the community. The Court finds defendant is a risk of flight, revokes release, and defendant detained; defendant remanded to the custody of the attorney general separate to the extent practicable; Order entered, see 26 . (Court Reporter Rebecca Trexler (Casamo & Associates))(mpha) (Additional attachment(s) added on 7/26/2017: # 1 Govt Exhibit 4, # 2 Govt Exhibit 7) (mpha) (Entered: 07/11/2017) |
| 07/13/2017 | 28 | NOTICE OF ATTORNEY APPEARANCE Colleen E. Garcia appearing for USA. (Garcia, Colleen) (Entered: 07/13/2017) |
| 07/21/2017 | 29 | TRANSCRIPT of Proceedings held on 7/7/2017, before Judge T.S. Ellis, III. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov**<br><br>Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Transcript prepared by Casamo & Associates, 703–837–0076.<br>Redaction Request due 8/21/2017. Redacted Transcript Deadline set for 9/20/2017. Release of Transcript Restriction set for 10/19/2017. (rban, ) (Entered: 07/21/2017) |
| 07/24/2017 | 30 | Joint MOTION for Protective Order by USA as to Kevin Patrick Mallory. (Attachments: # 1 Proposed Order)(Gibbs, John) (Entered: 07/24/2017) |
| 07/24/2017 | 31 | ORDER granting 30 Joint Motion for Protective Order as to Kevin Patrick Mallory (1). Signed by District Judge T. S. Ellis, III on 07/24/2017. (jlan) (Entered: 07/24/2017) |
| 07/25/2017 | 32 | NOTICE OF ATTORNEY APPEARANCE Colleen E. Garcia appearing for USA. *filing for Jennifer Gellie* (Garcia, Colleen) (Entered: 07/25/2017) |
| 07/26/2017 | | Notice of Correction: The signature block on the document does not match the user's login. The filing user has been notified and has been asked to either refile the document or to have the attorney whose signature block appears on the document refile the document in re 32 Notice of Attorney Appearance – USA (jlan) (Entered: 07/26/2017) |
| 07/27/2017 | 33 | NOTICE OF ATTORNEY APPEARANCE Jennifer K. Gellie appearing for USA. (jlan) (Entered: 07/27/2017) |
| 07/27/2017 | | Set Hearing as to Kevin Patrick Mallory:<br>Arraignment set for 7/28/2017 at 11:00 AM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (rban, ) (Entered: 07/27/2017) |
| 07/27/2017 | 34 | INDICTMENT as to Kevin Patrick Mallory (1) count(s) 1, 2, 3, 4. (jlan) (Entered: 07/27/2017) |
| 07/27/2017 | 37 | Redacted Criminal Case Cover Sheet (jlan) (Main Document 37 replaced on 8/10/2017) (jlan, ). (Entered: 07/27/2017) |

**U.J.A. 5**

| | | |
|---|---|---|
| 07/28/2017 | 38 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Arraignment held on 7/28/2017. Defendant present w/ counsel Todd M. Richman. John T. Gibbs, Jennifer K. Gellie, and Colleen Garcia present on behalf of USA. Defendant WFA, PNG, and demanded trial by jury. Speedy trial waived – defendant to file written waiver and parties to submit appropriate documents. Jury Trial set for 1/23/2018 at 10:00 AM (approx. 1–2 weeks) in Alexandria Courtroom 900 before District Judge T. S. Ellis III. Status Conference re: setting schedule for CIPA set for 10/5/2017 at 01:00 PM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. Parties to meet, confer and submit Discovery Order by COB next week. Defendant remanded to the custody of the USMS. (Court Reporter Tonia Harris)(mpha) (Entered: 07/31/2017) |
| 08/01/2017 | 39 | Subpoenas issued. (krob, ) (Entered: 08/02/2017) |
| 08/03/2017 | 40 | Agreed Proposed Order for Discovery by USA as to Kevin Patrick Mallory. (Gibbs, John) Modified text on 8/4/2017 (jlan, ). (Entered: 08/03/2017) |
| 08/03/2017 | 41 | NOTICE *of Filing of Speedy Trial Waiver* by Kevin Patrick Mallory (Attachments: # 1 Exhibit Speedy Trial Waiver)(Richman, Todd) (Entered: 08/03/2017) |
| 08/08/2017 | 42 | NOTICE *Of Filing of Proposed CIPA Order* by USA as to Kevin Patrick Mallory (Attachments: # 1 Proposed Order)(Gibbs, John) (Entered: 08/08/2017) |
| 08/08/2017 | 43 | Protective Order as to Kevin Patrick Mallory. Signed by District Judge T. S. Ellis, III on 08/08/2017. (jlan) (Entered: 08/09/2017) |
| 08/10/2017 | 44 | NOTICE *of Filing of Memorandum of Understanding Pertaining to Handling of Classified Information* by Kevin Patrick Mallory (Attachments: # 1 Exhibit Executed Memorandum of Understanding Regarding Classified Information)(Richman, Todd) (Entered: 08/10/2017) |
| 08/22/2017 | 45 | NOTICE *of Filing of Memorandum of Understanding Pertaining to Handling of Classified Information* by Kevin Patrick Mallory (Attachments: # 1 Exhibit Memorandum of Undersigned Signed by Joseph Boyd)(Richman, Todd) (Entered: 08/22/2017) |
| 09/21/2017 | 46 | Subpoenas issued (lcre, ) (Entered: 09/21/2017) |
| 09/26/2017 | | Set/Reset Hearings as to Kevin Patrick Mallory: Per TSE chambers, **Status Conference** reset for **10/6/2017 at 09:00 AM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (mpha) (Entered: 09/26/2017) |
| 09/27/2017 | 47 | Consent MOTION to Continue *Status Conference* by USA as to Kevin Patrick Mallory. (Gibbs, John) (Entered: 09/27/2017) |
| 09/28/2017 | 48 | ORDER granting 47 Motion to Continue; ORDERED that the status conference in this matter is continued from Friday, October 6, 2017 to Thursday, October 12, 2017 as to Kevin Patrick Mallory (1). Signed by District Judge T. S. Ellis, III on 09/28/2017. (jlan) (Entered: 09/29/2017) |
| 09/28/2017 | | Reset Hearing as to Kevin Patrick Mallory: Status Conference set for 10/12/2017 at 04:00 PM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (jlan) (Entered: 09/29/2017) |
| 10/12/2017 | 49 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Status Conference as to Kevin Patrick Mallory held on 10/12/2017. Defendant present w/ counsel Geremy C. Kamens and Todd M. Richman. John T. Gibbs, Jennifer K. Gellie, and Colleen Garcia present on behalf of USA. Matter comes on to set scheduled for CIPA hearing. Government to file motion under section 4 (classified filing under seal ex parte) by November 17, 2017; defendants section 5 notice due (30 days following govt ruling) December 15, 2017; governments response due 30 days after January 15, 2018; Jury trial set for Tuesday, March 20, 2018 @ 10:00AM. Order and changes to follow. (Court Reporter Tonia Harris)(mpha) (Entered: 10/16/2017) |
| 10/13/2017 | 50 | SCHEDULING ORDER as to Kevin Patrick Mallory: The Government's sealed, ex parte Section 4 filing is due on or before Wednesday, November 15, 2017 at 5:00 p.m.; Thereafter, a sealed, ex parte Section 4 hearing will take place on Friday, November 17, 2017 at 1:00 p.m.; The defendant's Section 5(a) written notice is due on or before December 15, 2017; The Government's response to defendant's Section 5(a) filing is due January 16, 2018 and defendant's reply is due on or before January 26, 2018; A |

**U.J.A. 6**

| | | |
|---|---|---|
| | | sealed Section 6(a) hearing will take place on Friday, February 2, 2018 at 1:00 p.m.; Thereafter, a sealed Section 6(c) hearing will take place on February 23, 2018 at 1:00 p.m., and any written pleadings pertaining to the Section 6(c) hearing must be filed at least five (5) days in advance of the hearing; Any and all pretrial motions, including motions unrelated to CIPA, are due on or before March 2, 2018; A motions hearing is set for March 9, 2018; This matter will be tried before a jury beginning March 27, 2018 at 10:00 a.m. Signed by District Judge T. S. Ellis, III on 10/13/2017. (mpha) (Main Document 50 replaced on 10/16/2017) (mpha) (Entered: 10/16/2017) |
| 10/13/2017 | | Set/Reset Hearings as to Kevin Patrick Mallory: **Docket Call re: Section 4 Hearing** set for 11/17/2017 at 01:00 PM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. **Docket Call re: Section 6(a) Hearing** set for 2/2/2018 at 01:00 PM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. **Docket Call re: Section 6(c) Hearing** set for 2/23/2018 at 01:00 PM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. See Scheduling Order 50 . (mpha) (Entered: 10/16/2017) |
| 10/13/2017 | | **Motions Hearing** set for 3/9/2018 at 01:00 PM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. See Scheduling Order 50 . (mpha) (Entered: 10/16/2017) |
| 10/13/2017 | | **Jury Trial** set for 3/27/2018 at 10:00 AM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. See Scheduling Order 50 . (mpha) (Entered: 10/16/2017) |
| 10/16/2017 | 51 | DISCOVERY ORDER as to Kevin Patrick Mallory. Signed by District Judge T. S. Ellis, III on 10/16/2017. (mpha) (Entered: 10/16/2017) |
| 11/15/2017 | 52 | MOTION for Protective Order by USA as to Kevin Patrick Mallory. (Gibbs, John) (Entered: 11/15/2017) |
| 11/17/2017 | 53 | ORDER re: Section 4 Hearing as to Kevin Patrick Mallory (Order filed w/ CISO). Signed by District Judge T. S. Ellis, III on 11/17/2017. (mpha) (Entered: 11/21/2017) |
| 11/17/2017 | 54 | Minute Entry for proceedings held before District Judge T. S. Ellis, III:Sealed Minutes re: Section 4 Hearing held on 11/17/2017. (Court Reporter Rhonda Montgomery)(mpha) (Entered: 11/21/2017) |
| 12/18/2017 | 55 | NOTICE *of Filing of CIPA Section 5 Notice* by Kevin Patrick Mallory (Richman, Todd) (Entered: 12/18/2017) |
| 12/19/2017 | 56 | Sealed Document (jlan) (Entered: 12/21/2017) |
| 12/29/2017 | 57 | Sealed Document (lcre, ) (Entered: 01/02/2018) |
| 01/05/2018 | 58 | Subpoena issued (lcre, ) (Entered: 01/08/2018) |
| 01/08/2018 | 59 | Sealed Document (lcre, ) (Entered: 01/08/2018) |
| 01/10/2018 | 60 | Subpoenas issued (lcre, ) (Entered: 01/10/2018) |
| 01/11/2018 | 61 | ORDER granting Motion to appear Pro Hac Vice by Joseph Vincent Moreno and Certification of Local Counsel Todd M. Richman. Signed by District Judge T. S. Ellis, III on 01/11/2018. (jlan) (Entered: 01/12/2018) |
| 01/12/2018 | 62 | NOTICE *of Filing of Memorandum of Understanding Regarding Handling of Classified Information* by Kevin Patrick Mallory (Attachments: # 1 Exhibit Memorandum of Understanding re: handling of classified materials)(Richman, Todd) (Entered: 01/12/2018) |
| 01/16/2018 | 63 | CLASSIFIED, In CAMERA, and Under Seal Response to Defenedant's CIPA § 5 Notice filed by USA. (krob) (Entered: 01/17/2018) |
| 01/22/2018 | | Set/Reset Hearings as to Kevin Patrick Mallory: Per TSE Chambers, **Docket Call** previously set for 2/2/2018 @ 1:00PM **reset for 2/9/2018 at 01:00** PM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (mpha) (Entered: 01/22/2018) |
| 01/26/2018 | 64 | NOTICE *of Filing CIPA 5 Reply* by Kevin Patrick Mallory (Kamens, Geremy) (Entered: 01/26/2018) |

**U.J.A. 7**

| 02/02/2018 | 65 | Subpoenas issued (lcre, ) (Entered: 02/02/2018) |
|---|---|---|
| 02/02/2018 | 66 | NOTICE *of Filing* by USA as to Kevin Patrick Mallory (Garcia, Colleen) (Entered: 02/02/2018) |
| 02/02/2018 | 67 | MOTION to Seal by USA as to Kevin Patrick Mallory. (Attachments: # 1 Proposed Order)(Garcia, Colleen) (Entered: 02/02/2018) |
| 02/02/2018 | 68 | Memorandum in Support by USA as to Kevin Patrick Mallory re 67 MOTION to Seal (Garcia, Colleen) (Entered: 02/02/2018) |
| 02/02/2018 | 69 | Sealed Motion and Request for Hearing as to Kevin Patrick Mallory. (Attachments: # 1 Exhibit A)(lcre, ) (Entered: 02/02/2018) |
| 02/02/2018 | 70 | Consent MOTION to Continue *Hearing set for Feb. 9, 2018* by Kevin Patrick Mallory. (Attachments: # 1 Proposed Order)(Kamens, Geremy) (Entered: 02/02/2018) |
| 02/02/2018 | 72 | ORDER granting 70 Motion to Continue hearing on 2/9/18 to 2/16/18 @ 1:00 pm as to Kevin Patrick Mallory (1). Signed by District Judge T. S. Ellis, III on 2/2/18. (krob, ) (Entered: 02/05/2018) |
| 02/05/2018 | 71 | ORDER granting 67 Motion to Seal as to Kevin Patrick Mallory (1). Signed by District Judge T. S. Ellis, III on 2/2/18. (krob, ) (Entered: 02/05/2018) |
| 02/05/2018 | | Reset Hearings as to Kevin Patrick Mallory: Docket Call set for 2/16/2018 at 01:00 PM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (krob, ) (Entered: 02/05/2018) |
| 02/05/2018 | 73 | Sealed Order as to Kevin Patrick Mallory. Signed by District Judge T. S. Ellis, III on 2/5/2018. (lcre, ) (Entered: 02/06/2018) |
| 02/05/2018 | | **Docket Call 6(a) hearing** set for 2/23/2018 at 01:00 PM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. **Docket Call 6(c) hearing** set for 3/9/2018 at 01:00 PM in Alexandria Courtroom 900 before District Judge T. S. Ellis III as to Kevin Patrick Mallory (lcre, ) (Entered: 02/06/2018) |
| 02/05/2018 | | Reset Deadlines re Motion in case as to Kevin Patrick Mallory 52 MOTION for Protective Order . Motion Hearing set for 3/16/2018 at 01:00 PM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (lcre, ) (Entered: 02/06/2018) |
| 02/13/2018 | 74 | NOTICE *of Filing of Response to Motion for Particularized Section 5(a) Notice and Supplemental Section 5 Notice* by Kevin Patrick Mallory (Richman, Todd) (Entered: 02/13/2018) |
| 02/16/2018 | 75 | Joint MOTION Revised CIPA Scheduling Order by Kevin Patrick Mallory. (Attachments: # 1 Proposed Order)(Kamens, Geremy) (Entered: 02/16/2018) |
| 02/20/2018 | 76 | ORDER granting 75 Motion. To accommodate this new hearing schedule, it is further ORDERED that the trial will be reschedule to Tuesday, April 10, 2018 at 10:00 am(Please see Order for CIPA scheduling details) as to Kevin Patrick Mallory (1). Signed by District Judge T. S. Ellis, III on 2/20/2018. (lcre, ) (Entered: 02/20/2018) |
| 02/20/2018 | | Reset Hearings as to Kevin Patrick Mallory: Jury Trial reset for 4/10/2018 at 10:00 AM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (lcre, ) (Entered: 02/20/2018) |
| 02/21/2018 | 77 | Subpoenas issued (lcre, ) (Entered: 02/21/2018) |
| 02/22/2018 | | Terminate Deadlines and Hearings as to Kevin Patrick Mallory: Per TSE chambers, Docket call previously set for 2/23/2018 @ 1:00PM removed from docket. (mpha) (Entered: 02/22/2018) |
| 02/22/2018 | | Set/Reset Hearings as to Kevin Patrick Mallory: Docket Call 6(a) Hearing set for 3/9/2018 at 01:00 PM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. Docket Call (6)c Hearing set for 3/23/2018 at 01:00 PM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (lcre, ) (Entered: 02/22/2018) |
| 02/22/2018 | | Set/Reset Deadlines re 76 ORDER as to Kevin Patrick Mallory Motion Hearing set for 3/30/2018 at 01:00 PM in Alexandria Courtroom 1000 before District Judge T. S. Ellis III. (lcre, ) (Entered: 02/22/2018) |

**U.J.A. 8**

| 02/23/2018 | 78 | NOTICE *of Filing of Supplemental Section 5 Notice Pursuant to Feb 5, 2018 Order* by Kevin Patrick Mallory (Richman, Todd) (Entered: 02/23/2018) |
|---|---|---|
| 03/01/2018 | 79 | NOTICE *of Objections Concerning Use, Relevance and Admissibility of Classified Information Identified in Defendant's CIPA Section 5 Notice and Identification of National Defense Information Pursuant to CIPA Section 10* by USA as to Kevin Patrick Mallory (Gibbs, John) (Entered: 03/01/2018) |
| 03/07/2018 | 80 | NOTICE *of Filing of Response to Government's Objections Regarding Use, Relevance and Admissibility of Classified Evidence* by Kevin Patrick Mallory (Richman, Todd) (Entered: 03/07/2018) |
| 03/09/2018 | | Per TSE chambers, **Docket Call re: 6(a) and 6(c)** reset for **3/9/2018 at 02:30 PM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (mpha) (Entered: 03/09/2018) |
| 03/09/2018 | 104 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Sealed Minutes re: Docket Call held on 3/9/2018. (Court Reporter Tonia Harris)(mpha) (Entered: 04/10/2018) |
| 03/14/2018 | 81 | Sealed Document (lcre, ) (Entered: 03/14/2018) |
| 03/14/2018 | 82 | ORDER as to Kevin Patrick Mallory Docket Call re 6(a)and 6(c) set for 3/22/2018 at 03:00 PM in Alexandria Courtroom 900 before District Judge T. S. Ellis III.Signed by District Judge T. S. Ellis, III on 3/14/2018. (lcre, ) (Entered: 03/14/2018) |
| 03/15/2018 | 83 | NOTICE *of Filing of Memorandum of Understanding Regarding Handling of Classified Information* by Kevin Patrick Mallory (Attachments: # 1 Exhibit 1) Signed MoU of Matthew Whatley)(Richman, Todd) (Entered: 03/15/2018) |
| 03/16/2018 | 84 | First MOTION to Continue *Trial Date to May 15, 2018* by Kevin Patrick Mallory. (Attachments: # 1 Proposed Order)(Kamens, Geremy) (Entered: 03/16/2018) |
| 03/19/2018 | 85 | Memorandum by Kevin Patrick Mallory re 79 Notice (Other), 80 Notice (Other) *Regarding Relevance of State of Mind Evidence* (Kamens, Geremy) (Entered: 03/19/2018) |
| 03/19/2018 | 86 | NOTICE *of Government's Combined Motion Pursuant to CIPA Section 6(c) for Substitutions in Lieu of Disclosure of Classified Information, Motion for Protective Order Pursuant to Fed.R.Crim.P. 16(b)(1) and for Hearing of the Same* by Kevin Patrick Mallory (Gibbs, John) (Entered: 03/19/2018) |
| 03/19/2018 | 87 | NOTICE *Of Government's Ex Parte Classified Addendum to Combined Motion Pursuant to CIPA Section 6(c)* by Kevin Patrick Mallory (Gibbs, John) (Entered: 03/19/2018) |
| 03/20/2018 | | Set/Reset Hearings as to Kevin Patrick Mallory: Per TSE chambers, **Docket Call** reset for **3/22/2018 at 01:00 PM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (mpha) (Entered: 03/20/2018) |
| 03/20/2018 | 88 | MOTION for Bill of Particulars by Kevin Patrick Mallory. (Kamens, Geremy) (Entered: 03/20/2018) |
| 03/20/2018 | 89 | MOTION in Limine *To Exclude Defendant's Inadmissible Hearsay Statements* by USA as to Kevin Patrick Mallory. (Gibbs, John) (Entered: 03/20/2018) |
| 03/20/2018 | 92 | ORDER granting 84 Motion to Continue. The jury trial in this matter is rescheduled for Tuesday, May 15, 2018 at 1:00 pm as to Kevin Patrick Mallory (1). Signed by District Judge T. S. Ellis, III on 3/20/2018. (lcre, ) (Entered: 03/22/2018) |
| 03/20/2018 | | Reset Hearings as to Kevin Patrick Mallory: Jury Trial set for 5/15/2018 at 01:00 PM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (lcre, ) (Entered: 03/22/2018) |
| 03/21/2018 | 90 | MOTION to Continue *CIPA 6 Hearing One Day* by Kevin Patrick Mallory. (Attachments: # 1 Proposed Order)(Kamens, Geremy) (Entered: 03/21/2018) |
| 03/21/2018 | 93 | ORDER granting in part 90 Motion to Continue as to Kevin Patrick Mallory (1). Signed by District Judge T. S. Ellis, III on 3/22/2018. (lcre, ) (Entered: 03/22/2018) |

**U.J.A. 9**

| 03/22/2018 | 91 | Memorandum by USA as to Kevin Patrick Mallory re 85 Memorandum *of Law Regarding Relevance of Evidence Inconsistent with a Culpable State of Mind*, RESPONSE by USA as to Kevin Patrick Mallory (Gibbs, John) (Entered: 03/22/2018) |
| 03/22/2018 |  | Reset Hearings as to Kevin Patrick Mallory: Motion Hearing set for 4/13/2018 at 01:00 PM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. Docket Call set for 3/30/2018 at 01:00 PM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (lcre, ) (Entered: 03/22/2018) |
| 03/23/2018 | 94 | Subpoenas issued (lcre, ) (Entered: 03/23/2018) |
| 03/27/2018 | 95 | NOTICE *of Government's Supplemental Classified Ex Parte, In Camera Memorandum of Law and Motion for a Protective Order Pursuant to Section 4 of the Classified Information Procedures Act and Rule 16(d)(1) of the Federal Rules of Criminal Procedure* by USA as to Kevin Patrick Mallory (Gibbs, John) (Entered: 03/27/2018) |
| 03/27/2018 | 96 | RESPONSE to Motion by USA as to Kevin Patrick Mallory re 88 MOTION for Bill of Particulars (Gibbs, John) (Entered: 03/27/2018) |
| 03/27/2018 | 97 | RESPONSE in Opposition by Kevin Patrick Mallory re 89 MOTION in Limine *To Exclude Defendant's Inadmissible Hearsay Statements* (Kamens, Geremy) (Entered: 03/27/2018) |
| 03/29/2018 | 98 | REPLY TO RESPONSE to by Kevin Patrick Mallory re 91 Memorandum, Response, 85 Memorandum (Attachments: # 1 Exhibit Timeline)(Kamens, Geremy) (Entered: 03/29/2018) |
| 03/30/2018 | 99 | Proposed Voir Dire by Kevin Patrick Mallory (Richman, Todd) (Entered: 03/30/2018) |
| 03/30/2018 | 100 | Proposed Voir Dire by USA as to Kevin Patrick Mallory (Gibbs, John) (Entered: 03/30/2018) |
| 03/30/2018 | 105 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Sealed Minutes re: Docket Call held on 3/30/2018. (Court Reporter T. Harris / R. Montgomery)(mpha) (Entered: 04/10/2018) |
| 04/03/2018 | 101 | Subpoenas issued (lcre, ) (Entered: 04/03/2018) |
| 04/04/2018 | 102 | First MOTION to Amend/Correct *Indictment* by USA as to Kevin Patrick Mallory. (Gibbs, John) (Entered: 04/04/2018) |
| 04/04/2018 |  | Notice of Correction: The filing user has been notified to file a Proposed ORDER re 102 First MOTION to Amend/Correct *Indictment* (per chambers) (lcre, ) (Entered: 04/04/2018) |
| 04/04/2018 | 103 | NOTICE *of Proposed Order* by USA as to Kevin Patrick Mallory re 102 First MOTION to Amend/Correct *Indictment* (Gibbs, John) (Entered: 04/04/2018) |
| 04/06/2018 | 106 | ORDER re: Section 4 Hearing (supplemental) as to Kevin Patrick Mallory (Order filed w/ CISO). Signed by District Judge T. S. Ellis, III on 04/06/2018. (mpha) (Entered: 04/10/2018) |
| 04/13/2018 | 107 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Sealed Minutes re: Docket Call held on 4/13/2018. (Court Reporter Tonia Harris)(mpha) (Entered: 04/18/2018) |
| 04/24/2018 | 108 | MOTION to Continue *Trial to May 29, 2018* by Kevin Patrick Mallory. (Attachments: # 1 Proposed Order)(Richman, Todd) (Entered: 04/24/2018) |
| 04/24/2018 | 109 | RESPONSE in Opposition by USA as to Kevin Patrick Mallory re 108 MOTION to Continue *Trial to May 29, 2018* (Gibbs, John) (Entered: 04/24/2018) |
| 04/25/2018 | 110 | Reply by Kevin Patrick Mallory *in Support of Motion to Continue Trial Until May 29, 2018* (Richman, Todd) (Entered: 04/25/2018) |
| 04/25/2018 | 111 | ORDER because oral argument will assist the Court in resolving defendant's motion 108 , It is hereby ORDERED that the parties shall appear for an oral argument on Friday, April 27, 2018, at 3:30 p.m. Signed by District Judge T. S. Ellis, III on 04/25/2018. (mpha) (Entered: 04/26/2018) |

**U.J.A. 10**

| | | |
|---|---|---|
| 04/26/2018 | | Per TSE chambers, **Motion Hearing 108** set for **4/27/2018 at 03:30 PM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III – Order to follow. (mpha) (Entered: 04/26/2018) |
| 04/26/2018 | 112 | NOTICE *of Filing of Executed Memorandum of Understanding* by Kevin Patrick Mallory (Attachments: # 1 Exhibit Memorandum of Understanding Signed by Pascual Velarde)(Richman, Todd) (Entered: 04/26/2018) |
| 04/27/2018 | | Per TSE chambers, **Motion Hearing 108** reset for **4/27/2018 at 02:00 PM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (mpha) (Entered: 04/27/2018) |
| 04/27/2018 | 116 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Motion Hearing 108 as to Kevin Patrick Mallory held on 04/27/2018. Defendant present w/ counsel Geremy C. Kamens. John T. Gibbs, Jennifer K. Gellie, and Colleen Garcia present on behalf of USA. Section 5 & 6 order to be signed. Continuance GRANTED and matter to be reset. Motions in limine due by May 11, 2018. Motion Hearing set for 5/18/2018 at 09:00 AM and Jury Trial reset for 5/29/2018 at 10:00 AM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. Defendant remanded to the custody of the USMS. Order to follow. (Court Reporter Tonia Harris)(mpha) (Entered: 04/30/2018) |
| 04/27/2018 | 118 | SEALED ORDER as to Kevin Patrick Mallory. Signed by District Judge T. S. Ellis, III on 04/27/2018. (mpha) (Entered: 04/30/2018) |
| 04/30/2018 | 113 | Subpoenas issued (lcre, ) (Entered: 04/30/2018) |
| 04/30/2018 | 115 | Subpoenas issued (lcre, ) (Entered: 04/30/2018) |
| 04/30/2018 | 117 | ORDER granting 108 Motion to Continue. The jury trial of this matter shall commence on Tuesday, May 29, 2018 at 1 :00 p.m. (Please See Order for Details) as to Kevin Patrick Mallory (1). Signed by District Judge T. S. Ellis, III on 4/30/2018. (lcre, ) (Entered: 04/30/2018) |
| 04/30/2018 | | Reset Hearings as to Kevin Patrick Mallory: Jury Trial set for 5/29/2018 at 01:00 PM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (lcre, ) (Entered: 04/30/2018) |
| 04/30/2018 | | **Motions Hearing** reset for **5/18/2018 at 01:00 PM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. See Order 117 . (mpha) (Entered: 04/30/2018) |
| 05/08/2018 | 119 | NOTICE *of Government's Substitution of CIPA Exhibit* by USA as to Kevin Patrick Mallory (Gibbs, John) (Entered: 05/08/2018) |
| 05/08/2018 | 120 | NOTICE *of Government's Motion for Finding of Compliance with April 9 2018 Order Pursuant to CIPA Section 4* by USA as to Kevin Patrick Mallory (Gibbs, John) (Entered: 05/08/2018) |
| 05/10/2018 | 121 | NOTICE *of Filing of Executed Memorandum of Understanding* by Kevin Patrick Mallory (Attachments: # 1 Exhibit Signed Memorandum of Understanding)(Richman, Todd) (Entered: 05/10/2018) |
| 05/11/2018 | 122 | First MOTION in Limine *to Preclude Challenges to Classification Level and References to Purported "Overclassification"* by USA as to Kevin Patrick Mallory. (Gibbs, John) (Entered: 05/11/2018) |
| 05/11/2018 | 123 | First MOTION in Limine *For Judicial Notice of the System for Classifying National Security Information* by USA as to Kevin Patrick Mallory. (Attachments: # 1 Exhibit EO 13526, # 2 Exhibit Proposed Jury Instruction Regarding Judicial Notice)(Gibbs, John) (Entered: 05/11/2018) |
| 05/11/2018 | 124 | MOTION in Limine *for Admission of DIA Summary* by USA as to Kevin Patrick Mallory. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Garcia, Colleen) (Entered: 05/11/2018) |
| 05/14/2018 | 125 | Motion to appear Pro Hac Vice by Christian Larson and Certification of Local Counsel 14683072578 (Filing fee $ 75 paid ; Receipt: 14683072578) by Kevin Patrick Mallory. (Attachments: # 1 Receipt)(lcre, ) (Entered: 05/14/2018) |

**U.J.A. 11**

| 05/14/2018 | 126 | ORDER granting 125 Motion for Pro hac vice of Christian Larson as to Kevin Patrick Mallory (1). Signed by District Judge T. S. Ellis, III on 5/14/2018. (lcre, ) (Entered: 05/15/2018) |
|---|---|---|
| 05/15/2018 | 127 | RESPONSE in Opposition by Kevin Patrick Mallory re 123 First MOTION in Limine *For Judicial Notice of the System for Classifying National Security Information*, 122 First MOTION in Limine *to Preclude Challenges to Classification Level and References to Purported "Overclassification"* (Kamens, Geremy) (Main Document 127 replaced on 5/22/2018) (rban, ). (Entered: 05/15/2018) |
| 05/15/2018 | 128 | MOTION 404(B) Evidence *and Response to Motion to Adduce Summary Through DIA Witness* by Kevin Patrick Mallory. (Attachments: # 1 Exhibit 404(b) Notice)(Kamens, Geremy) (Entered: 05/15/2018) |
| 05/16/2018 | 129 | MOTION to Exclude *Expert Testimony* by Kevin Patrick Mallory. (Attachments: # 1 Exhibit 1) Government Expert Notice)(Richman, Todd) (Entered: 05/16/2018) |
| 05/17/2018 | 130 | NOTICE *of Filing of Government's Motion Pursuant to CIPA 5(b) to Preclude Defense Disclosure of Classified Witness Testimony* by USA as to Kevin Patrick Mallory (Gibbs, John) (Entered: 05/17/2018) |
| 05/17/2018 | 131 | Proposed Jury Instructions by USA as to Kevin Patrick Mallory (Gibbs, John) (Entered: 05/17/2018) |
| 05/18/2018 | | Per TSE chambers, **Motions Hearing** reset for **5/18/2018 at 01:30 PM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (mpha) (Entered: 05/18/2018) |
| 05/18/2018 | 132 | Ex Parte and Sealed Order as to Kevin Patrick Mallory. Signed by District Judge T. S. Ellis, III on 5/18/2018. (lcre, ) (Entered: 05/18/2018) |
| 05/18/2018 | 133 | Proposed Jury Instructions by Kevin Patrick Mallory (Richman, Todd) (Entered: 05/18/2018) |
| 05/18/2018 | 137 | Minute Entry for proceedings held before District Judge T. S. Ellis, III:Sealed Motions Minutes held on 5/18/2018. (Court Reporter Tonia Harris)(mpha) (Entered: 05/22/2018) |
| 05/21/2018 | 134 | NOTICE *of Filing of Amended Indictment Pursuant to the Court's Oral Order on May 17, 2018* by USA as to Kevin Patrick Mallory re 34 Indictment (Gibbs, John) (Entered: 05/21/2018) |
| 05/21/2018 | 135 | ORDER – It is ORDERED that the re 102 First MOTION to Amend/Correct *Indictment* is GRANTED, and that the 89 MOTION in Limine *To Exclude Defendant's Inadmissible Hearsay Statements* is HELD IN ABEYANCE. It is ORDERED that, the re 124 Motion is DENIED; and that the re 128 MOTION 404(B) Evidence *and Response to Motion to Adduce Summary Through DIA Witness* is GRANTED IN PART AND DENIED IN PART. It is also ORDERED that the, 129 MOTION to Exclude *Expert Testimony* is DENIED and the government is DIRECTED to supplement its expert disclosures in the matter outlined at the May 18 hearing. It is also ORDERED that the re 123 First MOTION in Limine *For Judicial Notice of the System for Classifying National Security Information* is DENIED, and that the re 122 First MOTION in Limine *to Preclude Challenges to Classification Level and References to Purported "Overclassification"* is GRANTED IN PART AND DENIED IN PART.(Please See ORDER for Details). Signed by District Judge T. S. Ellis, III on 5/21/2018. (lcre, ) (Entered: 05/21/2018) |
| 05/21/2018 | 136 | NOTICE *of Filing of Supplemental CIPA Section 5 Notice* by Kevin Patrick Mallory (Richman, Todd) (Entered: 05/21/2018) |
| 05/22/2018 | 138 | Sealed Document 127 Response in Opposition, filed by Kevin Patrick Mallory (rban, ) (Entered: 05/22/2018) |
| 05/22/2018 | 139 | Redacted version of 55 Notice (Other) (rban, ) (Entered: 05/22/2018) |
| 05/22/2018 | 140 | Redacted version of 64 Notice (Other) (rban, ) (Entered: 05/22/2018) |
| 05/22/2018 | 141 | Redacted version of 74 Notice (Other) (rban, ) (Entered: 05/22/2018) |

**U.J.A. 12**

| 05/22/2018 | 142 | Redacted version of 74 Notice (Other) (rban, ) (Entered: 05/22/2018) |
| 05/22/2018 | 143 | NOTICE *of under seal ex parte filing* by Kevin Patrick Mallory (Kamens, Geremy) (Entered: 05/22/2018) |
| 05/22/2018 | 144 | Consent MOTION File document under seal and ex parte re 143 Notice (Other) by Kevin Patrick Mallory. (Attachments: # 1 Proposed Order)(Kamens, Geremy) (Entered: 05/22/2018) |
| 05/22/2018 | 145 | Memorandum in Support by Kevin Patrick Mallory re 144 Consent MOTION File document under seal and ex parte re 143 Notice (Other) (Kamens, Geremy) (Entered: 05/22/2018) |
| 05/22/2018 | 146 | Ex Parte and Sealed Motion by Kevin Patrick Mallory as to Kevin Patrick Mallory. (Attachments: # 1 Attachment)(lcre, ) Modified on 5/24/2018 (lcre, ). (Entered: 05/22/2018) |
| 05/22/2018 | 147 | *Filed* EXHIBIT LIST by USA as to Kevin Patrick Mallory (Gibbs, John) (Entered: 05/22/2018) |
| 05/22/2018 | 148 | Trial Exhibits 1–1 and 14–2 received. (lcre, ) (Entered: 05/23/2018) |
| 05/23/2018 | 149 | Motion to Reconsider Use of Silent Witness Rule With Respect to Certain Documents and Information by Kevin Patrick Mallory (filed w/CSO) (Richman, Todd) Modified text on 5/24/2018 (jlan) (Entered: 05/23/2018) |
| 05/23/2018 | 150 | Ex Parte and Sealed Order as to Kevin Patrick Mallory. Signed by District Judge T. S. Ellis, III on 5/23/2018. (lcre, ) (Entered: 05/24/2018) |
| 05/24/2018 | 151 | MOTION Order Precluding Further Improper Interference With Defense Witnesses by Kevin Patrick Mallory. (Kamens, Geremy) (Entered: 05/24/2018) |
| 05/24/2018 | 152 | MOTION to Exclude Expert Testimony (Renewed) by Kevin Patrick Mallory. (Richman, Todd) (Entered: 05/24/2018) |
| 05/24/2018 | 153 | UNDER SEAL MOTION (Kamens, Geremy) Modified on 5/25/2018 (rban, ). (Entered: 05/24/2018) |
| 05/24/2018 | 154 | NOTICE *of Government's In Camera Under Seal Notice of Objecctions Concerning Use, Relevance, and Admissibility of Classified Information Identified in Defendant's May 21 Supplement CIPA Section 5(a) Notice, Motion to Strike Proposed Defense Expert and Limited Response to Motion to Reconsider* by USA as to Kevin Patrick Mallory re 136 Notice (Other) (Gibbs, John) (Entered: 05/24/2018) |
| 05/25/2018 | | Per TSE chambers, **Motions Hearing** set for **5/25/2018 at 11:00 AM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (mpha) (Entered: 05/25/2018) |
| 05/25/2018 | | Per TSE chambers, **Motion Hearing** reset for **5/25/2018 at 01:00 PM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (mpha) (Entered: 05/25/2018) |
| 05/25/2018 | 155 | Supplemental Memorandum by Kevin Patrick Mallory re 152 MOTION to Exclude Expert Testimony (Renewed) (Richman, Todd) (Entered: 05/25/2018) |
| 05/25/2018 | 156 | MOTION for a Daubert Hearing With Respect to Government Classification Experts by Kevin Patrick Mallory. (Richman, Todd) (Entered: 05/25/2018) |
| 05/25/2018 | 157 | Reply to Motion by Kevin Patrick Mallory re 149 MOTION *to Reconsider SWR and Reponse to Govt Motion to Strike Expert* (Kamens, Geremy) (Entered: 05/25/2018) |
| 05/25/2018 | 158 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Sealed Motion Minutes held on 5/25/2018. (Court Reporter Tonia Harris)(mpha) (Entered: 05/25/2018) |
| 05/26/2018 | 159 | Proposed Jury Instructions by Kevin Patrick Mallory (Richman, Todd) (Entered: 05/26/2018) |
| 05/26/2018 | 160 | MOTION to Exclude *Certain Expert Testimony* by Kevin Patrick Mallory. (Kamens, Geremy) (Entered: 05/26/2018) |
| 05/27/2018 | 161 | *First Amended* EXHIBIT LIST by USA as to Kevin Patrick Mallory (Gibbs, John) (Entered: 05/27/2018) |

**U.J.A. 13**

| 05/29/2018 | 162 | ORDERED that jurors in this matter shall be delivered a daily meal at the expense of the United States, with any bills or invoices to be submitted to the Clerk of the Court for payment. Signed by District Judge T. S. Ellis, III on 05/29/2018. (mpha) (Entered: 05/29/2018) |
|---|---|---|
| 05/29/2018 | 163 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Jury Trial Day 1 as to Kevin Patrick Mallory held on 5/29/2018. Defendant present w/ counsel Geremy C. Kamens and Todd M. Richman, with Joseph Boyd (paralegal specialist) present at counsel table. John T. Gibbs, Jennifer K. Gellie, and Colleen Garcia present on behalf of USA w/ Special Agent Steve Green (FBI) and Fabian Vera (intel specialist) present at counsel table. Jury appeared as summoned, Voir Dire held, jury sworn and empaneled (Jurors #59, #4, #72, #21, #71, #30, #56, #31, 28, #32, # 9, #33, #20A, #17A, #51A, #54A). Selected juror list provided to the Clerks Office jury clerk. Juror #21 released/excused and Juror#20 substituted as Alternate #1. Defendant's Motion to Exclude Expert Testimony, overruled and denied in part as moot. 404b matter to be heard tomorrow. Government Exhibit 1–11 handed up for the Court's review. Jurors excused at 5:27PM and Jury Trial reset for 5/30/2018 at 09:00 AM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. Defendant remanded to the custody of the USMS. (Court Reporter Tonia Harris)(mpha) (Main Document 163 replaced on 5/30/2018) (mpha) (Entered: 05/29/2018) |
| 05/30/2018 | 164 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Jury Trial as to Kevin Patrick Mallory held on 5/30/2018. Defendant present w/ counsel Geremy C. Kamens and Todd M. Richman, with Joseph Boyd (paralegal specialist) present at counsel table. John T. Gibbs, Jennifer K. Gellie, and Colleen Garcia present on behalf of USA w/ Special Agent Steve Green (FBI) and Fabian Vera (intel specialist) present at counsel table. Juror #4 released/excused and Juror#17 substituted as Alternate #2. Opening statements made by both parties. Rule invoked on witnesses and government adduced evidence. Both parties used laptop/courtroom evidence presentation system to adduce evidence. Jurors excused at 5:17PM and Jury Trial reset for 5/31/2018 at 09:30 AM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. Defendant remanded to the custody of the USMS. (Court Reporter Tonia Harris)(mpha) (Entered: 05/30/2018) |
| 05/31/2018 | 165 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Jury Trial Day 3 as to Kevin Patrick Mallory held on 5/31/2018. Defendant present w/ counsel Geremy C. Kamens and Todd M. Richman, with Joseph Boyd (paralegal specialist) present at counsel table. John T. Gibbs, Jennifer K. Gellie, and Colleen Garcia present on behalf of USA w/ Special Agent Steve Green (FBI) and Fabian Vera (intel specialist) present at counsel table. Government continued to adduce evidence – Both parties used laptop/courtroom evidence presentation system. Juror #9 released/excused and Juror#5 substituted as Alternate #3. Jurors excused at 5:03PM and Jury Trial reset for 6/1/2018 at 09:00 AM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. Defendant remanded to the custody of the USMS. (Court Reporter Tonia Harris)(mpha) (Entered: 05/31/2018) |
| 06/01/2018 | 166 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Jury Trial Day 4 as to Kevin Patrick Mallory held on 6/1/2018. Defendant present w/ counsel Geremy C. Kamens and Todd M. Richman, with Joseph Boyd (paralegal specialist) present at counsel table. John T. Gibbs, Jennifer K. Gellie, and Colleen Garcia present on behalf of USA w/ Special Agent Steve Green (FBI) and Fabian Vera (intel specialist) present at counsel table. Government continued to adduce evidence – Both parties used laptop/courtroom evidence presentation system. Jurors excused at 5:12PM and Jury Trial reset for 6/4/2018 at 01:00 PM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (Court Reporter Tonia Harris)(mpha) (Entered: 06/01/2018) |
| 06/03/2018 | 167 | Memorandum by Kevin Patrick Mallory *re admissibility of emails* (Kamens, Geremy) (Entered: 06/03/2018) |
| 06/04/2018 | 168 | NOTICE *of Filing Ex Parte Motion for Protective Order* by USA as to Kevin Patrick Mallory (Garcia, Colleen) (Entered: 06/04/2018) |
| 06/04/2018 | 169 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Jury Trial Day 5 as to Kevin Patrick Mallory held on 6/4/2018. Defendant present w/ counsel Geremy C. Kamens and Todd M. Richman, with Joseph Boyd (paralegal specialist) present at counsel table. John T. Gibbs, Jennifer K. Gellie, and Colleen |

U.J.A. 14

| | | |
|---|---|---|
| | | Garcia present on behalf of USA w/ Special Agent Steve Green (FBI) and Fabian Vera (intel specialist) present at counsel table. Government continued to adduce evidence – Both parties used laptop/courtroom evidence presentation system. Jurors excused at 5:04PM and Jury Trial reset for 6/5/2018 at 09:00 AM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (Court Reporter Tonia Harris)(mpha) (Entered: 06/04/2018) |
| 06/05/2018 | 170 | ORDER – It is hereby ORDERED that the 149 Motion, the 151 Motion, the 152 Motion, the 154 Motion, and the 156 Motion are DENIED. (Please see ORDER for Details). Signed by District Judge T. S. Ellis, III on 6/5/2018. (lcre, ) (Entered: 06/05/2018) |
| 06/05/2018 | 171 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Jury Trial Day 6 as to Kevin Patrick Mallory held on 6/5/2018. Defendant present w/ counsel Geremy C. Kamens and Todd M. Richman, with Joseph Boyd (paralegal specialist) present at counsel table. John T. Gibbs, Jennifer K. Gellie, and Colleen Garcia present on behalf of USA w/ Special Agent Steve Green (FBI) and Fabian Vera (intel specialist) present at counsel table. Government continued to adduce evidence. Defendant adduced evidence. Both parties used laptop/courtroom evidence presentation system. Jurors excused at 5:10PM and Jury Trial set for 6/6/2018 at 09:00 AM in Alexandria Courtroom 801 before District Judge T. S. Ellis III. (Court Reporter Tonia Harris)(mpha) (Entered: 06/05/2018) |
| 06/06/2018 | 172 | MOTION for Acquittal *With Respect to Counts 1–3* by Kevin Patrick Mallory. (Richman, Todd) (Entered: 06/06/2018) |
| 06/06/2018 | 173 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Jury Trial Day 7 as to Kevin Patrick Mallory held on 6/6/2018. Defendant present w/ counsel Geremy C. Kamens and Todd M. Richman, with Joseph Boyd (paralegal specialist) present at counsel table. John T. Gibbs, Jennifer K. Gellie, and Colleen Garcia present on behalf of USA w/ Special Agent Steve Green (FBI) and Fabian Vera (intel specialist) present at counsel table. Defendant continued to adduce evidence (both parties used laptop/courtroom evidence presentation system) – both parties rest w/ the exception of admitting of exhibits. Jurors excused at 3:22PM and Jury Trial reset for 6/7/2018 at 09:00 AM (to begin w/ closing arguments) in Alexandria Courtroom 900 before District Judge T. S. Ellis III. Defendant remanded to the custody of the USMS. (Court Reporter Tonia Harris)(mpha) (Entered: 06/06/2018) |
| 06/06/2018 | 174 | ORDER as to Kevin Patrick Mallory. Signed by District Judge T. S. Ellis, III on 6/6/2018. (Order filed w/ CISO). (mpha) (Entered: 06/06/2018) |
| 06/07/2018 | 175 | First MOTION for Reconsideration *Intent Jury Instruction* by USA as to Kevin Patrick Mallory. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Gibbs, John) (Entered: 06/07/2018) |
| 06/07/2018 | 176 | STIPULATION 2 Concerning Trial Exhibits as to Kevin Patrick Mallory. (mpha) (Entered: 06/07/2018) |
| 06/07/2018 | 177 | STIPULATION 3 Concerning Trial Exhibits as to Kevin Patrick Mallory. (mpha) (Entered: 06/07/2018) |
| 06/07/2018 | 178 | STIPULATION 4 Concerning Trial Exhibits as to Kevin Patrick Mallory. (mpha) (Entered: 06/07/2018) |
| 06/07/2018 | 179 | STIPULATION 5 Concerning Trial Exhibits as to Kevin Patrick Mallory. (mpha) (Entered: 06/07/2018) |
| 06/07/2018 | 180 | STIPULATION 7 Concerning Trial Exhibits as to Kevin Patrick Mallory. (mpha) (Entered: 06/07/2018) |
| 06/07/2018 | 181 | STIPULATION 8 Concerning Trial Exhibits as to Kevin Patrick Mallory. (mpha) (Entered: 06/07/2018) |
| 06/07/2018 | 182 | STIPULATION 9 Concerning Trial Exhibits as to Kevin Patrick Mallory. (mpha) (Entered: 06/07/2018) |
| 06/07/2018 | 183 | STIPULATION 11 Concerning Trial Exhibits as to Kevin Patrick Mallory. (mpha) (Entered: 06/07/2018) |

**U.J.A. 15**

| | | |
|---|---|---|
| 06/07/2018 | 184 | STIPULATION 12 Concerning Trial Exhibits as to Kevin Patrick Mallory. (mpha) (Entered: 06/07/2018) |
| 06/07/2018 | 185 | STIPULATION 13 Concerning Trial Exhibits as to Kevin Patrick Mallory. (mpha) (Entered: 06/07/2018) |
| 06/07/2018 | 186 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Jury Trial Day 8 as to Kevin Patrick Mallory held on 6/7/2018. Defendant present w/ counsel Geremy C. Kamens and Todd M. Richman, with Joseph Boyd (paralegal specialist) present at counsel table. John T. Gibbs, Jennifer K. Gellie, and Colleen Garcia present on behalf of USA w/ Special Agent Steve Green (FBI) and Fabian Vera (intel specialist) present at counsel table. Instructions conference continued and completed. Closing arguments made by both parties, jury charged and retired to deliberate at 2:53PM. Jurors excused at 5:08PM and Jury Trial reset for 6/8/2018 at 09:00 AM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. Defendant remanded to the custody of the USMS. (Court Reporter Tonia Harris)(mpha) (Entered: 06/07/2018) |
| 06/08/2018 | 187 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Jury Trial Day 9 as to Kevin Patrick Mallory held on 6/8/2018. Defendant present w/ counsel Geremy C. Kamens and Todd M. Richman, with Joseph Boyd (paralegal specialist) present at counsel table. John T. Gibbs, Jennifer K. Gellie, and Colleen Garcia present on behalf of USA w/ Special Agent Steve Green (FBI) and Fabian Vera (intel specialist) present at counsel table. Jury continued deliberations, jury verdict filed in open court and jurors individually polled. Defendant found guilty on all 4 counts. Jurors excused at 3:58PM and **Sentencing** set for **9/21/2018 at 09:00 AM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. Deft given 30 days for post–trial motions (July 13th) and govt to respond promptly (local rules govern). Order to follow. Defendant remanded to the custody of the USMS.(Court Reporter Tonia Harris)(mpha) (Additional attachment(s) added on 6/12/2018: # 1 Govt Witness List, # 2 Govt Exhibit List, # 3 Deft Witness List, # 4 Deft Exhibit List, # 5 Trial Exhibit Certificate of Review) (mpha) (Entered: 06/12/2018) |
| 06/08/2018 | 188 | Redacted Jury Notes (5) as to Kevin Patrick Mallory. (mpha) (Entered: 06/12/2018) |
| 06/08/2018 | 189 | Jury Notes (5) as to Kevin Patrick Mallory. (mpha) (Entered: 06/12/2018) |
| 06/08/2018 | 190 | REDACTED JURY VERDICT FORM as to Kevin Patrick Mallory (1) Guilty on Counts 1, 2, 3, and 4. (mpha) (Entered: 06/12/2018) |
| 06/08/2018 | 191 | SEALED JURY VERDICT FORM as to Kevin Patrick Mallory (1) Guilty on Counts 1, 2, 3, and 4. (mpha) (Entered: 06/12/2018) |
| 06/08/2018 | 192 | Exhibits Retained Form. (mpha) (Entered: 06/13/2018) |
| 06/14/2018 | 193 | RESPONSE in Opposition by USA as to Kevin Patrick Mallory re 172 MOTION for Acquittal *With Respect to Counts 1–3* (Garcia, Colleen) (Entered: 06/14/2018) |
| 06/21/2018 | 194 | Reply by Kevin Patrick Mallory *in Support of Motion for Judgment of Acquittal with Respect to Counts One Through Three* (Attachments: # 1 Exhibit 1) Excerpt of Trial Testimony)(Richman, Todd) (Entered: 06/21/2018) |
| 07/11/2018 | 195 | TRANSCRIPT (Partial – Jury Instruction Issues) of jury trial held on 6–7–2018 before Judge Ellis. Court reporter Norman Linnell, Telephone number 703–549–4626. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 8/10/2018. Redacted Transcript Deadline set for 9/10/2018. Release of Transcript Restriction set for 10/9/2018.(linnell, norman) (Entered: 07/11/2018)** |
| 07/13/2018 | 196 | MOTION for New Trial *With Respect to Counts One through Three* by Kevin Patrick Mallory. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit)(Kamens, Geremy) (Entered: 07/13/2018) |

**U.J.A. 16**

| 07/13/2018 | 197 | MOTION for Acquittal *With Respect to Count 4 (same as Doc. No. 196)* by Kevin Patrick Mallory. (Kamens, Geremy) (Entered: 07/13/2018) |
| 07/24/2018 | 198 | RESPONSE in Opposition by USA as to Kevin Patrick Mallory re 196 MOTION for New Trial *With Respect to Counts One through Three*, 197 MOTION for Acquittal *With Respect to Count 4 (same as Doc. No. 196)* (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C)(Gibbs, John) (Entered: 07/24/2018) |
| 07/25/2018 | 199 | MOTION for Extension of Time to File Response/Reply *(Unopposed)* by Kevin Patrick Mallory. (Attachments: # 1 Proposed Order)(Richman, Todd) (Entered: 07/25/2018) |
| 07/25/2018 | 200 | ORDER granting **through August 3, 2018** 199 Motion for Extension of Time to File Response/Reply as to Kevin Patrick Mallory (1). Signed by District Judge T. S. Ellis, III on 7/25/2018. (lcre, ) (Entered: 07/25/2018) |
| 07/26/2018 | 201 | MEMORANDUM OPINION as to Kevin Patrick Mallory. Signed by District Judge T. S. Ellis, III on 7/26/2018. (lcre, ) (Entered: 07/26/2018) |
| 07/26/2018 | 202 | ORDER granting in part with respect to counts 2 and 3 and denied in all other aspects re 172 MOTION for Acquittal *With Respect to Counts 1–3* filed by Kevin Patrick Mallory. Signed by District Judge T. S. Ellis, III on 7/26/2018. (lcre, ) (Entered: 07/26/2018) |
| 07/26/2018 | | DISMISSAL OF COUNTS 2 and 3 on Motion of Kevin Patrick Mallory. (lcre, ) (Entered: 07/26/2018) |
| 08/03/2018 | 203 | REPLY TO RESPONSE to by Kevin Patrick Mallory re 198 Response in Opposition, (Attachments: # 1 Exhibit, # 2 Exhibit)(Kamens, Geremy) (Entered: 08/03/2018) |
| 08/09/2018 | 204 | First MOTION for Reconsideration re 202 Order, 201 Memorandum Opinion by USA as to Kevin Patrick Mallory. (Gibbs, John) (Entered: 08/09/2018) |
| 08/21/2018 | 205 | PRESENTENCE INVESTIGATION REPORT (Disclosed Presentence Investigation Report) (SEALED – government and defense counsel) as to Kevin Patrick Mallory. Objections to PSI due 09/10/2018. (palya, mary) (Entered: 08/21/2018) |
| 08/21/2018 | 206 | MOTION for Forfeiture of Property by USA as to Kevin Patrick Mallory. (Attachments: # 1 Proposed Order)(Garcia, Colleen) (Entered: 08/21/2018) |
| 08/23/2018 | 207 | RESPONSE to Motion by Kevin Patrick Mallory re 204 First MOTION for Reconsideration re 202 Order, 201 Memorandum Opinion (Kamens, Geremy) (Entered: 08/23/2018) |
| 09/04/2018 | 208 | RESPONSE to Motion by Kevin Patrick Mallory re 206 MOTION for Forfeiture of Property (Richman, Todd) (Entered: 09/04/2018) |
| 09/13/2018 | 209 | PRESENTENCE INVESTIGATION REPORT (Sentencing Presentence Investigation Report) (SEALED – government and defense counsel) as to Kevin Patrick Mallory. (Attachments: # 1 Letter PSR addendum/correction ltr)(palya, mary) (Entered: 09/13/2018) |
| 09/14/2018 | 211 | SENTENCING MEMORANDUM by USA as to Kevin Patrick Mallory (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D, # 5 Exhibit Exhibit E, # 6 Exhibit Exhibit F, # 7 Exhibit Exhibit G)(Gibbs, John) (Entered: 09/14/2018) |
| 09/14/2018 | 212 | ORDER– This matter is before the court on the following motions, which will be heard on Friday, September 21,2018 at 9:00 am re Motion 196 , 197 , 204 and 206 . The sentencing currently scheduled for 9:00 A.M. on September 21, 2018 is postponed pending further order of the court and following resolution of the pending motions as to Kevin Patrick Mallory<br><br>Motion Hearing set for 9/21/2018 at 09:00 AM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. Signed by District Judge T. S. Ellis, III on 9/14/2018. (lcre, ) (Entered: 09/14/2018) |
| 09/14/2018 | 213 | NOTICE *of Filing of Defendant Kevin Mallory's Position on Sentencing* by Kevin Patrick Mallory (Richman, Todd) (Entered: 09/14/2018) |

**U.J.A. 17**

| 09/21/2018 | 214 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Motion Hearing as to Kevin Patrick Mallory held on 9/21/2018 re: Defendant's Motion 196 for new Trial with Respect to Counts One Through Three; Motion 197 for Acquittal with Respect to Count 4; Government's Motion 204 for Reconsideration; Motion 206 for Forfeiture of Property. Geremy C. Kamens and Todd M. Richman present on behalf of defendant. John T. Gibbs, Jennifer K. Gellie, and Colleen Garcia present on behalf of USA. Matters briefed, argued, and taken under advisement. Status Conference set for 10/12/2018 at 09:00 AM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. Defendant remanded to the custody of the USMS. Order to follow. (Court Reporter Tonia Harris)(mpha) (Entered: 09/24/2018) |
|---|---|---|
| 09/21/2018 | 215 | ORDERED that the motions 204 , 196 , 197 are taken under advisement; a further hearing is scheduled in this matter for October 12, 2018 at 9:00 A.M. Signed by District Judge T. S. Ellis, III on 09/21/2018. (mpha) (Entered: 09/24/2018) |
| 09/25/2018 | 216 | TRANSCRIPT (Partial – Closing Arguments) of jury trial proceedings held on 6–7–2018 before Judge Ellis. Court reporter Norman Linnell, telephone number 703–549–4626. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 10/25/2018. Redacted Transcript Deadline set for 11/26/2018. Release of Transcript Restriction set for 12/24/2018.(linnell, norman) (Entered: 09/25/2018)** |
| 09/25/2018 | 217 | TRANSCRIPT of Proceedings held on 5/30/18, Volume I of VIII before Judge T.S. Ellis. Court reporter/transcriber Tonia Harris, Telephone number 703–646–1438. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 10/25/2018. Redacted Transcript Deadline set for 11/26/2018. Release of Transcript Restriction set for 12/24/2018.(harris, tonia) (Entered: 09/25/2018)** |
| 09/25/2018 | 218 | TRANSCRIPT of Proceedings held on 5/31/2018, Volume II of VIII before Judge T.S. Ellis. Court reporter/transcriber Tonia Harris, Telephone number 703–646–1438. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 10/25/2018. Redacted Transcript Deadline set for 11/26/2018. Release of Transcript Restriction set for 12/24/2018.(harris, tonia) (Entered: 09/25/2018)** |
| 09/25/2018 | 219 | TRANSCRIPT of Proceedings held on 6/1/2018, Volume III of VIII before Judge T.S. Ellis. Court reporter/transcriber Tonia Harris, Telephone number 703–646–1438. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 10/25/2018. Redacted Transcript Deadline set for 11/26/2018. Release of Transcript Restriction set for 12/24/2018.(harris, tonia) (Entered: 09/25/2018)** |

**U.J.A. 18**

| | | |
|---|---|---|
| 09/25/2018 | 220 | TRANSCRIPT of Proceedings held on 6/4/2018, Volume IV of VIII before Judge T.S. Ellis. Court reporter/transcriber Tonia Harris, Telephone number 703–646–1438. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 10/25/2018. Redacted Transcript Deadline set for 11/26/2018. Release of Transcript Restriction set for 12/24/2018.(harris, tonia) (Entered: 09/25/2018)** |
| 09/25/2018 | 221 | TRANSCRIPT of Proceedings held on 6/5/2018, Volume V of VIII before Judge T.S. Ellis. Court reporter/transcriber Tonia Harris, Telephone number 703–646–1438. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 10/25/2018. Redacted Transcript Deadline set for 11/26/2018. Release of Transcript Restriction set for 12/24/2018.(harris, tonia) (Entered: 09/25/2018)** |
| 09/25/2018 | 222 | TRANSCRIPT of Proceedings held on 6/6/2018, Volume VI of VIII before Judge T.S. Ellis. Court reporter/transcriber Tonia Harris, Telephone number 703–646–1438. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 10/25/2018. Redacted Transcript Deadline set for 11/26/2018. Release of Transcript Restriction set for 12/24/2018.(harris, tonia) (Entered: 09/25/2018)** |
| 09/25/2018 | 223 | TRANSCRIPT of Proceedings held on 6/7/2018, Volume VII of VIII before Judge T.S. Ellis. Court reporter/transcriber Tonia Harris, Telephone number 703–646–1438. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 10/25/2018. Redacted Transcript Deadline set for 11/26/2018. Release of Transcript Restriction set for 12/24/2018.(harris, tonia) (Entered: 09/25/2018)** |
| 09/25/2018 | 224 | TRANSCRIPT of Proceedings held on 6/8/2018, Volume VIII of VIII before Judge T.S. Ellis. Court reporter/transcriber Tonia Harris, Telephone number 703–646–1438. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 10/25/2018. Redacted Transcript Deadline set for 11/26/2018. Release of Transcript Restriction set for 12/24/2018.(harris, tonia) (Entered: 09/25/2018)** |

**U.J.A. 19**

| | | |
|---|---|---|
| 09/27/2018 | 225 | MEMORANDUM OPINION as to Kevin Patrick Mallory. Signed by District Judge T. S. Ellis, III on 9/27/2018. (lcre, ) (Entered: 09/27/2018) |
| 09/27/2018 | 226 | ORDER denying 204 Motion for Reconsideration as to Kevin Patrick Mallory (1). Signed by District Judge T. S. Ellis, III on 9/27/2018. (lcre, ) (Entered: 09/27/2018) |
| 10/01/2018 | | Set/Reset Hearings as to Kevin Patrick Mallory: Per TSE chambers, **Status Conference** reset for **10/12/2018 at 03:30 PM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (mpha) (Entered: 10/01/2018) |
| 10/03/2018 | 227 | TRANSCRIPT of Motions Proceedings held on 9/21/2018, before Judge T.S. Ellis. Court reporter/transcriber Tonia Harris, Telephone number 703–646–1438. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 11/2/2018. Redacted Transcript Deadline set for 12/3/2018. Release of Transcript Restriction set for 1/2/2019.(harris, tonia) (Entered: 10/03/2018)** |
| 10/09/2018 | 228 | ORDER– It is ORDERED that the status conference currently scheduled for October 12, 2018 at 3:30 pm is CANCELLED. A status conference or sentencing, if appropriate is RESET for Friday, November 2, 2018 at 3:00 p.m. as to Kevin Patrick Mallory<br><br>Sentencing set for 11/2/2018 at 03:00 PM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. Status Conference reset for 11/2/2018 at 03:00 PM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. Signed by District Judge T. S. Ellis, III on 10/9/2018. (lcre, ) (Entered: 10/09/2018) |
| 10/15/2018 | 229 | MEMORANDUM OPINION as to Kevin Patrick Mallory. Signed by District Judge T. S. Ellis, III on 10/15/2018. (lcre, ) (Entered: 10/15/2018) |
| 10/15/2018 | 230 | ORDER denying 196 Motion for New Trial as to Kevin Patrick Mallory (1); and denying 197 Motion for Acquittal as to Kevin Patrick Mallory (1). Signed by District Judge T. S. Ellis, III on 10/15/2018. (lcre, ) (Entered: 10/15/2018) |
| 10/25/2018 | 231 | Position on Sentencing by Kevin Patrick Mallory *(Redacted)* (Kamens, Geremy) (Entered: 10/25/2018) |
| 10/25/2018 | 232 | Reply by USA as to Kevin Patrick Mallory re 213 Notice (Other), 231 Position on Sentencing (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Gibbs, John) (Entered: 10/25/2018) |
| 10/26/2018 | | Reset Deadlines/Hearings as to Kevin Patrick Mallory: Status Conference set for **11/2/2018 at 04:00 PM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (Per TSE chambers) (clar, ) (Entered: 10/26/2018) |
| 10/26/2018 | | Reset Hearings as to Kevin Patrick Mallory: Sentencing set for **11/2/2018 at 04:00 PM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (Per TSE chambers) (clar, ) (Entered: 10/26/2018) |
| 10/26/2018 | 233 | NOTICE OF APPEAL by USA as to Kevin Patrick Mallory (Gibbs, John) (Entered: 10/26/2018) |
| 10/29/2018 | 234 | Transmission of Notice of Appeal to 4CCA as to Kevin Patrick Mallory to US Court of Appeals re 233 Notice of Appeal (All case opening forms, plus the transcript guidelines, may be obtained from the Fourth Circuit's website at www.ca4.uscourts.gov) (lcre, ) (Entered: 10/29/2018) |
| 10/30/2018 | 235 | SENTENCING MEMORANDUM by Kevin Patrick Mallory (Kamens, Geremy) (Entered: 10/30/2018) |
| 10/30/2018 | 236 | Position on *the Court's Jurisdiction Following the Government's Filing of a Notice to Appeal* by Kevin Patrick Mallory *the Court's Jurisdiction Following the Government's Filing of a Notice to Appeal* (Kamens, Geremy) (Entered: 10/30/2018) |

**U.J.A. 20**

| | | |
|---|---|---|
| 10/30/2018 | 237 | USCA Case Number 18–4790 4th Circuit Case Manager T. Fischer for 233 Notice of Appeal filed by USA. (lcre, ) (Entered: 10/30/2018) |
| 10/30/2018 | 238 | ORDER of USCA as to Kevin Patrick Mallory re 233 Notice of Appeal. The court appoints the Federal Defender for the Eastern District of Virgnia to represent appellee in this case. (lcre, ) (Entered: 10/30/2018) |
| 10/31/2018 | 239 | Position on *Court's Jurisdiction to Proceed with Sentencing* by USA as to Kevin Patrick Mallory *Court's Jurisdiction to Proceed with Sentencing* (Garcia, Colleen) (Entered: 10/31/2018) |
| 11/01/2018 | 240 | REPLY TO RESPONSE to by Kevin Patrick Mallory re 239 Position on *Jurisdiction* (Kamens, Geremy) (Entered: 11/01/2018) |
| 11/01/2018 | 241 | ORDERED that the sentencing hearing in this case is CONTINUED until the Fourth Circuit issues a mandate regarding the government's appeal of the 7/26/2018 and 9/27/2018 rulings dismissing Counts 2 and 3 of the indictment. Signed by District Judge T. S. Ellis, III on 11/1/2018. (rban, ) (Entered: 11/01/2018) |
| 11/01/2018 | | Terminate Deadlines and Hearings as to Kevin Patrick Mallory: (rban, ) (Entered: 11/01/2018) |
| 11/13/2018 | 242 | Transcript Order Acknowledgment from USCA re 233 Notice of Appeal : Court Reporter/Transcriber Tonia Harris. (kbar, ) (Entered: 11/13/2018) |
| 01/08/2019 | 243 | TRANSCRIPT (Partial – Preliminary Matters) of proceedings held on 5–30–2018 before Judge Ellis. Court reporter Norman Linnell, Telephone number 703–549–4626. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 2/7/2019. Redacted Transcript Deadline set for 3/11/2019. Release of Transcript Restriction set for 4/8/2019.(linnell, norman) (Entered: 01/08/2019)** |
| 03/11/2019 | 244 | ORDER of USCA as to Kevin Patrick Mallory re 233 Notice of Appeal. Upon consideration of the motion to voluntarily dismiss this case pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure, and there appearing no opposition, the court grants the motion. (lcre, ) (Entered: 03/11/2019) |
| 03/11/2019 | 245 | USCA Mandate as to Kevin Patrick Mallory re 233 Notice of Appeal. This court's order dismissing this appeal pursuant to Local Rule 42(b) takes effect today. (lcre, ) (Entered: 03/11/2019) |
| 03/12/2019 | 246 | ORDERED that defendant's sentencing hearing shall now take place on Friday, March 22, 2019 at 9:00 am as to Kevin Patrick Mallory. Signed by District Judge T. S. Ellis, III on 03/12/2019. (jlan) (Entered: 03/13/2019) |
| 03/12/2019 | | Reset Hearing as to Kevin Patrick Mallory: Sentencing set for 3/22/2019 at 09:00 AM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (jlan) (Entered: 03/13/2019) |
| 03/15/2019 | 247 | Consent MOTION to Continue *Sentencing Hearing for Two Weeks* by Kevin Patrick Mallory. (Attachments: # 1 Proposed Order)(Kamens, Geremy) (Entered: 03/15/2019) |
| 03/15/2019 | | Reset Deadlines/Hearings as to Kevin Patrick Mallory: Sentencing set for **3/22/2019 at 10:00 AM** in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (Per TSE chambers) (clar, ) (Entered: 03/15/2019) |
| 03/15/2019 | 248 | ORDER granting 247 Motion to Continue Sentencing. The Sentencing hearing in this matter is continued from March 22, 2019, to Thursday April 4, 2019 at 1:00 p.m. as to Kevin Patrick Mallory (1). Signed by District Judge T. S. Ellis, III on 3/15/2019. (lcre, ) (Entered: 03/15/2019) |
| 03/15/2019 | | Set/Reset Deadlines/Hearings as to Kevin Patrick Mallory: Sentencing reset for 4/4/2019 at 01:00 PM in Alexandria Courtroom 900 before District Judge T. S. Ellis |

| | | III. (lcre, ) (Entered: 03/15/2019) |
|---|---|---|
| 03/21/2019 | 249 | NOTICE *of Filing of Executed Memorandum of Understanding Regarding Classified Information* by Kevin Patrick Mallory (Attachments: # 1 Exhibit Signed Memorandum of Understanding – Frances Pratt)(Richman, Todd) (Entered: 03/21/2019) |
| 03/29/2019 | 250 | SENTENCING MEMORANDUM by Kevin Patrick Mallory (Attachments: # 1 Exhibit)(Kamens, Geremy) (Entered: 03/29/2019) |
| 04/02/2019 | 251 | Memorandum by USA as to Kevin Patrick Mallory *in Reply to Defendant's Second Supplemental Memorandum in Aid of Sentencing* (Attachments: # 1 Exhibit, # 2 Exhibit)(Gibbs, John) (Entered: 04/02/2019) |
| 04/04/2019 | 252 | PRESENTENCE INVESTIGATION REPORT (Sentencing Presentence Investigation Report) (SEALED – government and defense counsel) *Updated Sentencing PSR* as to Kevin Patrick Mallory. (Attachments: # 1 Letter PSR Supplemental addendum/correction ltr)(palya, mary) (Entered: 04/04/2019) |
| 04/04/2019 | 253 | Minute Entry for proceedings held before District Judge T. S. Ellis, III:Sealed Minutes/Closed hearing held on 4/4/2019. Sentencing reset for 4/26/2019 at 01:00 PM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (Court Reporter: T. Harris)(tarm) (Entered: 04/04/2019) |
| 04/04/2019 | 254 | ORDERED that the sentencing in this matter is CONTINUED to Friday, April 26, 2019 at 1:00 P.M. Defendant is DIRECTED to submit supplemental briefing no later than Thursday, April 11, 2019 at 5:00 P.M. The government is DIRECTED to submit a response to defendant's supplemental brief no later than Wednesday, April 17, 2019 at 5:00 P.M. as to Kevin Patrick Mallory. Signed by District Judge T. S. Ellis, III on 4/4/2019.<br><br>Sentencing reset for 4/26/2019 at 01:00 PM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (lcre, ) (Entered: 04/04/2019) |
| 04/05/2019 | 255 | ORDERED that the parties advise the Court by Friday, April 12, 2019 as to whether the transcript of the Thursday, April 4, 2019 proceeding contains classified information or should otherwise remain under seal. Signed by District Judge T. S. Ellis, III on 4/5/19. (kbar) (Entered: 04/05/2019) |
| 04/10/2019 | 256 | PRESENTENCE INVESTIGATION REPORT (Sentencing Presentence Investigation Report) (SEALED – government and defense counsel) *2nd Updated Sentencing PSR* as to Kevin Patrick Mallory. (Attachments: # 1 Letter PSR 2nd correction ltr)(palya, mary) (Entered: 04/10/2019) |
| 04/11/2019 | 257 | Position on *April 4, 2019 Amendments to PSR* by Kevin Patrick Mallory *April 4, 2019 Amendments to PSR* (Attachments: # 1 Exhibit 1) James Hamrock Trial Testimony (Excerpts), # 2 Exhibit 2) Gov Trial Exh 9–8B, # 3 Exhibit 3) Gov Trial Exh 8–18, # 4 Exhibit 4) Gov Trial Exh 8–23, # 5 Exhibit 5) Gov Trial Exh 8–5, # 6 Exhibit 6) Hugh Higgins Trial Testimony (Excerpts), # 7 Exhibit 7) Gov Trial Exh 8–6, # 8 Exhibit 8) Gov Trial Exh 8–21)(Richman, Todd) (Entered: 04/11/2019) |
| 04/11/2019 | 258 | NOTICE *of Position Regarding Sealing of Transcript of April 4, 2019 Hearing* by Kevin Patrick Mallory (Richman, Todd) (Entered: 04/11/2019) |
| 04/12/2019 | 259 | NOTICE *of Position on Sealing of April 4, 2019 Transcript* by USA as to Kevin Patrick Mallory re 255 Order, (Gellie, Jennifer) (Entered: 04/12/2019) |
| 04/17/2019 | 260 | RESPONSE by USA as to Kevin Patrick Mallory re 257 Position on, *Amendments to Pre–Sentence Report* (Attachments: # 1 Exhibit Green Day 2 Testimony Excerpt, # 2 Exhibit Hamrock Testimony, # 3 Exhibit Table of Contents, # 4 Exhibit Document No. 1, # 5 Exhibit Gov't Trial Ex. 8–23, # 6 Exhibit Green Day 3 Testimony Excerpt, # 7 Exhibit Ambrose Testimony Excerpt, # 8 Exhibit FBI Interview Excerpt, # 9 Exhibit May 15, 2017 Emails, # 10 Exhibit May 26, 2017 Emails)(Gellie, Jennifer) (Entered: 04/17/2019) |
| 04/22/2019 | 261 | ORDERED that the seal on the Thursday, April 4, 2019 hearing in this matter is REMOVED and that the transcript of the hearing be made publicly available. Signed by District Judge T. S. Ellis, III on 4/22/2019. (lcre, ) (Entered: 04/22/2019) |

**U.J.A. 22**

| 04/23/2019 | 262 | ORDERED that the sentencing hearing currently scheduled for April 26, 2019 at 1:00 pm is cancelled and that defendant's sentencing hearing is rescheduled for Friday, May 17, 2019 at 1:00 pm as to Kevin Patrick Mallory.Signed by District Judge T. S. Ellis, III on 4/23/2019.<br><br>Sentencing reset for 5/17/2019 at 01:00 PM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (lcre, ) (Entered: 04/23/2019) |
|---|---|---|
| 05/10/2019 | 263 | NOTICE *of Filing of Declaration of Brian Moran* by Kevin Patrick Mallory (Attachments: # 1 Exhibit A) Declaration of Brian Moran)(Richman, Todd) (Entered: 05/10/2019) |
| 05/15/2019 | 264 | RESPONSE by USA as to Kevin Patrick Mallory re 263 Notice (Other) *Defense Filing of Declaration of Brian Moran* (Attachments: # 1 Exhibit, # 2 Exhibit)(Gellie, Jennifer) (Entered: 05/15/2019) |
| 05/17/2019 | 265 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Sentencing held on 5/17/2019 for Kevin Patrick Mallory (1).<br>USA appeared through John Gibbs, Jennifer Gellie and Steven Green, FBI Agent.<br>Defendant appeared with Counsel, Geremy Kamens and Todd Richman.<br>Court adopts PSR w/exceptions of paragraph 39, 40 and 2–level enhancement (the abuse of the position of trust).<br>Govt and defense objections to Paragraph 39 and 40 was sustained in part and overruled in part. Amended version of Paragraph 39 and 40 was given to the parties in open court. The current version in the PSR to be redacted and replaced with the amended version. Court sustained PO position on the 2–level enhancement and overruled the defense objection. Offense Level 43; Criminal History I; G/L range Life.<br>Defendant is sentenced to 240 months. This term of imprisonment consist of 240 months on Count 1 and 60 months on Count 4 to run concurrently with each other.<br>Upon release, defendant to serve a term of 5 years. This term consists of 5 years on Count 1 and 3 years on Count 4 to run concurrently with each other.<br>CONDS: All employment must be approved, in advance, by the United States Probation Office and the defendant shall provide the probation officer access to any requested financial information.<br>Special Assessment of $200 ($100 on each of Counts 1 and 4). No punitive fines imposed.<br>Defense noted will appeal the ruling by May 31, 2019. To facilitate communication with defendant's wife, defense request while incarcerated to speak in Chinese to his wife. Government objects. Defense to present authority on the matter by May 24, 2019. Court to review and rule on the issue.<br>The Court recommends defendant to be designated to a facility in Salt Lake City, Utah, to be near family.<br>Forfeiture Order entered in open court.<br>Defendant remanded.<br>Court Reporter: T. Harris<br>(tran) (Entered: 05/17/2019) |
| 05/17/2019 | 266 | ORDER OF FORFEITURE as to Kevin Patrick Mallory.. Signed by District Judge T. S. Ellis, III on 05/17/2019. (tran) (Entered: 05/17/2019) |
| 05/17/2019 | 267 | JUDGMENT as to Kevin Patrick Mallory (1), Count(s) 1, 240 months w/5 Years SR Term w/special conds to run concurrent with Count 4; $100 SA; Count(s) 2, 3, Court dismissed on defense motion.; Count(s) 4, 60 months w/3 Years SR Term w/special conds to run concurrent with Count 1; $100 SA. Signed by District Judge T. S. Ellis, III on 05/17/2019. (tran) (Entered: 05/21/2019) |
| 05/17/2019 | 268 | Confidential Information Page re: Judgment as to Kevin Patrick Mallory. (tran) (Entered: 05/21/2019) |
| 05/23/2019 | 269 | PRESENTENCE INVESTIGATION REPORT (Final Presentence Investigation Report) (SEALED – government and defense counsel) as to Kevin Patrick Mallory. (Attachments: # 1 Letter PSR amendments ltr)(palya, mary) (Entered: 05/23/2019) |
| 05/24/2019 | 270 | Position on *Communication Restrictions* by Kevin Patrick Mallory *Communication Restrictions* (Richman, Todd) (Entered: 05/24/2019) |

**U.J.A. 23**

| 05/29/2019 | 271 | RESPONSE by USA as to Kevin Patrick Mallory re 270 Position on *Communication Restrictions* (Attachments: # 1 Exhibit GX 11–2T, # 2 Exhibit SAMs Memo)(Gellie, Jennifer) (Entered: 05/29/2019) |
|---|---|---|
| 05/30/2019 | 272 | Reply by Kevin Patrick Mallory re 271 Response (Kamens, Geremy) (Entered: 05/30/2019) |
| 05/31/2019 | 273 | NOTICE OF APPEAL by Kevin Patrick Mallory (Kamens, Geremy) (Entered: 05/31/2019) |
| 05/31/2019 | 274 | Transmission of Notice of Appeal to 4CCA as to Kevin Patrick Mallory to US Court of Appeals re 273 Notice of Appeal (All case opening forms, plus the transcript guidelines, may be obtained from the Fourth Circuit's website at www.ca4.uscourts.gov) (lcre, ) (Entered: 05/31/2019) |
| 05/31/2019 | 275 | USCA Case Number 19–4385 4th Circuit, Case Manager C. Bennett for 273 Notice of Appeal filed by Kevin Patrick Mallory. (rban, ) (Entered: 05/31/2019) |
| 05/31/2019 | 276 | ORDER of USCA as to Kevin Patrick Mallory re 273 Notice of Appeal. The court appoints the FPD for the EDVA to represent Kevin Patrick Mallory for this appeal. (rban, ) (Entered: 05/31/2019) |
| 06/21/2019 | 277 | TRANSCRIPT REQUEST by Kevin Patrick Mallory for proceedings held on May 29, 2018 (trial day 1); May 17, 2019 (sentencing) before Judge T.S. Ellis, III, (Pratt, Frances) (Entered: 06/21/2019) |
| 06/24/2019 | 278 | Transcript Order Acknowledgment from USCA re 273 Notice of Appeal : Court Reporter/Transcriber Tonia Harris. (lcre, ) (Entered: 06/24/2019) |
| 07/30/2019 | 279 | TRANSCRIPT of Voir Dire proceedings as to Kevin Patrick Mallory for dates of 5/29/2018 before Judge T.S. Ellis, re 273 Notice of Appeal Court Reporter/Transcriber Tonia Harris, Telephone number 703–646–1438. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov** *Does this satisfy all appellate orders for this reporter? n* **Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 8/29/2019. Redacted Transcript Deadline set for 9/30/2019. Release of Transcript Restriction set for 10/28/2019.**(harris, tonia) (Entered: 07/30/2019) |
| 07/30/2019 | 280 | TRANSCRIPT of Sentencing proceedings as to Kevin Patrick Mallory for dates of 5/17/2019 before Judge T.S. Ellis, re 273 Notice of Appeal Court Reporter/Transcriber Tonia Harris, Telephone number 703–646–1438. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov** *Does this satisfy all appellate orders for this reporter? y* **Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 8/29/2019. Redacted Transcript Deadline set for 9/30/2019. Release of Transcript Restriction set for 10/28/2019.**(harris, tonia) (Entered: 07/30/2019) |
| 08/09/2019 | 281 | TRANSCRIPT of Proceedings held on 4/04/2019, before Judge T.S. Ellis. Court reporter/transcriber Tonia Harris, Telephone number 703–646–1438. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 9/9/2019. Redacted Transcript Deadline set for 10/9/2019. Release of Transcript Restriction set for 11/7/2019.**(harris, |

U.J.A. 24

| | | |
|---|---|---|
| | | **tonia) (Entered: 08/09/2019)** |
| 09/06/2019 | 282 | **ORDERED** that Defendant's motion regarding conditions of detention 270 is **DENIED**. Signed by District Judge T. S. Ellis, III on 09/06/2019. (tran) (Entered: 09/06/2019) |
| 12/19/2019 | 283 | Consent MOTION to Unseal Document *at Docket 73* by USA as to Kevin Patrick Mallory. (Attachments: # 1 Proposed Order)(Gibbs, John) (Entered: 12/19/2019) |
| 12/19/2019 | 284 | ORDER TO UNSEAL<br>NOW, THEREFORE, IT IS ORDERED, ADJUDGED, and DECREED that the Order issued by this Court in this case on February 5, 2018 73 be and hereby is unsealed. Signed by District Judge T. S. Ellis, III on 12/19/19. (tran) (Entered: 12/19/2019) |
| 12/19/2019 | | Document 73 unsealed as to Kevin Patrick Mallory, Per Order 284 . (tran) (Entered: 12/19/2019) |

Case 1:17-cr-00154-TSE   Document 134   Filed 05/21/18   Page 1 of 19 PageID# 953

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
IN OPEN COURT

JUL 2 7 2017

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Criminal No. 1:17-cr-00154 (TSE) |
| | ) |
| v. | ) COUNT ONE: 18 U.S.C. § 794(c) |
| | )   Conspiracy to Gather or Deliver Defense |
| KEVIN PATRICK MALLORY | )   Information to Aid a Foreign Government |
| | ) |
| Defendant. | ) COUNT TWO: 18 U.S.C. § 794(a) |
| | )   Delivering Defense |
| | )   Information to Aid a Foreign Government |
| | ) |
| | ) COUNT THREE: 18 U.S.C. § 794(a) |
| | )   Attempted Delivery of |
| | )   Defense Information to Aid a Foreign |
| | )   Government |
| | ) |
| | ) COUNT FOUR: 18 U.S.C. § 1001(a)(2) |
| | )   Material False Statements |
| | ) |
| | ) FORFEITURE, 18 U.S.C. § 794(d) |
| | ) |

INDICTMENT

JULY 2017 TERM -- At Alexandria

**THE GRAND JURY CHARGES THAT:**

At all times material to this Indictment, except as otherwise indicated:

**General Allegations**

**The Defendant**

1.     Kevin Patrick MALLORY ("MALLORY") was a 60-year-old self-employed

consultant with GlobalEx, LLC.  He is a United States citizen who resides and works in

Leesburg, Virginia.  MALLORY graduated from Brigham Young University in 1981 with a B.A.

U.J.A. 26

degree in Political Science. Between 1981 and 2012 MALLORY worked for various U.S. Government agencies and cleared defense contractors, and spent several periods of time on active duty in the U.S. Army. During much of that time, MALLORY held a TOP SECRET security clearance. MALLORY was fluent in Mandarin Chinese.

2.      Unindicted Co-conspirator ("UCC") was a resident of the People's Republic of China ("PRC"). In his interactions with MALLORY, UCC held himself out as working for a PRC think tank, the Shanghai Academy of Social Sciences ("SASS").

### Chinese Institutions, Intelligence Services, and Associated Terms

3.      According to its public website, SASS was "founded in 1958 and administered by the Municipal Government of Shanghai," and "receive[d] most of its funds from the municipal government of Shanghai."

4.      The PRC intelligence services ("PRCIS") encompassed both the civilian and military components of Chinese intelligence programs. Civilian intelligence collection was handled by the Ministry of State Security ("MSS"). The MSS was an institution combining functions analogous to the Federal Bureau of Investigation ("FBI") and the Central Intelligence Agency ("CIA") in a single intelligence directorate responsible for counter-intelligence, foreign intelligence, and political security. The MSS consisted of a central ministry, provincial state security departments, and municipal state security bureaus, such as the Beijing State Security Bureau ("BSSB") and the Shanghai State Security Bureau ("SSSB").

5.      Among other things, the MSS and its regional bureaus focused on identifying and influencing the foreign policy of other countries, including the United States. The MSS and its bureaus sought to obtain information on political, economic, and security policies that might affect the PRC, foreign intelligence operations directed at the PRC, and biographical profiles of foreign politicians and intelligence officers.

**U.J.A. 27**

6.      Additionally, the MSS and its bureaus were tasked with conducting clandestine and overt human source operations, of which the United States was a principal target. These operations used trained intelligence officers ("IOs"), as well as non-professional collectors known as "cut-outs" or "co-optees." A cut-out or co-optee was a person trusted by both the source and the IO who helped to provide a layer of insulation between an IO and a source, thereby increasing operational security. Cut-outs or co-optees could operate under a variety of covers, posing as diplomats, journalists, academics, or business people both within the PRC and abroad. These individuals were tasked with spotting, assessing, targeting, collecting, and handling sources or assets with access to classified, open-source, proprietary, or sensitive information that the government of the PRC could utilize for economic, political, or military decision-making or advantage.

7.      The SSSB had a close relationship with SASS and used SASS employees as spotters and assessors.

8.      PRCIS human source operations tended to originate inside the PRC, where the PRCIS preferred to meet with its sources or assets. To facilitate continued meetings inside the PRC, the PRCIS would arrange and/or pay for a source's travel and expenses. The PRCIS was known to pay their sources not only in cash, but also through other means, including business considerations or other types of assistance within the PRC.

**The United States Intelligence Community**

9.      The U.S. Intelligence Community ("USIC") consisted of U.S. executive branch agencies and organizations that worked separately and together to conduct intelligence activities necessary for the conduct of foreign relations and the protection of the national security of the United States.

**U.J.A. 28**

3

10.     The U.S. Department of Defense ("DoD") was a U.S. executive branch agency, the mission of which was to provide the military forces needed to deter war and to protect the security of the United States.

11.     The Defense Intelligence Agency ("DIA") was a component of DoD and the USIC, which collected (including through classified means), analyzed, produced, and disseminated foreign intelligence and counterintelligence to support national and DoD missions. The DIA planned, managed, and executed intelligence operations during peacetime, crisis, and war. The DIA provided defense-related intelligence for the Secretary of Defense, the Chairman of the Joint Chiefs of Staff, combatant commanders, other DoD components, and non-DoD agencies. Furthermore, the DIA conducted administrative and technical support activities within and outside the United States as necessary for cover and proprietary arrangements. The DIA had facilities in Washington, DC and northern Virginia.

12.     The CIA was a U.S. Government intelligence agency with various offices and facilities, and was a component of the USIC. The CIA's primary facility and headquarters were in northern Virginia. The CIA was responsible for, among other things, collecting (including through clandestine means), producing, and disseminating foreign intelligence and counterintelligence used to inform U.S. policy-makers; conducting counterintelligence activities; conducting administrative and technical support activities; conducting covert action activities approved by the President; and conducting foreign liaison relationships with intelligence and security services of foreign governments.

### Classified Information

13.     Pursuant to Executive Order 12958 signed on April 17, 1995, as amended by Executive Order 13292 on March 25, 2003, and Executive Order 13526 on December 29, 2009, national security information was classified as "TOP SECRET," "SECRET," or "CONFIDENTIAL." National security information was information owned by, produced by,

4

**U.J.A. 29**

produced for, and under the control of the United States government that was classified as follows:

a.   Information was classified as TOP SECRET if the unauthorized disclosure of that information reasonably could be expected to cause exceptionally grave damage to the national security that the original classification authority was able to identify and describe.

b.   Information was classified as SECRET if the unauthorized disclosure of that information reasonably could be expected to cause serious damage to the national security that the original classification authority was able to identify and describe.

c.   Information was classified as CONFIDENTIAL if the unauthorized disclosure of that information reasonably could be expected to cause damage to the national security that the original classification authority was able to identify and describe.

14.   Access to national security information classified at any level could be further restricted through compartmentation in Sensitive Compartmented Information ("SCI") categories. Only individuals possessing both the appropriate security clearance and specific, additional permissions could have authorized access to SCI.

15.   Classified information, including SCI, was marked according to its classification and applicable SCI compartments, following standard formats for different types of media, including headers and footers stating the highest classification level and SCI compartments of information a document contained and individual classifications markings for each paragraph. Information classified at any level could be lawfully accessed only by persons determined by an appropriate United States government official to be eligible for access to classified information, who had signed an approved non-disclosure agreement, received a security clearance, and had a "need to know" the classified information. Classified information could be stored only in an approved facility and container.

16.   In addition to classification markings, classified information at times contained dissemination markings which restricted the distribution of the information. These markings included:

U.J.A. 30

5

a.  The "NF" or "NOFORN" dissemination control marking, which stood for "No Foreign Dissemination." The NOFORN marking denoted that dissemination of the information was limited to U.S. persons.

b.  The "OC" or "ORCON" dissemination control marking, which stood for "Originator Controlled." The ORCON marking denoted that the information should not be further disseminated to any third party without the concurrence of the agency from which the information originated.

### MALLORY's U.S. Government Security Clearances

17. After his graduation from Brigham Young University in 1981, MALLORY worked full-time in an active-duty military position until 1986.

18. After he left active duty, MALLORY continued his military service as a U.S. Army reservist.

19. From 1987 through 1990, MALLORY worked as a Special Agent for the U.S. Department of State Diplomatic Security Service.

20. From 1990 to 1996, MALLORY worked for the CIA as a covert officer, during which time he served as a CIA case officer.

21. From 1996 to 2007, MALLORY worked at various U.S. Government agencies, for U.S. cleared defense contractors, including as a contractor at the DIA between 2004 and 2005, and on U.S. Army active-duty deployments. MALLORY was stationed in locations including Iraq, the PRC, Taiwan, and the greater Washington, D.C. area.

22. From 2007 to 2010, MALLORY worked as an Intelligence Officer and as a Senior Intelligence Officer with the DIA.

23. From 2010 to 2012, MALLORY worked as a CIA contractor.

24. Since 2012, MALLORY has been self-employed, running a consulting business called GlobalEx, which MALLORY incorporated in 2007. GlobalEx's business address is MALLORY's home address in Leesburg, Virginia.

U.J.A. 31

25.    As required for his various government positions, MALLORY obtained a TOP SECRET//SCI security clearance, which was active during various assignments during his career.  MALLORY's security clearance was terminated in October 2012 when he left government service.

26.    Because MALLORY held a security clearance and was assigned to various U.S. Government agencies, both as an employee and as a private contractor, the U.S. Government entrusted MALLORY with access to sensitive government materials, including information relating to the national defense that was closely held by the government ("National Defense Information") and classified documents and materials.

27.    Throughout his career, as a prerequisite to his access to classified information, MALLORY signed numerous non-disclosure forms in which he acknowledged both the harm that could result from the unauthorized disclosure of classified information and the applicability of criminal espionage laws should MALLORY make unauthorized disclosures of such information.

**U.J.A. 32**

## COUNT 1

## CONSPIRACY TO GATHER OR DELIVER DEFENSE INFORMATION
## TO AID A FOREIGN GOVERNMENT

THE GRAND JURY FURTHER CHARGES THAT:

1.      Paragraphs 1-27 of this Indictment are incorporated by reference and re-alleged as though set forth fully herein.

2.      Between on or about February 22, 2017 and June 22, 2017, in Loudoun County in the Eastern District of Virginia and elsewhere, including locations outside of the jurisdiction of any particular state or district, defendant KEVIN PATRICK MALLORY, did knowingly and unlawfully conspire with UCC and others, known and unknown to the grand jury, to communicate, deliver, and transmit to a foreign government, to wit: the Government of the People's Republic of China, and representatives, officers, agents, employees, subjects and citizens thereof, directly and indirectly, classified documents and information relating to the national defense of the United States, with intent and reason to believe that such documents and information were to be used to the injury of the United States and to the advantage of a foreign nation, namely, the Government of the People's Republic of China.

### MANNER AND MEANS OF THE CONSPIRACY

A.      It was a part of the conspiracy that MALLORY would transfer, and attempt to transfer, to UCC documents and information relating to the national defense of the United States, specifically, documents and information classified at the SECRET and TOP SECRET levels in exchange for money from UCC.

B.      It was further a part of the conspiracy that MALLORY and UCC communicated using devices that they believed to be secure in order for MALLORY to sell to UCC information relating to the national defense of the United States.

U.J.A. 33

C.      It was further a part of the conspiracy that UCC paid for MALLORY to take two trips to China in 2017 in order to meet personally with UCC.

D.      It was further a part of the conspiracy that UCC paid MALLORY for, among other things, his travel to the PRC and time spent meeting with UCC while there.

E.      It was further a part of the conspiracy that MALLORY transmitted and attempted to transmit to UCC documents and information relating to the national defense of the United States, specifically, documents and information classified at the SECRET and TOP SECRET levels, using the device provided by UCC.

F.      It was further a part of the conspiracy that MALLORY used the device provided by UCC to communicate with UCC about the classified documents that MALLORY had improperly retained.

## OVERT ACTS

In furtherance of the said conspiracy and to effect the objects thereof, MALLORY and other conspirators committed the following overt acts in the Eastern District of Virginia and elsewhere, including, but not limited to, the following:

1.      In or around February 2017, MALLORY was contacted on a social media site by a Chinese recruiter (hereinafter "PRC1"). Over the next several days, MALLORY had phone interviews with PRC1 and was introduced by PRC1 to UCC, represented by PRC1 to be a potential client for MALLORY.

2.      MALLORY travelled to Shanghai, PRC in or around March 2017 and April 2017, where he met with UCC and UCC's boss (hereinafter "PRC2").

3.      MALLORY received cash payments of $10,000 U.S. Dollars ("USD") and $15,000 USD in March and April 2017, respectively, from UCC while in the PRC.

**U.J.A. 34**                                                                 9

4.      MALLORY communicated in or around February or March 2017 with one or more former CIA co-workers (to include two individuals, hereinafter "Employee1" and "Employee2") and requested their help contacting a specific department at the CIA.

5.      In or about April 2017, UCC provided MALLORY with a Samsung Galaxy Note 4 ("Samsung phone"), to be used for secure communications, which MALLORY called a "covcom" device.  UCC trained MALLORY in how to use the device.

6.      On or about April 21, 2017, after a return flight to the United States from Shanghai, China, where he had met with UCC, U.S. Customs and Border Protection ("CBP") conducted a secondary search and interview of MALLORY at Chicago O'Hare International Airport.  During the CBP interview, MALLORY stated that he was outside the United States for one week and that he was returning from Shanghai.  MALLORY also stated that it was a business trip as well as a father/son vacation.  MALLORY stated that he was currently a consultant for "GlobalEx," which MALLORY stated was a company he founded in 2010.  MALLORY said that, while in the PRC on this trip, he met with an individual whom he knew through MALLORY's church, and stated that he was consulting with this individual on anti-bullying/family safety development.  MALLORY also stated that he did not receive anything from this individual during his trip.

7.      On the same return trip, MALLORY checked "no" in response to question no. 13 on the CBP Customs Declaration Form 6059b, which asked whether he was carrying over $10,000 in U.S. or foreign currency.  CBP, however, found $16,500 USD in MALLORY's two carry-on bags.

8.      On or about April 25, 2017, MALLORY transferred eight U.S. Government documents belonging to CIA and the DIA, and classified at the SECRET and TOP SECRET levels, to a Toshiba SD card.  Some of these documents were further compartmented as SCI and

**U.J.A. 35**

had NOFORN and ORCON dissemination controls. Each of the eight documents had a handwritten cover sheet which included the item number of the document, a brief title for the document, and the number of pages for each document.

9.      At some point on or after April 25, 2017, but no later than June 22, 2017, MALLORY concealed the Toshiba SD card in aluminum foil and placed the concealed Toshiba SD card in a tray on a shelf within the master bedroom closet in his residence.

10.     At some point prior to June 22, 2017, MALLORY deleted the same eight classified CIA and DIA documents from a second SD card.

11.     In or about April 2017, MALLORY again contacted Employee1, requesting help arranging a meeting with the CIA to discuss people MALLORY had recently met with in the PRC. This contact occurred after MALLORY was subjected to the above-described secondary search and interview by CBP, during which CBP discovered the $16,500 USD in undeclared currency.

12.     At some point on or after April 25, 2017, but no later than May 3, 2017, MALLORY transmitted to UCC, via the Samsung phone provided to him by UCC, two DIA documents classified as SECRET//NOFORN and SECRET//NOFORN/ORCON. During subsequent communications regarding the documents, MALLORY and UCC referred to them as "No1" and "No2."

13.     In a recovered secure message sent from the Samsung phone on or about May 1, 2017, MALLORY wrote to UCC, "Also, we may need to go again step by step in my getting the document to become part of the image. Then sending it to you."

14.     In messages sent on or about May 3, 2017, UCC and MALLORY discussed documents, "no1 and no2," which MALLORY had provided to UCC.

15.     As part of their May 3, 2017 discussions via the Samsung phone, UCC complained to MALLORY that one of the documents, "no1," had not been sent in full. UCC

**U.J.A. 36**

11

also asked MALLORY to "pls send the no2 . . . and the FISN. . . otherwise I will be in a extremely awkward situation[.]"

16.     During the May 3, 2017 communication, UCC wrote, "I suggest you send all and retype the handwriting. And NO1 is obvious the first page of a complete article, where's the else is and why it is black on top.and bottom....We will try our best to apply for another sum of amount, as you required. However, i'm not sure it will be the same amount for now and I will try, and for safety, we cannot send u in one time or in a short period altogether, need to figure out a better way[.]"

17.     In messages to UCC that MALLORY sent on or about May 3, 2017, MALLORY responded, "The black was to cross out the security classification (TOP SECRET//ORCON//...I had to get it out without the chance of discovery. Unless read in detail, it appeared like a simple note...I have arranged for a USD account in a another name."

18.     In the same communication, MALLORY wrote to UCC, "You can send the funds broken into 4 equal payments over 4 consecutive days...When you agree I will send you the bank I.g. instructions."

19.     Also during the May 3, 2017 communication, MALLORY stated, "It was dicey (look it up) when they asked for me by name. If they we looking for me in terms of State Secrets, and found the sd card..., we would not be talking today.  I am taking the real risk as you, [PRC2], and higher up bosses know... When you get the OK to replace the prior payment, the I will send more docs. I will also type my notes.  NOTE: in the future, I will destroy all electronic records after you confirm receipt...I already destroyed the paper records.  I cannot keep these around...too dangerous."

U.J.A. 37

20.     On May 5, 2017, MALLORY sent additional messages to UCC via the Samsung phone provided by UCC, stating, "Sending. . . [Document No. 2] and FISA. CONFIRM RECEIPT. . . . I will type two pages of notes (no. 1) and send later today or tomorrow."

21.     During the same May 5, 2017 exchange, MALLORY wrote, "I am expecting the previous payment ( $15k +$4,400) seized at border. And at least $????, for the materials   I have provided. At this point all the risk is on me. . . I will provide you banking instructions for you to send the monies. The money will go to the bank account  is not in my true name  but I have access to." MALLORY later stated, "I have a account not in the US You can send it to And I have the means to move it from there[.]"

22.     Subsequently, during the May 5, 2017 messages, MALLORY wrote, "Send 1 . . .Send 2. . .FYI . . . The two pages of hand notes are unrelated to the one page above it."

23.     UCC responded to the May 5, 2017 messages from MALLORY, stating, "Pls resent the previous messages, couldn't seen then." Later that same day MALLORY responded, "This system sucks it's too cumbersome." MALLORY added later in the conversation, "I put all these messages and then you can't read them because you're not logged in the same time, that's a poor system[.]" UCC responded "Thats For safety[.]" MALLORY responded "I sent two pictures documents can you see them? . . . I did not know I could not leave a secure message for you[.]"

24.     In messages sent on or about May 5, 2017, MALLORY wrote, "your object is to gain information, and my object is to be paid for." UCC responded, "My current object is to make sure your security and try to reimburse you."

25.     On or about May 24, 2017,  MALLORY met with agents of the FBI and falsely told the agents multiple times that he did not provide PRC IOs with any documents in any format, whether in paper or electronic form, beyond two short, unclassified white papers he claimed to have written using information in his head as well as information from open sources.

**U.J.A. 38**

13

26.     On or about May 24, 2017, MALLORY provided his Samsung phone to agents of the FBI.  A later examination of the Samsung phone revealed that it contained encrypted documents consisting of three CIA documents classified at the SECRET and TOP SECRET levels and a DIA document classified at the SECRET//NOFORN/ORCON level.  Also stored on the device was a handwritten table of contents.  The titles and numbering of the eight documents listed in the handwritten table of contents corresponded with the titles and numbering of the eight cover sheets for the documents that MALLORY had saved on the Toshiba SD card.

(All in violation of Title 18, United States Code, Section 794(c)).

## COUNT 2

## DELIVERING DEFENSE INFORMATION
## TO AID A FOREIGN GOVERNMENT

THE GRAND JURY FURTHER CHARGES THAT:

1.       Paragraphs 1-27 of the General Allegations section and paragraphs 1-26 of the Overt Acts section of Count 1 of this Indictment are incorporated by reference and re-alleged as though set forth fully herein.

2.       Between on or about February 22, 2017 and June 22, 2017, in Loudoun County in the Eastern District of Virginia and elsewhere, including locations outside of the jurisdiction of any particular state or district, defendant KEVIN PATRICK MALLORY, did knowingly and unlawfully communicate, deliver, and transmit to a foreign government, to wit: the Government of the People's Republic of China, and representatives, officers, agents, employees, subjects and citizens thereof, directly and indirectly, classified documents and information relating to the national defense of the United States, with intent and reason to believe that such documents and information were to be used to the injury of the United States and to the advantage of a foreign nation, namely, the Government of the People's Republic of China.

(All in violation of Title 18, United States Code, Section 794(a)).

**U.J.A. 40**

15

## COUNT 3

## ATTEMPTED DELIVERY OF DEFENSE INFORMATION TO AID A FOREIGN GOVERNMENT

THE GRAND JURY FURTHER CHARGES THAT:

1.      Paragraphs 1-27 of the General Allegations section and paragraphs 1-26 of the Overt Acts section of Count 1 of this Indictment are incorporated by reference and re-alleged as though set forth fully herein.

2.      Between on or about February 22, 2017 and June 22, 2017, in Loudoun County in the Eastern District of Virginia and elsewhere, including locations outside of the jurisdiction of any particular state or district, defendant KEVIN PATRICK MALLORY, did knowingly and unlawfully attempt to communicate, deliver, and transmit to a foreign government, to wit: the Government of the People's Republic of China, and representatives, officers, agents, employees, subjects and citizens thereof, directly and indirectly, classified documents and information relating to the national defense of the United States, with intent and reason to believe that such documents and information were to be used to the injury of the United States and to the advantage of a foreign nation, namely, the Government of the People's Republic of China.

(All in violation of Title 18, United States Code, Section 794(a)).

U.J.A. 41

## COUNT 4

## MATERIAL FALSE STATEMENTS

THE GRAND JURY FURTHER CHARGES THAT:

On or about May 24, 2017, in Loudoun County, in the Eastern District of Virginia, defendant KEVIN PATRICK MALLORY did knowingly and willfully make materially false, fictitious, and fraudulent statements or representations to the government, in a matter within the jurisdiction of the executive branch of the Government of the United States. Specifically, KEVIN PATRICK MALLORY knew that the FBI was investigating his contacts with individuals working for the government of the People's Republic of China, and he also knew that the FBI was attempting to determine if MALLORY had provided any classified documents to individuals working for the People's Republic of China. Nonetheless, in response to the FBI's questions, MALLORY (a) falsely stated to FBI agents that he had not provided additional documents, beyond two unclassified white papers, to individuals he identified as PRC IOs, when, in truth and in fact, as he then well knew, he had previously provided at least two classified documents to individuals he knew to be PRC IOs; and (b) falsely stated to FBI agents that he had never transmitted documents, other than a test message, using a covert communication device provided to him by the person he knew to be a PRC IO, when in truth and in fact, as he then well knew, he had previously used that device to transmit at least two classified documents to the PRC IO.

(All in violation of Title 18, United States Code, Section 1001(a)(2))

**U.J.A. 42**

17

## FORFEITURE

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE THAT THE PROPERTY

DESCRIBED BELOW IS SUBJECT TO FORFEITURE:

1.      The defendant, KEVIN PATRICK MALLORY, is notified pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, that if he is convicted of any of the offenses set forth in Counts One through Three of this indictment, he shall forfeit to the United States pursuant to Title 18, United States Code, Section 794(d), the following property:

   a.      Any property constituting, or derived from, any proceeds the defendant obtained, directly or indirectly as the result of such violation; and

   b.      Any property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of such violation.

2.      Pursuant to Title 21, United States Code, Section 853(p), the defendant shall forfeit substitute property, up to the value of the property subject to forfeiture if: (i) the property subject to forfeiture cannot be located upon the exercise of due diligence; (ii) has been transferred, sold to, or deposited with a third party; (iii) has been placed beyond the jurisdiction of the Court; (iv) has been substantially diminished in value; or (v) has been commingled with other property which cannot be divided without difficulty.

3.      The property subject to forfeiture includes at least $25,000.00 in United States currency, a Samsung Galaxy Note 4 telephone, and an iPhone 7 telephone, representing proceeds the defendant obtained in the course of the conspiracy and property used to facilitate the commission of the violations of Title 18, United States Code, Section 794, as alleged in Counts One through Three of this Indictment.

(In accordance with Title 18, United States Code, Section 794(d)).

U.J.A. 43

A TRUE BILL:

Pursuant to the E Government Act,
the original of this page has been filed
under seal in the Clerk's Office.

_____

FOREPERSON OF THE GRAND JURY

Dana J. Boente
United States Attorney

By: _____

John T. Gibbs
Assistant United States Attorney

By: _____

Colleen E. García
Assistant United States Attorney

_____

Jennifer Kennedy Gellie
Trial Attorney
National Security Division
United States Department of Justice

**U.J.A. 44**

19

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:17-CR-00154 (TSE) |
| | ) | |
| KEVIN PATRICK MALLORY, | ) | |
| | ) | |
| Defendant | ) | |

PROPOSED JURY INSTRUCTIONS OF THE UNITED STATES

The United States requests that the following substantive instructions be read to the Jury

prior to deliberation.


1.    Witness Protection Measures (Preliminary Instruction)

2.    Use of Substitutions and Redactions in Documents (Preliminary Instruction)

3.    Introduction to the Final Charge

4.    Objections and Rulings

5.    Court's Comments to Counsel

6.    Court's Questions to Witnesses

7.    Court's Comments on Certain Evidence

8.    Evidence Admitted for a Limited Purpose Only

9.    Judging the Evidence

10.   Evidence Received in the Case – Stipulations, Judicial Notice, and Inferences
      Permitted

11.   Direct and Circumstantial Evidence

**U.J.A. 45**

12.    Inferences from the Evidence

13.    Jury's Recollection Controls

14.    The Question Is Not Evidence

15.    Presumption of Innocence, Burden of Proof, and Reasonable Doubt

16.    Consider Each Count Separately

17.    The Indictment Is Not Evidence

18.    "On or About" – Explained

19.    Pleading in the "Conjunctive" (and); Proving in the Disjunctive (or)

20.    Opinion Evidence – the Expert Witness [If Necessary]

21.    Charts and Summaries [If Necessary]

22.    Tape Recordings and Typewritten Transcripts

23.    Number of Witnesses Called Is Not Controlling

24.    Credibility of Witnesses – Generally

25.    Credibility of Witnesses – Inconsistent Statements

26.    Failure of the Defendant to Testify/Testimony of the Defendant

27.    False Exculpatory Statements

28.    "Knowingly" – Defined

29.    "Willfully" – Defined

30.    Proof of Knowledge or Intent

31.    Nature of the Offense – Count Two

32.    Nature of the Offense – Count Three

33.    Statute Defining the Offenses – Counts Two and Three

34.    Elements of the Offense – Count Two

35.    Elements of the Offense – Count Three

**U.J.A. 46**

36.    Attempt

37.    Foreign Nation or Government – Defined

38.    Information Related to the National Defense – Defined

39.    Information to Be Used Either to the Injury of the United States or to the Advantage of a Foreign Nation – Explained

40.    "Reason to Believe" that It Is to Be Used to the Injury of the United States or to the Advantage of a Foreign Nation – Explained

41.    Nature of the Offense – Count One

42.    Statute Defining the Offense – Count One

43.    Elements of the Offense – Count One

44.    Conspiracy – Existence of an Agreement

45.    Conspiracy – Membership in an Agreement

46.    Acts and Declarations of Co-Conspirators

47.    Success of Conspiracy Immaterial

48.    Nature of the Offense – Count Four

49.    Statute Defining the Offense – Count Four

50.    Elements of the Offense – Count Four

51.    "False, Fictitious or Fraudulent Statements or Representations" – Defined

52.    "Material" – Defined

53.    Unanimity – Count Four

54.    Verdict – Election of Foreperson – Duty to Deliberate – Unanimity – Punishment – Form of Verdict – Communication with the Court

55.    Nondisclosure of Classified Information (Before Discharging Jury)

       Verdict Form

**U.J.A. 47**

Dated May 17, 2018

Respectfully submitted,

Tracy Doherty-McCormick
Acting United States Attorney

By:     /s/ John T. Gibbs
JOHN T. GIBBS
Virginia Bar No. 40380
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703-299-3700
Fax: 703-299-3981

JENNIFER KENNEDY GELLIE
Trial Attorney
National Security Division
United States Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
Tel.: (202) 233-0785
Fax: (202) 233-2146
Jennifer.Gellie@usdoj.gov

COLLEEN E. GARCIA
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Ave.
Alexandria, VA
Tel.: (703) 299-3700
Fax: (703) 299-3980
Colleen.E.Garcia@usdoj.gov

**U.J.A. 48**

INSTRUCTION NO. 19

Pleading in the "Conjunctive" (and); Proving in the Disjunctive (or)

Where a statute is worded in the disjunctive (*i.e.*, with the word "or"), federal pleading

requires the government to charge in the conjunctive (*i.e.*, with the word "and").  The district

court, however, can instruct the jury in the disjunctive (i.e., with the word "or").

Eric Wm. Ruschky, Pattern Jury Instructions for Federal Criminal Cases, District of South
Carolina, Section VIII (Emily Deck Harririll, ed., 2015 Online Edition). *United States v. Rhynes*,
206 F.3d 349, 384 (4th Cir. 1999), *overruled on other grounds*, 218 F.3d 310 (4th Cir. 2000) (*en
banc*).

**U.J.A. 49**

INSTRUCTION NO. 28

"Knowingly" – Defined

The term "knowingly", as used in these instructions to describe the alleged state of mind

of the defendant, means that he was conscious and aware of his action, realized what he was

doing or what was happening around him, and did not act because of ignorance, mistake, or

accident.

1A O'Malley, Grenig and Lee, *Federal Jury Practice and Instructions: Criminal* § 17.04 (6th ed. 2008); as given in *United States v. Hoffman*, 2:12-cr-00184-RGD (Aug. 21, 2013) (Doumar, J.).

**U.J.A. 50**

INSTRUCTION NO. 29

<u>"Willfully" – Defined</u>

The term "willfully", as used in these instructions to describe the alleged state of mind of

the defendant, means that he knowingly performed an act, deliberately and intentionally, as

contrasted with accidentally, carelessly, or unintentionally.

1A O'Malley, Grenig and Lee, *Federal Jury Practice and Instructions: Criminal* § 17.05 (6th ed. 2008); as given in *United States v. Hoffman*, 2:12-cr-00184-RGD (Aug. 21, 2013) (Doumar, J.); *see also* O'Malley at 40:14 (scienter for offenses under 18 U.S.C. § 1001) ("A person acts "willfully," as that term is used in these instructions, when that person acts deliberately, voluntarily, and intentionally.").

**U.J.A. 51**

INSTRUCTION NO. 30

Proof of Knowledge or Intent

The intent of a person or the knowledge that a person possesses at any given time may not ordinarily be proved directly because there is no way of directly scrutinizing the workings of the human mind. In determining the issue of what a person knew or what a person intended at a particular time, you may consider any statements made or acts done by that person and all other facts and circumstances received in evidence which may aid in your determination of that person's knowledge or intent.

You may infer, but you are certainly not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. It is entirely up to you, however, to decide what facts to find from the evidence received during this trial.

1A O'Malley, Grenig and Lee, *Federal Jury Practice and Instructions: Criminal* § 17.07 (6th ed. 2008).

**U.J.A. 52**

INSTRUCTION NO. 31

Nature of the Offense – Count Two

Count Two of the Indictment charges that:

Between on or about February 22, 2017 and June 22, 2017, in Loudoun County in the

Eastern District of Virginia and elsewhere, including locations outside of the jurisdiction of any

particular state or district, defendant KEVIN PATRICK MALLORY, did knowingly and

unlawfully communicate, deliver, and transmit to a foreign government, to wit: the Government

of the People's Republic of China, and representatives, officers, agents, employees, subjects and

citizens thereof, directly and indirectly, classified documents and information relating to the

national defense of the United States, with intent and reason to believe that such documents and

information were to be used to the injury of the United States and to the advantage of a foreign

nation, namely, the Government of the People's Republic of China.

(All in violation of Title 18, United States Code, Section 794(a)).

Indictment.

**U.J.A. 53**

INSTRUCTION NO. 32

Nature of the Offense – Count Three

Count Three of the Indictment charges that:

Between on or about February 22, 2017 and June 22, 2017, in Loudoun County in the Eastern District of Virginia and elsewhere, including locations outside of the jurisdiction of any particular state or district, defendant KEVIN PATRICK MALLORY, did knowingly and unlawfully attempt to communicate, deliver, and transmit to a foreign government, to wit: the Government of the People's Republic of China, and representatives, officers, agents, employees, subjects and citizens thereof, directly and indirectly, classified documents and information relating to the national defense of the United States, with intent and reason to believe that such documents and information were to be used to the injury of the United States and to the advantage of a foreign nation, namely, the Government of the People's Republic of China.

(All in violation of Title 18, United States Code, Section 794(a)).

Indictment.

**U.J.A. 54**

INSTRUCTION NO. 33

Statute Defining the Offenses – Counts Two and Three

Title 18, United States Code, Section 794(a) defines the offenses of espionage and

attempted espionage.  The statute provides, in pertinent part, that:

> Whoever, with intent or reason to believe that it is to be used to the injury
> of the United States or to the advantage of a foreign nation, communicates,
> delivers, or transmits, or attempts to communicate, deliver, or transmit, to
> any foreign government, . . . or to any representative, officer, agent,
> employee, subject, or citizen thereof, either directly or indirectly, any
> document, writing, . . . note, . . . or information relating to the national
> defense . . .

shall be guilty of an offense against the United States.

18 U.S.C § 794(a).

U.J.A. 55

INSTRUCTION NO. 34

Elements of the Offense – Count Two

The essential elements of espionage, each of which the government must prove beyond a reasonable doubt, are as follows:

First, that the defendant, KEVIN PATRICK MALLORY, communicated, delivered, or transmitted a document, writing, note, or information to a foreign government, namely the People's Republic of China, or to a representative, officer, agent, employee, subject, or citizen thereof, either directly or indirectly;

Second, that such information related to the national defense of the United States;

Third, that the defendant, KEVIN PATRICK MALLORY, acted with intent or reason to believe that such information was to be used to the injury of the United States or the advantage of a foreign nation, that is, the People's Republic of China; and

Fourth, that the defendant, KEVIN PATRICK MALLORY, acted willfully in communicating, delivering, or transmitting information related to the national defense.

18 U.S.C. § 794(a); as given in *United States v. Hoffman*, 2:12-cr-00184-RGD (Aug. 21, 2013) (Doumar, J.).

**U.J.A. 56**

INSTRUCTION NO. 35

Elements of the Offense – Count Three

The essential elements of attempted espionage, each of which the government must prove beyond a reasonable doubt, are as follows:

First, that the defendant, KEVIN PATRICK MALLORY, attempted to communicate, deliver, or transmit a document, writing, note, or information to a foreign government, namely the People's Republic of China, or to a representative, officer, agent, employee, subject, or citizen thereof, either directly or indirectly;

Second, that such information related to the national defense of the United States;

Third, that the defendant, KEVIN PATRICK MALLORY, acted with intent or reason to believe that such information was to be used to the injury of the United States or the advantage of a foreign nation, that is, the People's Republic of China; and

Fourth, that the defendant, KEVIN PATRICK MALLORY, acted willfully in attempting to communicate, deliver, or transmit information related to the national defense.

18 U.S.C. § 794(a); as given in *United States v. Hoffman*, 2:12-cr-00184-RGD (Aug. 21, 2013) (Doumar, J.).

U.J.A. 57

INSTRUCTION NO. 36

Attempt – Defined

With regard to Count Three of the Indictment, proof of an "attempt" requires the

government to prove the following beyond a reasonable doubt:

First, that the defendant intended to commit the crime of espionage; and

Second, that the defendant did some act that was a substantial step in an effort to bring

about or accomplish the crime.

A substantial step is a direct act in a course of conduct planned to culminate in

commission of a crime that is strongly corroborative of the defendant's criminal purpose.  A

substantial step is more than mere preparation but less than completion of the crime.

As given in *United States v. Hoffman*, 2:12-cr-00184-RGD (Aug. 21, 2013) (Doumar, J.) (with regard to elements of attempt);

*United States v. Dozier*, 848 F.3d 180, 186 (4th Cir. 2017); *United States v. Pratt*, 351 F.3d 131, 135 (4th Cir. 2003); *United States v. Neal*, 78 F.3d 901, 906 (4th Cir. 1996)) (with regard to elements of attempt and definition of "substantial step.").

**U.J.A. 58**

INSTRUCTION NO. 37

Foreign Nation or Government – Defined

For purposes of the charges in the Indictment, the term "foreign nation" refers to any nation other than the United States and the term "foreign government" refers to any government other than the government of the United States, regardless of whether the nation or government is an ally or enemy of the United States.

As given in *United States v. Hoffman*, 2:12-cr-00184-RGD (Aug. 21, 2013) (Doumar, J.).

**U.J.A. 59**

INSTRUCTION NO. 38

Information Related to the National Defense – Defined

The term "national defense" is a broad term which refers to the United States military and naval establishments, intelligence, and to all related activities of national preparedness. To prove that documents, writings, notes, or information relate to the national defense, there are two things that the government must prove.

First, it must prove that the disclosure of the material would be potentially damaging to the United States or might be useful to a foreign nation or an enemy of the United States.

Second, it must prove that the material is "closely held" by the United States government. Where the information has been made public by the United States government and is found in sources lawfully available to the general public, it does not relate to the national defense. Similarly, where the sources of information are lawfully available to the public, and the United States government has made no effort to guard such information, the information itself does not relate to the national defense. Classified information does not become lawfully available by virtue of having been leaked. In determining whether material is "closely held," you may consider whether it has been classified by appropriate authorities and whether it remained classified on the date or dates pertinent to the Indictment.

*United States v. Squillacote*, 221 F.3d 542, 576, 578 (4th Cir. 2000); *United States v. Truong Dinh Hung*, 629 F.2d 908 (4th Cir. 1980); *United States v. Morison*; 844 F.2d 1057 (4th Cir.), *cert. denied*, 488 U.S. 908 (1988); *United States v. Dedeyan*, 584 F.2d 36, 39-40 (4th Cir. 1978) (upholding jury instruction that discussed "weapons, munitions of war and intelligence" as having the potential to relate to the national defense); *United States v. Rosen*, 445 F. Supp. 2d 602 (E.D. Va. 2006).

**U.J.A. 60**

INSTRUCTION NO. 39

Information to Be Used Either to the Injury of the United States
or to the Advantage of a Foreign Nation – Explained

The government is not required to prove that the information relating to the national

defense was to be used both to injure the United States and to the advantage of a foreign

nation.  The statute reads in the alternative, so proof beyond a reasonable doubt that

information was to be used <u>EITHER</u> to the injury of the United States <u>OR</u> to the advantage

of a foreign nation is sufficient.

18 U.S.C. § 794(a); as given in *United States v. Hoffman*, 2:12-cr-00184-RGD (Aug. 21, 2013)
(Doumar, J.).

**U.J.A. 61**

INSTRUCTION NO. 40

"Reason to Believe" that It Is to Be Used to the Injury of the
United States or to the Advantage of a Foreign Nation – Explained

A defendant has "reason to believe" if the defendant knew facts from which he concluded

or reasonably should have concluded that the information relating to the national defense was to

be used for the prohibited purposes.

In determining whether a defendant has "reason to believe," the question is whether a

reasonable person in the defendant's position would have reached the same conclusion.

First paragraph: *United States v. Truong*, 629 F.2d 908, 918-19 (4th Cir. 1980), *United States v. Rosen*, 445 F. Supp. 2d 602 (E.D. Va. 2006).

Second paragraph: *United States v. Smith,* 592 F. Supp. 424, 429-30 n.2 (E.D. Va. 1984), *vacated on other grounds,* 780 F.2d 1102 (4th Cir. 1985) (en banc); *United States v. Miller*, 874 F.2d 1255, 1279 (9th Cir. 1989) ("the defendant's belief that his actions would help the United States must be a reasonable one"); *see also United States v. Johnson*, 24 M.J. 101, 106 (C.M.A. 1987) (holding, in prosecution for destruction of war material in violation of 18 U.S.C. § 2153(a), that statute's use of "reason to believe" requires only "that the prosecution demonstrate that a reasonable man would have believed that the act taken would interfere with national defense.  This standard is solely objective; and the failure of an accused to recognize the inevitability of the proscribed consequences is immaterial.").

**U.J.A. 62**

INSTRUCTION NO. 41

Nature of the Offense – Count One

Count One of the Indictment charges that:

Between on or about February 22, 2017 and June 22, 2017, in Loudoun County in the Eastern District of Virginia and elsewhere, including locations outside of the jurisdiction of any particular state or district, defendant KEVIN PATRICK MALLORY did knowingly and unlawfully conspire with an unindicted co-conspirator and others, known and unknown to the grand jury, to communicate, deliver, and transmit to a foreign government, to wit: the Government of the People's Republic of China, and representatives, officers, agents, employees, subjects and citizens thereof, directly and indirectly, classified documents and information relating to the national defense of the United States, with intent and reason to believe that such documents and information were to be used to the injury of the United States and to the advantage of a foreign nation, namely, the Government of the People's Republic of China.

(All in violation of Title 18, United States Code, Section 794(c)).

Indictment.

U.J.A. 63

INSTRUCTION NO. 42

Statute Defining the Offense – Count One

Title 18, United States Code, Section 794(c) defines the offense of conspiracy to commit

espionage.  The statute provides, in pertinent part, that:

> If two or more persons conspire to [commit the offense of espionage], and
> one or more of such persons do any act to effect the object of the conspiracy,
> each of the parties to such conspiracy

shall be guilty of an offense against the United States.

18 U.S.C § 794(c).

**U.J.A. 64**

INSTRUCTION NO. 43

Elements of the Offense – Count One

The essential elements of conspiracy to commit espionage, both of which the government must prove beyond a reasonable doubt, are as follows:

First, that the defendant, KEVIN PATRICK MALLORY, entered into an agreement with one or more person to commit espionage; and

Second, at some point during the existence of the agreement, either the defendant, KEVIN PATRICK MALLORY, or another party to the conspiracy knowingly performed one of the overt acts charged in the Indictment in order to advance the purpose of the agreement.

18 U.S.C. § 794(c); Adapted from 2 O'Malley, Grenig and Lee, *Federal Jury Practice and Instructions: Criminal* § 31:03 (6th ed. 2008).

**U.J.A. 65**

INSTRUCTION NO. 44

Conspiracy – Existence of an Agreement

A criminal conspiracy is an agreement or a mutual understanding knowingly made or knowingly entered into by at least two people to violate the law by some joint or common plan or course of action.  A conspiracy is, in a very true sense, a partnership in crime.

A conspiracy or agreement to violate the law, like any other kind of agreement or understanding, need not be formal, written, or even expressed directly in every detail.

The government must prove that the defendant and at least one other person knowingly and deliberately arrived at an agreement or understanding that they, and perhaps others, would violate some laws by means of some common plan or course of action as alleged in Count One of the Indictment.  It is proof of this conscious understanding and deliberate agreement by the alleged members that should be central to your consideration of the charge of conspiracy.

To prove the existence of a conspiracy or an illegal agreement, the government is not required to produce a written contract between the parties or even produce evidence of an express oral agreement spelling out all of the details of the understanding.  To prove that a conspiracy existed, moreover, the government is not required to show that all of the people named in the Indictment as members of the conspiracy were, in fact, parties to the agreement, or that all of the members of the alleged conspiracy were named or charged, or that all of the people whom the evidence shows were actually members of a conspiracy agreed to all of the means or methods set out in the Indictment.

**U.J.A. 66**

Unless the government proves beyond a reasonable doubt that a conspiracy, as just explained, actually existed, then you must acquit the defendant of the conspiracy count.

Adapted from 2 O'Malley, Grenig and Lee, *Federal Jury Practice and Instructions*, § 31:04 (6th ed. updated Feb. 2014); *United States v. Burgos*, 94 F.3d 849, 860-61 (4th Cir. 1996).

**U.J.A. 67**

INSTRUCTION NO. 45

Conspiracy – Membership in an Agreement

Before the jury may find that the defendant, KEVIN PATRICK MALLORY, or any other

person, became a member of the conspiracy charged in Count One of the Indictment, the

evidence in the case must show beyond a reasonable doubt that the defendant knew the purpose

or goal of the agreement or understanding and then deliberately entered into the agreement

intending, in some way, to accomplish the goal or purpose by this common plan or joint action.

Adapted from 2 O'Malley, Grenig and Lee, *Federal Jury Practice and Instructions*, § 31:05 (6th
ed. updated Feb. 2014).

**U.J.A. 68**

INSTRUCTION NO. 46

Acts and Declarations of Co-Conspirators

Evidence has been received in this case that certain persons, who are alleged in

Count One of the Indictment to be co-conspirators of the defendant, have done or said things

during the existence or life of the alleged conspiracy in order to further or advance its goals.

Such acts and statements of these other individuals may be considered by you in determining

whether or not the government has proven the charges in Count One of the Indictment against

the defendant.

2 O'Malley, Grenig and Lee, *Federal Jury Practice and Instructions*, § 31:06 (6th ed. updated
Feb. 2014).

**U.J.A. 69**

INSTRUCTION NO. 47

<u>Success of Conspiracy Immaterial</u>

The government is not required to prove that the parties to or members of the alleged agreement or conspiracy were successful in achieving any or all of the objects of the agreement or conspiracy.

2 O'Malley, Grenig and Lee, *Federal Jury Practice and Instructions*, § 31:08 (6th ed. updated Feb. 2014).

**U.J.A. 70**

CERTIFICATE OF SERVICE

I hereby certify that I have caused an electronic copy of the foregoing to be served via ECF

upon counsel for Defendant Kevin Patrick Mallory.


By:           /s/
             John T. Gibbs
             Virginia Bar No. 40380
             Assistant United States Attorney
             United States Attorney's Office
             2100 Jamieson Avenue
             Alexandria, Virginia 22314
             Phone: 703-299-3700
             Fax: 703-299-3981

**U.J.A. 71**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

**UNITED STATES OF AMERICA,**

    **v.**                                                    **Criminal No. 1:17-cr-154 (TSE)**

**KEVIN P. MALLORY,**


          **Defendant.**


**DEFENDANT'S MOTION TO RECONSIDER USE OF SILENT WITNESS RULE
WITH RESPECT TO CERTAIN DOCUMENTS AND INFORMATION**

    **FILED WITH CISO ON MAY 23, 2018**.


Respectfully submitted,

KEVIN P. MALLORY

By Counsel,


By:    /s/
Geremy C. Kamens
Va. Bar # 41596
Todd M. Richman
Va. Bar # 41834
Office of the Federal Public Defender
Attorneys for Mr. Mallory
1650 King Street, Suite 500
Alexandria, Virginia   22314
(703) 600-0848 (telephone)
(703) 600-0880 (facsimile)
Geremy_Kamens@fd.org (email)


**U.J.A. 72**

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2018, I will electronically file the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to:

John T. Gibbs, Esq.
Colleen E. Garcia, Esq.
Assistant United States Attorneys
2100 Jamieson Avenue
Alexandria, Virginia 22314

Jennifer K. Gellie, Esq.
Trial Attorney
United States Department of Justice
600 E St., NW
Washington, DC 20004

     /s/                                  
Todd M. Richman
Va. Bar # 41834
Geremy C. Kamens
Va. Bar # 41596
Office of the Federal Public Defender
Attorneys for Mr. Mallory
1650 King Street, Suite 500
Alexandria, Virginia   22314
(703) 600-0845 (telephone)
(703) 600-0880 (facsimile)
Todd_Richman@fd.org (email)

**U.J.A. 73**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 86 of 352    Total Pages:(86 of 352)

Case 1:17-cr-00154-TSE   Document 154   Filed 05/24/18   Page 1 of 1 PageID# 1069

# UNITED STATES DISTRICT COURT FOR THE

## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL No. 1:17-CR-00154 (TSE) |
|  | ) |  |
| v. | ) | <u>IN CAMERA</u>, AND UNDER SEAL |
| KEVIN PATRICK MALLORY, | ) |  |
|  | ) |  |
| Defendant | ) |  |

**GOVERNMENT'S <u>IN CAMERA</u>, UNDER SEAL NOTICE OF OBJECTIONS CONCERNING USE, RELEVANCE, AND ADMISSIBILITY OF CLASSIFIED INFORMATION IDENTIFIED IN DEFENDANT'S MAY 21 SUPPLEMENT CIPA SECTION 5(a) NOTICE, MOTION TO STRIKE PROPOSED DEFENSE EXPERT, AND LIMITED RESPONSE TO MOTION TO RECONSIDER**

**U.J.A. 74**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

**UNITED STATES OF AMERICA,**

**v.**                                                    **Criminal No. 1:17-cr-154 (TSE)**

**KEVIN P. MALLORY,**


                    **Defendant.**


**DEFENDANT'S RESPONSE TO THE GOVERNMENT'S MOTION TO STRIKE**
**DEFENDANT'S CLASSIFICATION EXPERT AND REPLY IN SUPPORT OF MOTION**
**TO RECONSIDER USE OF SILENT WITNESS RULE**
**WITH RESPECT TO CERTAIN DOCUMENTS AND INFORMATION**

**FILED WITH CISO ON MAY 25, 2018**.


                              Respectfully submitted,

                              KEVIN P. MALLORY

                              By Counsel,


                              By:    /s/
                              Geremy C. Kamens
                              Va. Bar # 41596
                              Todd M. Richman
                              Va. Bar # 41834
                              Office of the Federal Public Defender
                              Attorneys for Mr. Mallory
                              1650 King Street, Suite 500
                              Alexandria, Virginia   22314
                              (703) 600-0848 (telephone)
                              (703) 600-0880 (facsimile)
                              Geremy_Kamens@fd.org (email)


**U.J.A. 75**

## CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2018, I will electronically file the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to:

John T. Gibbs, Esq.
Colleen E. Garcia, Esq.
Assistant United States Attorneys
2100 Jamieson Avenue
Alexandria, Virginia 22314

Jennifer K. Gellie, Esq.
Trial Attorney
United States Department of Justice
600 E St., NW
Washington, DC 20004

     /s/
Todd M. Richman
Va. Bar # 41834
Geremy C. Kamens
Va. Bar # 41596
Office of the Federal Public Defender
Attorneys for Mr. Mallory
1650 King Street, Suite 500
Alexandria, Virginia   22314
(703) 600-0845 (telephone)
(703) 600-0880 (facsimile)
Todd_Richman@fd.org (email)

**U.J.A. 76**

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:17-CR-154** |
| | ) | |
| | ) | **The Honorable T.S. Ellis, III** |
| | ) | |
| **KEVIN MALLORY,** | ) | **Trial date: May 29, 2018** |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

### DEFENDANT MALLORY'S AMENDED PROPOSED JURY INSTRUCTIONS

The Defendant, KEVIN MALLORY, by undersigned counsel, submits the attached amended proposed jury instructions to amend the offense-related instructions previously submitted (dkt # 133, instr. 29-46).  For clarity, these amended instructions are denoted by letter and replace previously-submitted instructions numbered 29-46, which are hereby withdrawn.  These amended instructions are re-organized for clarity and also amended to more accurately reflect the *mens rea* necessary for each of the charged offenses.  Mr. Mallory may further modify, withdraw, supplement or substitute these or other proposed instructions as may be suggested by the evidence in the case until the charge conference.

| No. | Instruction | AUTHORITY |
|---|---|---|
| A | The Nature of the Offense Charged – Count Two – Delivery of Defense Information to Aid a Foreign Government | Indictment, Count Two. |

**U.J.A. 77**

| | | |
|---|---|---|
| B | The Nature of the Offense Charged – Count Three – Attempted Delivery of Defense Information to Aid a Foreign Government | Indictment, Count Three. |
| C | The Statute of the Offense Charged – Count Two and Three – Delivery and Attempted Delivery of Defense Information to Aid a Foreign Government | Adapted from 18 U.S.C. § 794(a). |
| D | The Elements of the Offense Charged – Count Two – Delivery of Defense Information to Aid a Foreign Government | Pattern Jury Instructions, United States District Court for the District of South Carolina, available at: www.scd.uscourts.gov/JuryCharges. *See also*, *United States v. Squillacote*, 221 F.3d 542, 546 (4th Cir. 2000); *United States v. Morison*, 844 F.2d 1057, 1071-72 (4th Cir. 1988); *United States v. Truong Dinh Hung*, 629 F.2d 908, 918-19 (4th Cir. 1980); *United States v. Dedeyan*, 584 F.2d 36, 39-40 (4th Cir. 1978); *United States v. Drummond*, 354 F.2d 132, 151 (2d Cir. 1965). |
| E | The Elements of the Offense Charged – Count Three – Attempted Delivery of Defense Information to Aid a Foreign Government | Pattern Jury Instructions, United States District Court for the District of South Carolina, available at: www.scd.uscourts.gov/JuryCharges. *See also*, *United States v. Squillacote*, 221 F.3d 542, 546 (4th Cir. 2000); *United States v. Morison*, 844 F.2d 1057, 1071-72 (4th Cir. 1988); *United States v. Truong Dinh Hung*, 629 F.2d 908, 918-19 (4th Cir. 1980); *United States v. Dedeyan*, 584 F.2d 36, 39-40 (4th Cir. 1978); *United States v. Drummond*, 354 F.2d 132, 151 (2d Cir. 1965). |
| F | Information Relating to the National Defense – Defined | *United States v. Rosen,* 445 F.Supp.2d 602, 619-21 (E.D. Va. 2006) (citing *Gorin v. United States*, 312 U.S. 19 (1941), *United States v. Squillacote*, 221 F.3d 542 (4th Cir. 2000); *United States v. Morison*, 844 F.2d 1057 (4th Cir. 1998); *Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1326 (4th Cir. 1975), and *United States v. Truong Dinh Hung*, 629 F.2d 908 (4th Cir. 1980)). |

**U.J.A. 78**

| | | |
|---|---|---|
| G | Intent or Reason to Believe that Information is to be Used to the Injury of the United States or to the Advantage of a Foreign Nation – Defined | *Gorin v. United States*, 312 U.S. 19, 27-28 (1941); *United States v. Truong Dinh Hung*, 629 F.2d 908 (4th Cir. 1980)); *United States v. Rosen*, 445 F.Supp.2d 602, 626 (E.D. Va. 2006). |
| H | Attempt – Defined | Pattern Jury Instructions, United States District Court for the District of South Carolina,, pp. 610-11, available at: www.scd.uscourts.gov/JuryCharges. *United States v. Pratt*, 351 F.3d 131, 135 (4th Cir. 2003); *United States v. Neal*, 78 F.3d 901, 906 (4th Cir. 1996); *United States v. Sutton*, 961 F.2d 476, 478 (4th Cir. 1992). |
| I | The Nature of the Offense Charged – Count One – Conspiracy to Gather or Deliver Defense Information to a Foreign Government | Indictment, Count One. |
| J | The Statute of the Offense Charged – Count One – Conspiracy to Gather or Deliver Defense Information to a Foreign Government | 18 U.S.C. § 794(c). |
| K | The Essential Elements of the Offense Charged – Count One – Conspiracy to Gather or Deliver Defense Information to a Foreign Government | 2 O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, § 31.03 (6th ed. 2008). |
| L | First Element – Conspiracy – Existence of an Agreement | 2 O'Malley, Grenig and Lee, Federal Jury Practice and Instructions, § 31.04 (amended to reflect charged offenses) (6th ed. 2008). |

| | | |
|---|---|---|
| M | Buyer-Seller Relationship | *See United States v. Edmonds*, 679 F.3d 169, 174 (4th Cir. 2012), judgment vacated on other grounds, <u>568</u> U.S. 803, 133 S.Ct. 376, 184 L.Ed.2d 4 (2012). *United States v. Yearwood*, 518 F.3d 220, 226 (4th Cir. 2008). *United States v. Reid*, 523 F.3d 310, 317 (4th Cir. 2008). *United States v. Mills*, 995 F.2d 480, 485 n. 1 (4th Cir. 1993). |
| N | Second Element – Conspiracy – Membership in an Agreement | 2 O'Malley, Grenig and Lee, <u>Federal Jury Practice and Instructions</u>, § 31.05 (amended to reflect charged offenses) (6th ed. 2008). |
| O | Third Element – Conspiracy – "Overt Act" – Defined | 2 O'Malley, Grenig and Lee, <u>Federal Jury Practice and Instructions</u>, § 31.07 (6th ed. 2008). |
| P | Conspiracy – Must Prove Intent Necessary for Underlying Offense | *United States v. Garcia*, 587 F.3d 509, 515 (2d Cir. 2009) (government must show that defendant engaged in conspiracy with specific intent to commit offense that is object of the conspiracy); *United States v. Kapp*, 781 F.2d 1008, 1010 (3d Cir. 1986) (same); *United States v. Yossunthorn,* 167 F.3d 1267 (9th Cir. 1999) (same); *United States v. Scarbrough*, 990 F.2d 296, 301 (7th Cir. 1993) (same); *Gorin v. United States*, 312 U.S. 19, 27-28 (1941); *United States v. Truong Dinh Hung*, 629 F.2d 908 (4th Cir. 1980)); *United States v. Rosen*, 445 F.Supp.2d 602, 626 (E.D. Va. 2006). |
| Q | The Nature of the Offense Charged – Count Four – Material False Statements | Indictment, Count 4. |
| R | The Statute of the Offense Charged – Count Four – Material False Statements | Adapted from 18 U.S.C. § 1001(a)(2). |
| S | The Elements of the Offense Charged – Count Four – Material False Statements | 2A O'Malley, Grenig and Lee, <u>Federal Jury Practice and Instructions</u>, § 40:07 (6th ed. 2008) |

**U.J.A. 80**

| | | |
|---|---|---|
| T | "False" – Defined | 1A O'Malley, Grenig and Lee, <u>Federal Jury Practice and Instructions</u>, § 16:06 (6th ed. 2008). |
| U | "Material" – Defined | 1A O'Malley, Grenig and Lee, <u>Federal Jury Practice and Instructions</u>, § 16.11 (6th ed. 2008). |
| V | "Knowingly" – Defined | 1A O'Malley, Grenig and Lee, <u>Federal Jury Practice and Instructions</u>, § 17:04 (6th ed. 2008). |
| W | "Willfully" – Defined | 1 L. Sand, et al., Modern Federal Jury Instructions, Section 3A.01, Instruction 3A-3 (2013). |

Respectfully Submitted,

KEVIN MALLORY

By Counsel,

Geremy C. Kamens,
Federal Public Defender

By:            /s/
Geremy C. Kamens
Va. Bar No. 41596
Federal Public Defender
Todd Richman
Va. Bar No. 41834
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0800
Facsimile: (703) 600-0880
Geremy_Kamens@fd.org

**U.J.A. 81**

## **DEFENDANT'S PROPOSED JURY INSTRUCTION F**

## **INFORMATION RELATING TO THE NATIONAL DEFENSE – DEFINED**

The phrase "information relating to the national defense" is a broad term meant to include information dealing with military matters and more generally with matters relating to United States foreign policy and intelligence capabilities.

The phrase "information relating to the national defense" is limited, however, in two important respects: 1) the information must be closely held by the government; and 2) the information must be of a type which, if disclosed, would be potentially damaging to the United States or useful to a foreign nation.

In order for information to be closely held, it must not be in the public domain. That is, the information must not be available to the general public. Typically, therefore, information that is in the public domain cannot qualify as national defense information. However, if the government's assessment or confirmation of information in the public domain is closely held by the government, then the government's assessment or confirmation of otherwise public information may itself be national defense information – but only if the assessment or confirmation itself satisfies the definition of "information relating to the national defense."

In order for information to be the type which, if disclosed, would be potentially damaging to the United States or useful to a foreign nation, the information must be of a type that the government has a compelling reason to keep confidential. In other words, the information must implicate an important government interest such as national security.

Authority: *United States v. Rosen,* 445 F.Supp.2d 602, 619-21 (E.D. Va. 2006) (citing *Gorin v. United States*, 312 U.S. 19 (1941), *United States v. Squillacote*, 221 F.3d 542 (4th Cir. 2000); *United States v. Morison*, 844 F.2d 1057 (4th Cir. 1998); *Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1326 (4th Cir. 1975), and *United States v. Truong Dinh Hung*, 629 F.2d 908 (4th Cir. 1980)).

**U.J.A. 82**

## DEFENDANT'S PROPOSED JURY INSTRUCTION G

## INTENT OR REASON TO BELIEVE THAT INFORMATION IS TO BE USED TO THE INJURY OF THE UNITED STATES OR TO THE ADVANTAGE OF A FOREIGN NATION – DEFINED

The phrase "with intent or reason to believe that information is to be used to the injury of the United States or to the advantage of a foreign nation" requires proof of two distinct elements, each of which the government must prove beyond a reasonable doubt:

First, the government must prove that the defendant knew facts from which he concluded or reasonably should have concluded that the information was of a type which could be used to the injury of the United States or to the advantage of a foreign nation; and

Second, the government must prove that the defendant acted in bad faith. Bad faith means that the government must prove that the defendant acted with the purpose to either harm the United States or aid a foreign nation.

Authority: *Gorin v. United States*, 312 U.S. 19, 27-28 (1941); *United States v. Truong Dinh Hung*, 629 F.2d 908 (4th Cir. 1980)); *United States v. Rosen*, 445 F.Supp.2d 602, 626 (E.D. Va. 2006).

**U.J.A. 83**

## DEFENDANT'S PROPOSED JURY INSTRUCTION I

### THE NATURE OF THE OFFENSE CHARGED – COUNT ONE – CONSPIRACY TO GATHER OR DELIVER DEFENSE INFORMATION TO A FOREIGN GOVERNMENT

Count One of the Indictment Charges that:

Between on or about February 22, 2017 and June 22, 2017, in Loudoun County in the Eastern District of Virginia and elsewhere, including locations outside of the jurisdiction of any particular state or district, defendant KEVIN PATRICK MALLORY, did knowingly and unlawfully conspire with UCC and others, known and unknown to the grand jury, to communicate, deliver, and transmit to a foreign government, to wit: the Government of the People's Republic of China, and representatives, officers, agents, employees, subjects and citizens thereof, directly and indirectly, classified documents and information relating to the national defense of the United States, with intent and reason to believe that such documents and information were to be used to the injury of the United States and to the advantage of a foreign nation, namely, the Government of the People's Republic of China.

(All in violation of Title 18, United States Code, Sections 794(c)).

**AUTHORITY**:  Indictment, Count One.

-14-

**U.J.A. 84**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 97 of 352    Total Pages:(97 of 352)
Case 1:17-cr-00154-TSE   Document 159   Filed 05/26/18   Page 15 of 30 PageID# 1102

## DEFENDANT'S PROPOSED JURY INSTRUCTION J

## THE STATUTE OF THE OFFENSE CHARGED – COUNT ONE – CONSPIRACY TO GATHER OR DELIVER DEFENSE INFORMATION TO A FOREIGN GOVERNMENT

Section 794(c) of Title 18 of the United States Code provides that:

If two or more persons conspire to violate this section, and one or more of such persons

do any act to effect the object of the conspiracy, each of the parties to such conspiracy

shall be guilty of an offense against the United States.

**AUTHORITY**: 18 U.S.C. § 794(c).

**U.J.A. 85**

## DEFENDANT'S PROPOSED JURY INSTRUCTION K

## THE ESSENTIAL ELEMENTS OF THE OFFENSE CHARGED – COUNT ONE – CONSPIRACY TO GATHER OR DELIVER DEFENSE INFORMATION TO A FOREIGN GOVERNMENT

Count One of the indictment charges the defendant with conspiracy to gather or deliver defense information to a foreign government. In order for you to find the defendant guilty of the particular charge you are considering, the government must prove each of the following three elements beyond a reasonable doubt:

1. The conspiracy, agreement, or understanding as described in Count One of the indictment, was formed, reached, or entered into by two or more persons;

2. At some time during the existence or life of the conspiracy, agreement or understanding, the Defendant knew the purpose of the agreement, and, with that knowledge, then willfully joined the conspiracy, agreement or understanding; and

3. At some time during the existence or life of the conspiracy, agreement, or understanding, one of its alleged members knowingly performed one of the overt acts charged in the indictment and did so in order to further or advance the purpose of the agreement.

**AUTHORITY**: 2 O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, § 31.03 (6th ed. 2008).

-16-

**U.J.A. 86**

## DEFENDANT'S AMENDED PROPOSED JURY INSTRUCTION L

## FIRST ELEMENT – CONSPIRACY – EXISTENCE OF AN AGREEMENT

A criminal conspiracy is an agreement or a mutual understanding knowingly made or knowingly entered into by at least two people to violate the law by some joint or common plan or course of action. A conspiracy is, in a very true sense, a partnership in crime.

A conspiracy or agreement to violate the law, like any other kind of agreement or understanding, need not be formal, written, or even expressed directly in every detail.

The government must prove that the defendant and at least one other person knowingly and deliberately arrived at an agreement or understanding that they, and perhaps others, would communicate, deliver, or transmit information relating to the national defense to a foreign government by means or some common plan or course of action as alleged in count one of the indictment. It is proof of this conscious understanding and deliberate agreement by the alleged members that should be central to your consideration of the charge of conspiracy.

To prove the existence of a conspiracy or an illegal agreement, the government is not required to produce a written contract between the parties or even produce evidence of an express oral agreement spelling out all of the details of the understanding. To prove that a conspiracy existed, moreover, the government is not required to show that all of the people named in the indictment as members of the conspiracy were, in fact, parties to the agreement, or that all of the members of the alleged conspiracy were named or charged, or that all of the people whom the evidence shows were actually members of a conspiracy agreed to all of the means or methods set out in the indictment.

Unless the government proves beyond a reasonable doubt that a conspiracy, as just explained, actually existed, then you must acquit the defendant.

**U.J.A. 87**

**AUTHORITY**: 2 O'Malley, Grenig and Lee, <u>Federal Jury Practice and Instructions,</u> § 31.04 (amended to reflect charged offenses) (6th ed. 2008).

**U.J.A. 88**

## DEFENDANT'S PROPOSED JURY INSTRUCTION M

### BUYER-SELLER RELATIONSHIP

Proof of a simple buyer-seller relationship is insufficient to prove a conspiracy to communicate, deliver, or transmit information relating to the national defense.  In this way, "communication," "delivery," or "transmittal" under § 794(a) and "conspiracy" under § 794(c) are distinct crimes.

If, however, the transaction includes, in addition to the bare agreement inherent in the sale, an agreement that the buyer will re-communicate, re-deliver, or re-transmit the information, the two participants to the communication, delivery or transmittal have also "conspired" to the redistribution of the information, a separate offense.

To prove conspiracy, the government need not prove an explicit agreement.  It may rely upon indirect evidence from which the conspiracy agreement may be inferred.  For example, the volume of information delivered, if sufficiently great, may indicate that the parties have implicitly agreed to further redistribution.  The regularity of individual transactions also may indicate the existence of a conspiracy.  Indeed, any agreement made in addition to or beyond the bare buy-sell transaction may be taken to infer a joint enterprise between the parties beyond the simple communication, delivery or transmittal of information relating to the national defense, and thereby support a finding of conspiracy.  The existence of a single buy-sell transaction is at least relevant on the issue of whether a conspiratorial relationship exists.

**AUTHORITY**: *See United States v. Edmonds*, 679 F.3d 169, 174 (4th Cir. 2012), judgment vacated on other grounds, 568 U.S. 803, 133 S.Ct. 376, 184 L.Ed.2d 4 (2012).  *United States v. Yearwood*, 518 F.3d 220, 226 (4th Cir. 2008).  *United States v. Reid*, 523 F.3d 310, 317 (4th Cir. 2008).  *United States v. Mills*, 995 F.2d 480, 485 n. 1 (4th Cir. 1993).

**U.J.A. 89**

## DEFENDANT'S PROPOSED JURY INSTRUCTION P

## CONSPIRACY – MUST PROVE INTENT NECESSARY FOR UNDERLYING OFFENSE

In order to sustain its burden of proof under Count One of the indictment – conspiracy to gather or deliver national defense information to a foreign government – the government must prove that the defendant acted with the same intent required to commit the offense of gathering or delivering national defense information to a foreign government.  That is, the government must prove each of the following two elements beyond a reasonable doubt:

First, the government must prove that the defendant knew facts from which he concluded or reasonably should have concluded that the information he conspired to gather or deliver was of a type which could be used to the injury of the United States or to the advantage of a foreign nation; and

Second, the government must prove that the defendant acted in bad faith.  Bad faith means that the government must prove that the defendant acted with the purpose to either harm the United States or aid a foreign nation.

**AUTHORITY**:  *United States v. Garcia*, 587 F.3d 509, 515 (2d Cir. 2009) (government must show that defendant engaged in conspiracy with specific intent to commit offense that is object of the conspiracy); *United States v. Kapp*, 781 F.2d 1008, 1010 (3d Cir. 1986) (same); *United States v. Yossunthorn,* 167 F.3d 1267 (9th Cir. 1999) (same); *United States v. Scarbrough*, 990 F.2d 296, 301 (7th Cir. 1993) (same); *Gorin v. United States*, 312 U.S. 19, 27-28 (1941); *United States v. Truong Dinh Hung*, 629 F.2d 908 (4th Cir. 1980)); *United States v. Rosen*, 445 F.Supp.2d 602, 626 (E.D. Va. 2006).

**U.J.A. 90**

## DEFENDANT'S PROPOSED JURY INSTRUCTION V

## "KNOWINGLY"--DEFINED

The term "knowingly", as used in these instructions to describe the alleged state of mind of the defendant means that he was conscious and aware of his action, realized what he was doing or what was happening around him, and did not act because of ignorance, mistake, or accident.

**AUTHORITY**:  1A O'Malley, Grenig and Lee, Federal Jury Practice and Instructions, § 17:04 (6th ed. 2008).

**U.J.A. 91**

## DEFENDANT'S  PROPOSED JURY INSTRUCTION W

### "WILLFULLY" - DEFINED

You have been instructed that in order to sustain its burden of proof the government must prove that the defendant acted willfully. "Willfully" means to act with knowledge that one's conduct is unlawful and with the intent to do something the law forbids, that is to say with the bad purpose to disobey or to disregard the law.

The defendant's conduct was not "willful" if it was due to negligence, inadvertence or mistake, or was the result of a good faith misunderstanding of the requirement of the law. In this connection, it is for you to decide whether the defendant acted in good faith, that is, whether he sincerely misunderstood the requirements of the law, or whether he knew what he was required to do and deliberately did not do so.

**AUTHORITY**: 1 L. Sand, et al., Modern Federal Jury Instructions, Section 3A.01, Instruction 3A-3 (2013).

-29-

**U.J.A. 92**

Case 1:17-cr-00154-TSE   Document 159   Filed 05/26/18   Page 30 of 30 PageID# 1117

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of May, 2018, I will electronically file the foregoing

with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to

the following:

> John T. Gibbs
> Assistant U.S. Attorney
> Office of the United States Attorney
> 2100 Jamieson Avenue
> Alexandria, Virginia 22314
> (703) 299-3700
> (703) 299-3981 (fax)
> Email: john.gibbs@usdoj.gov

Pursuant to the Electronic Case Filing Policies and Procedures, a courtesy copy of the

foregoing pleading will be delivered to Chambers within one business day of the electronic filing.

> By:            /s/
> Geremy C. Kamens
> Va. Bar No. 41596
> Federal Public Defender
> Todd Richman
> Va. Bar No. 41834
> Assistant Federal Public Defender
> Office of the Federal Public Defender
> 1650 King Street, Suite 500
> Alexandria, Virginia 22314
> Telephone: (703) 600-0800
> Facsimile: (703) 600-0880
> Geremy_Kamens@fd.org

**U.J.A. 93**

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

------------------------------x
                              :
UNITED STATES OF AMERICA,     : Criminal Action No.
                              :
           versus             : 1:17-CR-154
                              :
KEVIN PATRICK MALLORY,        : May 30, 2018
                              :
           Defendant. : Volume I of VIII
------------------------------x

The above-entitled Jury Trial was continued before the Honorable T.S. Ellis, III, United States District Judge.

A P P E A R A N C E S

FOR THE GOVERNMENT:

        UNITED STATES ATTORNEY'S OFFICE
        John T. Gibbs, Esquire
        Colleen E. Garcia, Esquire
        Jennifer K. Gellie, Esquire
        US Attorney's Office
        2100 Jamieson Avenue
        Alexandria, VA 22314

FOR THE DEFENDANT:

        OFFICE OF THE FEDERAL PUBLIC DEFENDER
        Geremy C. Kamens, Esquire
        Todd Richman, Esquire
        1650 King St
        Suite 500
        Alexandria, VA 22314

OFFICIAL UNITED STATES COURT REPORTER:

        MS. TONIA M. HARRIS, RPR
        United States District Court
        401 Courthouse Square
        Ninth Floor
        Alexandria, VA 22314
        703-646-1438

2

TABLE OF CONTENTS
TRIAL
WITNESSES

On behalf of the Government:

Michael Londregan

Direct examination by Ms. Garcia................ 45
Cross-examination by Mr. Kamens................... 66
Redirect examination by Ms. Garcia.............. 78

Ralph Stephenson

Direct examination by Mr. Gibbs................. 80
Cross-examination by Mr. Kamens................ 88

Peter Napoleon

Direct examination by Ms. Garcia................ 100
Cross-examination by Mr. Richman............... 115

Waldmar Prokopiuk

Direct examination by Ms. Garcia................ 123

John Doe

Direct examination by Ms. Gellie................ 131
Cross-examination by Mr. Kamens................. 143
Redirect examination by Ms. Gellie.............. 157

Michael Dorsey

Direct examination by Ms. Garcia................ 159
Cross-examination by Mr. Kamens................. 190

Paul Lee

Direct examination by Ms. Gellie................ 214

EXHIBITS

On behalf of the Government:

Admitted

Number 1-2.......................................... 52
Number 1-3.......................................... 52
Number 1-1.......................................... 54
Number 1-4 - 1-7.................................... 54

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 95**

3

Number 1-8............................................. 61
Number 1-10............................................ 63
Number 5-1............................................. 107
Number 2-1............................................. 135
Number 2-2............................................. 137
Number 2-3............................................. 163
Number 8-1A............................................ 220
Number 8-1C............................................ 227
Number 8-2............................................. 239

EXHIBITS

On behalf of the Defendant:

Admitted

Number 3-A1............................................ 210

MISCELLANY

Preliminary matters.................................... 04
Opening statements by Ms. Gellie....................... 15
Opening statements by Mr. Kamens....................... 36
Certificate of Court Reporter.......................... 246

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 96**

U.S. v. Mallory

4

**P R O C E E D I N G S**

(Court proceedings commenced at 9:21 a.m.)

THE COURT:  All right.  Good morning.  You may call the case.

THE DEPUTY CLERK:  United States versus Kevin Patrick Mallory.  Criminal Case Number 1:17-CR-154.

MR. GIBBS:  Good morning, Your Honor.  John Gibbs, Jennifer Kennedy Gellie, and Colleen Garcia on behalf of the United States.

THE COURT:  All right.  Good morning.  Mr. Kamens.

MR. KAMENS:  Good morning, Your Honor.  Jeremy Kamens and Todd Richman on behalf of Mr. Mallory.

THE COURT:  And Mr. Mallory is present in the courtroom.

All right.  We will proceed now to call the jury in and I will first call the roll and then we'll proceed with preliminary instructions and then we will have opening statements.  At that time we'll move the podium.

All right.  You may bring the jury in.

MS. GELLIE:  Your Honor, just one brief clarification.  To the extent that this part of the courtroom has been cleared for our government witness, that person will not be testifying until after lunch at the soonest.  So the Government would have no objection if folks come in and want to sit in that part of the courtroom.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 97**

USCA4 Appeal: 19-4385 Doc: 27-1 Filed: 08/07/2020 Pg: 110 of 352 Total Pages:(110 of 352)

THE COURT: All right. Anybody who wants to move back is entitled to --

MR. KAMENS: We are putting up a demonstrative exhibit there and so their vision may be blocked.

THE COURT: Now. I'm glad you mentioned that Mr. Kamens. You have the tripod, the stands over there.

MR. KAMENS: We do.

THE COURT: It can be put up when you make your opening statement, but it must be removed when you're done. It cannot remain up. The same is true for any exhibits, Ms. Gellie that you intend to use. In other words, we don't want something to remain up when it's not being actually referred to or used.

MS. GELLIE: Understood, Your Honor.

THE COURT: You may bring the jury in, sir.

(Jury in.)

THE COURT: All right. You may be seated.

Good morning, ladies and gentlemen. We'll begin, as always, with calling the roll. But I'll begin first by saying that when you all came in you stood. You need not. Everyone stands for the jury. So when you come in, you may be seated immediately. Because we stand for you. I stand several times because of my back.

All right. Ms. Pham, you may call the roll.

THE DEPUTY CLERK: Ladies and gentlemen, as I call

U.J.A. 98

U.S. v. Mallory

6

your name --

THE COURT:  Just a moment.  Would you stand just for this one time, please, ladies and gentlemen.  When your name is called.

THE DEPUTY CLERK:  Juror 59, Matthew Scott Reynolds.

THE JUROR:  Present.

THE COURT:  Present.  That's fine.  Thank you.  Mr. Reynolds.

THE DEPUTY CLERK:  Juror 2, Suresh Bhandari.

THE JUROR:  Here.

THE DEPUTY CLERK:  Juror 72, Mary Brienne Tierney.

THE JUROR:  Here.

THE DEPUTY CLERK:  Juror 21, Alice Daniel.

THE JUROR:  Present.

THE DEPUTY CLERK:  Juror 71, Armelle Pierrelle Tallec.

THE JUROR:  Here.

THE DEPUTY CLERK:  Juror 30, Jennifer Elizabeth Gerbi.

THE JUROR:  Present.

THE DEPUTY CLERK:  Juror 56, Marcia O'Toole.

THE JUROR:  Here.

THE DEPUTY CLERK:  Juror 31, Christy Stone Gorman.

THE JUROR:  Here.

THE DEPUTY CLERK:  Juror 28, Mary Buchanan Frankel.

**U.J.A. 99**

U.S. v. Mallory

7

THE JUROR: Here.

THE DEPUTY CLERK: Juror 32, Gary Alan Gortenburg.

THE JUROR: Here.

THE DEPUTY CLERK: Juror 9, Carrie Cathleen Bowman-Dalley.

THE JUROR: Present.

THE DEPUTY CLERK: Juror 33, Paige Taylor Gray.

THE JUROR: Present.

THE DEPUTY CLERK: Juror 20, Nicole D'Antuono.

THE JUROR: Here.

THE DEPUTY CLERK: Juror 17, Kate Alison Clarke.

THE JUROR: Here.

THE DEPUTY CLERK: Juror 51, Naveen Rammeduri.

THE JUROR: Here.

THE DEPUTY CLERK: Juror 54, Joseph Michael Mondoro.

THE JUROR: Present.

THE DEPUTY CLERK: Are there any jurors I have not called?

THE COURT: All right. Ladies and gentlemen, again, good morning. Let me confirm that all of you were successful in following the Court's instructions to refrain from discussing the matter with anyone.

All right. I see everyone nodding affirmatively. And I assume that you -- I was correct that there was curiosity, you were asked questions, and you resisted the

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 100**

—U.S. v. Mallory—

8

temptation.  As this case goes on, you will find that that

courtesy falls off very quickly and fairly soon they won't ask

you any questions.  They won't be interested any longer.  It

always happen that way.  And then there will come a time when

they don't believe you've been doing what you say you've been

doing.  I'll let you deal with that when that time arrives.

All right.  Now, ladies and gentlemen now that

you've been sworn I'm going to give you some instructions to

guide you in your participation in this case.  First and very

importantly, it will be your duty to find what the facts in

this case are.  You will have to determine from the evidence

presented what the facts are.  And you and you alone will be

the sole judges of the facts in this case.  You will then have

to apply to the facts as you find them.  The law that the

Court will give to you in the form of instructions at the end

of the case.  And you must follow the law, those instructions

whether you agree with them or not.  Nothing the Court may say

or do, during the course of the trial, is intended to indicate

or should be taken by you as indicating what your verdict

should be.  What your verdict is, is your sole and exclusive

duty and responsibility.

Now, the evidence in which you will find the facts

in this case will consist of the testimony of the witnesses,

who will testify from the witness stand and documents and

other things received into the record as exhibits and any

—Tonia M. Harris OCR-USDC/EDVA 703-646-1438—

EASTERN DISTRICT OF VIRGINIA

U.J.A. 101

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 114 of 352    Total Pages:(114 of 352)

facts that the lawyers may agree or stipulate to or that the Court may instruct you that you may find.

There are, however, certain things that are not evidence and must not be considered by you.

First, the lawyers' statements, the lawyers' arguments, and the lawyers' questions by themselves are not evidence.  It's the answers that constitute evidence.  So statements, arguments.  And questions by the lawyers are not evidence.

Objections to questions are not evidence.  Lawyers have an obligation to their clients to make objections when they believe evidence is being offered that is improper under the rules of evidence.  The essence of a fair trial is that it be conducted pursuant to the rules of evidence and that your verdict be based solely on admissible evidence.

So you should not be influenced by the objection or by the Court's ruling on it.  If the objection is sustained, then you should ignore the question.

If the objection is overruled, then you may treat the answer to that question just as you would treat the answer to any other question.  And if you're instructed by the Court that some item of evidence is admitted for some limited purpose, you -- you must adhere to that instruction and consider that evidence solely for that limited purpose.

Now, there are two kinds of evidence from which you

USCA4 Appeal: 19-4385     Doc: 27-1     Filed: 08/07/2020     Pg: 115 of 352 Total Pages:(115 of 352)

may find the facts of the case.  There is direct evidence, that is direct proof of a fact, such as testimony of an eyewitness.  And there is circumstantial evidence that is proof of facts from which you may infer or conclude that other facts exist.  And I'll give you further instructions on that as well as other matters at the end of the case, but for now you should have in mind that you may consider both direct and circumstantial evidence.

Now, it will be up to you to decide which witnesses to believe, which witnesses not to believe, and how much of each witness' testimony to accept or reject.  You and you alone are the sole judges of the credibility of the witnesses and the weight and affect that their evidence or their testimony deserves.  And I'll give you some guidelines for determining the credibility of witnesses at the end of the case.

Now, this is, as you know, a criminal prosecution and there are certain rules that you must have in mind and let me review those with you at this time.

There are three basic rules for you to keep in mind. First, the defendant, as I told you at the outset is presumed innocent unless and until the jury finds otherwise.  The indictment against the defendant brought by the Government is only an accusation, nothing more.  It's not proof of guilt or evidence of any kind.  The defendant therefore starts out with

USCA4 Appeal: 19-4385   Doc: 27-1      Filed: 08/07/2020   Pg: 116 of 352 Total Pages:(116 of 352)

——————U.S. v. Mallory——————

11

a clean slate.

Now, the second rule is that the burden of proof is on the government until the very end of the case.  The defendant has no burden to prove his innocence or to present any evidence or to testify.  And since the defendant has a right to remain silent, the law prohibits you in arriving at your verdict from considering that the defendant may not have testified.

And the fourth or third rule rather is that the Government must prove defendant's guilt beyond a reasonable doubt and I'll give you further instructions on this point later.  But bear in mind, in this respect, that a -- that in this respect a criminal case is different from a civil case.

Now let me give you some words about your conduct as jurors.  As I told you yesterday, I'm going to repeat it today, you are not to discuss the case with anyone during the course of the trial.

You're not to discuss it among yourselves or with anyone else.  Not until you retire to deliberate on -- at the end of the case on your verdict, are you to discuss the matter among yourselves.  If anyone should try to talk to you about it, stop them and call that to the Court's attention promptly.

Next, do not listen or read anything about this case from any source.  Don't read anything that you might see about it.  I don't know that you will, but see anything.  But if you

**U.J.A. 104**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 117 of 352 Total Pages:(117 of 352)

U.S. v. Mallory

12

do, don't read it.

Now, do not undertake to do any research on your own. And I mentioned that last evening. Don't use any electronic device or even these things called books to look up anything.

I have a grandson and every time I tell him to go to the dictionary or an encyclopedia, he looks at me as if I'm from another century, which, of course, I am. But it's quite amazing how much information is electronically at people's fingers. They live in a new age. I'm glad I lived long enough to see it.

I don't use it. I don't use a computer. I irresolutely in the last century.

Now, so do not undertake to do any research or investigation about the case on your own and do not form any opinion until all the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

I told you that you may take notes. We furnish booklets for you for that. The booklets must stay here. When there's a recess, Mr. Flood, the court security officer, will collect them, maintain their security during the recess, including overnight. And I assure you he can ensure that no one looks at them. No one will look at these books. So you may use them as you wish. Let me amend that a bit.

We may be hearing evidence in the course of this

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 105

U.S. v. Mallory

13

case that the government believes is classified. And you should take whatever notes you want to take. But at some point, I need to tell you that after the case is entirely over your books may be examined to ensure that it doesn't contain classified information. But the books ultimately will be yours to take home. Ultimately. It may have some redactions in it, but you will know what those redactions are.

Now, the trial will now begin. First we'll have opening statements.

Ms. Gellie has forecasted that her opening statement will take no longer than 30 to 35 minutes. And she will use some exhibits in the course of that. If they won't be on tripods it will be on the -- on the screen.

MS. GELLIE: Correct, Your Honor.

THE COURT: All right. And then Mr. Kamens will you or Mr. Richman make the opening statement for the defendant?

MR. KAMENS: Your Honor, I will making the opening statement and we are also using a demonstrative from the last century over there. We will also have images on the screen as well.

THE COURT: All right. And those will be up only as long as they're used and they'll be taken down.

Now, a demonstrative evidence means that it doesn't -- it isn't admissible, it may reflect admissible evidence. And it's used to help lawyers make their point, but it won't

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 106**

U.S. v. Mallory

14

be in the jury room with you, because it is not evidence

that's admissible.  But it's permissible for the lawyers to

use it.  That may be true of some of yours as well Ms. Gellie,

is that correct?

MS. GELLIE:  We are only using one exhibit in

opening, Your Honor.

THE COURT:  And is it an exhibit you expect will be

admitted into the record?

MS. GELLIE:  That is correct, Your Honor.

THE COURT:  All right.  So that one you would have

back in the jury room with you.

All right.  Then after the opening statements, the

government will then present its witnesses and counsel for the

defendant may cross-examine them.  And following the

government's case the defendant may, if he wishes, present

witnesses whom the government may cross-examine.  And after

all the evidence is in, the attorneys will present their

closing arguments in which they'll summarize and interpret the

evidence for you.  But if the -- if anything they say differs

from what you recall the evidence to be, it is your

recollection that controls because you're the sole judges of

the facts of this case.  And after the closing arguments, then

I will give you instructions on the law and permit you to

retire and deliberate on your verdict.

Now we'll take a mid-morning recess and a

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 107**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 120 of 352    Total Pages:(120 of 352)

———————————————U.S. v. Mallory———————

15

mid-afternoon witness.  I'll try to forecast that.  If at any time any of you need a recess for some truly exigent reason, I give you the privilege of raising your hand or giving me the sports time signal and I will call a recess and I will not inquire of you of the reason for it.  So I ask that you not avail yourself of that privilege unless it's truly an exigent and emergency reason.  But I want you to know that that's available and you're certainly free to exercise that if you need to.

Now, we'll proceed now with the opening statements.  I anticipate after we complete this, we'll go to a witness.  And at some time around 10:30 or closer to 11:30 we'll take a recess.  I hope you filled in your luncheon menus.  And it was my forecast that baked Alaska might not make it this time?

Well hopes spring internal and you may yet find it.

All right.  Mr. Flood you may move the podium, please.

All right Ms. Gellie.  Are you ready to make the government's opening statement?

MS. GELLIE:  I am, Your Honor.

THE COURT:  All right.  You may proceed.

**OPENING STATEMENT**

MS. GELLIE:  May it please the Court.

Ladies and gentlemen, good morning.

All those who serve our country take an oath.  It is

————————————Tonia M. Harris OCR-USDC/EDVA 703-646-1438——

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 108**

———————U.S. v. Mallory———————

16

a pledge to defend the Constitution against all enemies, foreign and domestic, and to bear allegiance to it.  Kevin Mallory once served our country and he, too, took this oath as he entered into service as a United States intelligence officer.  But Kevin Mallory violated that oath to this nation and its Constitution.

In the spring of 2017, facing mounting personal debt, he made a decision to sell some of the sensitive secrets he learned through his government work to a foreign government, to China.

In the spring of 2017, Kevin Mallory betrayed his country and its citizens and sold and attempted to sell secret and top secret information to a Chinese intelligence officer.

On April 21, 2017, the defendant, Kevin Mallory, was sitting in a long haul flight back to the United States from Shanghai, China.  He's a six-year former member of the United States intelligence community, having served as both a clandestine case officer for the Central Intelligence Agency, or CIA, and an intelligence officer for the Defense Intelligence Agency, or DIA.

This is the second such return trip to Shanghai Mr. Mallory had taken in less than two months.  On this particular trip, Kevin Mallory has his son with him. Mr. Mallory, could be any passenger on a 14-hour flight returning to the United States, tired, a little bit

———————Tonia M. Harris OCR-USDC/EDVA 703-646-1438———————

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 109**

U.S. v. Mallory

17

dishevelled, but he is not just any passenger.

Unlike probably everyone else on that flight, Kevin Mallory bears with him the fruits and tools of his crime, the fruits and tools of espionage.

Before heading through customs at Chicago O'Hare airport that day, Kevin Mallory fills in the customs forms that everyone returning to this country from abroad has to fill out.  On one of those forms, there's a question that asks whether he has more than $10,000 in currency on him. Mr. Mallory checks the "no" box.  That is a lie.

At the airport, Kevin Mallory is selected by Customs and Border Protection, often called CBP, for what is called a secondary screening.  As part of that process, two CBP officers take Mr. Mallory out of the customs processing line to ask him some questions.

They ask Mr. Mallory what he was doing in China.  He tells CBP that his primary purpose in visiting China was a father/son trip and to meet with an acquaintance about possibly developing an anti-bullying program.  These statements are also lies.

As part of their secondary inspection, the CBP officers searched Mr. Mallory's luggage.  During that search, they find $16,500 in cash.  They also find a Samsung Galaxy Note 4 smartphone in a box in one of the suitcases.  This Samsung phone will become important later on.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 110**

USCA4 Appeal: 19-4385    Doc: 27-1        Filed: 08/07/2020    Pg: 123 of 352 Total Pages:(123 of 352)

The CBP officers ask Mr. Mallory about the phone. And he says it's a gift for his wife.  That, too, is a lie. Upon finishing their inspection, the CBP officers allow Mr. Mallory to amend his customs declaration and pay a tariff on the $16,500 before letting him go.

Three days after the secondary search in Chicago, Kevin Mallory reaches out to a former colleague at the CIA. You will hear from witnesses during the course of this trial that Kevin Mallory worked as a clandestine case officer, sometimes called an operations officer at the CIA, as well as an intelligence officer to the DIA before returning to the CIA as a contractor.

In all of those roles, Mr. Mallory held a top secret security clearance and had access to classified government information.

So just three days after being questioned by Customs and Border Protection, Mr. Mallory texts someone he knew during his time as a CIA contractor.  You will hear from the CIA contractor, who will testify under a pseudonym in this case due to the classified nature of his work at the CIA.

Kevin Mallory asked his contact to connect him with someone at the CIA who works on China issues .  This is not the first time Kevin Mallory has reached out to former CIA colleagues in 2017.  Just a couple of months earlier in February, Kevin Mallory had reached out to the same contact as

USCA4 Appeal: 19-4385     Doc: 27-1     Filed: 08/07/2020     Pg: 124 of 352 Total Pages:(124 of 352)

U.S. v. Mallory

19

well as a second CIA employee.

Mr. Mallory asked both individuals to put him in touch with someone working on China issues at the CIA. The defendant did not know it at the time, but both former CIA colleagues immediately reported the defendant's contacts.

Both reported it because as CIA security clearance holders, they are trained to report contacts they deem to be suspicious. Neither contact put Mr. Mallory in touch with anyone else at the CIA in February of 2017.

And so having not met with anyone in CIA in February, three days after being questioned by CBP in April, Mr. Mallory, again, reaches out to his contractor contact, again, asking to be put in touch with someone who focuses on China.

Just a day after sending that April text on April 25, having not heard back from his contact, Mr. Mallory texts again asking his contact to please confirm receipt. Without waiting for response, a little over a hour later Kevin Mallory walks into a FedEx, the FedEx closest to his house in Leesburg, and pays to scan a stack of documents to a microSD card, a small document storage device that can be inserted into a computer or a mobile phone.

This April 25 FedEx visit also becomes important later on.

Four days after that FedEx visit, Mr. Mallory's CIA

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

**U.J.A. 112**

EASTERN DISTRICT OF VIRGINIA

U.S. v. Mallory

20

contractor contact responds that he has passed Mr. Mallory's request to meet with someone up the chain at CIA.  A couple of days later, Mr. Mallory responds to his contact to tell him that someone at the CIA did finally get in touch with him. You will hear from that person, a CIA investigator named Mike Dorsey.

Kevin Mallory meets with Mr. Dorsey on May 12th at CIA headquarters.  The two speak for over four hours.  The entire interview is videotaped, and you'll be seeing portions of the interview in the coming days.

During that May 12th interview, Kevin Mallory tells Mr. Dorsey that he had been approached on social media by someone claiming to be a business recruiter in China.  That recruiter had handed Mr. Mallory off to a second individual in China going by the name Michael Yang.  Michael Yang held himself out to be an employee of a Chinese think tank, the Shanghai Academy of Social Sciences.

During the multiple hours of discussion at the CIA, Kevin Mallory tells Mr. Dorsey that he suspects Michael Yang may, in fact, be a Chinese intelligence officer, a Chinese spy.  Mr. Dorsey asked Kevin Mallory whether he had provided any documents to Yang.  Mr. Mallory said he had not. Mr. Mallory reiterates more than once that he has not provided any documents to the Chinese spy.  These statements, you will learn, are also lies.

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 126 of 352 Total Pages:(126 of 352)

Kevin Mallory tells Mr. Dorsey that he was paid a total of $25,000 for two trips to Shanghai and multiple days of meetings with Yang and his boss.  $25,000 for meetings. Mr. Mallory also notes that Yang paid for his travel, hotel, and certain expenses during both trips to China.

Kevin Mallory also tells Mr. Dorsey during that May 12th interview that on his second trip to China, Yang, the suspected Chinese spy, gave him what Mallory called a CovCom device.  And by CovCom, Mr. Mallory explains he means covert communications.

This is the Samsung Galaxy Note 4 that CBP officers found in Mr. Mallory's luggage in Chicago, the one that Mr. Mallory told them was a gift for his wife.

Kevin Mallory offers to meet with Mr. Dorsey again to show him the CovCom device.  Mr. Dorsey takes him up on that offer and sets up a second meeting at an Ashburn Hotel for May 24, 2017.  When Kevin Mallory arrives at the hotel for that May 24th meeting, Mr. Dorsey takes him upstairs to a hotel room.  There, Mr. Mallory is met by two FBI special agents and an FBI computer forensic examiner.  Mr. Mallory expresses surprise that FBI agents are there, but agrees to speak with them.

He also agrees to let the FBI make an image of the CovCom device, the Samsung Galaxy Note 4, and images a copy of all of the information on a computer and mobile device.  The

—U.S. v. Mallory—

22

FBI computer forensic examiner creates an image that day while Mr. Mallory is speaking with the agents.

During the May 24 interview, Kevin Mallory reiterates his belief that Michael Yang is a likely Chinese intelligence officer, a Chinese spy.  The FBI agents ask Mallory multiple times about whether he provided any sorts of documents to Yang.  Kevin Mallory claims that day that the only written information he provided to Yang was in the form of two unclassified papers based on information from his head and the internet.

Once again, Mr. Mallory is lying.

Over the course of his conversation with the FBI, Mr. Mallory offers to demonstrate how the CovCom device works. He explains the phone is enabled with a special custom application that permits secure communications between himself and Yang.  The custom app works by hooking into the commercially-available application WeChat.

Kevin Mallory further explains that through this custom application, he is able to transmit information merged or hidden within an image, a technique called steganography, to send information to Yang without the possibility that the information will be intercepted.

He explains that to transmit documents using the CovCom, he must insert a microSD card containing documents into the CovCom device before logging into the custom

—Tonia M. Harris OCR-USDC/EDVA 703-646-1438—

EASTERN DISTRICT OF VIRGINIA

U.J.A. 115

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 128 of 352  Total Pages:(128 of 352)

application.  The FBI Special Agent asked Mr. Mallory if he has used the custom app to send any documents to Yang. Mr. Mallory tells him he has only ever sent some text messages using the custom app.

Yet again, Mr. Mallory is lying.

As he explains how the custom app works, Kevin Mallory offers to log in and demonstrates to the agents.  He tells the agents that they won't be able to see any of the secure messages because the custom app is designed to automatically delete the chat history.  He is mistaken on this point.

Kevin Mallory logs into the custom app and immediately reveals a few screens worth of chat history.  The agents note that Mr. Mallory is visibly surprised to see that chat history.  Mr. Mallory explains to the agents that the chats are, in fact, between himself and Michael Yang.

Mr. Mallory also explains that the outgoing messages are his using the screen name "Beans" and the inbound messages are from Yang, using the screen name "My Yang."

In reviewing that chat history, the agents see reference to a foreign country's intelligence service.  They also see Mr. Mallory mentioned bringing additional documents to Yang in China on his next visit.  Kevin Mallory wrote to Yang and you'll see it on your screen, ladies and gentlemen, "I can also come in the middle of June.  I can bring the

U.S. v. Mallory

24

remainder of the documents I have at that time."

Despite this message, Kevin Mallory claims, once again, he has not provided Yang with any documents other than the white papers, nor does he intend to do so.  He claims the statements about documents were just meant to keep Yang interested in continuing the relationship.  Once again, these statements are false.

Kevin Mallory left the May 24 FBI interview with the CovCom still in his possession.  Following that interview, the FBI's reverse engineering consultant, Jim Hamrock, begins analyzing the image of the CovCom.  He finds several key pieces of evidence in that image.

First, Mr. Hamrock extracts a log file with a history of secured chats sent and received using the custom application.  In those chats, Kevin Mallory and Yang, the Chinese spy, discussed documents Yang had already received from Kevin Mallory as of May 3, 2017.

In one of the chats, Yang asked why certain information had been blacked out.  Yang writes, "Anyway, I suggest you send all and retype the handwriting.  And No. 1 is obvious, the first page of a complete article.  Where is the else?  And why is it black on top and bottom?"

Mr. Mallory responds a few messages later that the black was to cross out the security classification, top secret Orcon.

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 130 of 352  Total Pages:(130 of 352)

————————U.S. v. Mallory————————

25

In the chats, the two men also discuss payments for the documents and future documents Mr. Mallory says he can send.  Mr. Mallory writes, "I have arranged for a USD account in another name.  You can send the funds broken into four equal payments over four consecutive days."

In addition to the chats, Mr. Hamrock pulls out scanned copies of a written table of contents and eight handwritten cover pages.  The title on the eight cover pages line up the list of documents and the handwritten table of contents.

Mr. Hamrock also finds four document remnants on the CovCom device.  He is able to see visible U.S. government classification markings on those documents, some as high as top secret.

The CIA determines that three of the four documents contained CIA information classified at the secret and top secret level.  The DIA later determines that the fourth document contains DIA information classified at the secret level.

On June 22, 2017, Kevin Mallory is placed under arrest for, among other charges, passing and attempting to pass national defense information to aid a foreign government.

Following the arrest, federal agents began to search Kevin Mallory's home.  During that search, agents find the CovCom device, the Samsung Galaxy Note 4, and two other items

————————Tonia M. Harris OCR-USDC/EDVA 703-646-1438————————

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 118**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 131 of 352 Total Pages:(131 of 352)

of particular interest.

First, buried in the back of a junk tray within Mr. Mallory's closet mixed in with safety pins, Tylenol packets, the usual random items we all keep in our homes, Special Agent Melinda Capitano finds a small, bulb piece of foil.  It looks like balled-up gum or some other trash stuck at the back of that junk tray.  Special Agent Capitano opens the balled up foil and discovers a Toshiba microSD card, about the size of your thumbnail.

Knowing that the search team is particularly interested in SD cards that could contain government information, Special Agent Capitano immediately takes that Toshiba SD card to the on-site computer forensic examiner, Ryan Lamb.

Special Agent Lamb reviews that Toshiba microSD card immediately.  He sees nine documents, most of which has visible U.S. government classification markings at the secret and top secret levels.  Of the nine documents, eight have a handwritten cover page.  These handwritten cover pages match those found on the CovCom device.

The ninth document on the Toshiba SD card is a handwritten table of contents.  This is also identical to the handwritten table of contents found on the image of the CovCom device.

In the kitchen an agent finds a second microSD card,

USCA4 Appeal: 19-4385     Doc: 27-1     Filed: 08/07/2020     Pg: 132 of 352     Total Pages:(132 of 352)

this one a Kingston brand.  In the deleted space on the Kingston SD card, FBI is subsequently able to find the same nine documents, eight documents with handwritten cover pages, plus the handwritten table of contents that were found on both the Toshiba microSD card and the CovCom.

Four of the documents from the two SD cards are also the same as the partial and full documents FBI found on the CovCom device image.

The remaining four documents from the SD cards are confirmed to be CIA and DIA documents containing information classified at the secret and top secret levels.

Based on the secure chats Kevin Mallory and Michael Yang, the Chinese spy, it is apparent that Mr. Mallory successfully passed to Yang a paper containing classified DIA information that was found on both of the microSD cards.

For example, on May 3 Michael Yang writes that his boss is interested in the products, but No. 1 is incomplete on the first page and the handwriting cannot be read properly. You will see that document, Document No. 1, and you will see that it consists of one typed page and two handwritten yellow pages.

The information Kevin Mallory sent to Yang in that document included discussion of a human asset program.  That is a program involving people who are secretly gathering intelligence for the benefit of our country.

**U.J.A. 120**

U.S. v. Mallory

28

There is no evidence that Kevin Mallory made any attempt to make contact with anyone at the Defense Intelligence Agency before passing this information to Yang. There is no evidence that Kevin Mallory was authorized to pass this information.

FBI Special Agents reviewed the properties for the documents on the two SD cards.  The Toshiba files have names that line up with the content of the documents, such as FISA, which includes information related to core authorized surveillance under the Foreign Intelligence Surveillance Act.

The Kingston files, however, are saved with titles showing a date and time stamped.  Each one starts out 20170425, and then in hour, minute, seconds.  April 25, 2017, followed by time.  The properties for the documents on both the Kingston SD card and the Toshiba card found in Kevin Mallory's home showed that each document was scanned on April 25, 2017 around 4:00 p.m.

The properties for the documents also show that they were scanned on a Canon C700.  This is a commercial scanner. FBI agents decide to drive out to the FedEx closest to Kevin Mallory's house.  The agents review surveillance footage from April 25 around the time matching the time stamps from the nine documents.  On that footage, they see Kevin Mallory enter the FedEx location on April 25, which is the trip he made immediately after texting his contacts at the CIA that same

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 134 of 352 Total Pages:(134 of 352)

———————U.S. v. Mallory———————

29

day.

In the surveillance footage, the agent see Kevin Mallory hand a stack of papers to a FedEx clerk.  And they see that clerk scan those documents to a SD card.  The FedEx received for that April 25 transaction shows that the number of pages scanned exactly matches the total number of pages for the handwritten table of contents, handwritten cover sheet, and eight classified documents found on the Toshiba and Kingston SD cards.  The receipt also shows that Kevin Mallory paid to have the documents shredded after they were scanned.

Following the June 22 search of Kevin Mallory's home, FBI once again analyzes the CovCom device, the Samsung Galaxy Note 4, but it is not the same when they last looked at it.  They discover certain key changes to that device since they imaged it on May 24.

First, WeChat the parent application the custom app works through for secure communications, has been deleted.

Second, the custom apps database with the history of secure chats has also been wiped at some point between May 24 and June 22.

FBI is still able, however, to pull the same four classified remnants from the latest Samsung image.

On June 24, just two days after his arrest, Kevin Mallory calls his family from jail.  During that call, he asked them to look for an unnamed item to see whether FBI

———————Tonia M. Harris OCR-USDC/EDVA 703-646-1438———————

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 122**

————————————————————U.S. v. Mallory————

30

seized it during the search.  Over the course of the call, it becomes clear that Mr. Mallory is looking for the Toshiba SD card containing the classified government documents.  That's the SD card that was found balled up in tinfoil in Mr. Mallory's closet.

You'll hear that jail call during this trial.

Those facts, ladies and gentlemen, occurring over just a few months in 2017, are why we are all here today. Those facts demonstrate why Mr. Mallory is guilty of violating 18 United States Code Section 794, which makes it a crime to provide or attempt to provide national defense information to a foreign government with the attempt or intent to harm the United States or benefit that government.  It also makes it a crime to conspire with someone else to gather and pass national defense information to a foreign government.

Now, Judge Ellis will explain a lot to you at the close of this case, and what Judge Ellis says is the law for you to consider.

But a few things you need to know now.  The Government must show certain things in order to prove these charges.

First, the Government will show that Kevin Mallory did communicate and deliver in some way certain information or documents to an agent, employee, or citizen of China.

Second, the Government must show that such

————————————————Tonia M. Harris OCR-USDC/EDVA 703-646-1438————

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 123**

U.S. v. Mallory

31

information related to the national defense of the United States.

Third, the Government must show that Kevin Mallory acted with intent or reason to believe that that information was to be used to the injury of the United States for the advantage of China.

And fourth, the Government must show that Kevin Mallory acted willfully, meaning that he had knowledge that what he was doing was unlawful.

To prove that the information that Kevin Mallory provided or attempted to provide to a Chinese intelligence officer related to the national defense, the Government would also need to prove both that the unauthorized release of that information did have the potential to harm the United States and that the information was closely held by the Government.

"Closely held" means that the Government took steps to protect the information and that it was not publicly available.  I have mentioned several times that the information and documents found in Kevin Mallory's possession were classified.  You will hear CIA and DIA witnesses explain what that means.

The fact that a document is classified is not in and of itself proof that information is closely held.

But you will hear from both Michael Higgins, from the DIA, and Nancy Morgan from the CIA that classification is

**U.J.A. 124**

U.S. v. Mallory

32

part of how the government closely held the national defense information found in Kevin Mallory's possession.

Classification levels limit access to these materials to individuals who not only have a government security clearance, a monthslong intensive process, but also limits access to only the subset of security clearance holders who have a need to know that information.

Even security clearance holders do not have access to the entirety of the government's classified information.

And you will hear from Mike Dorsey of the CIA and Michael Londregan of the DIA that Kevin Mallory was briefed multiple times on the rules governing his access to classified information.  Mr. Mallory also signed multiple documents acknowledging that he understood his responsibility to safeguard government secrets.  And Kevin Mallory acknowledged that this obligation to safeguard this information does not end even when a person ceases government employment.

You will also hear from Mr. Higgins and Ms. Morgan that some of the information and documents Kevin Mallory passed or attempted to pass to the individual he, himself, thought was a likely Chinese spy was about human assets, real people who secretly provide information to the United States in aid of our national security.

And you will hear from CIA and DIA witnesses that the unauthorized disclosure of this information not only

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 125

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 138 of 352 Total Pages:(138 of 352)

jeopardizes the national security of our country, but also put those human assets, their families, and known associates at risk.

You will see evidence of Kevin Mallory's intent and knowledge that he was acting unlawfully. You will see it in a covert, secret way in which Mr. Mallory and Yang conducted their risky business.

You will see it in Mr. Mallory's only statement to Yang. For example, on May 3 Mr. Mallory told Yang, "It was dicey (look it up) when they asked for me by name. If they were looking for me in terms of State Secrets, and found the SD card..., we would not be talking today. I am taking the real risk as you, [Mr. Ding], and higher up bosses know..." Mallory later wrote, "There is info in the docs that could lead back to me."

You will also see Mr. Mallory's intent and knowledge that he was acting unlawfully in Mr. Mallory's multiple lies to CBP, to Mr. Dorsey of the CIA, to the FBI. You will see it in having the FedEx store shred the classified documents he scanned there as having deleted the WeChat app and wiping the chats from the Samsung CovCom device after the FBI admission on May 24 and his attempt to direct his family to the SD card containing classified documents, which unbeknownst to him the FBI had already found and seized.

By the end of this trial, there will be no question

U.S. v. Mallory

34

as to Mr. Mallory's intent and his purpose in selling secrets to the Chinese. The evidence will show that Mr. -- that Kevin Mallory chose to pass closely held government secrets to a Chinese agent. Kevin Mallory chose to pass information so sensitive that its unauthorized disclosure jeopardizes both the national security of the United States and the safety of assets who have put themselves at risk to assist in the protection of that national security.

And despite having multiple opportunities to tell government investigators what had actually happened, Kevin Mallory chose to lie. Kevin Mallory's own statements in his chats with the Chinese intelligence officer, Michael Yang, show that he conspired with Yang to transmit these government secrets in exchange for money.

And Kevin Mallory's own words to Yang, "Your object is to gain information and my object is to be paid," Mr. Mallory also talked to Yang about transferring the money without need leaving a trail back to him. Mr. Mallory wrote, "I will provide you banking instructions for you to send the monies. The money will go to the bank account not in my true name but I have access to."

You will hear from FBI Special Agent Steven Green that by the time Kevin Mallory was meeting with the Chinese spy Michael Yang in March and April of 2017, Mr. Mallory is several months behind in his mortgage payments, heading toward

U.S. v. Mallory

35

default.  He also had over $30,000 in credit card debt.

At that point, in Kevin Mallory's own words, his job was to be paid.  That is the choice Kevin Mallory made, money in exchange for classified national defense information.

Over the next several days, Mr. Gibbs, Ms. Garcia, and I will be presenting the evidence that establishes Mr. Mallory's guilt.  We do so because it is the burden the Constitution places upon us and that we embrace and because we have a duty to create a detailed public record of the facts that prove the very serious charges that Mr. Mallory is facing.

The evidence will be as I described it, the testimony from witnesses, documents pulled from the CovCom device and SD cards, the chats with the Chinese intelligence officer, Michael Yang, the videotape of the FedEx visit.

The proof of Mr. Mallory's guilt will not be hard to find.  And at the end of the case, we will come back to you and ask that you use the evidence as presented to you and the law, as instructed by Judge Ellis, to return the only verdict that the law, the evidence, and justice require, a verdict finding Kevin Mallory guilty.

THE COURT:  All right.  Mr. Kamens, are you ready to make your opening statement?

MR. KAMENS:  I am, Your Honor.  If the Court will indulge us, we need to put up the demonstrative.  It's

**U.J.A. 128**

U.S. v. Mallory

36

actually a summary exhibit.

THE COURT:  Well, all right.

MR. KAMENS:  It'll be just a moment.

THE COURT:  As I indicated, though --

MR. KAMENS:  It will come down.

THE COURT:  -- it will be as long as you need it and then it will be taken down.

MR. KAMENS:  It will, Your Honor.  Thank you.

**OPENING STATEMENT**

THE COURT:  All right.  You may proceed.

MR. KAMENS:  Ladies and gentlemen, I want to thank you for serving as jurors in this very important case.

We are very proud to represent Kevin Patrick Mallory, a loyal and patriotic American citizen, who has served this country with distinction throughout his life.

Mr. Mallory is a military veteran.  He is someone who is devoted to his church.  He is a person who, as you heard, has served this country as a CIA or DIA officer for over 20 years.

And the only reason we are sitting here in this courtroom today is because Mr. Mallory knocked on the front door of the CIA to tell them what he knew.  He did that because he's a patriot.  He lives in Loudoun County with his wife and daughter.  He has a son who just started college.  He has a son who's on a religious mission overseas.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 129**

U.S. v. Mallory

37

And in this trial, you will learn he was trying to help the United States, not harm it.  You will also hear testimony that he is and always has been a patriot.  And that is why he is innocent in this case.

This is a timeline of important events that took place in the spring of 2017.  You'll learn about these events during the course of this trial, but for now I just want you to look at the red boxes.  Each red box in that timeline shows Kevin's contacts with the CIA.

Kevin is charged with disclosing national defense information, but at every step of the way he was trying to help the CIA.  This case began when out of the blue in February of 2017 Mr. Mallory received an e-mail on LinkedIn from a Chinese headhunter.

It was about potential work as a consultant for a think tank in Shanghai, that would be Shanghai Academy Social Sciences.  It's a real think tank.  In fact, one of the people that Mr. Mallory met and dealt with, Michael Yang, has been paying people for -- or foreign consultants for research papers and the like for years.  Kevin Mallory speaks Chinese. He spent time in Asia, so this seemed like it could be a real job lead.

Within days of that e-mail, Kevin reached out to former colleagues of the CIA to let them know about the contact.  He was interested in a potential job opportunity,

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 130**

U.S. v. Mallory

38

but he was also a little suspicious.

He was interested in the job opportunity, but he was also, as you heard -- he had fallen on some hard times over the last few years.  He was running behind on his mortgage. He did have significant credit card debt.  And he was suspicious about this contact, which is why he kept reaching out to people at the CIA.

The Chinese recruiter interviewed Kevin over Skype. He had a subsequent e-mail, as you heard, with Mr. Michael Yang.  He was invited to come to China for an in-person interview.  And this was in early 2017.  The think tank said to him that they were interested in the new Trump Administration's policies in Asia.

Kevin agreed to go.  But he also kept reaching out to colleagues at the CIA.  Kevin went to China.  He met with Michael Yang and other people from the think tank.  They also agreed to pay him $2,000 a day for his time, which actually is not a great deal of money in comparison to Mr. Mallory's debts.

Even while he was there, the think tank was not exactly clear about what they were interested in.  They gave him a short list of topics, including the Trump Administration's policies that would affect China, and invited him back for a second trip.

On the second trip, Kevin's suspicions that this was

U.S. v. Mallory

39

actually Chinese intelligence agents, who realized when they gave him a cell phone with a communication -- covert communication application, a special app, he took the phone because he knew it might be useful to the CIA.

Within 72 hours of his return, you'll learn Kevin reached out yet again to his contact with the CIA.  He was practically begging to set up a meeting.  This is what he said.  "Could you please go back to your point of contact to reach over regarding the issue you and I discussed previously?  I recently returned from another business trip over there and was again approached in a manner from their service."

Now, this message was before any of the documents at issue in this case were sent to the Chinese.  His contact didn't respond.  So Mr. Mallory reached out yet again.  He said it was urgent.  Here's what he said.  "I sent you a text message a couple of days ago.  Please look at the message.  It's kind of urgent for me because I've been over there again and I keep getting banged on but in a little bit more detailed way."

This is how his contact responded.  "Kevin, got your text.  Sorry I haven't been able to pass on your request yet.  Been super busy at work.  Missed my colleague at work last couple of days.  Will try again tomorrow."

Mr. Mallory was desperate to set up a meeting with the CIA because a pitch by a foreign intelligence agency is

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 132**

———————————U.S. v. Mallory———————————

40

also an opportunity, but one that can slip away.  It's an opportunity for the United States to learn about foreign intelligence.  Mr. Mallory did not want that opportunity to slip away while CIA slowly got back to him.

So Mr. Mallory reached out yet again to his contact and he said, "I know you're busy.  As I told you in the past, I suspected who they are and didn't really know, but this time they are even more suspicious with me.  You have my number.  Please feel free to let them know that this is obviously someone from their counterpart to us."

Kevin wasn't thinking about making money from the Chinese by consulting.  He was focused on telling the CIA what he had learned.  But the CIA wasn't getting back to him and the Chinese were already suspicious.  So Kevin did what he knows how to do.  He pretended to the Chinese intelligence agents that he had access to a recent classified government information.

With the CIA responding so slowly, Mr. Mallory tried to string the Chinese agents along.  So on May 1st, Kevin sent the only things he ever sent to the Chinese using the phone, a handwritten table of contents that listed eight documents, the first document on the list and two unclassified handwritten pages of notes.

The table of contents listed no information other than the titles.  And Document 1 was essentially a fake.

———————————Tonia M. Harris OCR-USDC/EDVA 703-646-1438———————————

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 133**

U.S. v. Mallory

41

Kevin tried to make Document 1 look like it was a real government document, but it's a one-page generic description of how an intelligence operation could work. And it's so general, it could be of no real use.

And Kevin told Michael Yang that he had marked out top secret classification marks on the top and the bottom, but, in fact, they were fake. You'll hear testimony, expert testimony, that seven minutes after Kevin successfully sent fake Document No. 1, he failed to send another document on the list. And that's because Kevin never intended to send any of the other documents on the list.

Most importantly, you'll see that the information that he actually did send posed no harm to the United States from its release. In fact, Michael Yang sent a text message to Mr. Mallory. And in the text message, he says, "The Document 1 was just one introduction page. No use at all." He was right.

You'll also see that one of the things he sent, the two unclassified notes on yellow-lined paper were essentially gibberish that Kevin sent him to make the Chinese think that he was sending them something important.

On May 2, 2017, one day after Mr. Mallory sent the table of contents in Document 1, someone from the CIA finally got back to him. Kevin then told the Chinese agent that the phone application wasn't working and he couldn't send any more

**U.J.A. 134**

U.S. v. Mallory

42

documents.

But he knew how to work the phone. He had written down how to do it. And he later brought those instructions with him when he turned the phone over to the FBI. But the Chinese agents basically stopped communicating with him on the phone after that.

When the CIA finally met with Kevin for the first time on May 12, 2017, he was told not to bring the phone because he can't bring it to the agency. But Kevin told them how to use the phone, he told him how to unlock it, he gave them the password.

In this first meeting, he also told him how he had used the phone to send something that was typed, that it was an image, just as he told the CIA that the communications system was designed to integrate a document into a picture.

At a second meeting two weeks later, Kevin gave the agents the phone so they could copy it. Then they gave it back to him and let him go.

Now, the prosecutor just told you that Kevin was surprised that there were chats on the phone, that he thought they would all be deleted because of what he was told. But that's not true. Kevin told the agents that he would show them chats on the phone.

Now, Kevin admits he should not have kept documents two through eight, the ones he never sent to the Chinese from

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 135

U.S. v. Mallory

43

his work for the government a decade earlier.  And when he was arrested, he was scared.  He called his family because he had realized that the CIA had completely misunderstood his intentions and he knew it was important to show that he had never sent documents two through eight to the Chinese.

By turning over the phone, and describing how it worked, Kevin Mallory demonstrated his patriotism.

THE COURT:  This has now turned to argument, not opening statement.  The purpose of opening statement is to forecast the evidence that the jury will hear.  Your opportunity for you and Ms. Gellie to make argument will come later.

MR. KAMENS:  Thank you, Your Honor.

You will also hear evidence that by turning over the phone and providing it to the government, he ensured that the phone and the application couldn't be used by him and it couldn't be used by the Chinese to communicate with anybody else in the future.

As I said at the beginning, the only reason we are here is because Mr. Mallory wanted to share what he found with the CIA.

If he was motivated by money, he would have kept his mouth shut and never told the CIA anything.

But Kevin Mallory was trying to help the United States.  And you cannot commit the incredibly serious crimes

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 136**

————————————————U.S. v. Mallory————————

44

that he's charged with unless your purpose is to harm the United States or help a foreign country.

Kevin Mallory has worn a white hat throughout his career, and he didn't take it off and betray his country for a relatively small amount of money that he was told was for consulting work. When he realized that this was a recruitment effort by Chinese intelligence agents, he immediately went to the CIA, essentially preventing him from getting any more money from the Chinese.

Kevin Mallory was trying to do the right thing, and that's why the evidence will show you all that he's completely innocent of these charges.

Thank you.

THE COURT: All right. Mr. Flood, you may replace the podium. And remove the exhibit, please.

Ms. Garcia, will you be calling the first Government witness?

MS. GARCIA: Yes, Your Honor. The United States will call Michael Londregan.

THE COURT: All right. Come forward and take the oath, please, sir. You may use the Bible or simply affirm, whichever you may prefer.

Thereupon,

**MICHAEL PATRICK LONDREGAN,**

having been called as a witness on behalf of the Government

————————————————Tonia M. Harris OCR-USDC/EDVA 703-646-1438————

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 137**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 150 of 352 Total Pages:(150 of 352)

U.S. v. Mallory

M. Londregan - Direct

45

and having been first duly sworn by the Deputy Clerk, was examined and testified as follows:

THE COURT:  All right.  Ms. Garcia, you may proceed.

**DIRECT EXAMINATION**

BY MS. GARCIA:

Q.   Mr. Londregan, will you please state your name and spell it for the record.

A.   Michael Patrick Londregan, M-i-c-h-a-e-l P-a-t-r-i-c-k L-o-n-d-r-e-g-a-n.

Q.   Where are you currently employed?

A.   The Defense Intelligence Agency.

Q.   And what is your current title there?

A.   I'm the director of security.

Q.   How long have you been employed at the DIA?

A.   I've been in the intelligence community 32 years, at DIA 21 years, and in my current position two years and nine months.

Q.   Have you previously served as director of security anywhere else?

A.   Yes.

Q.   Where was that?

A.   The Office of the Director of National Intelligence.

Q.   And as the director for security, what are your current responsibilities?

A.   Oversee all aspects of security to protect the agency's

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 138**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 151 of 352    Total Pages:(151 of 352)

U.S. v. Mallory

M. Londregan - Direct

46

information, people, operations, and facilities.

Q.   Through your time working at DIA, have you become familiar with SF86s, security readings, and debriefings?

A.   Yes, I have.

Q.   Can you please describe briefly SF86s?

A.   The standard form 86 is actually called the "National Security Questionnaire."  It's the form that anybody seeking a security clearance fills out.  That initiates the background investigation process, which then looks into foreign contacts, your background, your finances, et cetera.  That's the form that initiates the process.

Q.   Can you briefly describe readings and debriefings to the jury?

A.   Once a background investigation is complete, once someone has successfully completed a polygraph, somebody makes a favorable adjudication, in other words, a favorable decision that this person is eligible for access to national security information.

Once that favorable adjudication is made, we read them in and indoctrinate them in and we provide them with the terms and conditions of what it means to hold a security clearance.

Q.   Have you ever yourself conducted security readings and debriefings?

A.   Yes.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 139

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 152 of 352    Total Pages:(152 of 352)

M. Londregan - Direct

U.S. v. Mallory

47

Q.    Ballpark, how many security readings and debriefings would you estimate you've done?

A.    Actually readings, approximately 20.  In this current capacity, I oversee the process as opposed to actually conducting them.

Q.    And are documents that are signed as part of readings and debriefings?

A.    Yes.

Q.    Generally speaking, what are those documents?

A.    The foundational document is a nondisclosure agreement. The nondisclosure agreement is signed and you are attesting to the fact that you understand the obligations inherent to holding a security clearance.

Q.    And have you reviewed those documents that relate to Kevin Mallory in preparation for your testimony here today?

A.    Yes, I have.

Q.    And have you also reviewed his SF86s and his entire security folder in preparation for your testimony here today?

A.    Yes, I have.

Q.    Does his security folder contain information regarding the dates and status of his employment with DIA?

A.    Yes, it does.

Q.    Generally, what is his employment history with DIA?

A.    Came to DIA in 2007.  Resigned in 2011.

Q.    And for his position with DIA, would those have required

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 140**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 153 of 352 Total Pages:(153 of 352)

U.S. v. Mallory

M. Londregan - Direct

48

clearances?

A.   Absolutely.

Q.   What level?

A.   Top secret and also SCI, which stands for sensitive compartmented information.

Q.   Would Mr. Mallory have had to fill out paperwork to obtain this clearance?

A.   Absolutely, yes.

Q.   With the assistance of the court security officer.

Do you have a binder in front of you?

Mr. Flood, do you have the binder?  May we please show him Government Exhibits 1-2 and 1-3?

Do you have Government's Exhibit 1-2 and 1-3?

A.   Yes.

Q.   Do you recognize those?

A.   Yes.

Q.   And what are they?

A.   This is the standard form 86, otherwise known as the "National Security Questionnaire."

Q.   And who filled it out?

A.   This is the SF86 of Kevin Mallory.  This one is dated June 23, 2004.

Q.   And the next one?

A.   Same national security questionnaire, standard form 86. Kevin Patrick Mallory.  This one is dated October 3, 2005.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 141

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 154 of 352 Total Pages:(154 of 352)

Q.    Have you seen these prior to your testimony today?

A.    Yes, I have.

Q.    Where did you see them?

A.    In Mr. Mallory's security file.

MS. GARCIA:  And, Your Honor, I'm told that our -- apologize for interrupting testimony.  I'm told that our laptop is not working.  I don't know if we can necessarily take a break.  I can -- there are certain excerpts I was going to highlight from the nondisclosure agreements Mr. Londregan is going to talk about that we were going to put up.

THE COURT:  All right.  Is the problem on your device or do we need to have the court IT people come up?

MS. GARCIA:  It's our device, Your Honor.

THE COURT:  All right.  Mr. Londregan, you may step down, sir.  I'm going to take a brief recess.

Ladies and gentlemen, pass your books to the right. The court security officer will collect them, maintain their security during our morning break here.  It's now 10:30, so we will recess for 20 minutes and then we will reconvene and proceed till about 12:30.  Remember to refrain from discussing the matter among yourselves or with anyone or undertaking any investigation on your own.

There will be, I believe, soft drinks available for you during this recess, which you may avail yourselves of.

You may follow Mr. Flood out.  Remember avoid any

U.J.A. 142

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 155 of 352 Total Pages:(155 of 352)

U.S. v. Mallory

M. Londregan - Direct

50

discussions in the case or undertaking any investigation.

(Jury dismissed.)

THE COURT:  All right.  Court stands in recess until 10 minutes to 11:00.

(Recess.)

THE COURT:  All right.  Mr. Londregan.

MR. KAMENS:  Your Honor, can I briefly raise a matter before the jury comes in?

THE COURT:  Yes.

MR. KAMENS:  We had talked, I think, at a hearing on Friday just about the rule on witnesses and the modifications that the parties had agreed to.  I just want to make sure that there are no witnesses in the courtroom today.

THE COURT:  Yes.  Well, I'll rely on counsel to ensure that, because, of course, the Court can't know who the witnesses are.  I'm sure you're looking carefully to make sure your witnesses are not here.

MR. KAMENS:  Correct, Your Honor.

THE COURT:  Ms. Gellie, I'm sure you-all are doing the same.

MS. GELLIE:  Correct, Your Honor.

THE COURT:  All right.

MS. GARCIA:  And, Your Honor, may they stay after their testimony if they're not subject to recall?

THE COURT:  Yes.  I'll ask if there's any objections

USCA4 Appeal: 19-4385    Doc: 27-1       Filed: 08/07/2020    Pg: 156 of 352 Total Pages:(156 of 352)

U.S. v. Mallory

M. Londregan - Direct

51

to their being excused.  If they are excused, then they may remain.

MS. GARCIA:  Thank you, Your Honor.

THE COURT:  All right.  Mr. Londregan, you'll recall, sir, you remain under oath.  Come forward, sir, and you may resume the stand.

Is the device now working, Ms. Garcia?

MS. GARCIA:  Your Honor, I'm sorry, it is imperfect, but it is working, Your Honor.

THE COURT:  All right.  You may bring the jury in.

(Jury in.)

THE COURT:  Direct examination of Mr. Londregan.

BY MS. GARCIA:

Q.   Mr. Londregan, do you recall we were talking about Government's Exhibit 1 -- I'm sorry -- 1-2 and 1-3?

A.   Yes.

Q.   Do you still have those in front of you?

A.   Yes, I do.

Q.   Looking at the pages --

THE COURT:  Are you offering these exhibits?

MS. GARCIA:  Not quite yet, Your Honor.  I'm just having him verify the signatures and dates before I ask to admit them.

THE COURT:  All right.  You may do so.

BY MS. GARCIA:

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 144**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 157 of 352  Total Pages:(157 of 352)

U.S. v. Mallory

M. Londregan - Direct

52

Q.   Looking at the ends of both documents, do you see signatures and dates on both of those documents?

A.   Yes, I do.

Q.   What signature do you see on those documents?

A.   Kevin P. Mallory.

Q.   And are these documents substantially the same as when you last saw them?

A.   Yes.

        MS. GARCIA:  Your Honor, I would move at this time to admit Government's Exhibits 1-2 and 1-3.

        MR. KAMENS:  No objection.

        THE COURT:  They're admitted.  You may display them if you need to.

                        (Government's Exhibit Nos. 1-2 and
                        1-3 admitted into evidence.)

BY MS. GARCIA:

Q.   Looking at paragraph 31 in Government's Exhibit 1-2, Bates-numbered on the bottom 1493 to 1494.

        THE COURT:  Can you-all see those?  There's a screen here to your left and there's also a screen down here at the bottom.

        All right.  Proceed.

BY MS. GARCIA:

Q.   What kind of information is contained within that paragraph?

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 145

USCA4 Appeal: 19-4385   Doc: 27-1   Filed: 08/07/2020   Pg: 158 of 352 Total Pages:(158 of 352)

A.    I'm sorry, the paragraph?

Q.    Paragraph 31, please.

A.    Paragraph 31.  This is a question on the national security form that asks about your investigation record and previous clearances that may have been granted to you.

Q.    And could you please read into the record the answer the defendant provided.

A.    Defense Department sensitive compartmented information, the date provided was February 4, 2004.

Q.    And underneath that?

A.    "Other CIA" is another answer under "Agency Description."

Q.    And it carries over to the next page, I believe, top of the next page.

A.    "For sensitive compartmented information."  And then third is the Defense Department for secret clearance.

Q.    And looking at Government's Exhibit 1-3, page 31 of that exhibit, what kind of information does that contain?

A.    This is similar to the last.  This is the answer on the standard form 86, the national security questionnaire, asking the person of previous clearances granted.

Q.    And looking at -- and we can take that down now.

Looking at Government's Exhibit 1-1, just flipping through 1-1 and 1-4 through 1-7.  I'll ask you if you recognize these.

A.    1-1, yes, I recognize this.

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 159 of 352   Total Pages:(159 of 352)

U.S. v. Mallory

M. Londregan - Direct

54

Q.   And 1-4 and through 1-7.

A.   Yes, I recognize personal attestation form.

1-5 is the sensitive compartmented information indoctrination, I recognize that.

1-6, sensitive compartmented information nondisclosure statement, I recognize that.

1-7, sensitive compartmented indoctrination memorandum for a specific program, I recognize that.

Q.   And have you seen these prior to today?

A.   Yes, I have.

Q.   Where did you see them?

A.   In Mr. Mallory's security file.

Q.   And do you see a signature at the end of each of those documents?

A.   Yes, I do.

Q.   What signature do you see?

A.   Kevin P. Mallory.

Q.   Are these substantially the same as when you saw them last?

A.   Yes.

MS. GARCIA:  Your Honor, I would offer Government's Exhibit 1-1 and 1-4 through 1-7.

MR. KAMENS:  No objection.

THE COURT:  They're admitted.

(Government's Exhibit Nos. 1-1,

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 147

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 160 of 352 Total Pages:(160 of 352)

1-4 through 1-7 admitted into

evidence.)

BY MS. GARCIA:

Q.   All right.  Looking first to Government Exhibit 1-1,
please.  What specifically is the purpose of Government's
Exhibit 1-1?

A.   The nondisclosure agreement is the terms and conditions
that you accept when you are -- get granted a security
clearance.  It outlines clearly the rules and regulations that
go along in the expectations of you as an individual to
safeguard national security information.

Q.   And looking at paragraph 4, will you please read that
paragraph into the record?

A.   Paragraph 4?

Q.   Yes, please.

A.   "I have been advised that any breach of this agreement
may result in the termination of any security clearances I
hold, removal from any position of special confidence and
trust requiring such clearances or the termination of my
employment or other relationships with the departments or
agencies that granted my security clearance or clearances.  In
addition, I have been advised that any unauthorized disclosure
of classified information by me may constitute a violation or
violations of United States criminal laws, including the
provisions of Sections 641, 793, 794, 798, 952, and 1924,

**U.J.A. 148**

U.S. v. Mallory

M. Londregan - Direct

56

Title 18, United States Code; the provisions of Section

783(b), Title 50, United States Code; and the provisions of

the Intelligence Identities Protections Act of 1982.  I

recognize that nothing in this agreement constitutes a waiver

by the United States of the right to prosecute me for any

statutory violation."

Q.   And paragraph 8, will you please read paragraph 8 into

the record.

A.   Paragraph 8, "Unless and until I am released in writing

by an authorized representative of the United States

Government, I understand that all conditions and obligations

imposed upon me by this agreement apply during the time I am

granted access to classified information and all times

thereafter."

Q.   And turning next to Government's Exhibit 1-6.  I won't

ask you to read these into the record.  But, generally

speaking, paragraphs 6 and 9 -- well, first of all, what does

this document reflect?

A.   This form is the sensitive compartmented information

nondisclosure statement.  It's an additional nondisclosure

agreement that people that are going to hold a clearance for

SCI, sensitive compartmented information.  So if you imagine

top secret being the highest clearance, sensitive

compartmented information is that additional wrapper we put

around information that is gleaned from intelligence methods

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 149

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 162 of 352 Total Pages:(162 of 352)

U.S. v. Mallory

M. Londregan - Direct

57

and sources.  So it's an additional disclosure and agreement.

Q.   And as I was saying earlier, I won't ask you to read these paragraphs into the record.  But looking at paragraphs 6 and 9, generally what information do those paragraphs contain?

A.   Similar to the last, that I've been advised that any breach of the agreement may result in termination of my access to sensitive compartmented information and removal from a position.

Q.   And looking at the last page, what is the date on this document?

A.   Signed Kevin P. Mallory, 2007 September 4.

Q.   Turning next to Government's Exhibit 1-4.  What is this document?

A.   This is a personal attestation form signed by Kevin P. Mallory on September 4, 2007.  This form confirms that the individual understands the standards and conditions contained in the two nondisclosure agreements we just discussed.

Q.   Will you read the first paragraph, please.

A.   "I, Kevin P. Mallory, attest that I will conform to and abide by all conditions and responsibilities imposed by law or regulation or U.S. intelligence community standards as a prerequisite of access to top secret information and classified materials of any nature or kind."

Q.   Next looking at Government Exhibit 1-5.  What is that document?

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 150**

U.S. v. Mallory

M. Londregan - Direct

58

A.    This is an additional indoctrination form.  Oftentimes there are special compartmented information that individuals require to do their jobs.  And in this case, Mr. Mallory is being indoctrinated and signed into sensitive information, SI, top secret code word; TK; G, gamma; and H, HUMINT Control System.

Q.    And what is the date on that document?

A.    The date is 2007, September 4.

Q.    Looking next to Government Exhibit 1-7.  What is that document?

A.    Similar to the last where this is indoctrination memorandum for a program related to critical and nuclear weapons design information, CNWDI, Critical Nuclear Weapons Design Information.

Q.    What is the date on that document?

A.    This is dated 2008, February 5.

Q.    Now, you've described security readings and debriefings.  Is there any training associated with security clearances?

A.    Yes, absolutely.

Q.    What are some of the things required when handling classified information?

A.    In my 32 years in the intelligence community, at least every year we are required to take some sort of refresher training that reminds us on how to handle, safeguard, classify, and mark information.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 151

USCA4 Appeal: 19-4385    Doc: 27-1        Filed: 08/07/2020    Pg: 164 of 352 Total Pages:(164 of 352)

U.S. v. Mallory

M. Londregan - Direct

59

Q.   And can you go into a little more depth?  Those three things you mentioned, I think you said safeguard, handle, and mark.

A.   Correct.  So safeguarding is the -- is the handling of and how we safeguard against unauthorized disclosure.  There's basically three conditions that must be foundational, that must be present in order for anyone to share classified information.  And this is one of the things that we are reminded of annually.

     Individual must have a favorably adjudicated security clearance.  You must have signed the nondisclosure agreement, and then most importantly the individual you're sharing the information with must have a need to know.

     If any one of those conditions don't exist, you're unauthorized to share.  And that is a constant reminder.

Q.   And -- apologize for interrupting.  Can you explain the need to know?

A.   Need to know.  Just because I hold a top secret clearance doesn't mean I have a need to know all top secret information. I just have just the need to know that information, that classified information, that I need to know in order to perform and execute my duties in my job.

Q.   And at some point, did Mr. Mallory's employment status change?

A.   Yes.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 152**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 165 of 352   Total Pages:(165 of 352)

U.S. v. Mallory

M. Londregan - Direct

60

Q.   And when was that?

A.   In 2009.

Q.   And just generally speaking, without circumstances, what happened in 2009?

A.   His access to national security information was suspended.

Q.   And were any security measures taken at that time?

A.   Explain -- the security measure that we took was a suspension in a situation where we -- where we suspend access to national security information, access to facilities, and access to systems.

Q.   I'm going to -- if you'll please look at Government's Exhibit 1-8.  Do you recognize this document?

A.   Yes, I do.

Q.   And what is it?

A.   This is a standard letter that the Office of Security would send to an individual, notifying someone that their access has been suspended.

Q.   And do you see a signature and date associated with this document?

A.   Kevin P. Mallory, July 14, 2009.

Q.   Have you seen this prior to your testimony here today?

A.   Yes.

Q.   Where did you see it?

A.   Contained in Mr. Mallory's security file.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 153

U.S. v. Mallory

M. Londregan - Direct

61

Q.    Is it substantially the same as when you saw it?

A.    Yes.

MS. GARCIA:  Your Honor, at this time I'd like to admit Government's Exhibit 1-8.

MR. KAMENS:  No objection.

THE COURT:  Admitted.  Next question.

(Government's Exhibit No. 1-8 admitted into evidence.)

MS. GARCIA:  Your Honor, I would ask that we publish Government's Exhibit 1-8.

THE COURT:  You may do so.

BY MS. GARCIA:

Q.    Will you please read the second paragraph into the record?

A.    Paragraph 2 of the letter, "Notification of access suspension."  Paragraph 2, "You are reminded of your continued obligation to protect classified information, sensitive compartmented information, and intelligence sources and methods from disclosure to unauthorized or uncleared personnel under the provisions of Sections 793 and 794 of Title 18 United States Code and/or the appropriate articles of the Uniform Code of Military Justice.  The time limit for safeguarding such intelligence never expires."

Q.    And looking at Government's Exhibit 1-10, do you recognize that?

**U.J.A. 154**

USCA4 Appeal: 19-4385     Doc: 27-1     Filed: 08/07/2020     Pg: 167 of 352  Total Pages:(167 of 352)

U.S. v. Mallory

M. Londregan - Direct

62

A.   Yes, I do.

Q.   What is it?

A.   This is a debriefing form.

Q.   And what does a debriefing form mean?

A.   The debriefing form is a reminder, it is a notification that the individual is no longer in access and a reminder of the need to continue to protect the classified information that he was originally read into.

Q.   Do you see a signature and date associated with this document?

A.   Yes.

Q.   What is that signature and date?

A.   Kevin P. Mallory, signed 2009 July 14.

Q.   Have you seen this document prior to your testimony today?

A.   Yes, I have.

Q.   Where did you see it?

A.   In Mr. Mallory's security file.

Q.   Is it substantially the same as when you last saw it?

A.   Yes.

        MS. GARCIA:  Your Honor, I would offer Government's Exhibit 1-10 into the record.

        MR. KAMENS:  No objection.

        THE COURT:  Admitted.

                    (Government's Exhibit No. 1-10

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 155

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 168 of 352    Total Pages:(168 of 352)

U.S. v. Mallory

M. Londregan - Direct

63

admitted into evidence.)

THE COURT:  You may display it, if you need to.

BY MS. GARCIA:

Q.   Yes.  Will you please -- may we publish and will you please read the last typed portion before the signature, please.

A.   "I was reminded of the need for special protection of SCI," sensitive compartmented information, "of SCI material of the fact that access to this material is governed by the terms of the SCI nondisclosure agreement that I previously signed and of my continuing obligation to comply with the terms of that agreement."

Q.   At some point after this, did Mr. Mallory write to DIA giving his resignation?

A.   Yes.

(Discussion off the record.)

MR. KAMENS:  Your Honor, can we approach?

THE COURT:  What was the question asked?

MS. GARCIA:  I just asked whether at some point after this Mr. Mallory wrote to DIA giving his resignation.

BY MS. GARCIA:

Q.   And what was your response, again?  Did you respond?

A.   I have not had a chance to respond.

MR. KAMENS:  He can respond.  We have no objection to the response.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 156**

USCA4 Appeal: 19-4385      Doc: 27-1      Filed: 08/07/2020      Pg: 169 of 352  Total Pages:(169 of 352)

THE COURT:  You may respond.

THE WITNESS:  Mr. Mallory submitted his letter of resignation in 2011.  I apologize, I don't recall the month.

MS. GARCIA:  And, Your Honor, I was going to have him look at Government Exhibit 1-13, ask some questions and move to admit it.

MR. KAMENS:  And that's why I'd ask to approach the bench.

THE COURT:  1-13?

MS. GARCIA:  Yes, Your Honor.

THE COURT:  Just a moment.

(A pause in the proceedings.)

THE COURT:  All right.  Do you have an objection to 1-13?

MR. KAMENS:  Yes, Your Honor.

THE COURT:  All right.  Are you advised of that objection, Ms. --

MS. GARCIA:  I don't know what the objection is, Your Honor.

THE COURT:  I beg your pardon?

MS. GARCIA:  I haven't heard what it is quite yet, Your Honor.

MR. KAMENS:  I would like to say it at the bench, Your Honor.

THE COURT:  Yes.  But tell her first right now so

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 170 of 352 Total Pages:(170 of 352)

U.S. v. Mallory

M. Londregan - Direct

65

that I can hear informed argument.

(Discussion off the record.)

MS. GARCIA:  Your Honor, I'm advised of his objection.  I disagree.  And we can discuss it at the bench, Your Honor.  It relates to Your Honor's ruling this morning.

THE COURT:  404(b)?

MS. GARCIA:  Yes, Your Honor.

THE COURT:  All right.  He resigned from the Defense Intelligence Agency at a particular date.  We have that in the record.

MS. GARCIA:  We don't have the date yet, Your Honor.  I can refresh the witness' recollection.  He doesn't remember the exact day, but he did say 2011.

THE COURT:  All right.  What is the date, Mr. Londregan?

THE WITNESS:  27 April, 2011.

THE COURT:  All right.  Now I'll take your offer of that exhibit under advisement, and I'll hear argument about it later.  It relates to the same issue that I addressed earlier.

MS. GARCIA:  Mr. Kamens' objection does, as far as I understand it, yes, Your Honor.

THE COURT:  All right.

MS. GARCIA:  Your Honor, may I check with my co-counsel to see if they have any additional questions for this witness?

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 158**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 171 of 352 Total Pages:(171 of 352)

U.S. v. Mallory

M. Londregan - Cross

66

THE COURT:  Yes.

MS. GARCIA:  All right.  No further questions, Your Honor.

THE COURT:  All right.  Any cross-examination?

MR. KAMENS:  Yes, Your Honor.

**CROSS-EXAMINATION**

BY MR. KAMENS:

Q.   Good morning, Mr. Londregan.  You reviewed -- you testified that you reviewed Mr. Mallory's employment file to obtain these documents?

A.   The security file.

Q.   The security file.  And you identified the classified nondisclosure agreements and his 2004 and 2005 security clearance applications?

A.   Yes.

Q.   And you testified that Mr. Mallory worked for the Defense Intelligence Agency from 2007 through 2011?

A.   That's correct.

Q.   But a number of these documents predate his employment with the Defense Intelligence Agency; is that correct?

A.   The standard form, SF86, yes, it does.

Q.   Not just the standard form SF86, but also Government's Exhibits 1-1, 1-5, 1-6.  If you can look, all of those date to July 9, 2004; is that right?

A.   1-1 is dated 2007.  The others you mentioned, sir?

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 159**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 172 of 352    Total Pages:(172 of 352)

————————————————U.S. v. Mallory————
M. Londregan - Cross

67

Q.   Let me ask you:  What is the date of the signature on 1-1?

A.   2007, September 4.

Q.   Oh, I see.  So the month is second and then it's September 4, 2007?

A.   My understanding.

Q.   Okay.  And go to Government's 1-5.

A.   Reading from the -- what's in parentheses 2007, September 4.

Q.   All right.  So the same day?

A.   Yes.

Q.   And then Government's 1-6?

A.   2007, September 4.

Q.   All right.  So it's fair to say that all of these documents were probably handed to Mr. Mallory on the same day?

A.   Correct.

Q.   And a stack of other documents that he was signing on the first day of his employment?

A.   Correct.

Q.   And he was required to sign those as a condition of his employment for the Defense Intelligence Agency?

A.   Yes.

Q.   Now, classified information can expire, or that is the classified -- the classification of information can expire, can it not?

————————————————Tonia M. Harris OCR-USDC/EDVA 703-646-1438————
EASTERN DISTRICT OF VIRGINIA

**U.J.A. 160**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 173 of 352 Total Pages:(173 of 352)

U.S. v. Mallory

M. Londregan - Cross

68

A.   That's goes to a form of declassification process.

Q.   Isn't there a presumption in the governing executive orders that provides --

MS. GARCIA:  Your Honor, objection.  Outside the scope of his testimony.

THE COURT:  It is.

BY MR. KAMENS:

Q.   Well, you testified earlier that --

THE COURT:  I'm sorry, it is.  I've sustained that.

MR. KAMENS:  And I'm not going to ask about that. I'm going to another question, Your Honor.

THE COURT:  All right.

BY MR. KAMENS:

Q.   You testified earlier about your training as a DIA employee; is that right?

A.   Yes.

Q.   And that you get refresher training every year?

A.   Correct.

Q.   And in the -- pursuant to that training, have you been advised that there are executive orders that govern or provide regulations relating to the classification information?

A.   Yes.

Q.   Are you familiar with those executive orders?

A.   Yes.

Q.   And so if you would look at Defense Exhibit 8A-1 and

USCA4 Appeal: 19-4385   Doc: 27-1   Filed: 08/07/2020   Pg: 174 of 352 Total Pages:(174 of 352)

U.S. v. Mallory

M. Londregan - Cross

69

8A-2.

(A pause in the proceedings.)

MS. GARCIA:  Your Honor, if Mr. Kamens is offering -- is going to ask him about this, I would object. It's still outside the scope.

MR. KAMENS:  Well, I can just ask him, Your Honor.

BY MR. KAMENS:

Q.   Are you aware that there are presumptive expiration dates for the classification of information from the governing executive orders?

A.   I would challenge the word "presumptive."

MS. GARCIA:  We renew our objection to this line of questioning, Your Honor.

BY MR. KAMENS:

Q.   Well, I'll ask him:  How do you -- how do you explain it? What do you mean --

THE COURT:  I'm going to sustain.  There are witnesses for this.  And I'm not going to have that sidestepped.

MR. KAMENS:  Understood.

BY MR. KAMENS:

Q.   You testified earlier that you reviewed Mr. Mallory's security file; is that right?

A.   Yes.

Q.   Did you notice in the security file whether Mr. Mallory

**U.J.A. 162**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 175 of 352    Total Pages:(175 of 352)

U.S. v. Mallory

M. Londregan - Cross

70

was ever given derivative classification authority?

A.   That was not in the security file, nor would that be the place for it to be.

Q.   Would there be any information in the security file about whether he was ever trained in the proper application of derivative classification authority?

A.   That would be in his training file, not the security file.

Q.   I see.  All right.  You testified earlier about need to know.  You have to answer verbally.

A.   Yes.

Q.   And you stated that an individual is not entitled to review classified information simply because they have a requisite classification clearance level; is that right?

A.   Correct.

Q.   They also have to have a need to know?

A.   Correct.

Q.   Now, at the time that these exhibits were dated, the governing regulation on classification defined the meaning of need to know, did it not?

A.   I can't speak to that.

Q.   Well, if I showed you the executive order, definition of need to know, would that refresh your recollection?

A.   Yes.

Q.   All right.  If you would, take a look at Defense

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 163**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 176 of 352 Total Pages:(176 of 352)

U.S. v. Mallory

M. Londregan - Cross

71

Exhibit 8A-1.

Actually, if you can look at the one -- or 8A-3, on the second page of 8A-3.

A.    Is that a binder?

Q.    Oh, I'm sorry, it's right there.

THE CSO:  Which binder is it?

MR. KAMENS:  I believe it's the third binder, Exhibit 8A-3.

THE CSO:  8A-3?

MR. KAMENS: 8A-3.  That's right.

BY MR. KAMENS:

Q.    If you can, just look at the second page.  Don't read it out loud.

Do you see that?  Can you look at it?

And can you review the information on that page and see if it refreshes your recollection about the definition of "need to know."

THE COURT:  The question before you is whether having read this, do you have a present recollection, as you sit here today, as to whether that defines or clarifies need to know?

THE WITNESS:  Yes, Your Honor.  Thank you.

Yes, I understand that definition.

BY MR. KAMENS:

Q.    All right.  Does that refresh your recollection about the

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 164**

U.S. v. Mallory

M. Londregan - Cross

72

meaning of "need to know"?

A.   Yes.

Q.   And is it fair to say that under the governing order at the time, need to know could be determined by the authorized holder of information?

A.   It would be up to that individual to verify that the other two conditions exists, meaning a favorably adjudicated security clearance was present and a repository, a government intelligence community repository; and, second, whether or not they have signed a nondisclosure agreement.  And then you can make that determination whether they have a need to know to perform the function as stated here.

Q.   And the authorized holder would be the one who would make that determination?

A.   Correct.  It's incumbent upon them.

        MR. KAMENS:  Thank you.  Nothing further.

        MS. GARCIA:  No redirect, Your Honor.

        THE COURT:  I take it, though, the person who has to make that determination is bound by the consequences if that person makes an error?

        THE WITNESS:  Yes, Your Honor.

        THE COURT:  All right.  Thank you.  You may step down.

        (Witness excused.)

        MS. GARCIA:  Your Honor, per Government's exhibit,

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 165

USCA4 Appeal: 19-4385    Doc: 27-1       Filed: 08/07/2020    Pg: 178 of 352 Total Pages:(178 of 352)

U.S. v. Mallory

M. Londregan - Cross

73

the last one, do you want to take it up after this witness or --

THE COURT: No, let's -- you may remain there for a moment. Come to the bench. Let's take it up now.

Ladies and gentlemen, we frequently have conferences at the bench in order to resolve certain objections that may be raised to testimony or to exhibits. The reason it is done at the bench is because the arguments that will be made generally involve material that won't be admitted into evidence and therefore won't be part of what you have to consider.

I'll try to make them as brief as possible.

(Bench Conference.)

THE COURT: Now, what's your objection, Mr. Kamens?

MR. KAMENS: Your Honor, there's a lot of information in the resignation letter that is irrelevant to the case. It relates to Mr. Mallory's dispute with the Defense Intelligence Agency.

THE COURT: Well, it's currently irrelevant. It may become relevant under 404(b) if Ms. Garcia crosses the threshold --

MS. GARCIA: And, Your Honor, I --

THE COURT: Wait until I --

MS. GARCIA: I'm sorry, Your Honor.

THE COURT: She can't get two of us at the same

**U.J.A. 166**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 179 of 352    Total Pages:(179 of 352)

U.S. v. Mallory

M. Londregan - Cross

74

time.

MS. GARCIA:  Yes, Your Honor.

THE COURT:  So if she crosses the threshold of admissibility on 404(b), I'm not sure this wouldn't be relevant.

MR. KAMENS:  Well, Your Honor, the difference is that this includes information that goes beyond the OIG investigation.  Mr. Mallory had a number of disputes with the DIA.  There were a number of issues that led to his departure.

The Court found that one of those issues could potentially be relevant under 404(b), but all the other extraneous employment issues he had, I don't think, are relevant and they fall outside of the Government's 404(b) notice.  They relate to prior alleged bad acts that are not in their 404(b) notice, which is limited to the OIG investigation.

THE COURT:  All right.  Ms. Garcia?

MS. GARCIA:  Your Honor, I don't even think this is 404(b).  This talks about -- this is the Defense talking about the enormous strain that DIA -- being on admin leave to put on his family.  It talks about really what was at issue for admin leave was a personality dispute, a personnel disagreement.  It's the circumstances behind his responses of the defendant's own statements.  It doesn't get into prior bad acts.

It gets into -- and, frankly, Your Honor, it goes to

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 167

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 180 of 352 Total Pages:(180 of 352)

U.S. v. Mallory

M. Londregan - Cross

75

-- just the fact that, you know, Mr. Kamens said in his

opening, "white hat, patriot."  This doesn't get into bad

acts, but it does show that he didn't leave on good terms.

But it doesn't get into bad acts.  He just was angry.

THE COURT:  What is it in this letter that you think

is relevant to the Government's case?

MS. GARCIA:  So we think it's relevant that he

didn't leave on good terms because he did not reach out to DIA

the same way that he reached out to someone from the CIA.  So

in the defense opening, they've made a big deal about all the

contacts that Mr. Mallory made with the CIA.  The alleged past

document contains DIA information.  He never reached out to

DIA, nor would he have because he left under bad

circumstances.  His own statements.  It doesn't talk about

prior bad acts.  It talks about the fact that he was put on

admin leave as a result of personality dispute.

THE COURT:  Do you have any objection, Mr. Kamens,

to the second sentence -- that is, the first and second

sentence, that is, that he resigns and that he "takes this

action due to the enormous strain the agency has placed upon

my family and me."

MR. KAMENS:  I don't have an objection to the first

sentence, "I resign my employment at DIA."  I think everything

thereafter relates to, as Ms. Garcia just said, that he didn't

leave on good terms and his bad relationship with the DIA.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 168**

U.S. v. Mallory

M. Londregan - Cross

76

THE COURT:  What's wrong with the second sentence?  It's his word.

MR. KAMENS:  Right.  And so we're not saying it's hearsay.  It's a statement from --

THE COURT:  You're saying it's just irrelevant?

MR. KAMENS:  Right.

THE COURT:  Well, you may lose on that unless you want to say more.

MR. KAMENS:  Okay.  Well, simply, I'll agree with the second sentence, but the rest of it all relates to just irrelevant material.

THE COURT:  That seems to me, Ms. Garcia, to be best at this time.  I don't know what evidence you'll submit in the future, but I will permit the first and second sentences, and the rest will be redacted.

MS. GARCIA:  Thank you, Your Honor.

THE COURT:  All right.  And I'll tell the jury that you may publish this -- do you have the ability to publish the first and second sentences?

MS. GARCIA:  We can --

THE COURT:  I mean, the electronic ability to do that?

MS. GARCIA:  I can ask.

MR. GIBBS:  He may be able to.

MS. GARCIA:  Your Honor, we can keep the header as

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 169

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 182 of 352 Total Pages:(182 of 352)

U.S. v. Mallory

M. Londregan - Cross

77

well.  Mr. Kamens, do you have any objection to the header?

MR. KAMENS:  I don't have any objection to that.

MS. GARCIA:  And the -- and the signature?

MR. KAMENS:  And with respect to the signature, no objection.

THE COURT:  All right.  Let's proceed.

MS. GARCIA:  Thank you, Your Honor.

(Open court.)

THE COURT:  Ladies and gentlemen, I've heard the objection.  I'm going to sustain it in part and overrule it in part.

Two sentences from the letter will be admitted.  I'm exploring at the moment whether electronically that can be divided up so that it can be displayed to you and then we will go on.

And we won't need Mr. Londregan anymore; is that correct?

MS. GARCIA:  Not for the Government, Your Honor.

THE COURT:  All right.  Is there any objection beyond what was stated at the bench to the first two sentences?

MR. KAMENS:  No objection, Your Honor.

THE COURT:  All right.  You may step down, sir.  You don't have any questions about those two statements?

MS. GARCIA:  No.  I was just going to have him --

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 170**

————————————————U.S. v. Mallory————

M. Londregan - Redirect

78

rather than publish it, I was just going to have him read --

going to have him read the first two sentences into the

record.

THE COURT:  All right.  That's perfectly

appropriate.  I don't want to cause any electronic problems.

Go ahead, Ms. Garcia.

**REDIRECT EXAMINATION**

BY MS. GARCIA:

Q.    Mr. Londregan, on Plaintiff's Exhibit 1-13, I would ask

that you state the signature, the date, and then read the

first two sentences into the record, please, once you have it.

A.    Okay.  I have it here.

Q.    And just --

THE COURT:  Read the header and the first two

sentences and the signature line.

THE WITNESS:  Yes, Your Honor.

From Kevin P. Mallory, date 27 April, 2011, subject:

Submittal of resignation.  I'll read the first two sentences.

THE COURT:  What about the first two things at the

header?

THE WITNESS:  I apologize, Your Honor.

It's addressed to whom it may concern through

Mr. James Mault from Kevin P. Mallory, date 27 April, 2011,

subject:  Submittal of resignation.  "Effective this date, I

resign my employment with DIA.  I take this action due to the

—————————————————————————Tonia M. Harris OCR-USDC/EDVA 703-646-1438——

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 171**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 184 of 352 Total Pages:(184 of 352)

U.S. v. Mallory

M. Londregan - Redirect

79

enormous strain the agency has placed upon my family and me."

BY MS. GARCIA:

Q.    And then the signature, please.

A.    Signed Kevin P. Mallory, 28 April, 2011.

MS. GARCIA:  No further questions at this time, Your Honor.

THE COURT:  All right.  Any cross-examination?

MR. KAMENS:  Nothing further.

THE COURT:  You may step down, sir.  May this witness be excused or is he subject to recall?

MS. GARCIA:  He's not subject to recall for the Government, Your Honor.

MR. KAMENS:  No objection.  He's released.

THE COURT:  All right.  You may be excused.

(Witness excused.)

THE COURT:  All right.  You may call your next witness.

MR. GIBBS:  Thank you, Judge.  Ralph Stephenson.

THE COURT:  Mr. Gibbs, how long a witness will this be?

MR. GIBBS:  My direct will probably be not even ten minutes.

THE COURT:  All right.  Come forward, sir, and take the oath, please.

(Witness seated.)

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 172**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 185 of 352 Total Pages:(185 of 352)

R. Stephenson - Direct

————————————U.S. v. Mallory————

80

Thereupon,

**RALPH STEPHENSON,**

having been called as a witness on behalf of the Government and having been first duly sworn by the Deputy Clerk, was examined and testified as follows:

(Witness seated.)

THE COURT:  All right.  Mr. Gibbs, you may proceed.

MR. GIBBS:  Thank you, Your Honor.

**DIRECT EXAMINATION**

BY MR. GIBBS:

Q.   Good morning, sir.

Sir, would you please state and spell your name for the record.

A.   My name is Ralph Stephenson, R-a-l-p-h S-t-e-p-h-e-n-s-o-n.

Q.   Sir, who do you work for?

A.   Central Intelligence Agency.

Q.   And that's also known as the CIA?

A.   Yes.

Q.   How long have you worked at the CIA?

A.   For over 30 years.

Q.   And were you working there in 2017, last year?

A.   Yes, I was.

Q.   Now, without going into great detail, what were you doing at CIA in 2017?

————————————Tonia M. Harris OCR-USDC/EDVA 703-646-1438————

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 173**

USCA4 Appeal: 19-4385 Doc: 27-1 Filed: 08/07/2020 Pg: 186 of 352 Total Pages:(186 of 352)

U.S. v. Mallory

R. Stephenson - Direct

81

A. I'm what's called a plans officer or a resource analyst. We do long-term strategic resource planning.

Q. Now, do you know the defendant, Kevin Mallory?

A. Yes, I do.

Q. Is he here in the courtroom?

A. Yes, he is.

Q. Could you please point him out and identify him by what he's wearing?

A. He's wearing -- he's the fourth -- third from you to the left. He's wearing a dark suit, a black suit.

THE COURT: The record will reflect that the witness has identified the defendant. Next question.

MR. GIBBS: Thank you, Judge.

BY MR. GIBBS:

Q. Now, Mr. Stephenson, was your relationship with Kevin Mallory a professional relationship?

A. No.

Q. So how did you two meet?

A. We met at church. We worked together in a Chinese language congregation in Centerville, Virginia.

Q. And, sir, if could keep your voice up when you speak, please.

And how long ago did you two meet.

A. November 2011, so about six and a half years ago.

Q. And how well did the two of you know one another?

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 174**

USCA4 Appeal: 19-4385   Doc: 27-1   Filed: 08/07/2020   Pg: 187 of 352 Total Pages:(187 of 352)

A.    We're casual friends and, again, we work together.

Q.    And so did the defendant know where you worked?

A.    I believe I did tell him, yes.

Q.    And what happened in February of 2017 where the defendant contacted you about your work?

A.    Okay.  On February 22 I received a text message on my phone, in fact, a series of text messages where Kevin was asking me whether I could get him in touch with people who worked where I worked, particularly people in the East Asia Division, the China program there.

Q.    And you said this was a series of text messages from defendant?

A.    Yes.  Yes.  There's more than one back and forth between us.

Q.    And what phone were these text messages sent to?

A.    My personal cell phone.

Q.    And did you recognize the defendant's phone?

A.    I recognized that it was from him, yes.

Q.    What did he say in these text messages beyond what you just testified about getting in contact with someone?

A.    He wanted to get in contact -- I'm not going to name the positions here unless I must.  But he wanted to get in touch with people who were leading China operations in the East Asia Division or the chief of the East Asia Division.

Q.    And, Mr. Stephenson, what was your reaction --

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 188 of 352 Total Pages:(188 of 352)

U.S. v. Mallory

R. Stephenson - Direct

83

THE COURT:  Mr. Stephenson, you sort of swallow your words at the end, and my ears are not what they once were, indeed, nothing is like what it once was.  So please speak up.

THE WITNESS:  Okay.  So you guys -- can you hear me? You can't hear me.  Okay.  I'll speak louder.

MR. GIBBS:  All right.  Thank you.  And thank you, Judge.

BY MR. GIBBS:

Q.   So, Mr. Stephenson, what was your reaction to receiving these types of text messages on your personal phone?

A.   It made me extremely uncomfortable, very uncomfortable. I thought it was extremely inappropriate, not just a little inappropriate, but extremely inappropriate.

Q.   And why did it make you so uncomfortable?

A.   I can't get into classified things here, but it just made me uncomfortable because it was talking about sensitive things and in an environment that is not protected at all, that is open.

Q.   And when you say a "sensitive environment," are you talking about your personal cell phone?

A.   Well, no, I mean talking -- it was talking about sensitive things related to work where I work in a completely open environment, cell phones.  Cell phone messaging back and forth, that's a completely unsecure, unsafe environment.

Q.   And so what did you do with your cell phone as a result

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 176**

USCA4 Appeal: 19-4385    Doc: 27-1       Filed: 08/07/2020    Pg: 189 of 352 Total Pages:(189 of 352)

of that?

A.    I responded that I didn't want to continue this conversation here, and I immediately deleted all the text messages.  I didn't want them on my phone.  They made me very uncomfortable with them being on my phone.

Q.    And --

THE WITNESS:  Can everyone hear me okay?

THE COURT:  Yes.

THE WITNESS:  Okay.

BY MR. GIBBS:

Q.    Mr. Stephenson, what, if anything, did you tell -- he had asked you about getting in contact with someone.  What, if anything, did you tell him about who you could get in contact with for him?

A.    I told him that I'd be willing to get in touch with security, and he responded, no, that would not be good.

Q.    Now, why did you tell the defendant you would get in touch with security?

A.    Because that is standard operating procedure when someone starts talking to you about -- someone who is on the outside who is not part of your organization, when they start talking to you about things like that, that is standard operating procedure.

Q.    And when you say "standard operating procedure," is this standard operating procedure at the CIA?

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 190 of 352  Total Pages:(190 of 352)

A.    Yes.

Q.    And is that something --

A.    To report such things to security, yes.

Q.    And is that something that you are trained to do as an employee of the CIA?

A.    Absolutely, yes.

Q.    And when you told the defendant that you could report this contact to security, what was his response again?

A.    He said that would not be good.

Q.    Did that prevent you from reporting it to security?

A.    No, it did not.  Absolutely not.  The next day I reported it.

Q.    And why didn't the fact that the defendant said it would not be good for him prevent you from reporting this to security?

A.    Because, again, this is a legal issue and it's a counterintelligence issue and it needs to be reported.  I didn't think -- the only thing that made me uncomfortable about this was that it was discussing very sensitive info.  I had no idea what other implications there may be, but it made me very uncomfortable discussing such sensitive intel over an open phone line.  And that -- and the fact that that request was made to me, to me, triggered the report it to security rules and I did.  And I'm glad that I did.  They appreciated it.

U.J.A. 178

U.S. v. Mallory

R. Stephenson - Direct

86

THE COURT:  What was the last thing you said?  I'm sorry.

THE WITNESS:  Reporting it to security, that the fact that it was sensitive, that it was discussing it over open phone lines triggered in my mind the need to report it to security, which I did.

THE COURT:  Next question.

BY MR. GIBBS:

Q.   And you mentioned that in the original text messages from the defendant, he wasn't asking you to report this to security, he was asking you to report it to some other component, correct?

A.   Yes, yes.

Q.   And what other component was he asking you to report it to?

A.   To talk to the East Asia Division, to get him in touch with certain leaders of East Asia Division.

Q.   And what, if anything, did you tell the defendant about whether you would assist him getting in touch with someone from the East Asia Division?

A.   I gave him no encouragement.  I don't know exactly what I said, but I gave him no encouragement.  As I said earlier, this conversation made me feel very uncomfortable.

I did follow up -- one thing that I should add here is I did follow up with an e-mail after I deleted the text

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 179

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 192 of 352 Total Pages:(192 of 352)

U.S. v. Mallory

R. Stephenson - Direct

87

messages from my phone.  I went home, sent an e-mail that was

very generic, saying -- not discussing anything sensitive,

just saying the people you want me to get in touch with, I

don't work there anymore.  I moved on.  Many of them retired,

they are not there.  And I don't think we should continue this

conversation.  I will talk to you at church on Sunday morning

if you need to talk more.

Q.    It sounds like your discomfort level --

        MR. KAMENS:  Objection to leading and

mischaracterization of the testimony.

        THE COURT:  All right.  It is leading.  Go ahead,

Mr. Gibbs.

BY MR. GIBBS:

Q.    You mentioned about talking to him at church the next

Sunday.  Did you, in fact, see the defendant the next Sunday?

A.    I did.

Q.    Was that in person?

A.    This was -- February 22 was the exchange of text and

e-mails and February 26 was the Sunday where we talked.

Q.    And on February 26, when you talked to the defendant,

what did you tell him related to this testimony today?

A.    I told him to never do that again.  I spoke to Kevin very

harshly.  I've never spoken him to that way -- I've never

spoken to him -- to him that way before, and I think he was

shocked .  But I said, "Don't ever discuss something like that

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 180

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 193 of 352    Total Pages:(193 of 352)

in that way with me again.  Please never do this.  This is inappropriate."  And that was that.  That was -- it was pretty much a one-way conversation.

Q.   And what was his response when you spoke to him so harshly that day at church?

A.   He just sort of withdrew.  And we really didn't talk too much after that about much of anything, but definitely that topic never came up again.

Q.   So you had no further communications with him about any work he was doing in China after that?

A.   No.  I have no memory of anything, any conversations even remotely related to that that was addressed to me.

MR. GIBBS:  That's all the questions I have, Judge.  Thank you, sir.

THE COURT:  Any cross-examination?

MR. KAMENS:  Yes, Your Honor.

**CROSS-EXAMINATION**

BY MR. KAMENS:

Q.   Mr. Stephenson, you just testified you met Mr. Mallory in 2011?

A.   November 2011, yes.

Q.   You're both members of the same Mormon congregation?

A.   Yes.

Q.   You'd see him on a regular basis?

A.   Yes.

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 194 of 352 Total Pages:(194 of 352)

U.S. v. Mallory

R. Stephenson - Cross

89

Q.    On Sundays?

A.    Yes.

Q.    And you said you were casual friends?

A.    Yes.

Q.    Now, you are currently employed by the CIA?

A.    Yes.

Q.    But prior to 2017, Mr. Mallory never talked to you about his prior employment in the intelligence community; is that right?

A.    I heard him -- I can't say for sure that he never discussed anything about it.  I had knowledge that he had worked as a case officer before.  I don't remember how I got that, but I did know that.  And he had talked to me about him serving as -- serving in the military.  I do remember that directly face-to-face.  We did have a face-to-face conversation, that I remember, yes.

Q.    You didn't have any in-depth conversations about his prior experience; is that correct?

A.    Not really, no.

Q.    Now, you testified that there was a series of text messages on, I think you said, February 22?

A.    Yes, correct.

Q.    Now, before that, before that date, actually on February 19, you had a phone call with Mr. Mallory; is that right?

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 182**

R. Stephenson - Cross

U.S. v. Mallory

90

A.   That's what I've heard.  I don't remember.  It was not about what I just discussed.

Q.   All right.  Let me show you what's been marked for -- in the Defendant's Volume 1, Exhibit 2A-4.  And I just want you to look to see if that 2A-4 -- without saying your phone number out loud, that that is your phone number, if it refreshes your recollection?

A.   Which one?

Q.   2A-4.

A.   There are two phone numbers there.

Q.   Well, one for you and one for your relation?

A.   Yes.

Q.   All right.  So those are both phone numbers --

A.   Family phone numbers.

Q.   That are family phone numbers.  And I'm not going to say what those phone numbers are.

A.   Thank you.

Q.   But now --

A.   I don't want to get telemarketing after this.

Q.   I don't know that --

A.   As a result of this.

Q.   If you can, now look at Defendant's 2A-2 and look at page 81 of 2A-2.

        THE COURT:  Is that in the book you provided before?

        MR. KAMENS:  It is, Your Honor.  It's in the same

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 183**

R. Stephenson - Cross ————————U.S. v. Mallory————

91

volume.

THE WITNESS:  2A-2 and I see 2A-4 --

BY MR. KAMENS:

Q.   Yeah, I'm sorry.

A.   It's way back here.  Okay.  Got it.

Q.   It's a phone record.  If you'll look on page 81 at the bottom.

THE COURT:  2A -- what was it?

THE WITNESS:  I'm sorry, I'm having trouble following.

BY MR. KAMENS:

Q.   2A-2.  Look at the tab, 2A-2.  And the first page, I think it says AT&T records.

A.   Yes.

Q.   Now, go to page 81 of that record.

A.   81.

Q.   I think at the bottom it says KPM95.

A.   Got it.

Q.   Okay.  Now, if you look, do you see the last three entries on that page dated February 19, 2017?

Do you see that?

A.   Okay.  In page 81, last three entries.  Got it.

Q.   Okay.  And now do you see the phone numbers -- two of the phone numbers that I just showed you --

A.   Yes.  Two of the three rows have those two phone numbers.

—————Tonia M. Harris OCR-USDC/EDVA 703-646-1438—

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 184**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 197 of 352 Total Pages:(197 of 352)

U.S. v. Mallory

R. Stephenson - Cross

92

Q.   In two of the rows, your number is on the right and then the last one your number is on the left.  Do you see that?

A.   I'm looking.  The number is on the left.  Number originating --

Q.   Originating.

A.   Yeah.

Q.   So do you see that?  Do you see that phone number there?

A.   Yes.

Q.   So that reflects that apparently on this date, February 19, 2017, you had a series of phone calls using that phone number; is that right?

A.   We discussed church business on a regular basis.  I'm sure that's what that phone call was, because I have no memory of it otherwise.  Yeah, he sometimes asked me to do things. Sometimes I had to call him and ask questions.  It was -- it was not an every week, every day, but we had business from time to time, church business.

Q.   So you're saying, sir, that if we looked through all of these phone numbers -- or these calls on this call record that we would see your number come up occasionally?

A.   Probably.

Q.   Because you're kind of old friends?

A.   Well, because we were doing church business together.

Q.   I see.

A.   That is what I would call him about or he would call me.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 185

U.S. v. Mallory

R. Stephenson - Cross

93

Q.   Now, the conversation that you had about church business, did Mr. Mallory at that time tell you that he was planning to do some work, consulting work?

MR. GIBBS:  Objection --

THE WITNESS:  I have no memory of that.

MR. GIBBS:  -- hearsay.

THE COURT:  I'll overrule it.  He's already answered.  Let's proceed.

BY MR. KAMENS:

Q.   Now, the text message --

THE COURT:  Let's not ask questions calling plainly for hearsay.

MR. KAMENS:  Not asking for the truth, Your Honor, just whether he heard it.

BY MR. KAMENS:

Q.   Now, the series of text messages that you discussed, the text messages that you deleted off of your phone --

A.   On the 22, yes.

Q.   On the 22.  But you do remember the context was that Mr. Mallory told you -- or suggested that he might be doing some consulting work; is that right?

A.   Yes, yes.  I believe he did mention that.

Q.   And he wanted to, I think you testified, talk with someone from East Asia Division at the CIA?

A.   Uh-huh, or another officer that I will not -- another

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 186**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 199 of 352  Total Pages:(199 of 352)

U.S. v. Mallory

R. Stephenson - Cross

94

title that I will not mention.

Q.   All right.  And you sent him an e-mail in response to --

A.   We had the text exchange, and then I sent an even more general e-mail, following up saying, "No more.  We're done."

Q.   Now, what concerned you was not the information in the text that Mr. Mallory was thinking of doing some consulting work, right?  Would that cause you --

A.   That wouldn't necessarily be an issue --

Q.   Okay.

A.   -- unless there was some other reason for it to be an issue, not in and of itself.  It would not be an issue.

Q.   Now, the information that he wanted to speak to someone in the East Asia Division at the CIA, did that by itself cause you to be concerned?

A.   Yeah, yeah, because he was a freelancer from outside the organization.  One thing I have to --

        THE WITNESS:  May I interject something here, Judge.

        THE COURT:  No, I think you need to just answer the question.  Now, if it's responsive --

        THE WITNESS:  It's responsive to this, I think.

        THE COURT:  All right.

        THE WITNESS:  Go ahead and ask the question again, please.

BY MR. KAMENS:

Q.   If Mr. Mallory asked you -- or his question to be put in

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 187

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 200 of 352  Total Pages:(200 of 352)

U.S. v. Mallory

R. Stephenson - Cross

95

touch with someone from the East Asia Division at the CIA, that caused you to feel uncomfortable?

A.    Correct.  I think Kevin understood --

Q.    Sir, if you can answer my question and not --

A.    I said yes.  I -- well, ask the question one more time.

Q.    When Mr. Mallory told you that he wanted to speak to someone at the East Asia Division at the CIA, that made you feel uncomfortable?

A.    Yes, yes, because he was not employed by the CIA.  It was not in his chain of command.  He understands authority.  He spoke -- he spoke about authority and chain of command at church on a regular basis, followed it and he lived it.  I think he understood that he was outside the chain of command and outside the authority of the CIA.  He was not a contractor.  He was not an employee.  So that was inappropriate for him to ask me to do that.

Q.    You have no idea whether he was seeking to contact other people to report this contact, do you?  Well, let me --

A.    Rephrase that.

Q.    -- rephrase that.

       At this time, on February 22, when you were concerned by receiving these e-mails, you had no idea whether he was seeking to report this conduct to anybody else?

       MR. GIBBS:  Judge, that calls for speculation.

       MR. KAMENS:  I'm just asking his knowledge.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 188

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 201 of 352 Total Pages:(201 of 352)

R. Stephenson - Cross

U.S. v. Mallory

96

THE COURT:  Either he knows or he doesn't.

THE WITNESS:  I don't really understand the question.  I think the question is very vague.  I don't understand what you're asking.

THE COURT:  All right.  Next question.

BY MR. KAMENS:

Q.   You didn't have any idea in your own mind whether he was seeking to contact someone else --

THE COURT:  What difference does that make?  That's also irrelevant.

MR. KAMENS:  Well --

THE COURT:  You may ask him what -- whether he knows if there was any further efforts to contact, and that's end of it.

BY MR. KAMENS:

Q.   Do you know whether at that time he was contacting anybody else at the CIA.

A.   At the CIA, I don't know.

Q.   Now, basically, you told him that the people you knew in that division had moved on; is that right?

A.   At least one of them, yes.

Q.   And you also said that you could put him in touch with security; isn't that right?

A.   Either -- no -- honestly, I can't remember exactly what I said, but I said -- what I remember saying was that -- and I

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 189**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 202 of 352 Total Pages:(202 of 352)

U.S. v. Mallory

R. Stephenson - Cross

97

have notes that I can consult that I wrote the day after this happened.

What I remember saying to him was that I could contact security about this if he wanted to.  I don't remember whether I told him I could put him in touch with security.  I don't remember that.

Q.   All right.

A.   That, to me, is more of a -- it's more something on me to do, so I -- what I remember saying was, "Would you like me to contact security and have them get in touch with you?"

Q.   Didn't you also say you didn't know if security would call him back?

A.   I don't -- I don't remember.  I can't say.  I don't remember.

Q.   That's fine.  Take a look at Defendant's Exhibit 2A-3.

If you can, look at the second book.  Do you recognize that, that document?

A.   Hang on just a second.

Q.   2A-3, sir.

A.   Yeah.  Yeah.

Q.   All right.  Do you recognize that document?

A.   Uh-huh.

Q.   It appears to be an e-mail from you -- oh, I'm sorry, did you recognize this document?

A.   I do.  And I believe it's a document I shared with

Tonia M. Harris OCR-USDC/EDVA 703-646-1438
EASTERN DISTRICT OF VIRGINIA

**U.J.A. 190**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 203 of 352 Total Pages:(203 of 352)

defense --

Q.   Okay.

A.   -- after it was cleared by CIA.

Q.   All right.  It appears to be an e-mail from you, doesn't it, sir?

A.   Yes.

Q.   And on the second page of that document, it appears that, according to your recollection of the event at the time, you said you didn't know if security would actually call Mr. Mallory; is that right?

A.   Yeah.  Yeah.  Okay.

Q.   You also offered to talk to Mr. Mallory at church; is that right?

A.   Yes.  And I already addressed that on the 26 of February I talked to him.

Q.   One other thing, Mormon Church -- your relationship with Mr. Mallory, the Mormon Church can provide financial assistance?

A.   Yes.

Q.   And to members who are in financial trouble?

         MR. GIBBS:  Objection, Your Honor, relevance.

         MR. KAMENS:  Discussing their private relationship in the Mormon Church.  I'm just asking about that.

         THE COURT:  I'll sustain the objection.  I don't see the relevance.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438
EASTERN DISTRICT OF VIRGINIA

U.J.A. 191

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 204 of 352 Total Pages:(204 of 352)

U.S. v. Mallory

R. Stephenson - Cross

99

MR. KAMENS:  Well, it does relate to the financial circumstances of the defendant.

THE COURT:  All right.  I'll permit that.

BY MR. KAMENS:

Q.   Sir, you're aware that Mr. Mallory's family is receiving assistance from the Mormon Church now; is that right?

A.   Yes.  I was the financial clerk and the membership clerk for the branch.  I wrote the checks.

Q.   Okay.  Thank you, sir.

MR. KAMENS:  Nothing further.

MR. GIBBS:  Nothing further, Judge.  Thank you, sir.

THE COURT:  All right.  You may step down.  May this witness be excused?

MR. GIBBS:  We do not intend to call this witness again, Judge.

MR. KAMENS:  No objection, Your Honor.

THE COURT:  All right.  You may step down.

(Witness excused.)

THE COURT:  Who is your next witness, Mr. Gibbs? Ms. Garcia?

MS. GARCIA:  Your Honor, it's -- the next two are both CBP officers.  The first one, the first direct will take approximately 25 minutes, the second will take about 15. They're related in the same incident.

THE COURT:  All right.  Well, let's begin.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 192**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 205 of 352  Total Pages:(205 of 352)

MS. GARCIA:  Your Honor, the United States calls CBP Officer Peter Napoleon.

THE COURT:  Come forward and take the oath, please, sir.

Thereupon,

**PETER NAPOLEON,**

having been called as a witness on behalf of the Government and having been first duly sworn by the Deputy Clerk, was examined and testified as follows:

(Witness seated.)

THE COURT:  You may proceed.

**DIRECT EXAMINATION**

BY MS. GARCIA:

Q.   Officer Napoleon, will you please state your full name and spell it for the record.

A.   My name is Peter Napoleon, P-e-t-e-r, Last name N-a-p-o-l-e-o-n.

Q.   Where are you currently employed?

A.   Out of Chicago O'Hare International Airport.

Q.   How long have you been employed there at O'Hare Airport?

A.   Five years at O'Hare; nine years total with the United States Customs.

Q.   Do you have a specific focus in CBP?

A.   I work for TTRT, Terrorism Task Force Response Team.

Q.   How long have you been employed with that team?

USCA4 Appeal: 19-4385   Doc: 27-1   Filed: 08/07/2020   Pg: 206 of 352  Total Pages:(206 of 352)

U.S. v. Mallory

P. Napoleon - Direct

101

A.    Two and a half years.

Q.    What are your current responsibilities?

A.    We interview anyone that's coming into the United States coming from a foreign country.

Q.    Ballpark figure how many interviews would you estimate you've done?

A.    Three and a half years, I would say 15 to 20 a day.

Q.    And have you been involved in the case *United States versus Kevin Patrick Mallory*?

A.    Yes.

Q.    Do you see Mr. Mallory sitting in the court today?

A.    Yes, I do.

Q.    Can you please point him -- point him out and identify an article of clothing he's wearing?

A.    Seated to my left wearing the black suit with a white -- black tie.

        THE COURT:  The record will reflect that the witness has identified the defendant.  Next question.

        MS. GARCIA:  Thank you, Your Honor.

BY MS. GARCIA:

Q.    Officer Napoleon, taking you back to April 21, 2017, do you remember that day?

A.    Yes.

Q.    At some point that day did you encounter the defendant?

A.    Yes, I do.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 194

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 207 of 352  Total Pages:(207 of 352)

U.S. v. Mallory

P. Napoleon - Direct

102

Q.   Can you explain how you initially encountered him?

A.   Myself and my fellow colleague were upstairs doing inbound flight from Shanghai, China.  And at that point at the gate, as they were walking out, I encountered Mr. Mallory.

Q.   And what did you do with Mr. Mallory at that point?

A.   At that time we proceeded to review his U.S. passport, it was for him and his son, and the United States customs declaration.

Q.   And did you take him anywhere after that?

A.   We took him down to immigration where he was processed as a U.S. citizen and we proceeded forward to the carousels to retrieve his bags.

Q.   Did you and your partner take custody of his luggage?

A.   Yes, we did.  We received two checked-in bags.  And at that time, I had asked Mr. Mallory to -- if he had any electronic devices on him.

Q.   And what did he respond?

A.   He responded he had two cell phones that were his and one cell phone that belonged to his son.

Q.   And what happened with these electronics?

A.   At that point I had notified Mr. Mallory that we usually hold on to the electronics until after the inspection is done and then return them over at the end of the inspection.

Q.   Did Mr. Mallory make any statements to you regarding this?

-Tonia M. Harris OCR-USDC/EDVA 703-646-1438-

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 195**

USCA4 Appeal: 19-4385     Doc: 27-1     Filed: 08/07/2020     Pg: 208 of 352 Total Pages:(208 of 352)

U.S. v. Mallory

P. Napoleon - Direct

103

A.   Yes.  He stated that he wanted to call his wife and --

Q.   Did he state why?

A.   He said he wanted to notify his wife that they had arrived.

Q.   Did he make any other statements to you?

A.   He asked me if his rights were being violated --

Q.   And what did --

THE COURT:  Let him --

MS. GARCIA:  Sorry to interrupt.

BY MS. GARCIA:

Q.   Go ahead, please.

A.   He asked me if his rights were being violated as a U.S. citizen.

Q.   And what did you respond?

A.   I notified him that anyone that enters into the United States, they are subject to inspection and that's including your luggage and all electronics.

THE COURT:  And it includes whether you're a citizen or not?

THE WITNESS:  That's correct.

THE COURT:  Next question.

BY MS. GARCIA:

Q.   You mentioned that he asked if he could call his wife. Was he permitted to?

A.   No.  We don't allow phone calls during an inspection

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 196**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 209 of 352    Total Pages:(209 of 352)

period.  After the inspection period, you are -- we let you make phone calls.

Q.   Did Mr. Mallory state whether he had any other electronics with him?

A.   He stated that he had some items checked on his carry-on and then some -- something in his checked-in bags.

Q.   Do you remember what electronics he said he had?

A.   I can't recall.  If I can see my report.

Q.   Certainly.

MS. GARCIA:  Your Honor, may I hand up his report to refresh his recollection?

THE COURT:  All right.  Show it to Mr. Kamens.

MR. KAMENS:  Mr. Richman, Your Honor.

THE COURT:  All right.  These have already been provided to the defense?

MS. GARCIA:  They have, yes.

THE COURT:  All right.  Show it to the officer, Officer Napoleon.

BY MS. GARCIA:

Q.   Officer Napoleon, if you would look through it quickly, but don't read any of it.  If you'll just read it to yourself.

A.   It was a laptop and an iPad in his carry-on.

Q.   And during this time -- what was your impression of the defendant's demeanor during this time?

A.   Felt kind of agitated, but he appeared to be agitated why

USCA4 Appeal: 19-4385 Doc: 27-1 Filed: 08/07/2020 Pg: 210 of 352 Total Pages:(210 of 352)

U.S. v. Mallory

P. Napoleon - Direct

105

we were questioning him and why we were inspecting him and why he couldn't have his cell phone.

THE COURT:  Speak up, if you would, please.

THE WITNESS:  Oh, I'm sorry.  He was just asking me about why he was being inspected.  He seemed irritated that we were inspecting him.

BY MS. GARCIA:

Q.   And what about -- did he make any statements about gifts he brought home?

A.   He stated that he had bought -- purchased a few things, a few items, while he was abroad in Shanghai, China.

Q.   Do you remember any of those specifically?

A.   I remember him telling me he bought a MacBook Pro, a mouse, a saxophone for his son, and a Samsung -- a brand-new Samsung phone for his wife.

Q.   Now, after -- during this time did you review any paperwork with Mr. Mallory?

A.   That point I had -- his passport, his son's U.S. passport, and a U.S. customs form, a declaration form that everyone fills out coming into the country.

Q.   With the assistance of the court security officer, I'm going to hand you up the original Government's Exhibit 5-1. There's a copy -- it should be a copy in all binders.  And you can look at Government Exhibit -- I'm sorry, can you look at Government's Exhibit -- that original.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 198

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 211 of 352   Total Pages:(211 of 352)

U.S. v. Mallory

P. Napoleon - Direct

106

All right.  Do you recognize it?

A.    Yes.

Q.    What is it?

A.    It's a United States Customs 6059.

Q.    Have you -- can you explain what that is?

A.    This is a form that everyone that comes into the United States fills out, and basically what they're reporting, where they are coming from, whether it's business, if they are bringing anything with them into the United States.

Q.    And have you seen this before today?

A.    Yes, I have.

Q.    When did you see it?

A.    April 21, when Mr. Mallory handed it to me.

Q.    And who filled it out?

A.    Mr. Mallory.

Q.    Do you see a signature on the bottom?

A.    Yes.

Q.    What signature do you see?

A.    It says "Kevin P. Mallory."

Q.    And is this substantially the same as the day you saw it?

A.    Yes.

MS. GARCIA:  Your Honor, we would offer Government's Exhibit 5-1 into evidence?

MR. RICHMAN:  No objection.

THE COURT:  Admitted.  You may display it, if you

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 199

P. Napoleon - Direct

U.S. v. Mallory

107

wish.

                    (Government's Exhibit No. 5-1

                    admitted into evidence.)

        MS. GARCIA:  Yes, Your Honor, we would like to

publish it.

BY MS. GARCIA:

Q.   And, Officer Napoleon, looking at the original you have,

will you please read the question and answer for question 13

into the record.

A.   "I am.  We are carrying currency and monetary instruments

over 10,000 U.S. or foreign equivalent."

Q.   And what answer did Mr. Mallory check?

A.   No.

Q.   Talking -- did Mr. Mallory make any statements to you

about the length of his trip and where he was coming from?

A.   He stated that he was in Shanghai, China, for one week

for business/family -- sorry -- son -- father/son vacation.

        THE COURT:  Are you offering the exhibit?

        MS. GARCIA:  Oh, yes.  I'm sorry, Your Honor.  We

are offering it into evidence.

        THE COURT:  All right.  Without objection, it's

admitted.  I may have already admitted it, but if not...

        MS. GARCIA:  Thank you, Your Honor.

        THE COURT:  Next question.

BY MS. GARCIA:

                    Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 200**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 213 of 352  Total Pages:(213 of 352)

U.S. v. Mallory

P. Napoleon - Direct

108

Q.   Did he make any statements about his employment, who he worked for?

A.   He stated that he works for himself, for a GlobalEx that he's had since 2010.

Q.   Did he say that he met with anyone?

A.   He stated that he met with David Hong [sic], that he -- through church.

Q.   What did he say he discussed with Mr. Wong?

A.   He said they were talking regarding anti-bullying.

Q.   And how did he --

        THE COURT:  Anti what, sir?

        THE WITNESS:  Anti-bullying.

        THE COURT:  Bullying.  All right.  Next question.

BY MS. GARCIA:

Q.   How did he say he communicated with Mr. Wong?

A.   He said he communicated with him through WeChat.

Q.   Did he say whether Mr. Wong gave him anything?

A.   He stated he did not receive anything from Mr. Wong.

Q.   Did he make any statements about whether he met with anyone else?

A.   No.

        THE COURT:  How did they chat, I'm sorry?

        THE WITNESS:  Through WeChat.

        THE COURT:  Is that a computer or --

        THE WITNESS:  It's another app through your phone, I

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 201

U.S. v. Mallory

P. Napoleon - Direct

109

believe.

THE COURT:  Next question.

BY MS. GARCIA:

Q.   Did Mr. Mallory make any statements to you regarding his financial assets?

A.   He stated that he had $6,000 in a HSB account that he said he didn't have access to.

Q.   I'm sorry, where was that account?

A.   Can I look in my notes?  It was an HSB account, but I forgot what country he said it was in.

Q.   Would anything refresh your recollection?

A.   If I may look at my notes.

THE COURT:  Yes, you may.

THE WITNESS:  Thank you.  In Hong Kong.

BY MS. GARCIA:

Q.   And did he make any statements about the amount?

A.   6,000 U.S. dollars.

Q.   Was he sure about that?

A.   He said somewhere in that amount 6,000, but he's not quite sure how much exactly.

Q.   Why wasn't he sure?

A.   Because he said he hasn't had access to it.

Q.   And as you continued to question Mr. Mallory, what was your impression of his demeanor?

A.   Kind of offensive.  He was questioning why we were -- why

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 202**

U.S. v. Mallory

P. Napoleon - Direct

110

he was being questioned at the time.

Q.   Did you ask him questions about how much money he took out of the U.S. and how much he brought back?

A.   Yes.  I asked him -- what I do is I usually go over the declarations with him to verify all of his answers.  And when I got to No. 13, he did -- I go, "Are you bringing in over $10,000?"  And he said -- well, I asked him how much money did he take out, and he said he brought -- took out about 10,000.  And I asked him, "Was it more or less?"  He said, "Around 10,000."

And I said -- advised him at that point, I go, "You can take as much money as you like out of country or in, you just have to report it as you are either exiting -- leaving the country or coming in."

Q.   And what did he say about the money coming in at that point?

A.   At that point, he said -- I asked him, "How much money are you bringing back?"  And he said about ten -- what did he say -- ten -- can I look at my notes?

THE COURT:  Yes, you may.

THE WITNESS:  Thank you.  He said -- he stated that he had about 13 to 14, but he said he wasn't quite sure.

BY MS. GARCIA:

Q.   And did you, during that inspection, verify the amount?

A.   Yes.  What I do is after going through this, we give him

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 203

U.S. v. Mallory

P. Napoleon - Direct

111

one more chance to amend his customs form.  So we went -- I believe the money was in his check -- carry-on.  We found the money.

Q.   And without going into the circumstances of the -- of the search of the luggage -- well, first of all, who was doing the search of the luggage?

A.   The search of luggage was myself and my co-worker.

Q.   And what's your co-worker's name?

A.   Prokopiuk, Officer Prokopiuk.

Q.   And as a result of his answer on the finances, did you have him fill out any additional paperwork?

A.   Yes.  I had him fill out what we call FinCEN 105.

THE COURT:  Why?

THE WITNESS:  Anything that's reported -- anything over 10,000 U.S. currency or foreign currency is -- we fill out that form.

THE COURT:  Well, in his form that he submitted to you, tell me again, that's Question 13.  How much did he say he brought back in?

THE WITNESS:  He had -- at that time he told me he was bringing 13- or 14,000.

THE COURT:  Before, I'm asking.

THE WITNESS:  It says under 10,000 -- if he has over 10,000.  He reported no.  But I gave him a chance to amend his declaration and that's when he reported 13- to 14,000.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 204**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 217 of 352 Total Pages:(217 of 352)

P. Napoleon - Direct

U.S. v. Mallory

112

THE COURT:  Next question.

BY MS. GARCIA:

Q.   And as a result of his answers, did you have him fill out any additional paperwork?

A.   Yes.  At that point he filled out the FinCEN 105.

Q.   And looking at Government's Exhibit 5-2 in the binder.

(A pause in the proceedings.)

BY MS. GARCIA:

Q.   Do you recognize that?

A.   Yes.

Q.   And what is it?

A.   It's the FinCEN 105.

Q.   Can you explain the purpose of that document?

A.   This is a reporting of international transportation of currency and instruments based on anyone carrying over 10,000 U.S. currency or foreign currency.  Anything over $10,000 is reported.  We fill it out with their information and then state how much total they are reporting.

Q.   And who filled this out?

A.   Myself.

Q.   Anyone else?

A.   Filled out by myself, signed by Mr. Mallory.

Q.   And what's the date?

A.   The date is 4/21/2017.

THE COURT:  Where did you get the information to

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 205

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 218 of 352 Total Pages:(218 of 352)

U.S. v. Mallory

P. Napoleon - Direct

113

fill it out?

THE WITNESS:  I -- the address is from the ID that he gave me.  And the passport number, which I did not put on here --

THE COURT:  All right.  And you've got in here that it came from Shanghai to Chicago.  It was hand-carried on United Airlines.

THE WITNESS:  That's correct, sir, Your Honor.

THE COURT:  Where did you get that information?

THE WITNESS:  Well, I knew it was hand-carried because it was on his person, and then he's coming off United Airlines.

THE COURT:  The money was on his person?

THE WITNESS:  It was on his carry-on.

THE COURT:  All right.  And how much money was it?

THE WITNESS:  After we -- the account was verified by Mr. Mallory and myself and we counted 16,500 U.S. dollars.

THE COURT:  Next question.

MS. GARCIA:  Your Honor, I would offer Government's Exhibit 5-2 into evidence.

THE COURT:  All right.

MR. RICHMAN:  No objection.

THE COURT:  It's admitted.  Next question.  You may display it, if you wish.

MS. GARCIA:  Thank you, Your Honor.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 206**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 219 of 352  Total Pages:(219 of 352)

P. Napoleon - Direct

U.S. v. Mallory

114

THE COURT:  It's admitted.  You'll have it with you in the jury room.  Next question.

MS. GARCIA:  If we could publish it and look at part 3.

BY MS. GARCIA:

Q.   Officer Napoleon, would you read into the record the amount listed in part 3.

A.   $16,500, U.S. dollars.

Q.   And how did you -- how did your interview conclude?

A.   After we did the currency verification, we handed back Mr. Mallory his money, told him to hold on to it, and then we did the bag exam.  I'm sorry?

Q.   Well, I'm going to have Officer Prokopiuk talk about the baggage exam because he was the one doing it.

But what happened with Mr. Mallory after that.

A.   He was a little upset that I did ask a question to his son.  He did get a little upset with that, still upset with the whole inspection process.  Then we did -- we had the issue of failure to declare.

Q.   Okay.  Explain that for the jury.

A.   He had failed to report anything he brought into the United States.  There was a few things that he did not report on -- because he was not truthful regarding how much money he was bringing in, he was not given his exemptions on the items he had purchased coming into the United States.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 207

USCA4 Appeal: 19-4385   Doc: 27-1   Filed: 08/07/2020   Pg: 220 of 352   Total Pages:(220 of 352)

Q.   And what, if anything, did Mr. Mallory have to do as a result of not?

A.   He had to pay a duty on the items that he was bringing into the United States.

Q.   And what was Mr. Mallory's -- what was your impression of Mr. Mallory's response to having to pay duty --

A.   When he found out that all he had to do is pay the duty, he made a sigh of relief.  He actually smiled for the first time during the interview.

MS. GARCIA:  Your Honor, if I may inquire if my counsel may have any additional questions?

THE COURT:  Yes.

MS. GARCIA:  No further questions, Your Honor.

THE COURT:  Any cross-examination?

MR. RICHMAN:  Yes, Your Honor.

THE COURT:  All right.

**CROSS-EXAMINATION**

BY MR. RICHMAN:

Q.   Good afternoon, Officer Napoleon.

A.   Good afternoon, sir.

Q.   Now, again, the interaction you were testifying about was at Chicago O'Hare on April 21 of last year?

A.   Two thousand- -- yes.

Q.   And it was shortly after 5:00 p.m. that day?

A.   I -- Mr. Mallory went through immigration, yup, 1705,

USCA4 Appeal: 19-4385 Doc: 27-1 Filed: 08/07/2020 Pg: 221 of 352 Total Pages:(221 of 352)

U.S. v. Mallory

P. Napoleon - Cross

116

approximately 1705.

Q. And that was about the -- that was shortly after you had first encountered him?

A. That's correct.

Q. So you first encountered him around 5:00 p.m.; is that right?

A. Give or take about 15 minutes.

Q. And he was getting off a direct flight from Shanghai?

A. Yes.

Q. That's about a 14-hour flight?

A. Yes.

Q. And also there's a significant time difference?

A. Yes.

Q. So it's approximately 6:00 a.m. according to the time where he left from, right?

A. Yes.

Q. And now the form, the customs declaration form, you talked about, that had already been filled out before you met him, right?

A. Yes.

Q. That is something that's handed out by flight crew, is that right, on the plane?

A. That's correct.

Q. And do you know when he filled it out?

A. I do not.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 209

U.S. v. Mallory

P. Napoleon - Cross

117

Q. Presumably sometime shortly before he arrived that morning?

THE COURT: All right. That's speculation. If he doesn't know, he doesn't know. Next question.

BY MR. RICHMAN:

Q. Now, CBP doesn't consider that form to be what's called a binding declaration, does it?

A. Yes.

Q. Well, in your report you talked about receiving a binding declaration, right?

A. Well, it's a binding declaration, but then we do -- we do another oral declaration, and he's basically confirming his answers.

Q. And as a regular practice you go through that process with the person and review the form, right?

A. Yes.

Q. And you give him the opportunity to make changes to the extent there are changes?

A. That is correct.

Q. And then you ask him to sign again?

A. It's already signed.

Q. Do you ask him to then verify again whether it's accurate once you've gone through that?

A. I ask -- I read off the questions and then they read off -- and then they say yes or no.

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 223 of 352   Total Pages:(223 of 352)

Q.   And in that process, Mr. Mallory stated that he had about 13- or $14,000 with him, right?

A.   That is correct.

Q.   He didn't claim to know the exact amount, right?

A.   He said 13- to 14,000.  He wasn't sure and that's why we verified the account.

Q.   And so you and he essentially together counted the money?

A.   That's correct.

Q.   Ultimately, he broke down the accurate amount on the FinCEN 105 form?

A.   I wrote it down.

Q.   He signed for the accurate amount?

A.   Right.

THE COURT:  Who wrote down the amount on the original form?

THE WITNESS:  On the FinCEN 105, myself, Your Honor.

THE COURT:  On the original form?

THE WITNESS:  On the 16 -- on the -- not on the customs form.

THE COURT:  Yes, on the customs form.

THE WITNESS:  On the customs form, there is no dollar amount written.  It was just a yes-or-no question on whether --

THE COURT:  Who wrote that?

THE WITNESS:  The note -- Mr. Mallory.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 211

USCA4 Appeal: 19-4385     Doc: 27-1     Filed: 08/07/2020     Pg: 224 of 352   Total Pages:(224 of 352)

U.S. v. Mallory

P. Napoleon - Cross

119

THE COURT: All right. And next question.

BY MR. RICHMAN:

Q. All right. And you also asked him about how much money he had gone to China with?

A. That is correct.

Q. So he was -- and he said that was about 10,000?

A. About 10,000.

Q. So he was clear he had made money during his trip?

THE COURT: Well, he doesn't know that, Mr. Richman. That's argument. Speculation argument.

BY MR. RICHMAN:

Q. He was returning with more than he came with, according to Mr. Mallory's own report, right?

THE COURT: According to what?

MR. RICHMAN: According to Mr. Mallory's own report.

THE COURT: Well, the documents are in evidence. You may argue as you wish. Let's proceed.

MR. RICHMAN: Well, there's no document about how much he went with. That's how much -- that's the statement that the Government elicited from Officer Napoleon.

THE COURT: No. How much he took with him was a statement Mr. Mallory made.

MR. RICHMAN: Right. And I was trying to get back to refer to that statement.

THE COURT: Well, you may have, but it was inartful.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 212**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 225 of 352 Total Pages:(225 of 352)

P. Napoleon - Cross

U.S. v. Mallory

120

Next question.

BY MR. RICHMAN:

Q.   Mr. Mallory reported returning to the United States with more money than he had gone to China with; is that right?

A.   From what he told me, yes.

Q.   He also told you he had purchased various electronics in China, right?

A.   That is correct.

Q.   A new laptop, is that right?

A.   MacBook Pro, yes.

Q.   And an iPad?

         MS. GARCIA:  Your Honor, the witness has already answered this question.

         THE COURT:  It's asked and answered.

         MR. RICHMAN:  All right.

BY MR. RICHMAN:

Q.   He told you he had purchased a Samsung phone as well?

         THE COURT:  Again, asked and answered.  Unless you think his original answer was wrong.

         MR. RICHMAN:  No I'm --

         THE COURT:  You're trying to get him to repeat it.

         MR. RICHMAN:  Trying to make sure I understand the testimony.

         THE COURT:  All right.  Well, I'm sure you do.  Next question.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 213**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 226 of 352  Total Pages:(226 of 352)

U.S. v. Mallory

P. Napoleon - Cross

121

BY MR. RICHMAN:

Q.   And you testified he paid a duty on the things he reported purchasing in China, right?

A.   Yes.

Q.   That duty wasn't on the money he had with him, right?  It was on the things he purchased?

A.   That is correct.

Q.   You didn't know at that time whether any of those electronics had been brought with him to China other than his reporting, right?

A.   Well, he stated what he had purchased that were new, and that was the MacBook Pro, the new Samsung phone, and the other items reported earlier.

Q.   You didn't have any independent knowing whether, for example, the Samsung phone was something he had from the United States other than his report?

A.   No.  He stated to me that it was a brand-new phone that he purchased for his wife.

        THE COURT:  Next question.

        MR. RICHMAN:  Understood, Your Honor.

BY MR. RICHMAN:

Q.   Now, this interaction took about two and a half hours, the total interaction that you described?

A.   Approximately.

Q.   Now, did -- other than the $188 tariff, did the United

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 214**

U.S. v. Mallory

P. Napoleon - Cross

122

States seize any money from Mr. Mallory during this interaction?

A.   No.

Q.   The bank account that you referred to, the HSBC account, he reported that being his own account in his name, right?

A.   Yes.

Q.   And he reported it being an account he couldn't access from the U.S.?

A.   That's what he stated to me.

        MR. RICHMAN:  Nothing further, Your Honor.

        THE COURT:  Any redirect?

        MS. GARCIA:  No, Your Honor.

        THE COURT:  Thank you.  You may step down, Officer Napoleon.  Any reason why this witness should not be excused?

        MS. GARCIA:  No, Your Honor.

        THE COURT:  All right.  He's excused.

        (Witness excused.)

        THE COURT:  How long do you -- does this next witness take?

        MS. GARCIA:  About 15 minutes, Your Honor.

        THE COURT:  All right.  Let's try to do it quickly. By which time your baked Alaska would not have melted or otherwise changed in form.

        MS. GARCIA:  Your Honor, the United States calls CBP Officer Waldmar Prokopiuk.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 215

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 228 of 352  Total Pages:(228 of 352)

U.S. v. Mallory

W. Prokopiuk - Direct

123

THE COURT:  All right.  Come forward and take the oath, please, sir.  You may either affirm or take the oath with a Bible, whichever you prefer.

Thereupon,

**WALDMAR PROKOPIUK,**

having been called as a witness on behalf of the Government and having been first duly sworn by the Deputy Clerk, was examined and testified as follows:

(Witness seated.)

THE COURT:  All right.  Ms. Garcia, you may proceed.

**DIRECT EXAMINATION**

BY MS. GARCIA:

Q.   Officer Prokopiuk, state your full name and spell your full name for the record.

A.   My full name is Waldemar Prokopiuk, W-a-l-d-e-m-a-r, last name P-r-o-k-o-p-i-u-k.

Q.   Officer Prokopiuk, where are you currently employed?

A.   By U.S. Customs and Border Protection.

Q.   How long have you been employed there?

A.   Since 2005.

Q.   Where are you currently serving?

A.   Chicago International Airport O'Hare in Chicago.

Q.   How long have you been at O'Hare Airport?

A.   Since 2005.

Q.   What are your current responsibilities?

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 216**

USCA4 Appeal: 19-4385 Doc: 27-1 Filed: 08/07/2020 Pg: 229 of 352 Total Pages:(229 of 352)

U.S. v. Mallory

W. Prokopiuk - Direct

124

A.   I am U.S. customs officer.  My responsibility is to perform inbound and outbound inspections on everyone arriving or departing the United States.

Q.   During your time working with CBP, have you been experienced in inspecting luggages specific -- luggage specifically?

A.   Yes, that's correct.

Q.   How many inspections would you estimate you've done?

A.   Thousands.

Q.   Have you been involved in a case *United States against Kevin Patrick Mallory*?

A.   Yes, I did.

Q.   And do you see the defendant, Kevin Patrick Mallory, sitting in the courtroom today?

A.   Yes.

Q.   Could you please point to him and identify him by an article of clothing he's wearing?

A.   Mr. Mallory is wearing a blue tie, dark suit.

        THE COURT:  All right.  The record will reflect that the witness has identified the defendant.  Next question.

        MS. GARCIA:  Thank you, Your Honor.

BY MS. GARCIA:

Q.   On April 21, 2017, do you remember that day?

A.   Yes, ma'am.

Q.   At some point did you encounter the defendant?

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 217

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 230 of 352 Total Pages:(230 of 352)

U.S. v. Mallory

W. Prokopiuk - Direct

125

A.    Yes.

Q.    Can you explain the initial encounter with the defendant?

A.    Mr. Mallory was inspected by myself and my partner, Officer Napoleon.

Q.    And what was your role?

A.    My -- Officer Napoleon was the leading officer during this inspection.  My responsibility was to inspect luggage belongings to Mr. Mallory.

Q.    And what luggage did Mr. Mallory have on him that day?

A.    Two carry-ons, it was two pieces of luggage.

Q.    During your inspection, what did you find in the carry-on?

A.    In the carry-on we discovered a currency.

Q.    And how much currency did you find?

A.    After verification, and I helped Mr. Mallory amend the declaration.  It was total of $16,500.

Q.    And how did -- how was the currency packaged?

A.    There was -- I think in a two different like packages inside in the -- in the luggage.

Q.    How was it packed inside the luggage?

A.    I believe it was in envelopes with a rubber band.

Q.    Was it on top?

A.    I'm sorry?

Q.    Was it -- where within the luggage was it?

A.    It was inside the luggage in the bottom of the carry-on.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 218**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 231 of 352   Total Pages:(231 of 352)

W. Prokopiuk - Direct

———————————U.S. v. Mallory———

126

Q.    Did you find anything else when you were inspecting him?

A.    Carry-on baggage inspection, the baggage revealed also a stack of business cards and the receipts from the bank and electronic devices.

Q.    What electronic devices did you find?

A.    That was -- cell phone, I believe there was Samsung cell phone.

Q.    And how was that packaged?

A.    It was packed in a box, but my attention -- when I saw the box -- it was in a box, placed in a box, but I saw that the seal was broken.  According to Mr. Mallory, it was a brand-new it was a brand-new Galaxy Samsung phone purchased for his wife as a gift.

Q.    Did he say anything else about the phone?

A.    When I lift the cover of the box, I noticed there was fingerprints on it, which told me right away this is not a brand-new phone.

Q.    And what was your impression Mr. Mallory's demeanor during the search?

A.    During inspection he was very unhappy with the secondary inspection and was aggravated, so he was unhappy.

Q.    What happened at the end of the inspection?

A.    By the end of the inspection, Mr. Mallory -- his demeanor completely changed.  He was happy.

Q.    Why was that?

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 232 of 352    Total Pages:(232 of 352)

U.S. v. Mallory

W. Prokopiuk - Direct

127

A.    We --

Q.    Had you --

        MR. RICHMAN:  Objection, Your Honor.

        MS. GARCIA:  I can rephrase, Your Honor.

BY MS. GARCIA:

Q.    Go ahead.  How did the inspection conclude?  What were the last steps of the inspection?

A.    The last step of the inspection was we collect duty from Mr. Mallory on the purchased items abroad.

Q.    And what was your impression of Mr. Mallory's response to paying the duty?

A.    His demeanor changed.  He paid the duty and he was --

Q.    How did his demeanor change?

A.    Well, from being very on head [sic] with police with the inspection rights from the beginning.  By the end, he was completely changed, looked kind of relieved.

        MS. GARCIA:  Your Honor, may I inquire of my counsel if we --

        THE COURT:  Yes, you may.

        MS. GARCIA:  No further questions, Your Honor.

        THE COURT:  All right.  Any cross-exam?

        MR. RICHMAN:  No, Your Honor.

        THE COURT:  All right.  Thank you.  You may step down.

        Is this witness going to be recalled?

**U.J.A. 220**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 233 of 352  Total Pages:(233 of 352)

MS. GARCIA:  No, Your Honor.

THE COURT:  Thank you.  You may be excused.

(Witness excused.)

THE COURT:  All right.  Ladies and gentlemen, it's lunchtime.  I hope.  I hope your lunches came.

And we will recess until 1:30 and then we will resume.  Now, pass your books to the right.  Mr. Flood will collect them, maintain their security.  Remember to refrain from discussing the matter among yourselves or with anyone or undertaking any investigation on your own and you may follow Mr. Flood out.

(Jury dismissed.)

THE COURT:  All right.  Court stands in recess until 1:30.

(Lunch Recess 12:35 p.m.)


**P R O C E E D I N G S**

**A F T E R N O O N  S E S S I O N**


THE COURT:  All right.  Good afternoon.  Now, before we begin, I want to say to counsel that I intend to explain to the jury why we're doing this.  And I intend to tell them that a witness will appear, the next witness, and he will give a pseudonym.  And the reason is that his name and his identity, as an employee of the CIA, is classified and cannot be

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 234 of 352  Total Pages:(234 of 352)

U.S. v. Mallory

129

revealed.  And that's why we have a screen so the rest of the

people in the courtroom -- I don't even know if there are

people behind there, but they can't see this person's face.

And the people on this side, I will tell them simply, are

clear to see it; is that correct?

Yes.  There is the court security officer.

THE COURT SECURITY OFFICER:  Yes, Your Honor.

That's correct.

THE COURT:  All right.  So that would explain to

them adequately.  And what pseudonym is he using?

MS. GELLIE:  John Doe, Your Honor.

THE COURT:  That's imaginative.  I thought you might

have used something like Patrick Henry or George Washington,

but John Doe will do.  Now, I will tell them also that his

real name and his appearance, of course, by virtue of the

Sixth Amendment, is disclosed to the defendant because he has

the right to confront all of the evidence against him.

Does he know all of that, Mr. Kamens.

MR. KAMENS:  Your Honor, I'm not sure we know his

last name.  We do know his first name.  And I'm not sure it's

ever been disclosed to us.

MS. GELLIE:  I'm sorry, Your Honor.  It's a little

bit confusing because Mr. Mallory worked with John Doe.  So it

was our understanding he knew.

MR. KAMENS:  They did work together, but everybody

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 222**

———————————U.S. v. Mallory———————
130

who worked together only went by first name.

THE COURT:  Interesting.

MS. GELLIE:  I'm happy to share that name with defense counsel.  I think it may have been in one of our CIPA filings, but I wouldn't swear to that in court today.

THE COURT:  All right.  Well, his name is not going to be revealed today, but go ahead so that I can tell the jury that -- the defendant knows his name.

Mr. Gibbs, is this the only witness this is going to happen with?

MR. GIBBS:  It is, yes.

THE COURT:  All set?  And, Ms. Gellie, will you be doing the examination?

MS. GELLIE:  I will, Your Honor.

THE COURT:  All right.  Let's bring the jury in.

There's no assigned seats.  You may sit wherever you wish.  Although, it's my short experience, in short order -- and I can see its already happened -- in short order, members of the jury claim a proprietary interest in a particular seat, which is fine too.  You may be seated.

(Jury in.)

THE COURT:  Now, it would not have escaped your attention that the topography, the furnishings of the courtroom have changed.  You see the screen in front of you.

The next witness has a name and an identification

———————————Tonia M. Harris OCR-USDC/EDVA 703-646-1438———
EASTERN DISTRICT OF VIRGINIA

**U.J.A. 223**

U.S. v. Mallory

131

that is classified.  So you will have his name as John Doe and you will see him.  Part of the courtroom will not be able to see him to identify him, and he will go by the name of John Doe.  This side of the courtroom, these persons have all been cleared to see him, and they are all people from an agency or two; is that correct.

THE COURT SECURITY OFFICER:  Yes, Your Honor.

THE COURT:  All right.  Now, the defendant under the Sixth Amendment has the right to confront all of the evidence against him.  So he knows the identity of this person.  All right.  You may call your next witness, Ms. Gellie.

MS. GELLIE:  Thank you, Your Honor.  The Government calls to the stand John Doe.

THE COURT:  All right.  And he comes to the courtroom differently, as you'll see.  Come forward and take the oath, please, sir.  You may use a Bible or you may just affirm, whichever you prefer.

Thereupon,

**JOHN DOE,**

having been called as a witness on behalf of the Government and having been first duly sworn by the Deputy Clerk, was examined and testified as follows:

THE COURT:  All right.  Ms. Gellie, you may proceed.

MS. GELLIE:  Thank you, Your Honor.

**DIRECT EXAMINATION**

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 224**

USCA4 Appeal: 19-4385   Doc: 27-1      Filed: 08/07/2020      Pg: 237 of 352  Total Pages:(237 of 352)

U.S. v. Mallory

J. Doe - Direct

132

BY MS. GELLIE:

Q.   Good afternoon, sir.  Would you please state --

A.   Good afternoon.

Q.   Would you please state your name for the record?

A.   John Doe.

Q.   Where do you currently work, Mr. Doe?

A.   I work for the agency.

Q.   And when you say "agency," do you mean the Central Intelligence Agency?

A.   Yes, I do.

Q.   John Doe is not your true name, correct?

A.   That's correct.

Q.   Why are you testifying under a pseudonym today?

A.   Because I -- I am involved in classified work.

Q.   During your time as a contractor at the CIA did you ever meet the defendant, Kevin Mallory?

A.   Yes, I did.

Q.   Is Mr. Mallory in the courtroom today?

A.   Yes, he is.

Q.   Would you please identify him for the record by an article of clothing.

A.   Mr. Mallory is sitting at the table, at the end of the table at the left, to my left.

        THE COURT:  All right.  The record will reflect that the witness has identified the defendant.  Next question.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 225

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 238 of 352 Total Pages:(238 of 352)

U.S. v. Mallory

J. Doe - Direct

133

BY MS. GELLIE:

Q.    How long have you known the defendant?

A.    I'd say about six or seven years.

Q.    And what context did you meet the defendant?

A.    In connection with our work.

Q.    What was the defendant's role at the CIA at the time that you met him?

A.    He was a contractor.

Q.    How long did you work with Mr. Mallory as contractors at the CIA?

A.    I think it was a short period of time, about a year or two.

Q.    Would you consider Mr. Mallory to be a close friend?

A.    No.

Q.    While in the defendant's departure from the CIA, how often were you in contact with him?

A.    I wasn't in contact -- contact with him at all, except for when he reached out to me with -- with a call after having left the office that I worked with.

Q.    And when in time did that call you just referenced happen?

A.    That happened in April, I believe April of 2017.  Or maybe a little bit earlier, but in that timeframe.

Q.    And what did the defendant say to you on that initial phone call?

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 226**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 239 of 352    Total Pages:(239 of 352)

U.S. v. Mallory

J. Doe - Direct

134

A.   He wanted me to reach out to somebody in another office to get in touch with him regarding a -- an issue regarding the work that he was doing.

Q.   Did he say anything specifically about the work he was doing?

A.   It was related to overseas work that he was doing.

Q.   Did he specify which overseas country?

A.   China.

Q.   And what, if anything, did you do following that initial communication from the defendant?

A.   I passed that information on to our security officer.

Q.   Why did you pass that information along to security?

A.   I didn't have any contacts in the office that he had asked me to contact, and I thought that his outreach to me was a little bit strange.

Q.   What about the outreach seemed strange to you?

A.   I hadn't had any contact with Mr. Mallory after leaving the office -- after he had left the office.  And the way that he outreached to me seemed odd.  I would have thought that he would have contacted somebody directly within the agency involving security.

Q.   Were you able to put Mr. Mallory in touch with anyone after that initial contact?

A.   I hadn't put him in contact with anyone.

Q.   After that first contact was there any further contact

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 227

USCA4 Appeal: 19-4385 Doc: 27-1 Filed: 08/07/2020 Pg: 240 of 352 Total Pages:(240 of 352)

U.S. v. Mallory

J. Doe - Direct

135

from the defendant in 2017?

A.   There were -- there was some follow-up text messages and there may have been a call or two.

Q.   If you look in that folder in front of you at what's been marked as Government Exhibit 2-1.  Do you recognize that?

A.   Yes, I do.  These are the text messages that I exchanged with -- with Mallory.

Q.   These are photographs of the text messages from your phone?

A.   Yes, that is correct.

Q.   Were you present when these photographs were taken?

A.   Yes.

Q.   Are these a fair and accurate depiction of the information on your mobile telephone?

A.   Yes, they are.

Q.   The only change is that your true name has been replaced with John?

A.   That's correct.

         MS. GELLIE:  I'd offer and move this as evidence as Government Exhibit 2-1 and ask to publish it to the jury, Your Honor.

         MR. KAMENS:  No objection, Your Honor.

         THE COURT:  Admitted.  You may do so.

                       (Government's Exhibit No. 2-1
                        admitted into evidence.)

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 228**

USCA4 Appeal: 19-4385 Doc: 27-1 Filed: 08/07/2020 Pg: 241 of 352 Total Pages:(241 of 352)

U.S. v. Mallory

J. Doe - Direct

136

MS. GELLIE: Thank you, Your Honor.

BY MS. GELLIE:

Q. Starting on the first photograph, which is stamped U.S. 6165, who wrote the text message depicted?

A. That's a text message from -- from Mallory.

Q. And when Mr. Mallory wrote, "Could you please go back to your security POC and ask him to reach out to EA/China," do you understand what EA/China referred to?

A. I did.

Q. What is EA/China?

A. It's an office in the agency.

Q. And what do they specialize in?

A. Chinese, Chinese operations.

Q. Do you, yourself, have any contacts in that office?

A. No, did not.

Q. Is that within your personal area of expertise?

A. No, it is not.

Q. When the defendant wrote that he was again approached in a manner from their service, did you have an understanding of what that meant?

A. I did.

Q. What did you understand that to mean?

A. I understood that to mean that he was likely being contacted by the Chinese intelligence service.

Q. And had the defendant told you prior to this April 24,

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 229

USCA4 Appeal: 19-4385   Doc: 27-1      Filed: 08/07/2020   Pg: 242 of 352 Total Pages:(242 of 352)

U.S. v. Mallory

J. Doe - Direct

137

2017, text that he believed he had been approached by the Chinese intelligence services?

A.    No, I think the text messages, as I recall, is the first time I heard about that.

Q.    Now, if you turn your folder, Mr. Doe, to what's been marked as Government Exhibit 2-2.

Do you recognize this document?

A.    2-2?

Q.    Yes.

A.    Yes, I do.

Q.    What is this?

A.    That's a text message I forwarded to my agency colleagues regarding my text message from Kevin, Kevin Mallory.

Q.    Other than the redactions, is this substantially the same condition as when you sent the e-mail?

A.    Yes.

MS. GELLIE:  I offer this into evidence as Government Exhibit 2-2 and ask to publish it to the jury.

MR. KAMENS:  No objection.

THE COURT:  Admitted.  You may do so.

(Government's Exhibit No. 2-2 admitted into evidence.)

BY MS. GELLIE:

Q.    So when in time, in relation to that April 24th text message, did you send this e-mail, Mr. Doe?

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 230**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 243 of 352 Total Pages:(243 of 352)

U.S. v. Mallory

J. Doe - Direct

138

A.    I sent this message on the 25th of April.

Q.    Why did you decide to send this e-mail?

A.    I wanted to document my contact with Kevin Mallory.

Q.    And why did you want to document that contact?

A.    I thought it was important because the situation struck me as -- as odd.

Q.    As a CIA contractor, have you received any training on certain reporting requirements regarding contact by outside individuals?

A.    Yes.

Q.    And what is the guidance you received regarding reporting outside contact?

A.    Outside contact has to be reported to the appropriate authorities in the agency.

Q.    Is there a certain threshold that outside contact has to meet before you are encouraged to report it?

A.    If the contact is suspicious, if it has possibly to do with -- with being in touch or being contacted by foreign intelligent services, yes, we are required to report that type of contact.

Q.    And how did you categorize the contact from Mr. Mallory in April of 2014?

A.    I thought the contact was -- again, as I mentioned before, the contact from Kevin Mallory seemed a little bit odd to me.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 231

USCA4 Appeal: 19-4385 Doc: 27-1 Filed: 08/07/2020 Pg: 244 of 352 Total Pages:(244 of 352)

———————————————————U.S. v. Mallory———

J. Doe - Direct

139

Q.   In your e-mail that is Government Exhibit 2-2, you wrote, "I will call him back today and let him know I passed along this information."

Did you, in fact, call the defendant after sending that e-mail?

A.   Yes.  Either I called him or I sent him a text message.

Q.   Now, turning back to Government Exhibit 2-1, the text messages, on page U.S. 6168, who wrote that text message at the top?

A.   I'm sorry, what's the page again?

Q.   6168.

A.   6168.  Okay.  Yes, that's the text message from me to Mallory.

Q.   And when did you send that text message?

A.   About -- on or about April the 26th.

Q.   And you stated that you had missed your colleague at work the last couple of days, will try again tomorrow.

What was that in reference to?

A.   That's in reference to the security officer that I contacted and passed the information on regarding Mallory.

Q.   And turning to the next message in that chain on April 26th, who wrote that?

A.   The next message below?

Q.   Yes, on 6168.

A.   That's Kevin Mallory.  I'm sorry, hold on a minute.

————————————————Tonia M. Harris OCR-USDC/EDVA 703-646-1438——

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 232**

USCA4 Appeal: 19-4385 Doc: 27-1 Filed: 08/07/2020 Pg: 245 of 352 Total Pages:(245 of 352)

U.S. v. Mallory

J. Doe - Direct

140

6168.

(A pause in the proceedings.)

THE COURT: It's also on the screen to your right.

THE WITNESS: Yes, that's the -- the response is from Kevin Mallory.

THE COURT: Do you see the screen on your right? It will also appear there. The screen on your right.

THE WITNESS: Oh, I'm sorry. Okay. Got it.

BY MS. GELLIE:

Q. And looking at the continuation of that text on U.S. 6169, Mr. Mallory wrote, "As I told you in the past, I suspected who they are and didn't really know, but this time they were even more suspicious with me and even asked me a couple questions that only him-something in this industry would know."

What did you take that statement to mean?

A. I understood that to mean that he was probably being contacted by the Chinese intelligence service.

Q. Turning ahead to 6171. Who wrote the messages in these white bubbles?

A. I'm sorry, I don't see the page.

Q. 6171.

A. That's from Kevin Mallory.

Q. When Kevin Mallory wrote, "And they also have asked me a few questions that only come from someone on our side of the

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 233

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 246 of 352 Total Pages:(246 of 352)

house," what did you take that to mean?

A.   Someone from our side of the house would appear to mean that the Chinese were in touch with another -- perhaps a penetration of the agency.

Q.   Flipping ahead to 6173.  On Tuesday, May 2nd, who wrote that message at the bottom?

A.   That was -- I wrote that message -- no, I'm sorry.

The message at the bottom?  That's a message from Kevin to myself.

Q.   And where it says, "Finally made contact," what did you take that to mean?

A.   I'm sorry, I'm not seeing that text.  Where is that?

Q.   At the bottom of 6173 where it says, "Good evening, John. Finally made contact.  Talk to you soon."

A.   Okay.  That's -- that's Kevin Mallory's text message.

Q.   And did you have an understanding of what he meant by "finally made contact"?

A.   I presume at that time that someone from the agency was in touch with him.

Q.   Did you have any further communications with the defendant after his May 2, 2017, text?

A.   No.  I believe that's the final text message from Kevin Mallory.

Q.   And at any point in your communications with the defendant in 2017, did you indicate you had authority to

**U.J.A. 234**

U.S. v. Mallory

J. Doe - Direct

142

approve any sort of operational activity?

A.    No.

Q.    In your role as a contractor, are you authorized to approve field operations?

A.    No, I am not.

Q.    And did you ever indicate to the defendant your opinion of engaging with a suspected Chinese intelligence officer?

A.    I didn't express any opinion at that time.

Q.    At any point did the defendant tell you that he intended to pass classified information to a Chinese individual he was engaging with?

A.    No.

Q.    If he had, what would your response have been?

A.    I would have told him not to do that, he would be breaking the law and creating espionage.

Q.    In your role at CIA, are you authorized to approve passage of classified information to non-cleared individuals?

A.    No.

Q.    Are you authorized to approve passage of classified information to foreign nationals?

A.    No.

Q.    In any of your communications with the defendant, did you tell the defendant that you believe CIA would be interested in the defendant continuing to engage with the individual in China?

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 235

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 248 of 352   Total Pages:(248 of 352)

---U.S. v. Mallory---

J. Doe - Direct/Cross

143

A.   No.

          MS. GELLIE:  No further questions.

          THE COURT:  Cross-examination.

**CROSS-EXAMINATION**

BY MR. KAMENS:

Q.   Sir, could you look at -- well, let me ask you this.  You started with the CIA around 1981; is that right, sir?

A.   That's correct.

Q.   And you met Mr. Mallory in approximately 2012?

A.   Yes.

Q.   Did you work together?

A.   Yes, we did.

Q.   And you didn't have contact with Mr. Mallory from approximately 2012 until early 2017?

A.   At the time that he had left at the office we were working.  And I'm not sure exactly the -- the date, but once he had left the office, then contact ceased.  I may have bumped into him somewhere along the line in the northern Virginia area, but we didn't have regular contact.

Q.   You discussed with Ms. Gellie your text messages in April with Mr. Mallory.

A.   Yes.

Q.   And you specifically discussed Government Exhibit 2-1, which is the text message dated April 24.  Do you recall that?

A.   Yes.

---Tonia M. Harris OCR-USDC/EDVA 703-646-1438---

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 236**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 249 of 352 Total Pages:(249 of 352)

U.S. v. Mallory

J. Doe - Cross

144

Q.   You testified that this was the first time that you'd heard about this; is that right?

A.   Yes.

Q.   Now, in this message itself it says, "Could you please go back to your security POC, ask him to reach over to EA/China, regarding the issue you and I discussed previously."

So doesn't the text message itself suggest that you had prior conversations?

A.   Not on -- not regarding this specific topic.

Q.   All right.  So you're saying that you had prior conversations --

A.   Going back to the time we worked in the office that we worked in.

Q.   All right.  You actually spoke with Mr. Mallory in February of 2017.  Do you recall that, sir?

A.   There may have been a contact, yes.

Q.   Yes.  You mentioned that there may have been a telephone call?

A.   A telephone call, yeah.

Q.   Would it help for you to look at telephone records to see -- to confirm or refresh your recollection that you had telephone calls with Mr. Mallory?

A.   There may have been.  You can mention that or you can identify the record if that will help.

Q.   Okay.  If you would, take a look at Defendant's

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 237

USCA4 Appeal: 19-4385 Doc: 27-1 Filed: 08/07/2020 Pg: 250 of 352 Total Pages:(250 of 352)

U.S. v. Mallory

J. Doe - Cross

145

Exhibit 2A-2.

(Discussion off the record.)

BY MR. KAMENS:

Q. 2A-2, that's correct. If you can look at pages 86 and 87. Pages 86 and 87 of that record. If you can, on page 86 of that record, that's 2A-2, do you have -- oh.

A. I'm on page 86.

Q. All right. Now, the second line from the bottom under terminating number, do you see a number starting with 757?

A. Second line from the bottom?

Q. Yes, in the middle, the middle column.

A. Yes.

Q. And do you see a number starting with 757?

A. Yes, I do.

Q. Do you recognize that number?

A. Yes, I do.

Q. And that is your number?

A. That's correct.

Q. All right. Now, look at the following page, which is page 87. If you look at originating number -- one, two, three, four, five, six -- seven from the top, originating number, there's a 757 number.

A. How far from the top did you say?

Q. Seven numbers from the top, the seventh number.

A. On page 87?

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 251 of 352  Total Pages:(251 of 352)

```
                              ───U.S. v. Mallory───
J. Doe - Cross                                            146
```

Q.   On page 87.  It's the same 757 number we just discussed under originating number, the other column to the left maybe.

A.   The other column to the left.  On page 87.  I'm sorry, I don't see that.  Oh, I see that.  I see that a little further up, correct.

Q.   You do see it now?

A.   Yes.

Q.   Do you see the number next to it?  It's 12:24.  To the left of your number, sir.

A.   To the left of my number, 12:24, yes, I see that.

Q.   Does that suggest that there was a telephone call on that date of approximately 12 minutes and 24 seconds in duration?

A.   Yeah, there may have been.

Q.   And so it appears, sir, that you actually did speak to Mr. Mallory in February, I think --

A.   That's certainly possible, yeah.

Q.   And you hadn't spoken to Mr. Mallory prior to February of 2017 since he left his work in 2012; is that right?

A.   I don't -- I'm not sure when he left his work.  It may have been 2012, 2013, even perhaps even a little bit later. I'm not sure when exactly he left his work because he left his work rather suddenly.

Q.   My point is that your communication with him in February of 2017 was not the -- in the course of ordinary communications between you and Mr. Mallory.

```
                    ───Tonia M. Harris OCR-USDC/EDVA 703-646-1438───
              EASTERN DISTRICT OF VIRGINIA
                                                    U.J.A. 239
```

USCA4 Appeal: 19-4385   Doc: 27-1   Filed: 08/07/2020   Pg: 252 of 352  Total Pages:(252 of 352)

U.S. v. Mallory

J. Doe - Cross

147

A.   No, because we didn't have -- we didn't have regular contact.

Q.   That's right.  So given that he contacted you in February 24, 2017, and you had a 12-minute conversation, and Government's Exhibit 2-1 says that he had discussed this issue with you previously --

THE COURT:  The question is now compound.

BY MR. KAMENS:

Q.   Sir, you discussed with Mr. Mallory in February of 2017 his interest in contacting someone at the CIA, did you not?

A.   In what -- what time?

Q.   February 24th of 2017.

A.   No, I don't recollect that involved this -- his situation.

Q.   I see.  At some point he did discuss with you consulting work in China; is that right?

A.   In February 2017?

Q.   Yes.

A.   No, I don't recall that.

Q.   You don't recall the contents of your 12-minute call with Mr. Mallory at that point?

A.   It was -- my recollection was it was basically a social call at that point.  I sort of vaguely -- I thought the call had to do with maybe his interest in coming back to the office to work.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 240**

U.S. v. Mallory

J. Doe - Cross

148

Q.   So after five years he made a social call to you?

THE COURT:   Is that a question?

MR. KAMENS:   Yes.

BY MR. KAMENS:

Q.   Sir, after five years he made a social call to you?

A.   Apparently so.

Q.   Okay.

THE COURT:   Is that why you found it odd?

THE WITNESS:   I found the contact regarding his travels to China odd.  I didn't find the -- the contact in February odd because that was somebody that I had worked with, and he had made a call or I had called -- he had made a call to me.  And that would have been -- at that point I consider that a normal call.  Somebody who was calling saying "hello" or "how are things," things like that.

THE COURT:   Next question.

BY MR. KAMENS:

Q.   You discussed again -- three days later there was a telephone call on February 27, 2017.  Do you recall that?

A.   There may have been.  I don't recall the specifics of that call.

Q.   If I were to point it out in the records here, would you agree that you had a call on February 27th?

A.   Sure, it's possible.

Q.   Okay.  Do you want me to refresh your recollection or do

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 254 of 352   Total Pages:(254 of 352)

U.S. v. Mallory

J. Doe - Cross

149

you just agree?

A.   No, that's fine.  It could have been.  There may have been a call there.  As I mentioned, there may have been contact between Mallory and myself.  It's just that the contact was very infrequent.

Q.   Just to confirm, if you can look at page 90 of that same document you're looking at.  Are you looking at page 90?

A.   Yes.

Q.   All right.  And if you can look under originating number column.

A.   Got it.

Q.   Four numbers from the bottom.  Do you see the 757 number?

A.   Yes, I do.

Q.   And then the next line up in the terminating number, do you see that same 757 number?

A.   Yes.

Q.   And those are both your numbers?

A.   Yes.

Q.   Okay.  And then you spoke again on March 1st of 2017.  Do you recall that?

A.   May have happened, but it wouldn't have been unusual.

Q.   So if you can look at page 93, the same document you're looking at.

A.   I'm on page 93.  And what are you --

Q.   Three lines from the bottom under originating number.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 242**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 255 of 352 Total Pages:(255 of 352)

A.   Yes.

Q.   It appears you called Mr. Mallory.  That's your 757 number?

A.   Yes, it is.

Q.   And you talked with him for approximately three and a half minutes?

A.   Yeah, it's possible.

Q.   And so you had a series of calls after five years, and you believe all of these were social calls?

A.   They were social calls or they may have been in connection with coming back to the office, to work at the office.

Q.   And you don't recall --

A.   But, again, I don't recall the specifics.

Q.   Okay.  So you don't recall the specifics that it's possible he discussed what he said in the text message --

A.   No, that was not discussed.  I would have reported that.

MS. GELLIE:  Objection, asked and answered this line of questioning on the third round.

THE COURT:  It's overruled.  He's already answered.

BY MR. KAMENS:

Q.   Just to be clear, none -- none of these contacts that you had with Mr. Mallory in February of 2017, did you pass on to or make a report to a security officer in the CIA?

A.   Regarding the calls in February and March, is that what

USCA4 Appeal: 19-4385 Doc: 27-1 Filed: 08/07/2020 Pg: 256 of 352 Total Pages:(256 of 352)

U.S. v. Mallory

J. Doe - Cross

151

you're referring to?

Q.   That's what I'm referring to.

A.   No, I did not -- I did not contact the security office at that time because I didn't see anything strange about those calls.

Q.   All right.  Well, in -- in Government's Exhibit 2-1, Government Exhibit 2-1, the first text message.

A.   Got it.

Q.   When Mr. Mallory wrote to you and said, "Could you please go back to your security point of contact, ask him to reach over to EA/China regarding the issue you and I discussed previously," what did you understand him to refer to?

A.   Something in connection with his -- with his travel to China and his work in China.

Q.   All right.  And if you were to admit, sir, that you had talked with Mr. Mallory about this in February and didn't report it to a security officer, would that mean that you had done something wrong?

A.   I didn't discuss his work in China in February.  And he did not raise that type -- the same type of situation at that point.  I can't remember what he -- what he was doing at that time, but it certainly didn't involve being contacted by the Chinese service.

Q.   All right.  Mr. Mallory --

THE COURT:  When did he advise you about some

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 244**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 257 of 352  Total Pages:(257 of 352)

U.S. v. Mallory

J. Doe - Cross

152

contacts with China?

THE WITNESS:  From my recollection, that happened in roughly April of 2017 with these text messages that you have in the exhibits.

THE COURT:  Next question.

BY MR. KAMENS:

Q.   In Government's 2B-1 where Mr. Mallory said he wanted to contact someone about you discussed -- what you had discussed previously, Mr. Mallory didn't describe what he had discussed previously in the text message, did he?

A.   No.  He didn't describe anything having to do with previous calls going back to March or February.

Q.   My point, sir, is that in the text message that he gave you in Government's 2B-1 when he said he wanted to contact someone at the CIA about what you had discussed previously, he didn't enumerate or describe what you had discussed previously in the text message?

THE COURT:  Well --

THE WITNESS:  No, I don't recall that he -- that -- that we had talked about his work in China.  That's why this outreach that came across as so strange to me.

MR. KAMENS:  And yet --

THE COURT:  You keep referring to 2B-1.  I don't think you mean 2B-1.

MR. KAMENS:  Oh.  I mean -- I do mean

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 245

USCA4 Appeal: 19-4385     Doc: 27-1     Filed: 08/07/2020     Pg: 258 of 352 Total Pages:(258 of 352)

U.S. v. Mallory

J. Doe - Cross

153

Government's 2 -- is it 2-1 -- 2-1, Your Honor.

THE COURT:  All right.  Well, you kept saying 2B-1. There is no 2B-1.

MR. KAMENS:  Sorry, Your Honor.

THE COURT:  All right.

MR. KAMENS:  2B-1 is actually our exhibit.  It's identical to the Government's, but -- sorry.

BY MR. KAMENS:

Q.   Sir, you testified earlier that you responded to the text message with the statement, "Kevin, got your text.  Sorry, haven't been able to pass on your request yet."

Do you recall that testimony?

A.   Yes.

Q.   And you sent that text message at the direction of another person; is that right?

A.   I believe that's -- that's correct.

Q.   So you sent that text message that you hadn't been able to find the time to forward Mr. Mallory's request at the direction of the FBI?

A.   No.

Q.   At the direction of the CIA?

A.   No, I -- as I recollected, the security officer, who I passed the information on, hadn't been able to contact the China office to pass the information on.  So I was simply indicating to Mallory I hadn't been successful in getting the

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 246**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 259 of 352 Total Pages:(259 of 352)

U.S. v. Mallory

J. Doe - Cross

154

information to the office that he wished me to get it to.

Q.   I see.  So the person that you had passed the information on to was actually trying to reach someone in the China office?

A.   I do believe so, yes.

Q.   So -- well, then, Mr. Mallory wrote in response to your message that -- he said, "I know you're busy.  As I've told you in the past, I suspected who they are.  Didn't really know.  But this time they were even more suspicious with me."

          Do you recall that?

A.   Yes.

Q.   And three days later you wrote him back and said you finally passed on the message?

A.   Yes.

Q.   Was that also at the direction of the security officer?

A.   No, I passed that information on to the security officer.

Q.   I see.  But did the security officer tell you to send that message back to Mr. Mallory?

A.   No, I sent that message back to him because it would have been a normal response letting him know that I passed that information on.

Q.   But the purpose of you conveying this information to the security officer was actually to pass it on to the China office?

A.   That's correct.

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 260 of 352   Total Pages:(260 of 352)

U.S. v. Mallory

J. Doe - Cross

155

Q.   And that's what Mr. Mallory was asking you to do in the beginning?

A.   He asked me to get that information to someone in the China office.  I personally did not have any contacts in the China office so I passed the information on to the security officer.  What the security officer did specifically I am not aware.

Q.   But it was your understanding that the information was passed on to the China office?

A.   I passed on the information to the security officer, and I presumed the security officer took appropriate action.

Q.   All right.  Thank you, sir.

THE COURT:  Am I correct that nobody told you what to respond to Mallory?

THE WITNESS:  No, not at this point.  I was simply passing on the information that Mallory wanted me to pass on to the China office where I had no contacts.

THE COURT:  But nobody at the CIA or the FBI or anyone else told you what to say to Mallory?

THE WITNESS:  No.

MR. KAMENS:  Your Honor, if I can follow up on that, take a look at Defendant's Exhibit 2B-2.  It's in the notebook there.  2B-2, Defendant's 2B-2.

BY MR. KAMENS:

Q.   Okay.  Do you have 2B-2, sir?

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 248

—————————————U.S. v. Mallory—————————

J. Doe - Cross

156

A.    I'm getting there.  Hold on.  Okay.  I think I got it.

Q.    2B-2.  And the second page of that document, I think it's -- at the bottom it says, "U.S. 31118."

A.    Okay.

Q.    Now, at the bottom there, sir, it says -- it appears to be an e-mail message from you, correct?

            THE COURT:  Has this document been admitted?

            MR. KAMENS:  No.

            THE COURT:  Well, then, you may not read it.

            MR. KAMENS:  Well, I'm impeaching him on the testimony he just gave.

            THE COURT:  You may not use it unless it's been admitted.

            MR. KAMENS:  I can certainly use it to impeach his statement.  As I understand it, the testimony is that no one directed him what to say to Mr. Mallory.  This is a document, I believe, from this witness in which he is --

            THE COURT:  Show it to the Government.

BY MR. KAMENS:

Q.    Sir?

A.    Yes.

Q.    Does this appear to be an e-mail from you?

A.    Yes.

Q.    Dated April 27, 2017?

A.    Yes.

—————————————————Tonia M. Harris OCR-USDC/EDVA 703-646-1438—

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 249**

U.S. v. Mallory

J. Doe - Cross/Redirect

157

Q.   And at the bottom does it not say, "My text message sent to Kevin at 2003 hours, Wednesday, 26 April 2017, per your request guidance"?

A.   Correct.

Q.   So it does appear you were at least given some direction or guidance on what to say to Mr. Mallory?

A.   It was not -- I didn't get guidance specifically on what to say to him except to keep in contact with him and pass on the information that he was passing on to me.

THE COURT:  So let me go back.  Did anybody tell you what to say in your communication with Mallory?

THE WITNESS:  Not specifically, not -- not, "You have to say X, Y and Z."  I was instructed to maintain contact with Mr. Mallory and then pass on the information that he passed on to me, whatever that may be.

THE COURT:  All right.  Anything further?

MR. KAMENS:  Nothing further, Your Honor.

MS. GELLIE:  Just briefly, Your Honor.

THE COURT:  Any redirect?

MS. GELLIE:  Just briefly.

**REDIRECT EXAMINATION**

BY MS. GELLIE:

Q.   Mr. Doe, why did you continue to coordinate with security in your interactions with the defendant in April of 2017?

A.   Because the situation, again, as I mentioned from the

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 250**

USCA4 Appeal: 19-4385 Doc: 27-1 Filed: 08/07/2020 Pg: 263 of 352 Total Pages:(263 of 352)

U.S. v. Mallory

J. Doe - Redirect

158

very start, seemed strange to me and it seemed to me that it could have -- it could be moving into a -- an espionage situation.

MS. GELLIE: Nothing further for this witness, Your Honor.

THE COURT: Any reason why this witness should not be excused?

MS. GELLIE: No, Your Honor.

MR. KAMENS: No, Your Honor.

THE COURT: All right. You may step down, Mr. Doe.

(Witness excused.)

THE COURT: And I'll take a recess so that we can change the furniture after Mr. Doe has left. Court stands in recess for ten minutes.

(Recess.)

THE COURT: All right. Who will have the next witness? Ms. Garcia?

MS. GARCIA: Yes, Your Honor.

THE COURT: Who is the next witness?

MS. GARCIA: It's Mr. Michael Dorsey.

THE COURT: All right. And how long do you think he will take?

MS. GARCIA: I think he will -- I think the direct will take an hour, Your Honor.

THE COURT: All right. Bring the jury in.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 251**

USCA4 Appeal: 19-4385 Doc: 27-1 Filed: 08/07/2020 Pg: 264 of 352 Total Pages:(264 of 352)

U.S. v. Mallory

M. Dorsey - Direct

159

(Jury in.)

THE COURT: All right. You may be seated.

All right. Ms. Garcia, who is your next witness?

MS. GARCIA: Your Honor, the United States calls Mr. Mike Dorsey.

THE COURT: All right. Come forward and take the oath, please, sir.

Thereupon,

**MICHAEL DORSEY,**

having been called as a witness on behalf of the Government and having been first duly sworn by the Deputy Clerk, was examined and testified as follows:

(Witness seated.)

**DIRECT EXAMINATION**

THE COURT: All right. You may proceed.

BY MS. GARCIA:

Q. Mr. Dorsey, will you please state your name and spell it for the record.

A. Mike Dorsey, M-i-k-e D-o-r-s-e-y.

Q. Where are you currently employed?

A. CIA.

Q. What is your title there?

A. Investigator.

Q. How long have you been employed in that position?

A. Almost 20 years.

U.S. v. Mallory

M. Dorsey - Direct

160

Q.   Do you have a specific focus?

A.   Yes, I do.  I work in the counterintelligence missions center within CIA.

Q.   What are your current responsibilities?

A.   I investigate counter espionage leads.

Q.   And at your time in your current position have you gained experience in conducting interviews?

A.   Yes.

Q.   Ballpark figure, how many interviews would you say you've done?

A.   I've easily done over 100 interviews.  And that would be either as a team leader with somebody else or by myself.

Q.   Are you working on the matter in the Court today, United States versus against Kevin Patrick Mallory?

A.   I was, yes.

Q.   Do you see Kevin Mallory sitting in the court today?

A.   I do.

Q.   Can you please point to him and identify him by an article of clothing he's wearing.

A.   He's at the left end of the -- of the table here in a dark suit.

        THE COURT:  All right.  The record will reflect that the witness has identified the defendant.  Next question.

        MS. GARCIA:  Thank you, Your Honor.

BY MS. GARCIA:

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 253

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 266 of 352  Total Pages:(266 of 352)

U.S. v. Mallory

M. Dorsey - Direct

161

Q.    Mr. Dorsey, how did you first become involved in this case?

A.    It was assigned to me by my supervisor.

Q.    And why did your supervisor assign it -- assign the case?

A.    He received an e-mail from another individual within CIA talking about an unusual call that a CIA employee had received from Mr. Mallory.

Q.    And what, if anything, did you review in response?

A.    Well, initially I began to collect records having to do with Mr. Mallory's former career at CIA, and also as far as possible to determine what his current activities were -- his activities since he left CIA.

Q.    And what did you learn about the dates of his employment at CIA?

A.    I believe he was employed from '90 through '96, if my recollection is correct there.

Q.    And how about later?

A.    He came back.  He applied for a contract position and was not accepted for that position, and then came back later on. There were a number of different contract positions.

Q.    Do you remember around the time of when that contract position began?

A.    I believe it was 2010 through 2012.

Q.    And for these positions would Mr. Mallory have had to obtain clearances?

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 254**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 267 of 352    Total Pages:(267 of 352)

U.S. v. Mallory

M. Dorsey - Direct

162

A.   Yes.

Q.   What level?

A.   Well, it would have been -- he was approved for TS SCI level as I recall.

Q.   And what security measures must be taken before someone can start work with a clearance?

A.   Well, if you have an in-scope background investigation there's no need for a new background investigation, depending on the kind of access you're going to have.  You may have to take a polygraph examination.  Again, if you already have those vehicles in line you don't have to do that again.  But then you're typically going to have to sign paperwork.

Q.   Okay.  And talking about that paperwork, what kind of paperwork are you referring to?

A.   Secrecy agreements are a part of that.

Q.   Have you reviewed that paperwork in preparation for your testimony today?

A.   I did.

Q.   With the assistance of the courtroom security officer, Mr. Flood, I would like you to look through -- just look through the Government's binder, Government's Exhibit 2-3 through 2-17.  Once you've had a chance to flip through them I'll ask you a couple of questions.

A.   Okay.

Q.   Do you recognize these?

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 255

M. Dorsey - Direct

U.S. v. Mallory

163

A.   Yes.

Q.   Generally speaking, what are they?

A.   Most of them are secrecy agreements having to do with sensitive compartmented information.

Q.   And did you see a signature at the end of each of those?

A.   Yes.

Q.   What signature did you see?

A.   The signature appears to be that of Kevin Mallory.

Q.   Have you seen these prior to testifying today?

A.   Yes.

Q.   When did you see them?

A.   I first saw them when I reviewed his security record at CIA.

Q.   And besides certain redactions, are these in substantially the same condition as when you reviewed them?

A.   Yes.

        MS. GARCIA:  Your Honor, I would offer into evidence Government's Exhibit 2-3 through 2-17.

        MR. KAMENS:  No objection.

        THE COURT:  Admitted.  You may display them if you wish.

        MS. GARCIA:  Thank you, Your Honor.  I'd ask to publish Government's Exhibit 2-3.

        THE COURT:  All right.  You may do so.

                    (Government's Exhibit No. 2-3

M. Dorsey - Direct

U.S. v. Mallory

164

admitted into evidence.)

BY MS. GARCIA:

Q.   And, Mr. Dorsey, turning -- looking at Government's Exhibit 2-3, what is that document?

A.   2-3 is a sensitive compartmented information nondisclosure agreement.

Q.   And looking specifically at paragraphs 6 and 9, will you please read those into the record?

A.   Paragraph 6?

Q.   Yes, please.

A.   "I have been advised that any branch of this -- any breach of this agreement may result in the termination of my access to SCI and removal from my position of special confidence and trust requiring such access, as well as the termination of my employment or other relationships with any department or agency that provides me with access to SCI.  In addition, I have been advised that any unauthorized disclosure of SCI by me may constitute violations of United States criminal laws, including the provisions of section 793, 794, 798, and 952, Title 18 United States Code, and of section 783-B, Title 50, United States Code.  Nothing in this agreement constitutes a waiver by the United States of the right to prosecute me for any statutory violation."

        And then paragraph 9:  "And until I am released in writing by authorized representative of the department or

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 257**

U.S. v. Mallory

M. Dorsey - Direct

165

agency that last provided me with access to SCI, I understand

that all conditions and obligations imposed upon me by this

agreement apply during the time I am granted access to SCI and

at all times thereafter."

Q.    What is the date on this document?

A.    It is 28th February 1990.

        MS. GARCIA:  Next, Your Honor, I would like to

publish Government's Exhibit 2-4, already in evidence.

        THE COURT:  All right.  You may display it.  If it's

in evidence you may do so.

BY MS. GARCIA:

Q.    And will you please read into the record paragraphs 2 and

3, including the subparagraphs?

A.    Okay.

        Paragraph 2:  "I understand that in the course of my

employment or other service with the Central Intelligence

Agency I may be given access to information or material that

is classified or is in the process of a classification

determination in accordance with the standards set forth in

Executive Order 12356 as amended or superceded, or other

applicable executive order that if disclosed in an

unauthorized manner would jeopardize intelligence activities

of the United States government.  I accept that by being

granted access to such information or material.  I will be

placed in a position of special confidence and trust and

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 258**

U.S. v. Mallory

M. Dorsey - Direct

166

become obligated to protect the information or material from unauthorized disclosure."

Paragraph 3: "In consideration for being employed or otherwise retained to provide services to the Central Intelligence Agency, I hereby agree that I will never disclose in any form or any manner to any person not authorized by the Central Intelligence Agency to receive it, any information or material in either of the following categories: subparagraph A, information or material received or obtained in the course of my employment or other service with the Central Intelligence Agency that is marked as classified or that I know is classified. Subparagraph B, information or material received or obtained in the course of my employment or other service with the Central Intelligence Agency that I know is in the process of a classification determination."

Q. And stepping back, what is this -- what is the purpose of this agreement?

A. What's the purpose of the agreement?

Q. Yes.

A. It's essentially a contract between the United States government and employee or other affiliate of CIA saying you're being -- you're being provided a position of special trust in which you're going to be granted access to classified information. And that as a condition of that employment and trust, you're agreeing to maintain the confidentiality of that

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 272 of 352 Total Pages:(272 of 352)

U.S. v. Mallory

M. Dorsey - Direct

167

information for the rest of your life.

Q.   And if we can publish Government's Exhibit 2-5.  I won't ask you to read it.  It's very short.

What is Government's Exhibit 2-5, generally?

A.   It's a form that employees are required to assign when they enter on duty at CIA, noting that they are agreeing to abide by a manual that contained security regulations.

Q.   And if we can publish Government's Exhibit 2-6.  What -- what does this agreement reflect?

A.   It's a sensitive compartmented information disclosure agreement.  It repeats the same language that's in the basic security agreement.  And this particular one is dated 26 October 1994, and it's prepared for and signed by a Kevin Mallory.

Q.   Okay.  If we could publish Government's Exhibit 2-7.

What does Government's Exhibit 2-7 reflect?

A.   2-7 is another sensitive compartmented information nondisclosure agreement.  This one is dated 26 October 1994.  And, again, it's prepared for and signed by Kevin Mallory.

Q.   And at some point did Mr. Mallory leave the CIA?

A.   Yes.

Q.   And what security measures are taken before an individual leaves the CIA?

A.   Ideally there's an exit interview.  It's not always possible to do that, but if at all possible someone will

**U.J.A. 260**

U.S. v. Mallory

M. Dorsey - Direct

168

interview the person that's departing, remind them of their

security obligations, and there's a form that's filled out

that notes the reason why they left.

Q.   All right.  If you will look at Government's Exhibit 2-8

and if we could publish it.

What kind of information does Government Exhibit 2-8

reflect?

A.   Again, it's a sensitive compartmented nondisclosure --

nondisclosure agreement.  It's dated September the 4th, 1996.

And this one prepared for and signed by Kevin Mallory, and

it's specifically a debriefing statement for a number of

different SCI compartments.

Q.   And if you'll look at Government's Exhibit 2-9, if we can

publish that.

What is Government's Exhibit 2-9?

A.   It's titled "Security Reminder."  And it notes that --

it's a form obligating the recipient or the signer they have

to maintain the security information.

Q.   And will you read the first two paragraphs into the

record?

A.   Yes.

"I" -- and then there's a blank and it's filled

in -- "Kevin P. Mallory, have been reminded that, by virtue of

my duties with the Central Intelligence Agency, I have been

the recipient of classified information and information

U.S. v. Mallory

M. Dorsey - Direct

169

concerning intelligent sources and methods that my entrance on duty secrecy agreement, as amended, requires me to protect such data.  Moreover, I have been given an opportunity to review my entrance on duty secrecy agreement."

Paragraph 2.  "I have also been reminded that I am not permitted to retain any documents or other materials which were the property of the CIA or the custodial responsibility of the -- of the CIA and I affirm that I do not have in my possession, nor am I taken away from CIA, any such documents or materials.  I have also been reminded that as a former employee I am no longer authorized access to classified information and should not seek to obtain classified information from current employees without first obtaining proper authorization for such access."

Q.   And looking at Government's Exhibit 2-10, if we can publish that, and you can say generally what that reflects.

A.   It's a preprinted form titled "Exit Interview Report." There are spaces up at the top to require biographic information about who the name of the subject is, and it provides address and telephone number and title.  And then about midway down the page, there's a blank for filling in "Reason for leaving CIA."

Q.   And what reason does it list?

A.   Resignation.

Q.   At some point did Mr. Mallory return to work for CIA?

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 262**

U.S. v. Mallory

M. Dorsey - Direct

170

A.   Yes.

Q.   As -- and what was his employment status?

A.   He was a contractor.

Q.   Looking at Government Exhibit 2-11, I know it's not the best copy, but, generally, what is it?

A.   This is a -- another sensitive compartmented information nondisclosure agreement that was prepared for Kevin Mallory.

Q.   Can you read the date on the second page?

A.   The date is the 3rd of December of 2010.

Q.   And if you could look at Government's Exhibit 2-12. Generally, what does that reflect?

A.   It's an overall secrecy agreement.  It's prepared with the -- the blank at the top for the subject, and the subject is "Kevin Patrick Mallory."

Q.   What is the date on that one?

A.   The date on this is also the 3rd of December, 2010.

Q.   If you'll take a look at Government Exhibit 2-13.  And if we could publish that.

     What is this document?

A.   Again, it's another secrecy agreement.  Its blank at the top.  It looks like it's -- it has the printed name "Kevin P. Mallory."  And it's dated 14 December 2010 with a signature by Mr. Mallory.

Q.   Looking at Government Exhibit 2-14.  Generally, what is that document?

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 263

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 276 of 352 Total Pages:(276 of 352)

A.    This is another sensitive compartmented information nondisclosure agreement with the printed name "Kevin P. Mallory" at the top, and it appears to be signed by Mr. Mallory dated 14 December 2010.

Q.    And Government's Exhibit 2-15.  Generally -- if we could publish that.  And, generally, if you could tell us what it reflects.

A.    It's another sensitive compartmented information nondisclosure agreement.  The agreement is between Kevin Patrick Mallory and the United States.  It's -- it's a briefing into SCI programs, and it's dated the 15 December 2010 with his signature.

Q.    And at some point did Mr. Mallory leave the CIA again?

A.    Yes.

Q.    I am going to show you what's been marked Government's Exhibit 2-16, if we could publish that.

      If you can say generally what that document reflects.

A.    2-15?

Q.    2-16.

A.    Sensitive non -- sensitive compartmented information nondisclosure agreement.  That's dated the 11th of October, 2011.  And it's a debriefing statement for SCI material.  It's prepared for Kevin P. Mallory and appears to be signed by Kevin Mallory.

**U.J.A. 264**

USCA4 Appeal: 19-4385   Doc: 27-1   Filed: 08/07/2020   Pg: 277 of 352 Total Pages:(277 of 352)

U.S. v. Mallory

M. Dorsey - Direct

172

Q.   I apologize, did you say the date already?

A.   Yes.  October the 11th, 2011.

Q.   And, lastly, will you look at Government's Exhibit 2-17, if we can publish that.

And if you can say generally what that reflects.

A.   It's another sensitive compartmented information nondisclosure agreement prepared for Kevin P. Mallory. Appears to be signed by Mr. Mallory.  And the date, again, is the 11th of October, 2011, and it's a debriefing statement.

Q.   In addition to signing documents to obtain clearance, do employees also undergo training to obtain that clearance?

A.   Yes.

Q.   And what are employees told about sharing classified information?

A.   Well, as indicated on the forms, both in general secrecy agreement and -- and on the SCI nondisclosure agreements, it's the -- the obligation is placed on the employee that they can't share the classified information they've been provided access to anyone except someone that they know have been able to establish also has that access and a need to know.

Q.   Can you explain "need to know" as you understand it?

A.   You have a work-related reason for receiving the classified information.

Q.   And taking you back to May 12, 2017, did you interview Mr. Mallory on that day?

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 265**

USCA4 Appeal: 19-4385 Doc: 27-1 Filed: 08/07/2020 Pg: 278 of 352 Total Pages:(278 of 352)

U.S. v. Mallory

M. Dorsey - Direct

173

A.   Yes.

Q.   And what day did you confirm the date of the interview?

        THE COURT:   What was the question?   I'm sorry.

BY MS. GARCIA:

Q.   On what day did you confirm the date of that interview?

A.   I don't recall the actual date.   It was about two weeks before.

Q.   And are you able to say in an unclassified manner where this took place?

A.   It occurred at CIA headquarters.

Q.   What was the purpose of the interview?

A.   Mr. Mallory had information he wanted to provide to CIA and I was there to collect it.

Q.   Who was present?

A.   I was the only person in the interview room with Mr. Mallory.

Q.   Was anybody else watching?

A.   Initially, yes.   Initially, there was another officer from my branch in the counterintelligence admissions center and an FBI agent from WFO.

Q.   Do you remember the FBI agent's name?

A.   Special Agent Green.

Q.   Was the interview recorded in any way?

A.   Yes.

Q.   How so?

**U.J.A. 266**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 279 of 352  Total Pages:(279 of 352)

U.S. v. Mallory

M. Dorsey - Direct

174

A.    Audio and video.

Q.    And prior to testifying today, have you had a chance to watch the full interview?

A.    Correct.

Q.    And for the purposes of today's testimony, were video clips prepared tied to the defendant's interview?

A.    Yes.

Q.    Have you also had a chance to review a redacted unclassified transcript of that interview?

A.    Yes.

Q.    Have you had a chance to review clips of that transcript and make any changes to it?

A.    Yes.

        MS. GARCIA:  Your Honor, at this point we have a stipulation with the defense to the video clips and to the transcripts.  It's Stipulation 7.

        THE COURT:  Just a moment.  Let me locate it.  Do you have it there?  I seem to have 6 and 8, but I don't see 7.

        MS. GARCIA:  I have an unsigned copy, Your Honor.  I don't have an --

        THE COURT:  That's all I'm looking for at the moment.  Just a moment.  Let me find it.

        MR. KAMENS:  Your Honor, just to be clear, this stipulates the authenticity.

        THE COURT:  I understand that, but I need to look at

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 267**

U.S. v. Mallory

M. Dorsey - Direct

175

it.  No.  No, I have it here.

　　　MS. GARCIA:  Okay.

　　　THE COURT:  I just need to find it.  It's my practice that I will read stipulations to the jury at the appropriate time and they'll go back to the jury room.

　　　All right.  Stipulation 7.  My heavens time flies. When did Mr. Terwilliger become the U.S. Attorney?

　　　MS. GARCIA:  Last Friday, Your Honor.

　　　THE COURT:  All right.  Ladies and gentlemen, the law permits the parties to stipulate as to the existence or truth to certain facts.

　　　Here -- and you'll have the stipulations in the jury room.  Here the Government, the United States, and the defendant stipulate and agree that Government Exhibits 7-1 through 7-23, 7-1 through 7-23, 7-30 through 7-32 and 7-34 through 7-45 are video-recorded excerpts from the defendant, Kevin Mallory's interview at the CIA on May 12, 2017.

　　　The United States and the defendant further stipulate and agree that Government Exhibits 7-1T through 7-23T and 7-30T through 7-32T and 7-34T through 7-45T are true and accurate transcripts of the recordings contained in Exhibits 7-1 through 7-23 and 7-30 through 7-32 and 7-34 through 7-35.

　　　That's what the parties stipulated to.  Do you plan to show those excerpts now?

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 268**

USCA4 Appeal: 19-4385 Doc: 27-1 Filed: 08/07/2020 Pg: 281 of 352 Total Pages:(281 of 352)

U.S. v. Mallory

M. Dorsey - Direct

176

MS. GARCIA: I do, Your Honor. And --

THE COURT: Do you have the transcripts?

MS. GARCIA: I do. And I have binders prepared for the jury I was going to ask have handed out after everything is admitted. I just wanted to make sure they are in evidence.

THE COURT: All right. Any objection to this -- what's been stipulated to? I assume not since they are signed.

MR. KAMENS: No objection, Your Honor.

THE COURT: All right. So those exhibits are admitted. And I take it it is the party's wish to have the transcripts admitted as well.

MS. GARCIA: Yes, Your Honor. And those are stipulated to as well.

MR. KAMENS: Yes, Your Honor.

THE COURT: All right. So those -- all of those exhibits are admitted.

MR. KAMENS: To be clear, we may make additional suggestions for admission based on completeness -- out of bases.

THE COURT: All right. But for now we will hand out the transcripts to the jury so that as the excerpts are played you can use the transcripts to help you follow what you see and hear.

MS. GARCIA: Yes, Your Honor. And we are asking

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 269

U.S. v. Mallory

M. Dorsey - Direct

177

only to hand out -- there are two binders. We are just asking to hand out Transcripts 7-1T through 7-23T at this time.

THE COURT: Do you have 14 of them?

MS. GARCIA: Yes.

THE COURT: All right. Let's get it done. Where are they?

MS. GARCIA: Ms. Pham has them. She's handing them out, Your Honor.

THE COURT: All right. It will be shown on the screen to your left and in front of you there. Is that visible to all of you? Good.

All right. Ms. Garcia, you may proceed.

BY MS. GARCIA:

Q. So moving back to the interview on -- in May of 2017, did you ask Mr. Mallory questions about the suspicious contact he reported and the people he met with?

A. Yes.

Q. And, generally, what people did he name and what were their roles, as he understood it?

A. He named three individuals, all named Yang, Y-A-N-G.

The first individual he represented as a head hunter. Richard Yang.

Richard Yang's boss or client he named -- identified as Michael Yang.

And then Michael Yang also had a boss that was

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 270**

U.S. v. Mallory

M. Dorsey - Direct

178

present for later interviews also named Yang, but -- but they made a mistake during the meetings and also called him Mr. Ding.

MS. GARCIA:  Your Honor, may we play Government's Exhibit 7-1?

THE COURT:  All right.  You may go ahead.

(Video played.)

BY MS. GARCIA:

Q.   Why is the defendant's arm in a sling, by the way?  Did he make any statements to you about that.

THE COURT:  Your question is compound.

MS. GARCIA:  I'm sorry, Your Honor.

BY MS. GARCIA:

Q.   Did the defendant make any statements to you about why his arm is in a sling in that -- in the interview?

A.   Yes.

Q.   What was his statement on that?

A.   He had surgery on his elbow about two weeks before the interview.

Q.   And did you ask -- during this interview did you ask him questions about his recent foreign travel?

A.   Yes.

Q.   What statements did he make to you about his recent foreign travel?

A.   He made a number of statements.  I mean, he described --

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 271

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 284 of 352    Total Pages:(284 of 352)

U.S. v. Mallory

M. Dorsey - Direct

179

he provided me a narrative from -- describing his activities during both of those trips.

Q.   I apologize, I was unclear.

What about the frequency and the locations of his recent travel?

A.   Does that -- does that question refer to all of his foreign travel?  I think I understand the question.  He had indicated that he had traveled to China, specifically to Shanghai, recently in March and April.  But those had been the only recent foreign trips he had taken.  He told me he had not traveled overseas before then for about five years.

MS. GARCIA:  Your Honor, may we play Government's Exhibit 7-2 and 7-3?

THE COURT:  Yes, they've been admitted.

(Video played.)

BY MS. GARCIA:

Q.   Did Mr. Mallory make any statements to you early in the interview regarding his assessment of the Yangs?

A.   He suspected by the end of the first trip that they were intel officers, or at least the second two Yangs.  He thought the first one, Richard Yang, was just a head hunter.

MS. GARCIA:  Your Honor, may we play Exhibit 7-4?

THE COURT:  Yes, you may do so.

(Video played.)

BY MS. GARCIA:

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 272

U.S. v. Mallory

M. Dorsey - Direct

180

Q. Did he give you any reasons for why he made that assessment?

A. There were a number of reasons including the fact that all of their meetings occurred in hotel rooms and not an office building associated with legitimate commercial client.

MS. GARCIA: And, Your Honor, may we play Government's Exhibit 7-5 and 7-6?

THE COURT: All right. You may do so.

(Video played.)

BY MS. GARCIA:

Q. Did you also -- did Mr. Mallory also make statements -- was part of the assessment based on the topics they talked about?

A. I'm sorry, could you --

Q. I'm sorry. Was Mr. Mallory's assessment also based on the topics that he talked about with the Yangs?

A. Yes.

Q. And, generally, what kinds of topics were those?

A. Currency manipulation, South China Sea. And, I'm sorry, I've forgotten the other topics.

MS. GARCIA: Your Honor, may we play Government Exhibit 7-7 and 7-8?

THE COURT: You may.

(Video played.)

MS. GARCIA: And, Your Honor, may we play Government

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 273

USCA4 Appeal: 19-4385 Doc: 27-1 Filed: 08/07/2020 Pg: 286 of 352 Total Pages:(286 of 352)

U.S. v. Mallory

M. Dorsey - Direct

181

Exhibit 7-9?

THE COURT: Yes.

(Video played.)

BY MS. GARCIA:

Q. And did you discuss with Mr. Mallory payment after the first meeting with the Yangs?

A. Yes.

Q. Generally, what did he say?

A. He received a fee of $1,000 for each travel date, $2,000 for each day he actually met with them. So he was expecting a fee of $10,000, but he also intended to present them with a bill of -- for other ancillary fees.

MS. GARCIA: Your Honor, may we play Government's Exhibit 7-10?

THE COURT: All right.

(Video played.)

BY MS. GARCIA:

Q. Did you and Mr. Mallory talk about his second meeting in April?

A. Yes.

Q. Did Mr. Mallory say he voiced his suspicions to the Yangs? He voiced his suspicions to the Yangs?

A. Voiced his suspicions about what?

Q. The assessment, what he expected of the assessment he made about relating to intelligence?

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 274**

USCA4 Appeal: 19-4385 Doc: 27-1 Filed: 08/07/2020 Pg: 287 of 352 Total Pages:(287 of 352)

U.S. v. Mallory

M. Dorsey - Direct

182

A.   I'm sorry, I don't recall.

MS. GARCIA:  Your Honor, as it's already in evidence, may we play 7-10?

THE COURT:  Yes.

MS. GARCIA:  7-11.  I'm sorry, Your Honor.

(Video played.)

BY MS. GARCIA:

Q.   Did Mr. Mallory also make statements to you about the Yangs' interest in his access?

A.   Yes.

MS. GARCIA:  Your Honor, may we play Government's Exhibit 7-12?

THE COURT:  Yes.

(Video played.)

BY MS. GARCIA:

Q.   Did Mr. Mallory make any statements to you in connection with the website application he just mentioned about telling the Yangs that he may have worked for -- maybe telling the Yangs he worked for the CIA in the past?

A.   He talked about which agencies he had applied for on that -- on the website he went to.  You click off which agencies you were interested in working for, and he had -- he had included CIA in that selection.

MS. GARCIA:  Your Honor, may we play Government's Exhibit 7-13?

U.S. v. Mallory

M. Dorsey - Direct

183

THE COURT:  Yes.

(Video played.)

BY MS. GARCIA:

Q.   And how did Mr. Mallory say that the Yangs responded to his efforts to get a job with Trump administration?

A.   They encouraged that effort.

MS. GARCIA:  May we play Government's Exhibit 7-14?

THE COURT:  Yes, you may.

BY MS. GARCIA:

Q.   And did Mr. Mallory ever mention to plan a third meeting?

A.   I'm sorry, what's what?

Q.   Did Mr. Mallory ever mention to plan a third meeting with the Yangs?

A.   Yes.

Q.   And what were -- what information topics did Mr. Mallory say were going to be discussed at the third meeting?

THE COURT:  I don't understand your -- the end of your question.  You're swallowing your words.  Speak up, please.

MS. GARCIA:  I apologize, Your Honor.

BY MS. GARCIA:

Q.   What information or topics did Mr. Mallory say were going to be discussed at the third meeting?

A.   I believe it was the same sort of topics.  South China Sea.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 276**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 289 of 352  Total Pages:(289 of 352)

U.S. v. Mallory

M. Dorsey - Direct

184

MS. GARCIA:  Your Honor, may we play Government's Exhibit 7-15?

THE COURT:  You may.

(Video played.)

BY MS. GARCIA:

Q.   Did Mr. Mallory make any statements with regard to whether he was supposed to produce anything for the third meeting?

A.   Yes.

Q.   And, generally, what statement did he make?

A.   I asked him if he had prepared anything, such as a paper or something, and he said nothing beyond what he had already done.

MS. GARCIA:  Your Honor, may we play Government's Exhibit 7-16?

THE COURT:  You may.

(Video played.)

BY MS. GARCIA:

Q.   Did Mr. Mallory discuss whether they gave him anything during the second meeting?

A.   Yes.

Q.   What was that?

A.   That they gave him a communication device, a phone.

Q.   Okay.  I'm sorry, I interrupted you.

A.   A special phone.

U.S. v. Mallory

M. Dorsey - Direct

185

Q.   And did Mr. Mallory discuss with you any particular messaging platform on that phone?

A.   WeChat was the -- it was a type of WeChat.

        MS. GARCIA:  And, Your Honor, may we play Government's Exhibit 7-17 and 7-18?

        THE COURT:  All right.  You may do so.

        (Video played.)

BY MS. GARCIA:

Q.   Did Mr. Mallory make any statements to you related to the phone's level of security?

A.   He thought it was pretty secure.

        MS. GARCIA:  All right.  Your Honor, may we play Government's Exhibit 7-19?

        THE COURT:  Yes, you may.

        (Video played.)

BY MS. GARCIA:

Q.   And, Mr. Dorsey, did Mr. Mallory make any statements to you about whether he had used the phone to send anything?

A.   Yes.

Q.   And what did he say he had sent?

A.   He said he sent a text message -- excuse me -- a test message.  Test, T-E-S-T.

        MS. GARCIA:  And, Your Honor, may we play --

        THE COURT:  T-E-S-T?

        THE WITNESS:  Yes, sir.

                         Tonia M. Harris OCR-USDC/EDVA 703-646-1438

**U.J.A. 278**                EASTERN DISTRICT OF VIRGINIA

USCA4 Appeal: 19-4385   Doc: 27-1   Filed: 08/07/2020   Pg: 291 of 352 Total Pages:(291 of 352)

U.S. v. Mallory

M. Dorsey - Direct

186

THE COURT:  As in test examination?

THE WITNESS:  Yes, sir.

THE COURT:  Not text?

THE WITNESS:  Correct.

THE COURT:  Next question.

MS. GARCIA:  Your Honor, may we play Government's Exhibit 7-20, 7-21, and 7-22?

THE COURT:  Yes, you may.

(Video played.)

BY MS. GARCIA:

Q.   And with regard to these tests, did Mr. Mallory say who he had sent these tests to?

A.   Michael Yang.

Q.   And how many times?

A.   One time.

MS. GARCIA:  Your Honor, may we play Government's Exhibit 7-23?

THE COURT:  You may.

(Video played.)

BY MS. GARCIA:

Q.   Did he make any statements whether he would get paid at the second meeting as well?

A.   Yes.

Q.   During the interview, what, if anything, did you tell Mr. Mallory about authorization for this activity or his

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 279**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 292 of 352    Total Pages:(292 of 352)

U.S. v. Mallory

M. Dorsey - Direct

187

trips?

A.   I didn't.  I didn't make any statement authorizing him to take any action.

Q.   What is your ability to provide such authorization?

A.   I suppose theoretically I could do so if I worked in coordination with others at CIA, and in this case FBI as well, but I've never done so.

Q.   And how did the recorded interview conclude?

A.   Well, we finished the -- the discussion in the room.  I believe Mr. Mallory had stated all he wanted to say.  And then I'm obligated to escort him out of the building since he's not cleared.  And as I was taking him through the turnstiles to exit the lobby of our headquarters building, he was asking me questions.  So there was additional discussion for probably about 20 minutes that was not recorded.

Q.   And what questions did he ask?  Or what type of discussion did you have?  I'm sorry.

A.   Mr. Mallory was describing events that he encountered on his return from the two trips to China.  And it was my assessment that he was trying to see if he was under investigation.

Q.   And did a second interview occur?

A.   Yes.

Q.   What was that date?

A.   It was May the 24th, I believe.

U.S. v. Mallory

M. Dorsey - Direct

188

Q.   Did Mr. Mallory bring anything with him to that?

A.   Yes, he had agreed to bring his phone, the special communication device that the Chinese had provided him.  He also had agreed to bring an iPhone in which he had recorded the business cards of the individuals he met with, but he didn't actually bring that to the meeting.

Q.   And what was your role in that second meeting?

A.   I had explained to Mr. Mallory that I was not a technician that I would not be the interview -- the person -- he had agreed to show the device to technicians and to explain how it worked.  I told him that I would not be that individual.  So my role was to introduce them to officers that he would demonstrate the device to.

Q.   And what was your impression of Mr. Mallory's response to your role?

A.   Well, in terms of setting up the meeting, there was no pushback at all to that.  But on the actual handoff, on the day when I introduced him to two individuals who are FBI agents, I think he was unhappy.  Now, perhaps I could have done a better job at the handoff and had been present in the room longer, but there was no agreement along that line and he knew I wasn't going to be present.  So I got out of the way.

            MS. GARCIA:  Your Honor, may I inquire my counsel if they have any additional questions?

            THE COURT:  Yes.

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 294 of 352 Total Pages:(294 of 352)

U.S. v. Mallory

M. Dorsey - Direct

189

MS. GARCIA:  Your Honor, just a couple of additional questions.

BY MS. GARCIA:

Q.   First, did Mr. Mallory explain CovCom, what a CovCom device was as he understood it?

A.   Well, as he described the device he described how the text message or whatever he was sending -- and it could be -- it could be a picture.  He could take a picture of a document. But whatever the content of the actual message was would be overlaid by another image, such that in transition the original message, regardless of whether it was a picture or a text message, could not be separated.

Now, that fit my understanding of steganography.  I asked him, "Was it steganography?"

And to my surprise, he said, "No."

Q.   And could you please describe, if you recall, Mr. Mallory's behavior at the time of handoff when you took him to the second interview?

A.   We met in a Virginia hotel room.  And I met him in the lobby and escorted him up to the room.  But while we stood in front of the door and I knocked on the door, he -- he continued to walk down the hallway of the -- of the hotel to the end of the corridor where there was an open door.  And I stayed at the -- I mean, there was five or six doors down.  I stayed in front of the room where he was going to eventually

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 282**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 295 of 352  Total Pages:(295 of 352)

U.S. v. Mallory

M. Dorsey - Direct/Cross

190

meet two FBI agents.  And they opened the door and I'm standing there by myself and they are looking at me like, "What's going on?"  And -- but I can see -- I can -- you know, I can look down the hallway and see what he's doing.

Q.   And what was your impression of what he was doing when he -- when he did that?

A.   He walked down to the end of the door to look -- and looked into the room that had the open door.  I assumed that he was looking for surveillance.

Q.   No further questions, Your Honor.

THE COURT:  All right.  Cross-examination.

**CROSS-EXAMINATION**

BY MR. KAMENS:

Q.   You didn't know what he was doing, did you?

A.   Sir?  Did I --

Q.   You didn't know what he was doing, did you?

A.   No, sir.

Q.   You made an assumption?

A.   Yes, sir.  I made an assessment, not an assumption.

Q.   All right.  Mr. Dorsey, you discussed your review of Mr. Mallory's security file; is that right?

A.   That's correct.

Q.   And it -- those documents over a series of years require an individual who has worked for the CIA to maintain confidentiality; is that right?

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 283

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 296 of 352 Total Pages:(296 of 352)

U.S. v. Mallory

M. Dorsey - Cross

191

A.    Secrecy agreements, correct.

Q.    And the individual has to maintain confidentiality with respect to classified documents?

A.    That's correct.

Q.    Unless the classification lapses or expires?

A.    There are a number of different provisions provided in the secrecy agreement about what steps you have to take to protect that information.

Q.    All right.

A.    And it doesn't have to be just documents.  It can be classified information in any form.

Q.    Right.  And it certainly doesn't apply, of course, to information that's not classified?

A.    Potentially, yes.  There's a provision in the document that even if you were to write something, work of fiction related to intelligence or to information you had access to in the course of your service for CIA, that you agree to submit that work, regardless of whether it's a written product, like a book or an article or a presentation, a speech, or PowerPoint, to a publication review board within CIA.

Q.    You're talking about prepublication review?

A.    Yes, sir.

Q.    To avoid the disclosure of classified information?

A.    Yes, sir.

Q.    And those are provisions that you didn't review with

U.S. v. Mallory

M. Dorsey - Cross

192

Ms. Garcia; is that right?

A.   They are included in the secrecy agreements, both the general secrecy agreement and the SCI agreements.  It's a -- it refers to that.

Q.   The specific paragraphs that you reviewed with Ms. Garcia were not related to publication review, correct?

A.   I did not read the paragraph that related to prepublication review, correct.

Q.   And so the paragraphs that you reviewed with Ms. Garcia, they related simply to the ongoing obligation to ensure that classified information is not disclosed, correct?

A.   Yes, sir.

Q.   You first contacted Mr. Mallory on May 2nd, 2017; is that right?

A.   I thought it was May 3rd but I won't argue the date.

Q.   Can I -- well, would it help you if I showed you some phone records?

A.   I -- it was -- it was on or about May 2nd or 3rd.  Is that --

Q.   Fair enough.

A.   -- sufficient?

Q.   And you have a 703 number; is that right?

A.   That's correct.

Q.   And so on or about May 2nd you contacted Mr. Mallory in response to, I think you testified, his effort to set up a

U.S. v. Mallory

M. Dorsey - Cross

193

meeting at the CIA?

A.    Correct.

Q.    And the meeting was scheduled for May 12th; is that right?

A.    Well, initially I offered him a date as soon as possible the following week, but because he had expressed some urgency in wanting to speak with CIA but then he said he had the surgery scheduled so we pushed it back.

Q.    Do you know when the surgery was scheduled?

A.    It was within a week.

Q.    Or about May 4th, fair to say?

        THE COURT:  If you know.

        THE WITNESS:  I do not recall, sir.

        THE COURT:  Next question.

BY MR. KAMENS:

Q.    Would you agree it was within the week of when you first called him?

A.    Yes.

Q.    You had a brief phone call with him on May 11th or so; is that right?

        Do you recall having subsequent phone calls with him before the meeting on May 12th, probably just for logistical purposes?

A.    Very possible.

Q.    And so then he came to, I think you said, CIA

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 286**

U.S. v. Mallory

M. Dorsey - Cross

194

headquarters on May 12th; is that right?

A.   Correct.

Q.   But Mr. Mallory couldn't bring the phone to CIA headquarters, correct?

A.   He could bring -- he could -- initially we were talking about an iPhone.  He didn't -- he didn't bring the -- what I'll call the special communication device, the CovCom device.  He did not bring that to headquarters to my knowledge.  But he did have his iPhone, his personal iPhone where he had recorded contact information about the Chinese officers he met with.  That was in his car.

Q.   I see.  And you had discussed with him not bringing the Samsung phone that he had received from these individuals to headquarters at the CIA, correct?

A.   No.  I wasn't aware of that device until I talked to him.

Q.   All right.  Well, wouldn't it be potentially revealed where that phone went if it came to CIA headquarters?

THE COURT:  Do you understand the question?

THE WITNESS:  Yes, sir, I believe I do.

THE COURT:  All right.  You may answer.

THE WITNESS:  Again, sir, I'm not a technician, but I believe there are steps that you could have taken that would have masked the fact that that phone was located on the CIA compound.

BY MR. KAMENS:

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 287

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 300 of 352    Total Pages:(300 of 352)

Q.   Well, there are steps that perhaps someone could have seen where that phone went, someone else; isn't that right?

THE COURT:  If you know.

THE WITNESS:  I'm not a technician, so --

BY MR. KAMENS:

Q.   After the interview on May 12th you had several calls with Mr. Mallory to set up the second interview?

A.   That's correct.

Q.   And that interview -- well, there were four phone calls, I think, on May 16th, on or about?

A.   I don't specifically recall four phone calls, but I did call him back to set up the date and time first and then the actual location.

Q.   All right.  And there was a call on May 17th, on or about?

A.   Okay.

Q.   May 23rd?

A.   I don't recall those specific dates, sir.

Q.   Oh.  And then you met Mr. Mallory on May 24th; is that right?

A.   That's correct.

Q.   And then you brought him to the hotel room; is that right?

A.   That's correct.

Q.   And the purpose of meeting at the hotel room instead of

**U.J.A. 288**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 301 of 352 Total Pages:(301 of 352)

U.S. v. Mallory

M. Dorsey - Cross

196

at CIA headquarters, did you know why?

A.    Yes.

Q.    Why was that?

A.    Because I was going to introduce him to two FBI agents.

Q.    Well, but you had arranged the location for this interview with Mr. Mallory, correct?

A.    Yes.

Q.    And so Mr. Mallory knew that he was not going to headquarters for this meeting, he was going a hotel room, correct?

A.    Correct.

Q.    And he knew their meeting -- the reason for going to the hotel room when you scheduled it with him, correct?

A.    Yes.

Q.    And that was to bring this phone so it wouldn't show it had gone to headquarters; is that right?

A.    I told him that -- he had expressed some concern about Chinese intelligence ability to track that device.  And I told him that, although I wasn't a technician, I would contact the people who could address those concerns.  And I did.

Q.    To the best of your understanding, that's why the second meeting took place in a hotel room and not at CIA headquarters?

        THE COURT:  Do you know whether that's true or not.

        THE WITNESS:  No, I think there were other reasons

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 289

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 302 of 352  Total Pages:(302 of 352)

U.S. v. Mallory

M. Dorsey - Cross

197

why the meeting took place at a hotel as opposed to CIA headquarters.

THE COURT: All right.

BY MR. KAMENS:

Q. Back to the interview on May 12th, it took approximately four hours?

A. Yes, sir.

Q. And I think you testified that Mr. Mallory introduced the people that he had interacted with on several trips to China?

A. He described them to me, correct.

Q. And you testified that they went by the names Yang, three individuals named Yang, correct?

A. Yes.

Q. First one Richard Yang?

A. Correct.

Q. Second one Michael Yang?

A. Yes.

Q. And the third one, it seemed like his name may not have necessarily been Yang; is that right?

A. Mr. Mallory, I think, probably accurately described the fact that, you know, it could be that none of their names were Yang, that they were using aliases.

Q. Mr. Mallory told you that the third person introduced as Yang was referred to as a Mr. Ding?

A. Yes.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 290**

U.S. v. Mallory

M. Dorsey - Cross

198

Q. And so he also told you that that person's name, his actual name may have been Mr. Ding?

A. Well, a name that he used in a meeting with Mr. Mallory, correct.

Q. He provided a physical description of these individuals?

A. Yes, sir.

Q. And they purported to be from the Shanghai Academy of Social Sciences?

A. I understood them to be with a think tank, yes. Or the -- the two latter Dings, Michael and Mr. Ding, Mr. Yang.

Q. All right.

A. The first individual Mr. Mallory believed was truly a head hunter possibly associated with the Chinese intel.

Q. And he said on this first trip he traveled to China and was there for four days in country and then left?

A. Yes.

Q. And he also told you he didn't meet with these people for all four days; is that right?

A. That's correct.

Q. That is, he also met an acquaintance named David Yang?

A. Correct.

Q. And that was to discuss a project on anti-bullying campaign in China?

A. Yes, sir.

THE COURT: Who told you that?

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 291**

USCA4 Appeal: 19-4385 Doc: 27-1 Filed: 08/07/2020 Pg: 304 of 352 Total Pages:(304 of 352)

MR. KAMENS: Mr. Mallory.

THE COURT: No, I didn't ask you.

MR. KAMENS: Oh, sorry.

THE COURT: Who told you that?

THE WITNESS: Mr. Mallory described that additional meeting.

THE COURT: All right.

BY MR. KAMENS:

Q. But for the representatives of the think tank, he said -- I think you were discussing the topics that they raised with him; is that right?

A. Yes, sir.

Q. Wasn't one of the topics also the Trump administration policy towards China?

A. Well, in terms of describing currency manipulation, South China Sea, yes, they were interested in the U.S. foreign policy toward those issues.

Q. All right. So there was a discussion of currency manipulation by China; is that right?

THE COURT: Discussion between whom and whom, Mr. Kamens? Make your question clearer.

MR. KAMENS: Thank you, Your Honor.

BY MR. KAMENS:

Q. This discussion between the representatives of the think tank of Mr. Yang, Michael Yang, and Mr. Ding and Mr. Mallory

USCA4 Appeal: 19-4385   Doc: 27-1   Filed: 08/07/2020   Pg: 305 of 352 Total Pages:(305 of 352)

U.S. v. Mallory

M. Dorsey - Cross

200

where they are discussing the topics that Mr. Mallory may be able to consult upon, one of them was currency manipulation by China?

A.   Correct.

Q.   Or that is, U.S. policy in response to currency manipulation by China?

A.   Correct.

Q.   The THAAD missile system?

A.   Correct.

Q.   The THAAD missile system is a system the U.S. has installed in South Korea; is that right?

A.   Yes.

Q.   To the extent you know?

A.   Yes.

Q.   And then third was the South China Sea?

A.   Yes.

Q.   And then there was also general discussion of the new administration's policies toward China?

A.   I have to say I don't recall that specifically, but --

Q.   If you could, take a look at Defense Exhibit 3-A, which is in a book hopefully up there.  Defendant's Exhibit 3-A and page 88.

THE COURT:  For planning purposes, Mr. Kamens, how much more do you anticipate?

MR. KAMENS:  A fairly robust amount, Your Honor.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 293

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 306 of 352    Total Pages:(306 of 352)

U.S. v. Mallory

M. Dorsey - Cross

201

THE COURT:  That's not what I --

MR. KAMENS:  Oh.

THE COURT:  How much more do you expect?

MR. KAMENS:  I would say half an hour to 45 minutes, Your Honor.

THE COURT:  All right.  Proceed.

THE WITNESS:  Sir, I have a 3-2A.

MR. KAMENS:  Let's see.  It is Defense Exhibit 3A, and it should be in the first volume.

THE COURT SECURITY OFFICER:  3A-1?

MR. KAMENS:  No, it's 3A.  Sorry.

THE COURT:  All right.  I'm going to take a recess.

MR. KAMENS:  Sorry, Your Honor.

THE COURT:  You all need to move it along. Mr. Dorsey, you may step down.  You may not discuss your testimony with anyone during the recess.  We will recess until 4:10, and then we'll proceed until 5 o'clock and we'll recess at 5:00.  You may follow the court security officer out.  Give him your book, or your books, and remember to refrain from discussing the matter with anyone or among yourselves or undertaking any investigation.  You may step down, Mr. Dorsey.

(Jury dismissed.)

THE COURT:  Court stands in recess until 4:10.

(Recess.)

THE COURT:  All right.  Mr. Dorsey, is he here?

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 294**

USCA4 Appeal: 19-4385    Doc: 27-1       Filed: 08/07/2020    Pg: 307 of 352    Total Pages:(307 of 352)

U.S. v. Mallory

M. Dorsey - Cross

202

Let's get Mr. Dorsey in.

MR. GIBBS:  She's getting him, Your Honor.

THE COURT:  All right.  And who is your witness after Mr. Dorsey?

MS. GARCIA:  Your Honor, it would be Paul Lee.

THE COURT:  And that's your witness as well?

MS. GARCIA:  No, Your Honor.  It will be Ms. Gellie's witness.

THE COURT:  All right.  And how long do you think he will be, Ms. Gellie?

MS. GELLIE:  Direct being somewhere around 45 minutes.

THE COURT:  All right.  Mr. Dorsey, come forward, sir.  You'll recall you're still under oath.  You may resume the stand.

THE WITNESS:  Yes, sir.

THE COURT:  And, Mr. Flood, you may bring the jury in.

(Jury in.)

THE COURT:  All right.  You may be seated.  And, Mr. Kamens, you may proceed with your cross-examination.

BY MR. KAMENS:

Q.   Mr. Dorsey, we were talking about the topics that came up between the Chinese individuals and Mr. Mallory.

A.   Yes.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 295**

USCA4 Appeal: 19-4385    Doc: 27-1        Filed: 08/07/2020    Pg: 308 of 352  Total Pages:(308 of 352)

U.S. v. Mallory

M. Dorsey - Cross

203

Q.   And we were talking about whether you recalled discussing new Trump administration policies, that being an area of interest.

A.   Yes, generally.

Q.   And so I've directed you, I think, to a page in the transcript and I opened it up to that page.  I'm going to call it 1-22.

Do you see that?

A.   Yes, sir.

Q.   And it -- on that page of the transcript at line 10 does it not say that they kept emphasizing that they wanted to understand the policies, what Trump administration policies are going to be?

A.   Yes, sir.

Q.   Now, you also talked about Mr. Mallory's suspicions; isn't that right?

A.   Yes.

Q.   And some discussion about how suspicious he was, correct?

A.   Correct.

Q.   If you turn the page of that transcript to 123, do you see that?

A.   Yes, sir.

Q.   And he talks about his suspicions on that first trip?

A.   Yes.

Q.   Do you see?

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 296**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 309 of 352 Total Pages:(309 of 352)

U.S. v. Mallory

M. Dorsey - Cross

204

And he said he was a little bit suspicious on the first trip; is that right?

A.   Correct.

Q.   Now, things became much clearer on the second trip; isn't that correct?

A.   According to how he represented it, yes.

According to how he represented it, yes.  Sorry.

Q.   Now, with respect to the information he talked about on the -- with respect to second trip, you mentioned that he brought up the phone, the Samsung phone?

A.   Correct.

Q.   And he told you that he had received this Samsung Galaxy Note cell phone from the Chinese individuals?

A.   Correct.

Q.   And he described the special communication system?

A.   Yes, sir.

Q.   He described how the custom app worked?

A.   Yes.

Q.   How to get it into secure mode?

A.   Yes.

Q.   Using the password?

A.   Yes.

Q.   And he described how the app would embed a document in a picture?

A.   Yes.

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 310 of 352  Total Pages:(310 of 352)

U.S. v. Mallory

M. Dorsey - Cross

205

Q.   And you used the word "steganography"?

A.   Correct.

Q.   And he said, "No, I don't think that's it"?

A.   Correct.

Q.   But steganography is, in fact, in your understanding, embedding information or a document into a picture; is that right?

A.   Yes, sir.

Q.   Is that a fair definition of steganography?

A.   To my understanding, yes.

Q.   So Mr. Mallory may not have understood that word?

A.   He seemed to understand the word but stated it wasn't steganography anyway.

Q.   Oh.  But he did tell you this app would embed a document into a picture?

A.   Yes.

Q.   And he agreed to bring the Samsung phone to a subsequent meeting?

A.   Yes.

Q.   And he discussed how to coordinate with the recipient when you want to send information, did he not?

A.   Yes.

Q.   He said that there was a way to set up a time to transmit information, correct?

A.   Yes.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 298**

USCA4 Appeal: 19-4385 Doc: 27-1 Filed: 08/07/2020 Pg: 311 of 352 Total Pages:(311 of 352)

Q. Now, you also discussed, I think, there was a clip that was played, Government Exhibit 7-20. Do you have the Government's exhibit -- the transcript of the Government exhibits up there?

A. No, sir.

Q. Oh. Well, if I can remind you, the clip, says, question from you, "Did you send them anything on that phone?"

Do you recall asking Mr. Mallory that question?

A. Yes.

Q. And then the answer is, "I sent them some tests of some sort just to see if I could do it right, and I couldn't figure it out. I messed that up because he -- you know, he wanted me to try to communicate it and I couldn't" --

THE COURT: Is this a question?

MR. KAMENS: Yes. I'm asking if this witness recalls the exchange with Mr. Mallory.

THE COURT: Well, can we do it in a less -- more expeditious way?

MR. KAMENS: Yes, Your Honor.

BY MR. KAMENS:

Q. That is not the entire answer that Mr. Mallory gave you; isn't that correct?

A. Well, we watched the video clip of his answer.

Q. Well, when you asked him whether he had ever sent anything using the phone, he did tell you that he had sent

U.S. v. Mallory

M. Dorsey - Cross

207

something using the phone; isn't that right?

A.   Test messages, yes.

Q.   He said he had sent something typed; isn't that right?

A.   Yes, he did.

Q.   Something that he typed up?

A.   Yes.

Q.   And you asked him whether he had actually sent something using the phone from the United States; isn't that right?

A.   Yes.

Q.   And he said he eventually got something to go secured; isn't that right?

A.   I don't recall that particular statement, sir.

        MR. KAMENS:  Your Honor, we would move to admit Defense Exhibit 3A-1.

        THE COURT:  Has the entire interview been offered?

        MR. KAMENS:  No.

        MS. GARCIA:  We had not, Your Honor.

        MR. KAMENS:  It is not.  But the Government's Exhibit 7-20 doesn't contain the entire exchange.  And so what we've done in Defendant's Exhibit 3A-1 is include portions that are responsive to that question.  And they are all -- they are on pages 259, 260, and 262 of the transcript.

        THE COURT:  Any objection to that?

        MS. GARCIA:  Your Honor, these are also expert -- excerpts stacked together.  It is not one long, running -- it

**U.J.A. 300**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 313 of 352  Total Pages:(313 of 352)

U.S. v. Mallory

M. Dorsey - Cross

208

was -- rule of completeness we would say, let's admit the whole -- the whole thing rather than piece excerpts together. And I can -- we can --

THE COURT:  All right.  Well, Mr. Kamens doesn't object to that --

MR. KAMENS:  I don't.  I certainly don't.  I think the reason for admitting the excerpts is that they are much more clearer than reading five pages of the transcript.  We have certainly given them this -- the -- the portions that we --

THE COURT:  But in the future if there are excerpts again and you have completeness arguments, tell them in advance.  Resolve it in advance.

MR. KAMENS:  Understood.

THE COURT:  Because it's quite difficult to resolve completeness arguments with a jury sitting here.  It would take me 15 minutes.

All right.  Do this -- what was the -- if you admit the whole thing, what is it?

MR. KAMENS:  I think it would be pages 259 to 262, Your Honor.

MS. GARCIA:  Your Honor, it would be page 259, I believe, starting on line 3 through 261 ending on line 16.

MR. KAMENS:  I think it's 262, line 12.

(Discussion off the record.)

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 301

U.S. v. Mallory

M. Dorsey - Cross

209

THE COURT: You're proving my point.

MS. GARCIA: Your Honor, that's fine. We won't object to this, the entry of this exhibit, defense exhibit.

MR. KAMENS: All right.

THE COURT: What is it again now?

MR. KAMENS: It's Defendant's Exhibit 3A-1, Your Honor.

THE COURT: All right.

BY MR. KAMENS:

Q. And so in terms of Mr. Mallory's response, he did, in fact, tell you that he had sent something secured through the phone; isn't that right?

A. I don't recall whether or not he said he got it to go secure. He -- he talked about he had trouble with that.

Q. If you can, look at Defendant's Exhibit 3A-1. And it's been admitted so I'll read it to you.

THE COURT: Let him read it and ask him. Otherwise, you can rely on the exhibit. If I admitted it it's in evidence.

THE WITNESS: Yes, sir. I'm on 3A-1.

BY MR. KAMENS:

Q. All right. Do you see at the bottom line 9?

A. Okay. Yes, I do.

Q. And you asked Mr. Mallory, did you not, whether he got something to go secure?

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 302**

USCA4 Appeal: 19-4385    Doc: 27-1        Filed: 08/07/2020      Pg: 315 of 352  Total Pages:(315 of 352)

U.S. v. Mallory

M. Dorsey - Cross

210

A.   Yes.

Q.   And he says, "Right, yeah.  I got something"?

A.   Correct.

Q.   All right.  Now, you also discussed --

THE COURT:  Tell me again what -- I've admitted it without objection.  What is it again, Mr. --

MR. KAMENS:  It is an excerpt from the transcript --

THE COURT:  What is the exhibit number?

MR. KAMENS:  It is 3A-1, Defendant's Exhibit 3A-1.

THE COURT:  All right.  That's admitted.  Next question.

(Defendant's Exhibit No. 3A-1 admitted into evidence.)

BY MR. KAMENS:

Q.   You also discussed with Ms. Garcia the Government Exhibit 7-23 where you asked Mr. Mallory if he had -- how many communications he had with Michael Yang, do you recall?

A.   Yes.

Q.   Can you look at the transcript, page 62 of the transcript, 262 -- I'm sorry.

A.   Yes, sir.  I'm on page 262.

Q.   And do you see at the top the discussion is about how to send using the -- the application send an image or document using the covert communication phone?  Do you see that?

A.   Are you talking about the first three lines?

U.S. v. Mallory

M. Dorsey - Cross

211

Q.    Yes.

A.    Yes, sir.

Q.    You can look back at 261 as well.

A.    Okay.  Yes, sir, I see that.

Q.    So the discussion that you had with Mr. Mallory about communications with Michael Yang here is in the context of actually sending something to Michael Yang; isn't that right?

A.    Well, I did ask him that question specifically.

Q.    Right.  So in the context of your discussion with Mr. Mallory, you're asking him how many communications did you have with Mr. Yang to send something through this covert app; isn't that right?

A.    Correct.

Q.    And he says one; isn't that right?

A.    Correct.

Q.    That's not referring to how many times he spoken to Mr. Yang; is that right?

A.    I would say so, sir.

Q.    So just to be clear, you're not asking him how many times they may have chatted on some other format, you're asking how many times he's used this app to send something to Mr. Yang?

A.    Yes.

Q.    Okay.

        MR. KAMENS:  Your Honor, we have an Exhibit 3A-2 that reflects this conversation I've just had with the witness

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 304**

─────U.S. v. Mallory─────

M. Dorsey - Cross

212

that puts the context for Government Exhibit 7-23.  7-23

itself doesn't make it clear.  So we would ask for Defendant's

Exhibit 3A-2 to be admitted.

THE COURT:  All right.  Any objection?

MS. GARCIA:  No, Your Honor.

THE COURT:  All right.  In the future if there are

any of these completeness things you do it out of the presence

of the jury before you see me in the morning or in the

evening.

MR. KAMENS:  Absolutely, Your Honor.

THE COURT:  Let's get it done that way.  Anything

further from this witness?

MR. KAMENS:  Just one last question, Your Honor.

BY MR. KAMENS:

Q.   You discussed with Mr. Mallory whether there was going to

be a second trip; isn't that right?

A.   We discussed whether there would be a third trip.

Q.   A third trip, correct.  Thank you, sir.

And he said to you that there may not be a third

trip.  Didn't he say that?

A.   My recollection is that he expected to go in mid June.

Q.   Take a look at page 210 of the transcript in front of

you.

A.   I'm on 210.

Q.   Do you see line 3, Mr. Mallory?

─Tonia M. Harris OCR-USDC/EDVA 703-646-1438─

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 305**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 318 of 352 Total Pages:(318 of 352)

U.S. v. Mallory

M. Dorsey - Cross

213

A.   Yes.

Q.   It says, "The meeting planned for next month is -- I'm not sure at this point if it's going to happen.  I'm not sure what's going to transpire."

A.   Correct.  That's accurate.

Q.   So he did tell you that it may not?

A.   He was planning for a third trip.  It wasn't confirmed, that's correct.

Q.   And he told you he wasn't sure it was going to happen?

A.   Correct.

MR. KAMENS:  Nothing further, Your Honor.

THE COURT:  Redirect examination?

MS. GARCIA:  No, Your Honor.

THE COURT:  Thank you.  You may step down.

Is this witness at risk of being recalled?

MS. GARCIA:  Not for the Government, Your Honor.

THE COURT:  All right.  I take it not for the defendant either; is that correct?

MR. KAMENS:  No, Your Honor.

THE COURT:  All right.  Thank you.  You may be excused.  Call your next witness, please, Ms. Gellie.

(Witness excused.)

MS. GELLIE:  The Government calls Special Agent Paul Lee to the stand.

THE COURT:  Come forward and take the oath, please,

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 306**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 319 of 352  Total Pages:(319 of 352)

U.S. v. Mallory

P. Lee - Direct

214

sir.  Stand with the court security officer there and face the deputy clerk, please.

Thereupon,

**PAUL LEE,**

having been called as a witness on behalf of the Government and having been first duly sworn by the Deputy Clerk, was examined and testified as follows:

(Witness seated.)

THE COURT:  All right.  You may proceed.

MS. GELLIE:  Thank you, Your Honor.

**DIRECT EXAMINATION**

BY MS. GELLIE:

Q.   Good afternoon.  Could you please state your name and spell your last name for the record?

A.   Yes.  My name is Paul Lee.  My last name is spelled L-e-e.

Q.   How are you employed, Mr. Lee?

A.   I am a special agent and a forensic examiner for the Federal Bureau of Investigation.

Q.   How long have you been an FBI computer forensics examiner?

A.   Roughly about 13 years.

Q.   Have you had any other roles at the FBI?

A.   Yes, I'm a special agent.  I started as a special agent.

Q.   What did you do prior to joining the FBI?

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 320 of 352  Total Pages:(320 of 352)

U.S. v. Mallory

P. Lee - Direct

215

A.    I worked in the area of technology and engineering and electronic manufacturing to include the Boeing company, and I interned for IBM and an instrument company called John Fluke.

Q.    What does an FBI computer forensic examiner do?

A.    Basically we take digital evidence and we recover data from digital evidence to include computers, electronic device like cell phones, tablets, and also media, like thumb drives and optical disks.

Q.    What experience do you have personally in computer forensic examinations?

A.    We recover data from computers and also from cell phones and we provide criminal investigations.

Q.    Does the term "computer forensic examination" include examination of smart phones, such as Apple or Android devices?

A.    That's correct.

Q.    Approximately, how many computer forensic examinations have you completed over the course of your career?

A.    At least 650 exams and spanning about 1500 items.

Q.    And when you say "1500 items," does that include both computers and mobile devices such as smart phones?

A.    That's correct.

Q.    What training did you receive in computer forensic examinations?

A.    I received the basic FBI certification training a while ago, and then every year we have additional trainings,

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 308**

U.S. v. Mallory

P. Lee - Direct

216

advanced trainings.  I'm also advanced certified for hardware

recovery of data for mobile phones to include what they call

an ISP and then JTAG as well.  And then I also do have

training in Linux file systems and certification, and the FBI

do conduct Linux exams and Windows.  And then I have external

training as well.

Q.   And, Special Agent Lee, what is your educational

background?

A.   I have a bachelor of science in mechanical engineering.

        MS. GELLIE:  The Government moves to certify Special

Agent Lee as an expert in electronic forensic examinations.

        MR. KAMENS:  No objection, Your Honor.

        THE COURT:  All right.  Ladies and gentlemen,

ordinarily witnesses may not testify to their opinions about

things.  But, as I'll instruct you at the end of the case,

certain witnesses who, by virtue of special training and

experience, are expert in some field, they're able to give

their opinions.

        However, the extent to which you accept them as

experts in a particular area and the extent to which you

accept their expert opinions are matters left entirely to you.

And I'll give you further instructions on that at the end of

the case as well.

        All right.  Ms. Gellie, you may proceed to question

him as an expert.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 309

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 322 of 352 Total Pages:(322 of 352)

U.S. v. Mallory

P. Lee - Direct

217

MS. GELLIE:  Thank you, Your Honor.

BY MS. GELLIE:

Q.   Special Agent Lee, what processes are available for conducting a computer forensic examination of a mobile telephone?

A.   In general, there are two major steps for any forensic examinations to include mobile phones as well as computers. Your first step is you acquire the image or you acquire the data from the device.  In this case we call them image because it is basically a replica of what's in the memory.  And then the next step is you take that image or the data that you collected and you conduct the analysis to recover the data so that -- so it's reviewable by the case agent.

Q.   Could you please explain to the jury how an image is obtained from an original that preserves the integrity of the original.

A.   So basically there's -- there's a couple ways to do that. One of the most acceptable way in the industry in forensic is to use a hash comparison.  What they call a hash is a mathematical calculation of the data that you've extracted at the initial completion of the extraction.  It's basically like a fingerprint.  It's a unique number.  It's a fingerprint on that dataset.  So if anything changes on that dataset, that hash number will change.  So it's a unique identifier to verify.  And every time you move that data you make a copy

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.S. v. Mallory

P. Lee - Direct

218

somewhere else, you run the hash again, and make sure that the hash matches and the data is -- you know, maintains original integrity.

Q.   What would happen to that hash value if even a single period is added or removed from the original?

A.   It would be dramatically different.

Q.   Were you involved in the investigation to the defendant, Kevin Mallory?

A.   Yes, ma'am, I was.

Q.   Did you participate in a May 24, 2017, meeting with the defendant?

A.   Yes, I do.

Q.   And do you see the defendant in court today?

A.   Yes, I do.

Q.   Would you please identify him by an article of clothing for the record?

A.   It's the gentlemen sitting there with a blue tie.

THE COURT:   All right.   The record will reflect that the witness has identified the defendant.   Next question.

BY MS. GELLIE:

Q.   Special Agent Lee, what was your role at that May 24 meeting?

A.   My mission that day was to basically collect the data from the phone, extract the data from the phone without changing the phone.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 311

U.S. v. Mallory

P. Lee - Direct

219

Q.    And how did it come about that you were able to image that device?

        I'll rephrase.

A.    Yeah.

Q.    What was the basis of your authority to image that device?

A.    Okay.  So the legal authority for me to access the device was basically purely on consent of the owner.

Q.    Special Agent Lee, there's a binder in front of you.  If you would please turn to the tab for -- marked Government Exhibit 8-1A.  Do you recognize the document?

A.    Yes, I do.

Q.    What is it?

A.    This is a -- what Government referred to as a Form FD941. And what that form is is a consent to search a computer.  And in it it's a -- a standard consent to search form that the owner would sign and acknowledge that they are going to consent the Government to search their electronic device.

Q.    Were you present when the defendant signed this form?

A.    Yes, I was.

Q.    And is Government Exhibit 8-1A a true and accurate representation of the consent form the defendant signed?

A.    Yes.  This is a copy of the form, yes.

        MS. GELLIE:  I offer this into evidence as Government Exhibit 8-1A, Your Honor.

**U.J.A. 312**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 325 of 352    Total Pages:(325 of 352)

—————————————————U.S. v. Mallory—————————————

P. Lee - Direct

220

THE COURT: All right. Without objection it's admitted. Next question.

(Government's Exhibit No. 8-1A admitted into evidence.)

BY MS. GELLIE:

Q. What type of device did that consent apply to?

A. It applies to a Samsung device, a Samsung mobile phone that goes by a serial number, a particular serial number.

Q. Did the defendant place any parameters on your review of that smart phone?

A. Yes. The defendant requested that we not install any tools in that phone and we not disturb the content of that phone.

Q. Did the defendant indicate to you why he was making that request?

A. So that he would not be caught with that phone with FBI fingerprints or data in that phone in the event that he take that phone overseas.

Q. Were you able to comply with that request?

A. Yes, I did.

Q. What sort of trail, if any, to the type of extraction you performed leave on the Samsung?

A. None.

Q. Was the Samsung provided to you all in one piece?

A. No. The phone was provided to me with the battery

—————————————Tonia M. Harris OCR-USDC/EDVA 703-646-1438————————

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 313**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 326 of 352  Total Pages:(326 of 352)

P. Lee - Direct

U.S. v. Mallory

221

separated from the device.

Q.   Do you know who took the battery out of the phone?

A.   I think the owner removed the battery from the device.

Q.   Did the defendant explain to you why he had done that?

A.   It's to disable the device basically.

Q.   Did you examine the battery?

THE COURT:  The question was:  Did he tell you why he did it?

THE WITNESS:  He alluded to it that, you know, this is -- I'm going to give you this phone, you know, in the stable -- disabled form.

THE COURT:  And did he tell you why?

THE WITNESS:  I can't recall.

THE COURT:  Next question.

BY MS. GELLIE:

Q.   Did you examine the battery chamber of the Samsung phone?

A.   Yes, I did.

Q.   Was there any writing on the battery chamber?

A.   Yes, it was.

Q.   In what language?

A.   There was writing in Chinese.

Q.   Do you, yourself, speak any Chinese, Special Agent Lee?

A.   I speak very little.

Q.   Where are you from originally, Special Agent Lee?

A.   I was born in Hong Kong.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 314**

USCA4 Appeal: 19-4385    Doc: 27-1      Filed: 08/07/2020    Pg: 327 of 352  Total Pages:(327 of 352)

U.S. v. Mallory

P. Lee - Direct

222

Q.   Are you familiar with what Chinese characters look like?

A.   Yes, I am.

THE COURT:  Is this Mandarin or Cantonese?

THE WITNESS:  It's Cantonese, sir.

THE COURT:  Next question.

BY MS. GELLIE:

Q.   Now, turning in the binder to what is marked as Government's Exhibit 8-1B.  Do you recognize this?

A.   Yes, I do.

Q.   And what is this?

A.   This is a photo that I took with -- of the phone with the battery removed.

Q.   Is this a true and accurate depiction of the battery compartment you took a photo of on May 24, 2017?

A.   Yes, it is.

MS. GELLIE:  I offer this as 8-1B and ask to publish, Your Honor.

THE COURT:  You may do so.  No -- is there an objection?

MR. KAMENS:  No, Your Honor.

THE COURT:  It's admitted without objection.  You may publish.

BY MS. GELLIE:

Q.   What, if any, information did the battery chamber provide you with?

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 328 of 352 Total Pages:(328 of 352)

U.S. v. Mallory

P. Lee - Direct

223

A.   The battery chamber provided me with the actual model number of the phone and also the serial number as well that -- that we used to put on the phone for the consent.  And, also, a couple of IMEI numbers which stands for International Mobile Equipment Identity.

Q.   And what exactly is an IMEI number?

A.   An IMEI serves kind of like a serial number but it has to follow a certain standard format, international format that represents the -- the make and the model and the series of the number and what countries it's operating from and so forth.

Q.   Is that a number that is unique to each individual phone?

A.   Yes, it is.

Q.   What was the IMEI number for the Samsung?

A.   The Samsung has two IMEI numbers.  The number is 355848061382951 for the one set, and the other one is the same except the last digit is 9 instead of 1.

Q.   And what does it mean when a phone has two IMEI numbers?

A.   Basically this phone has two SIM card slots.  In other words, there's two provisions for two separate SIM cards and each one is tied to each of the SIM card.

Q.   And, Special Agent Lee, does this photograph of the battery chamber line up with the phone that you imaged on May 24, 2017?

A.   Yes, it does.

Q.   Was there anywhere else on the phone you were able to

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 316

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 329 of 352 Total Pages:(329 of 352)

U.S. v. Mallory

P. Lee - Direct

224

confirm the IMEI number in your review?

A.   Yes.  This is from -- often we extract the data.  If you look at the data, it will show the IMEI number within the data pack itself.  So it's etched in the software itself inside.

Q.   So, Special Agent Lee, will you please turn to Government Exhibit 8-1F, as in "Frank"?  Do you recognize this?

A.   Yes, I do.

Q.   What is it?

A.   This is another photograph that I took later on after we completed the imaging process.  And this is the About, you know, in the phone when you have the About under the Settings, this is the status menu from the About Settings that shows the IMEI number.

Q.   And who took this photograph?

A.   I did.

Q.   Is it a true and accurate representation of the status settings you viewed on the defendant's phone on May 24, 2017?

A.   Yes, it is.

        MS. GELLIE:  Your Honor, I offer this into evidence as Government Exhibit 8-1F and ask to publish.

        MR. KAMENS:  No objection.

        THE COURT:  All right.  Admitted.  You may do so.

BY MS. GELLIE:

Q.   Special Agent Lee, can you please point out the IMEI number as displayed in this photo.

---

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 330 of 352 Total Pages:(330 of 352)

U.S. v. Mallory

P. Lee - Direct

225

A.    If I can circle that -- there it is.

Q.    Thank you.  Special Agent Lee, did you do any research into the Samsung phone model?

A.    I did.  I also did after the fact as well, after the examinations.  And it's not a typical model that's under the Samsung line, manufacturing line.  And then I later discovered that this particular model was indeed made by Samsung, but it was made specifically for certain country, a certain region.  In this case, China.

Q.    Was there a camera on this phone?

A.    Yes, there was.

Q.    Does that affect how you handle a phone?

A.    As a precautionary what I usually do is I cover the camera.

Q.    Why do you do that?

A.    There are apps sometimes in the phone that when you -- you could cause a camera to take a photo.  And because the owner has specifically, you know, requests as a condition of the consent that we don't add any data to the phone, so taking a photo of me and storing it on the phone would kind of violate that.  So I covered the camera.

Q.    What type of analysis, if any, were you able to perform on the Samsung?

A.    I didn't do any analysis.  I just did the image acquisition.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 318**

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 331 of 352   Total Pages:(331 of 352)

U.S. v. Mallory

P. Lee - Direct

226

Q.   And what type of method did you use to do the image acquisition?

A.   I acquired the image using Linux -- in a Linux platform using a command line.

Q.   What did that process entail?

A.   Basically it involves putting a phone in a certain status in the recovery mode and then connecting to the phone on my laptop running Linux.  And then I run a set of commands that would extract the data bit by bit from the internal memory into an image file.  And then after that extraction is completed, I run a hash to verify that image.

Q.   Why do you put the phone in recovery mode?

A.   It's part of the process of -- of starting the phone without -- fully booting the phone without causing it to make a record.

Q.   And was anything displayed on the phone when you did put it into that recovery mode?

A.   There was a display that I wasn't expecting.  I was expecting a -- something that comes from Samsung, and it wasn't.  It was something that was written in Chinese again.  It had eight buttons.

Q.   Turning in your binder, Special Agent Lee, to what has been marked as Government Exhibit 8-1C.  Do you recognize this?

A.   Yes, I do.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 319

USCA4 Appeal: 19-4385   Doc: 27-1   Filed: 08/07/2020   Pg: 332 of 352  Total Pages:(332 of 352)

U.S. v. Mallory

P. Lee - Direct

227

Q.   What is this?

A.   This was the recovery mode that I found on this particular Samsung device.

Q.   Who took this photo?

A.   I did.

Q.   Is it a true and accurate representation of the screen showing the software you found on the Samsung?

A.   It is.

MS. GELLIE:  I offer this into evidence as Government Exhibit 8-1C and ask to publish, Your Honor.

MR. RICHMAN:  No objection.

THE COURT:  You may do so.

(Government's Exhibit No. 8-1C admitted into evidence.)

BY MS. GELLIE:

Q.   Special Agent Lee, are you able to read any of the Chinese on here?

A.   No.

Q.   Do you know what the open lock signifies?

A.   That tells me that the phone is unlocked, in its unlocked state.

Q.   Were you able to access the phone's data in order to image it?

A.   Yes.

Q.   What were the results of that process?

U.S. v. Mallory

P. Lee - Direct

228

A.   The result of the image that I get a image file, a single file, and then the file is hashed to verify its integrity.

Q.   And what was the result of that hash verification?

A.   It's a -- it's a hash number that -- that ties into the original data arrangement on that file.  So if anything changes on that file that hash would not match.

Q.   Did your hash value of the image match up with the hash value on the Samsung device?

A.   The hash value -- how often you copy the file you run the hash again and then the two numbers match.

Q.   What do you do as a result --

           THE COURT:  Did they match in this case?

           THE WITNESS:  Yes.

           THE COURT:  Next question.

           MS. GELLIE:  Thank you, Your Honor.

BY MS. GELLIE:

Q.   What did you do with that resulted image?

A.   The image was archived on an optical media and non -- it's a read-only optimal media.  And then it was submitted to the case agent for collection as a derivative evidence.

Q.   During your extraction did you attempt to extract any data from the SIM?

A.   No, I did not make any attempt on the SIM.

Q.   Why is that?

A.   Because sometimes some providers will have a -- a lock on

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 321

USCA4 Appeal: 19-4385 Doc: 27-1 Filed: 08/07/2020 Pg: 334 of 352 Total Pages:(334 of 352)

U.S. v. Mallory

P. Lee - Direct

229

the SIM, especially pay-as-you-go phones. And what that is is that it does not allow you to access the SIM data, which is a subscriber data, without a pin. So what happened is that if I try to extract that SIM card it may trigger a count towards your attempt to access the card, and that would trigger the account as, requested by the owner, that we not alter any of the data. I did not make an attempt on the SIM.

THE COURT: What's the reference to SIM?

THE WITNESS: It's a subscriber identity module. And what it is is a little silver -- it's a little card, it's a little chip that carries the subscriber information of the network. Say, for example, a Verizon or AT&T or T-Mobile, so forth. The phone number -- what's important about a SIM is that phone number is actually stored in the SIM. So in case -- in countries outside the United States SIM cards are very commonly used. And they can switch the SIM card to a different phone and carry that service to a different phone and carry that service to a different phone if the phone matches the -- you know, it's agreeable to the service.

THE COURT: Next question .

MS. GELLIE: Thank you, Your Honor.

BY MS. GELLIE:

Q.   In addition -- in addition to imaging the Samsung phone, did you have any other role during the May 24, 2017, interview of the defendant?

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 322**

U.S. v. Mallory

P. Lee - Direct

230

A.    I was present in the owner of the phone describing how the phone works, the tools in the phone.

THE COURT:  When you say "owner of the phone," who are you referring to?

THE WITNESS:  Mr. Mallory.

THE COURT:  Next question.

MS. GELLIE:  Thank you, Your Honor.

BY MS. GELLIE:

Q.    Was Special Agent Stephen Green also present while Mr. Mallory was demonstrating on the phone?

A.    Yes, he was.

Q.    What was it that the defendant wanted to demonstrate for you?

A.    He wanted to demonstrate the tools -- what he conferred to as a CovCom tool, or covert communication.  CovCom is short for covert communication.

Q.    In addition to covering the cameras, which you've already discussed, were any other precautions taken before the defendant performed that demonstration?

A.    Yeah.  In adherent to the -- to Mr. Mallory's request of not putting any data in there we -- this would be the first time that I would start this phone and through the normal process.  But in doing so, it will try to connect with a tower and report its location and so forth and establish a date and time.  So to prevent that, I put it in a Faraday bag.  A

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 323

U.S. v. Mallory

P. Lee - Direct

231

Faraday bag is a -- it's a shielded bag that will shield any wireless transmission while in its enclosure.  So I start the phone in a Faraday bag and then I put the phone into airplane mode.  And airplane mode is a feature on most cell phones, both iPhones and Androids, that will allow you to cut off wireless communication while you take the device on an airplane to fly to a different location, for example.

Q.   What effect does a Faraday bag have on the phone's ability to connect with Wi-Fi or cell towers?

A.   It prevents connection to the -- any wireless transmission.

Q.   Once the phone was in airplane mode, what did the defendant do first in demonstrating how the device worked?

A.   The defendant showed us the app of WeChat, which is a commercial app that is -- it's published in China by a company called Tencent.  And it was -- it was stated that that app had been modified by the -- by the person that the party that provided the phone, the CovCom device, and it's not the same commercial app that you can download like, say, from the Google Store or something like that.  It's been modified.

Q.   Did the defendant have to do anything to enter that modified custom app from commercial WeChat?

A.   Yeah.  The -- Mr. Mallory has demonstrated how to enter the covert communication mode by enter -- entering from the app the text -- the -- a password.  In this case it's actually

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 324**

U.S. v. Mallory

P. Lee - Direct

232

the word "password," P-A-S-S-W-O-R-D.  And in doing so, it will place that app into a secure communication encrypted mode.

Q.   Did the message look different once the defendant entered that secure communications mode?

A.   Yes, it does.  What -- the feedback you would get from the phone to tell you that you're in the communication mode is the icon where you type in the chat will change to, I believe, if I can recall, it's an exclamation and then a colon.

Q.   Mr. Special Agent Lee, in preparation for your testimony today did you listen to certain clips from the May 24th interview with the defendant?

A.   Yes, I did.

Q.   And while listening to those clips did you read along with transcripts as well?

A.   Yes, I did.

         MS. GELLIE:  Your Honor, we have a stipulation for proposed Government Exhibits 13-27 through 13-32 and 13-34 through 13-36, along with their transcripts.  It's Stipulation Number 8, paragraph 1.

         THE COURT:  May I have a copy, please?  No, I want 8, my copy of 8.

         THE DEPUTY CLERK:  That is his copy.

         THE COURT:  Did we return those?

              (Discussion off the record.)

---

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 325**

U.S. v. Mallory

P. Lee - Direct

233

THE COURT:  All right.  Ladies and gentlemen, here is a further stipulation between the parties that the United States and the defendants hereby stipulate and agree that the Government Exhibits 13-1 through 13-37 are audio-recorded excerpts from defendant, Kevin Mallory's interview with the FBI on May 24, 2017.  And the United States and the defendant further stipulate and agree that the Government Exhibits 13-1T through 13-37T are true and accurate descriptions or transcriptions of the recording contained in Government Exhibits 13-1 through 13-37.

So I will admit the Government Exhibits 13-1 through 13-37 and the related transcripts are admitted into evidence.

Now, do you plan to play those transcripts or play those excerpts?

MR. KAMENS:  Just to be clear, we have entered into a stipulation that is broader than the exhibits than I think the Government was going to admit through this witness.

THE COURT:  You mean what I read isn't --

MR. KAMENS:  It's a little bit broader.  I think -- if I can --

THE COURT:  A little bit broader than what I read?

MR. KAMENS:  Well, Your Honor, I think the Government was seeking to introduce 13-27 through 13-32 and 13-34 through 13-36.

MS. GELLIE:  That's correct.  Special Agent Green

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 326**

U.S. v. Mallory

P. Lee - Direct

234

will admit the remaining exhibits.  If the defense is --

THE COURT:  This stipulation was just -- handed to me as having just been signed.  And now you're telling me it's not entirely accurate?

MR. KAMENS:  No, it is accurate, Your Honor.  I just didn't want there to be any confusion that we're allowed to cross-examine on those exhibits later through a separate witness.  But however the courts want to do it.

THE COURT:  Is this the issue of completeness?

MR. KAMENS:  Well, to discuss the clips that I don't think this witness will talk about.

THE COURT:  Let's proceed.  I've admitted the exhibits pursuant to the stipulation.

MS. GELLIE:  Thank you, Your Honor.

THE COURT:  You may proceed.

MS. GELLIE:  Thank you, Your Honor.

THE COURT:  Let me ask.  Ladies and gentlemen, I promised you 5 o'clock.  Is that still a promise you want kept?  Are you willing to stay a bit longer to see if we can finish some of this?  I don't see any cries of anguish or pain but you're doing a good job masking it.

Let's proceed, Ms. Gellie.

MS. GELLIE:  Thank you, Your Honor.  I appreciate it, Your Honor.

BY MS. GELLIE:

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 327

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 340 of 352 Total Pages:(340 of 352)

U.S. v. Mallory

P. Lee - Direct

235

Q.   Special Agent Lee, did the defendant during the May 24th e-mail discuss what those secure mode communications look like?

A.   Yeah, he did.

MS. GELLIE:  I'd like to now play Government Exhibit 13-27, Your Honor.

THE COURT:  All right.  You may do so.

(Video played.)

THE COURT:  This transcript doesn't --

(Video played.)

BY MS. GELLIE:

Q.   Special Agent Lee, when the defendant logged into that secure mode on May 24th, were you able to view any chat history?

A.   No.  It was just the chat that -- well, there was -- there was history of prior chats on there.

Q.   Turning in your binder to what's been marked as Government Exhibit 8-3, 8-4, and 8-5, do you recognize these?

A.   Yes, I do.

Q.   What are they?

A.   These are the history of prior chats.

Q.   And who took these photographs?

A.   I did.

Q.   Are these a true and accurate representation of the chat history as shown to you by the defendant on May 24th?

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 328**

U.S. v. Mallory

P. Lee - Direct

236

A.    Yes, they are.

          MS. GELLIE:  I offer these in evidence as Government

Exhibits 8-3 through 8-5.

          THE COURT:  All right.  Without objection, they're

admitted.  You may display them.

          MS. GELLIE:  And I would -- thank you, Your Honor.

BY MS. GELLIE:

Q.    Are those exclamation points that are shown in this

photograph indicative that the defendant was communicating in

the secure mode?

A.    That's correct.  It's the exclamation followed by a

colon.

Q.    At the top of the conversation it says, "Mi Yang."  Do

you have an understanding of who Mi Yang is?

A.    Mi Yang is the other party that are involved in this chat

conversation.

Q.    What is that understanding based on?

A.    This is based on the left side as the incoming and then

on the right side is the outgoing.  But also the avatar of a

vehicle that he explained was the other party.

          THE COURT:  I don't see the name that you're

referring to on this screen.  Where is it?

          THE WITNESS:  That is in another view that we went

through that was in the contact list, that if you -- if you

access the contact for that avatar you would see that name.

                              Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 329

U.S. v. Mallory

P. Lee - Direct

237

MS. GELLIE:  It's, Your Honor, on the top left in white where there's an arrow pointing leftward.  It's now circled in red, I believe.

THE COURT:  All right.  And what does that mean?

THE WITNESS:  That is the other party that you're talking to?

BY MS. GELLIE:

Q.   And who -- who told you that that's the other party to the communication?

A.   That's Mr. Mallory who explained that.

MS. GELLIE:  Now I'd like to play Government's Exhibit 13-30.

THE COURT:  Well, wait a minute.  Go back for a minute.  Display that.  All right.  It says, "You mean which info," who is that?

THE WITNESS:  That's from Mi Yang.

THE COURT:  That's who?

THE WITNESS:  That's from the person sitting -- asking the question.  That's not from Mr. Mallory.

THE COURT:  And then it says, "It could be," what?

THE WITNESS:  Yes, that was blocked there.  I don't know if there's a way you can --

THE COURT:  Well, who is saying that?

THE WITNESS:  I think that's -- that may be -- was that in Chinese and it was interpreted or --

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 330**

———————————U.S. v. Mallory———————————

P. Lee - Direct

238

BY MS. GELLIE:

Q.   That's a redaction.  I think what the Court is asking is:
Who is the speaker in all of the green bubbles?

A.   That is the user of the device.

Q.   And in this case who was that?

A.   That's Mr. Mallory.

THE COURT:  All right.  And this is information you
found on the machine?

THE WITNESS:  That's already on the phone, yes.

THE COURT:  All right.  Next -- next question.  I
assume if it's significant that -- Ms. Gellie, that you'll
call attention to it.

MS. GELLIE:  I will, Your Honor.  First I would like
to play clip 13-30.

THE COURT:  All right.  You may do so.

(Video played.)

BY MS. GELLIE:

Q.   Were you able to view the WeChat contact entry for
Mi Yang on the defendant's phone?

A.   Yes, I did.

Q.   Can you turn now to what's been marked in your binder as
Government Exhibit 8-2.  Do you recognize this?

A.   Yes, I do.

Q.   What is it?

A.   This is the profile of Mi Yang inside WeChat app.

———————Tonia M. Harris OCR-USDC/EDVA 703-646-1438———————

EASTERN DISTRICT OF VIRGINIA

U.J.A. 331

U.S. v. Mallory

P. Lee - Direct

239

Q.   Who took this photograph?

A.   I did.

Q.   Is it a true and accurate representation of the WeChat contact information for Mi Yang that you viewed on the defendant's phone on May 24th?

A.   Yes, it is.

MS. GELLIE:  I offer this in evidence as Government's Exhibit 8-2.

THE COURT:  All right.  Without objection it's admitted.  Next question.

(Government's Exhibit No. 8-2 admitted into evidence.)

MS. GELLIE:  I'd ask to publish this to the jury, Your Honor.

THE COURT:  You may do so.

MS. GELLIE:  Thank you.

BY MS. GELLIE:

Q.   Does this contact entry provide you with any additional information besides the screen name, "Mi Yang"?

A.   Yes.  There's a WeChat ID that goes by YM551227.

Q.   Did the defendant provide you with an understanding of what his own screen name was for communications with Mi Yang?

A.   His own screen name -- I believe he said -- my recollection was Beans, I think, Bean.

MS. GELLIE:  I now ask to play Government Exhibit

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 332

USCA4 Appeal: 19-4385    Doc: 27-1    Filed: 08/07/2020    Pg: 345 of 352 Total Pages:(345 of 352)

P. Lee - Direct

U.S. v. Mallory

240

13-36, Your Honor.

THE COURT:  You may do so.  Enlarge that.

(Video played.)

BY MS. GELLIE:

Q.   Did the defendant explain the process for sending documents using the secure messaging mode?

A.   Yes, he did.

Q.   What did he say he had to do?

A.   To enter the secure mode you'd have to -- both party has to be involved.  They have to be on.  And you have to maintain the session going, both parties, and then you would each enter into a secure mode by typing in the word "password" into the text line.  And then after you enter that the password, the exclamation and colon would appear that would indicate that you are in secure communication.

Q.   And once you're in that mode, what was your understanding of how one sends documents?

A.   You can attach document in that mode and it would be encrypted.  So if it wasn't in something it wouldn't be able to decipher that communication.

MS. GELLIE:  Your Honor, I ask to play clip 13-28.

THE COURT:  You may do so.  It's been admitted pursuant to stipulation.

MS. GELLIE:  Yes, Your Honor.  Thank you.

(Video played.)

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 333

U.S. v. Mallory

P. Lee - Direct

241

BY MS. GELLIE:

Q.   Did the defendant provide any details as to how he got documents onto the device?

A.   Yeah.  He had mentioned that there are two folders that are mentioned in that audio clip, the IDIR and the SDIR.  So I direct -- "I" stands for input directory.  "S" is your output, SDIR.  So what they do is they -- yes, he did describe it.

          MS. GELLIE:  I'd now ask to play Government Exhibit 13-32, Your Honor.

          THE COURT:  All right.  You may do so.

          (Video played.)

BY MS. GELLIE:

Q.   During the May 24th interview did the defendant provide any further detail about how information is embedded into an image using the custom application?

A.   Yes, he did.

          MS. GELLIE:  Your Honor, I'd ask to play Government Exhibit 13-31.

          THE COURT:  All right.  Before you do it -- you may do so, but where are you in your examination?  In other words, how much more do you anticipate?

          MS. GELLIE:  Probably about five minutes, five to ten minutes.

          THE COURT:  All right.  I may recess a little before that time.  Would that be suitable?

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 334**

USCA4 Appeal: 19-4385 Doc: 27-1 Filed: 08/07/2020 Pg: 347 of 352 Total Pages:(347 of 352)

U.S. v. Mallory

P. Lee - Direct

242

All right.  Proceed.

(Video played.)

BY MS. GELLIE:

Q.   Did the defendant tell you anything on May 24th about software updates for WeChat?

A.   Yes, he did.  He said to not do it.

Q.   Did he explain why not?

A.   Because it would -- it would override the custom modification that was put there on the WeChat app.

THE COURT:  Is this a good stopping place?

MS. GELLIE:  It can be, Your Honor.  That's fine.

THE COURT:  All right.  Ladies and gentlemen, you can pass your books to the right.  Mr. Lee, you may step down. Remember, you must refrain from discussing your testimony with anyone overnight.

When you became a forensic examiner did you lose the special agent title?

THE WITNESS:  No, I keep that.

THE COURT:  All right, Agent Lee.  We'll see you tomorrow morning at 9 o'clock.

THE WITNESS:  Thank you.

(Witness excused.)

THE COURT:  Remember to refrain from discussing the matter among yourselves or with anyone and remember to resist the temptation not to discuss the matter with anyone.  Now,

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

U.J.A. 335

U.S. v. Mallory

243

tomorrow morning -- and don't undertake any investigation at all on your own.  Tomorrow morning we will not convene until 9:30 because I have other matters that are going on beginning at 8 or 8:30, but I am sure that I will be done before 9:30.  And I can assure you you won't have to sit around and we'll continue with Agent Lee.  Thank you for your careful attention to the evidence as it was presented today.  You may follow Mr. Flood out.

(Jury dismissed.)

THE COURT:  All right.  You may be seated.  Ms. Gellie, are the contents that we viewed from the tone -- from the phone, as Agent Lee extracted from it, are those contents particularly significant?

MS. GELLIE:  We will have other witnesses, Your Honor, who will get into the actual text of the chats.  Special Agent Lee merely took the photographs showing that when the defendant logged in all the parties present could see some chat history there.

THE COURT:  Are you saying you will have witnesses explain the meaning of what was seen?

MS. GELLIE:  Absolutely, Your Honor.

THE COURT:  All right.  Now, if there are any completeness arguments that you-all have, resolve those this evening so that we can move with some speed or alacrity through them.

**U.J.A. 336**

U.S. v. Mallory

244

MR. KAMENS:  We'll do that, Your Honor.

THE COURT:  All right.  Thank you.  And that means, as I see it now, tomorrow afternoon when we recess I want to give the jury an estimate of what remains.  My hunch is that the Government will complete its case Monday or Tuesday at the latest.

MS. GELLIE:  Yes, Your Honor.  My hope is that by the afternoon of Tuesday we will have finished all of our experts next week.

THE COURT:  All right.  We may or may not begin Monday until 1 o'clock.  I have to make up my mind about that.

MS. GELLIE:  Your Honor, then just one scheduling point.

THE COURT:  Yes.

MS. GELLIE:  We do have an OCA testifying and we would hope to have her testify on Monday.  She has a child graduating from high school on the Tuesday, so we do need to get her in on Monday, if possible.  And her testimony does build off of other witnesses' testimony.

THE COURT:  Is this -- which witness is this?

MS. GELLIE:  This is Nancy Morgan, Your Honor.

THE COURT:  Yes.  Okay.  We'll work to accommodate that.  She cannot miss her daughter's graduation.

MS. GELLIE:  Thank you, Your Honor.

THE COURT:  All right.  I thank counsel for your

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

**U.J.A. 337**

U.S. v. Mallory

245

cooperation.  We'll recess this evening to reconvene tomorrow morning at 9:30.  Court stands in recess.

**(Proceedings adjourned at 5:21 p.m.)**

**U.J.A. 338**

CERTIFICATE OF REPORTER


I, Tonia Harris, an Official Court Reporter for the Eastern District of Virginia, do hereby certify that I reported by machine shorthand, in my official capacity, the proceedings had and testimony adduced upon the Jury Trial in the case of the **UNITED STATES OF AMERICA versus KEVIN PATRICK MALLORY**, Criminal Action No. 1:17-CR-154, in said court on the 30th day of May, 2018.

I further certify that the foregoing 246 pages constitute the official transcript of said proceedings, as taken from my machine shorthand notes, my computer realtime display, together with the backup tape recording of said proceedings to the best of my ability.

In witness whereof, I have hereto subscribed my name, this September 25, 2018.


_____
Tonia M. Harris, RPR
Official Court Reporter


246

**U.J.A. 339**

This page intentionally left blank for double-sided pagination and printing

**U.J.A. 340**